CLOSED

# U.S. District Court [LIVE]
# Western District of Texas (El Paso)
# CIVIL DOCKET FOR CASE #: <u>3:24−cv−00190−LS</u>

Castaneda v. State of Texas − Texas Tech University Health Sciences Center El Paso
Assigned to: District Judge Leon Schydlower
Demand: $1,000,000
Lead case: 3:24−cv−00189−LS
Member case:
   3:24−cv−00190−LS
Cause: 42:2000 Job Discrimination (Sex)

Date Filed: 06/03/2024
Date Terminated: 06/06/2025
Jury Demand: None
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Cecilia Castaneda**

represented by **Enrique Chavez , Jr.**
Chavez Law Firm
2101 N. Stanton St.
El Paso, TX 79902
(915) 351−7772
Fax: 915/351−7773
Email: <u>enriquechavezjr@chavezlawpc.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Robert Anderson**
Chavez Law Firm
2101 Stanton Street
El Paso, TX 79902
915−351−7772
Fax: 915−351−7773
Email: <u>chavezlawfirm+manderson@chavezlawpc.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Matthew Osterberg**
The Chavez Law Firm
2101 North Stanton St
El Paso
(915) 995−5777
Fax: (915) 440−3313
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**State of Texas − Texas Tech University Health Sciences Center**

represented by **Stephanie A. Criscione**
Office of the Attorney General

**El Paso**

General Litigation Division
209 W. 14th Street
Austin, TX 78701
512–936–1675
Email: stephanie.criscione@oag.texas.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/03/2024 | 1 | COMPLAINT ( Filing fee $ 405 receipt number ATXWDC–18833370). No Summons requested at this time, filed by Cecilia Castaneda. (Attachments: # 1 Exhibit Exhibit A, # 2 Civil Cover Sheet Civil Cover Sheet)(Chavez, Enrique) (Entered: 06/03/2024) |
| 06/03/2024 | | Case assigned to District Judge Leon Schydlower. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (em) (Entered: 06/03/2024) |
| 06/03/2024 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Berton (em) (Entered: 06/03/2024) |
| 06/04/2024 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Cecilia Castaneda. (Chavez, Enrique) (Entered: 06/04/2024) |
| 06/04/2024 | 3 | Summons Issued as to State of Texas – Texas Tech University Health Sciences Center El Paso. (em) (Entered: 06/04/2024) |
| 06/28/2024 | 4 | SUMMONS Returned Executed by Cecilia Castaneda. State of Texas – Texas Tech University Health Sciences Center El Paso served on 6/26/2024, answer due 7/17/2024. (Chavez, Enrique) (Entered: 06/28/2024) |
| 07/16/2024 | 5 | ANSWER to 1 Complaint . Attorney Stephanie A. Criscione added to party State of Texas – Texas Tech University Health Sciences Center El Paso(pty:dft) by State of Texas – Texas Tech University Health Sciences Center El Paso.(Criscione, Stephanie) (Entered: 07/16/2024) |
| 07/17/2024 | 6 | ORDER FOR RULE 26(f) REPORT AND PROPOSED SCHEDULING ORDER. Rule 26(f) report ad proposed scheduling order due to the Court by 8/16/2024. Signed by District Judge Leon Schydlower. (em) (Entered: 07/17/2024) |
| 08/16/2024 | 7 | Scheduling Recommendations/Proposed Scheduling Order by State of Texas – Texas Tech University Health Sciences Center El Paso. (Criscione, Stephanie) (Entered: 08/16/2024) |
| 08/16/2024 | 8 | Rule 26(f) Discovery Report/Case Management Plan by State of Texas – Texas Tech University Health Sciences Center El Paso. (Criscione, Stephanie) (Entered: 08/16/2024) |
| 08/19/2024 | 9 | SCHEDULING ORDER: Jury Selection set for 9/29/2025 09:00AM before District Judge Leon Schydlower, Jury Trial set for 9/29/2025 09:00 AM before District Judge Leon Schydlower, ADR Report Deadline due by 11/1/2024, Amended Pleadings due by 11/1/2024, Discovery due by 5/15/2025, Dispositive Motions due by 5/30/2025. Signed by District Judge Leon Schydlower. (em) (Entered: 08/19/2024) |

| | | |
|---|---|---|
| 10/10/2024 | 10 | MOTION for Entry of Confidentiality and Protective Order by State of Texas – Texas Tech University Health Sciences Center El Paso. (Attachments: # 1 Exhibit A–Joint 26 Report, # 2 Exhibit B–Email with Proposed Order, # 3 Proposed Order)(Criscione, Stephanie) (Entered: 10/10/2024) |
| 10/10/2024 | | Text Order GRANTING 10 Unopposed Motion for Entry of Confidentiality and Protective Order entered by District Judge Leon Schydlower. Michael Osterberg, counsel for Plaintiff, indicated non–opposition to the motion. (This is a text–only entry generated by the court. There is no document associated with this entry.) (LS) (Entered: 10/10/2024) |
| 10/10/2024 | 11 | AGREED CONFIDENTIALITY AND PROTECTIVE ORDER. Signed by District Judge Leon Schydlower. (LS) (Entered: 10/10/2024) |
| 10/29/2024 | 12 | ADR Report Filed – CONSENT to Alternate Dispute Resolution (ADR) by State of Texas – Texas Tech University Health Sciences Center El Paso (Attachments: # 1 Exhibit A– Alternative Dispute Resolution Summary)(Criscione, Stephanie) (Entered: 10/29/2024) |
| 03/12/2025 | 13 | Opposed MOTION to Compel *Discovery from Defendant* by Cecilia Castaneda. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Chavez, Enrique) (Entered: 03/12/2025) |
| 03/19/2025 | 14 | RESPONSE to Motion, filed by State of Texas – Texas Tech University Health Sciences Center El Paso, re 13 Opposed MOTION to Compel *Discovery from Defendant* filed by Plaintiff Cecilia Castaneda (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Criscione, Stephanie) (Entered: 03/19/2025) |
| 03/20/2025 | 15 | REPLY to Response to Motion, filed by Cecilia Castaneda, re 13 Opposed MOTION to Compel *Discovery from Defendant* filed by Plaintiff Cecilia Castaneda (Chavez, Enrique) (Entered: 03/20/2025) |
| 03/31/2025 | 16 | NOTICE *Vacation Letter* by State of Texas – Texas Tech University Health Sciences Center El Paso (Criscione, Stephanie) (Entered: 03/31/2025) |
| 04/30/2025 | 17 | NOTICE of Filing Defendant's Expert Witness Designation by State of Texas – Texas Tech University Health Sciences Center El Paso (Criscione, Stephanie) (Entered: 04/30/2025) |
| 05/19/2025 | 18 | MOTION to Amend/Correct *Case Caption* by State of Texas – Texas Tech University Health Sciences Center El Paso. (Criscione, Stephanie) (Entered: 05/19/2025) |
| 05/21/2025 | 19 | Response in Opposition to Motion, filed by Cecilia Castaneda, re 18 MOTION to Amend/Correct *Case Caption* filed by Defendant State of Texas – Texas Tech University Health Sciences Center El Paso (Chavez, Enrique) (Entered: 05/21/2025) |
| 05/28/2025 | 20 | RESPONSE in Support, filed by State of Texas – Texas Tech University Health Sciences Center El Paso, re 18 MOTION to Amend/Correct *Case Caption* filed by Defendant State of Texas – Texas Tech University Health Sciences Center El Paso (Criscione, Stephanie) (Entered: 05/28/2025) |
| 06/05/2025 | 21 | RESPONSE to Motion, filed by State of Texas – Texas Tech University Health Sciences Center El Paso, re 13 Opposed MOTION to Compel *Discovery from Defendant* filed by Plaintiff Cecilia Castaneda (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Criscione, Stephanie) (Entered: 06/05/2025) |

| 06/06/2025 | | Text Order DENYING <u>13</u> Motion to Compel, with leave to re–file if necessary, entered by District Judge Leon Schydlower. The Court will grant the parties' unopposed motion to consolidate this case with No. 24–cv–189–LS. Based on the pleadings filed to date, the subject motion may be moot. If Plaintiff wishes to pursue it, she may re–file it in No. 24–cv–189–LS after today's consolidation. (This is a text–only entry generated by the court. There is no document associated with this entry.) (LS) (Entered: 06/06/2025) |
| 06/06/2025 | | Text Order DENYING <u>18</u> Motion to Amend/Correct entered by District Judge Leon Schydlower. The Court will use the correct names of the parties when instructing the jury. (This is a text–only entry generated by the court. There is no document associated with this entry.) (LS) (Entered: 06/06/2025) |
| 06/06/2025 | <u>22</u> | ORDER GRANTING UNOPPOSED MOTION TO CONSOLIDATE INTO CASE NUMBER 3:24–CV–189–Ls and Closing this Civil Case. Signed by District Judge Leon Schydlower. (em) (Entered: 06/06/2025) |

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

CECILIA CASTANEDA,
      Plaintiff,

v.                                      Cause No. 3:24-cv-00190

STATE OF TEXAS - TEXAS TECH UNIVERSITY HEALTH
SCIENCES CENTER EL PASO,
      Defendants.

## PLAINTIFF'S ORIGINAL COMPLAINT WITH JURY DEMAND

TO THE HONORABLE COURT:

      Plaintiff, Cecilia Castaneda ("Employee Castaneda" or "Plaintiff"), now complains of Defendant, Texas Tech University Health Sciences Center El Paso ("Defendants" or "Employer TTUHSC), and respectfully shows the Court and jury as follows:

## I. PARTIES.

1. Plaintiff Cecilia Castaneda is a natural person residing in El Paso, Texas.

2. Defendant, State of Texas - Texas Tech University Health Sciences Center El Paso, is a Texas state higher education institution, and may be served with process by serving Defendant's president, Richard Lange, at TTUHSC El Paso, Office of the President, 5001 El Paso Drive, El Paso, Texas 79905, or wherever he may be found.

## II. JURISDICTION.

3. Jurisdiction is proper in this Honorable Court based on federal question jurisdiction.

## III. FACTS OF THE CASE.

4. Employers MUST prevent sexual harassment and sex discrimination at work to protect employees from financial losses and emotional trauma due to job loss.

5. Employers MUST never retaliate against employees who complain of or oppose sexual harassment and sex discrimination in the workplace to protect employees from financial losses and emotional trauma.

6. State of Texas - Texas Tech University Health Sciences Center El Paso is an employer.

7. Employer TTUHSC MUST prevent sexual harassment and sex discrimination at work to protect employees from financial losses and emotional trauma due to job loss.

8. Employer TTUHSC MUST never retaliate against employees who complain of or oppose sexual harassment and sex discrimination in the workplace to protect employees from financial losses and emotional trauma.

9. On April 13, 2013, Employer TTUHSC hires an Employee to work in TTUHSC's surgery clinic as a medical assistant.

10. On April 2020, Employer TTUHSC Senior Administrator Terry Balderrama, a manager in the Employee's direct line of supervision, is aware that the Employee has a "mommy makeover" surgery performed for body sculpting at TTUHSC.

11. On April 2020, Employer TTUHSC Senior Administrator Terry Balderrama begins making sexual comments about the Employee's body's appearance, and specifically the Employee's buttocks. Senior Administrator Balderrama's comments are offensive and embarrassing to the Employee.

12. Senior Administrator Terry Balderrama's comments continue through 2022.

13. On April 2022, Employer TTUHSC Senior Administrator Terry Balderrama accompanies her sister for an appointment in Employer TTUHSC's clinic.

14. That same day, Senior Administrator Balderrama sexually harasses the Employee when she comments in front of everyone "look at Ceci's bottom", in reference to the Employee's

buttocks. Senior Administrator Balderrama's comment offends and terribly shames the Employee.

15. While Employer's TTUHSC Senior Administrator Terry Balderrama has her own cosmetic appointments, she continues to make sexually harassing comments about the Employee's body, and tells the Employee to turn around for her to see the Employee's behind, the Employee's buttocks.

16. On December 21, 2022, Employer TTUHSC Senior Administrator Terry Balderrama goes to TTUHSC's clinic, with her own family, for a cosmetic consultation.

17. While the Employee is helping the doctor, and the doctor has his back to Balderrama, Senior Administrator Balderrama sexually assaults the Employee by grabbing the Employee's buttocks in a sexual manner causing the Employee great embarrassment, shame, and pain.

18. For the next two months, the Employees tries to keep the Employee's distance from Senior Administrator Balderrama.

19. On February 21, 2023, Employer TTUHSC Senior Administrator Rene Vallejo receives the Employee's sexual harassment complaint regarding Senior Administrator Terry Balderrama.

20. Between February 21 and 28, 2023, Employer TTUHSC Human Resources Vice President Jennifer Erickson receives notice of the Employee's sexual harassment complaint from Senior Administrator Vallejo.

21. On February 28, 2023, Employer TTUHSC Human Resources Vice President Jennifer Erickson instructs the Employee to file another written sexual harassment complaint.

22. That same day, February 28, 2023, Employer TTUHSC Human Resources Vice President Jennifer Erickson receives the Employee's second written sexual harassment complaint regarding Senior Administrator Terry Balderrama.

23. On March 2023, Employer TTUHSC Director of Nursing Leticia Cano, who is Senior Administrator Terry Balderrama's right hand, tells the Employee that TTUHSC will relocate the Employee to another clinic.

24. On April 10, 2023, Employer TTUHSC Human Resources Vice President Jennifer Erickson receives the Employee's email requesting to speak with her regarding the Employee's concerns that the Employee's sexual harassment complaint had been ignored or dropped and that TTUHSC was moving the Employee to another clinic in retaliation for the Employee's sexual harassment complaints.

25. That same day, April 10, 2023, Human Resources Vice President Erickson receives the Employee's voicemail requesting she call the Employee back, but Vice President Erickson never responds.

26. Also that same day, April 10, 2023, Employer TTUHSC Human Resources Managing Director David Bergeon receives the Employee's email regarding the Employee's concerns that the Employee's sexual harassment complaint had been ignored or dropped and that TTUHSC was moving the Employee to another clinic in retaliation for the Employee's sexual harassment complaints.

27. On April 14, 2023, Employer TTUHSC Human Resources Vice President Jennifer Erickson tells the Employee that TTUHSC will immediately transfer the Employee to another clinic, and the Employee is not to go back to the surgery clinic under any circumstances.

28. On May 18, 2023, Employer TTUHSC tells the Employee to attend a Human Resources meeting that day.

29. At the meeting, Employer TTUHSC Human Resources Managing Director David Bergeon and Institutional Compliance Officer Andrew Conkovich terminate the Employee's

employment, without providing any explanation or reason as to why TTUHSC is terminating the Employee. They do not allow the Employee to pick up the Employee's personal items or the Employee's purse.

30. Employer TTUHSC Human Resources Managing Director David Bergeon and Institutional Compliance Officer Andrew Conkovich terminate the Employee's ex-sister-in-law and aunt to her children, Alejandra Castaneda, at the same time, without providing her any explanation as to why TTUHSC was terminating her.

31. After the Employee's termination, Employer TTUHSC President Dr. Richard Lange receives the Employee's email stating that the Employee was terminated without being provided an explanation, and that the termination was in retaliation and punishment for reporting and complaining about sexual harassment. President Lange never responds to the Employee's email.

32. That Employee is Cecilia Castaneda.

## IV. CAUSES OF ACTION.

### Sex Discrimination and Retaliation

33. Defendant discriminated against, harassed, and retaliated against Plaintiff in violation of Title VII, which protects employees from sex discrimination, sexual harassment, and retaliation. Defendant's retaliation against Plaintiff includes the termination of Plaintiff's ex-sister-in-law, *see, e.g., Thompson v. N. Am. Stainless*, 562 U.S. 170, 173-175 (2011) (holding that Title VII supports retaliation claims based on the protected activity of a close family member.), because retaliation against family members "well might...dissuade [] a reasonable worker from making or supporting a charge of discrimination", *Burlington N. & Santa Fe Ry. Co. u. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir.

Page 5 of 7

9

2006), internal quotation marks omitted); *see also Thompson*, 562 U.S. at 174 ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired.").

34. All conditions precedent to the filing of this action have occurred or have been fulfilled.

### V. NOTICE OF RIGHT TO FILE A CIVIL ACTION.

35. Attached as Exhibit A is the EEOC Right to Sue for Plaintiff.

### VI. DAMAGES.

36. As a direct and proximate result of Defendant's discrimination, retaliation, and conduct against Plaintiff, as described above, Plaintiff has suffered harms and losses. Plaintiff's harms and losses include, in the past and the future: lost wages and benefits; employment opportunities; lost income; loss of earning capacity; mental anguish; emotional pain and suffering; inconvenience; loss of enjoyment of life; and other non-pecuniary losses.

### VII. EXEMPLARY DAMAGES.

37. Plaintiff is entitled to recover punitive damages under Title VII.

### VIII. JURY DEMAND.

38. Plaintiff requests that this case be decided by a jury as allowed by Federal Rule of Civil Procedure 38.

### IX. ATTORNEYS' FEES AND COSTS.

39. Plaintiff is entitled to recover reasonable and necessary attorney's fees and costs under 42 U.S.C. § 2000e-5(k), including any applicable expert fees.

### X. COURT COSTS.

40. Plaintiff is entitled to recover Plaintiff's court costs.

## XI. PRAYER.

Plaintiff prays that Defendant be cited to appear and answer and that Plaintiff have judgment against Defendant for the following: statutory damages, and actual damages, including but not limited to, past and future lost earnings, mental anguish and inconvenience, emotional pain and suffering, loss of enjoyment of life, bodily injury, pain and suffering, economic damages and benefits in the past and future, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorney fees and expert fees, court costs and all costs of suit and such other and further relief to which Plaintiff may show himself to be justly entitled, in law and in equity.

SIGNED on June 3, 2024.

Respectfully submitted,

**Chavez Law Firm**
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772

By: _____
Enrique Chavez, Jr., State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
Michael R. Anderson, State Bar No. 24087103
manderson@chavezlawpc.com
Michael M. Osterberg, State Bar No. 24108991
mikeosterberg@chavezlawpc.com
*Attorneys for Plaintiff*

# Exhibit A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**El Paso Area Office**
100 N. Stanton Street, Suite 600
El Paso, TX 79901
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/25/2024

**To:** Ms. Cecilia Castaneda
5809 Regulus Drive
EL Paso, TX 79924

Charge No: 453-2023-01439

EEOC Representative and email:   Alvaro Valdez
Federal Investigator
alvaro.valdez@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 453-2023-01439.

On behalf of the Commission,

Digitally Signed By:Elizabeth Porras
04/25/2024

Elizabeth Porras
Area Office Director

**Cc:**
Victor M Mellinger
Texas Tech University System
PO BOX 42021
Lubbock, TX 79409

Sarah Gray
Texas Tech University System
3601 4TH ST STOP 6237
Lubbock, TX 79430

Enrique Chavez
2101 N. Stanton St
El Paso, TX 79902

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 453-2023-01439 to the

15

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 453-2023-01439 to the District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Cecilia Castaneda

## DEFENDANTS

State of Texas - Texas Tech University Health Sciences Center El Paso

**(b)** County of Residence of First Listed Plaintiff    El Paso County, Texas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Enrique Chavez, Jr., Michael R. Anderson
Michael M. Osterberg, Chavez Law Firm
2101 N. Stanton Street, El Paso, Texas 79902, (915) 351-7772

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII

Brief description of cause:
Defendant sexually harassed Plaintiff, and terminated Plaintiff because of Plaintiff's sex and in retaliation for complaining about sexual harassment.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
$1,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
June 3, 2024

SIGNATURE OF ATTORNEY OF RECORD
*Michael R. Anderson*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

17

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
  United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
  United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
  Original Proceedings. (1) Cases which originate in the United States district courts.
  Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
  Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
  Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
  Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
  Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

```
MIME-Version:1.0
From:TXW_USDC_Notice@txwd.uscourts.gov
To:cmecf_notices@txwd.uscourts.gov
Bcc:
--Case Participants: Michael Robert Anderson (chavezlawfirm+manderson@chavezlawpc.com),
Enrique Chavez, Jr (enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com),
District Judge Leon Schydlower (erika_portillo@txwd.uscourts.gov,
leon_schydlower@txwd.uscourts.gov, veronica_medina@txwd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:30431941@txwd.uscourts.gov
Subject:Activity in Case 3:24-cv-00190-LS Castaneda v. State of Texas - Texas Tech
University Health Sciences Center El Paso Case Assigned/Reassigned
```
Content–Type: text/html

## U.S. District Court [LIVE]

### Western District of Texas

## Notice of Electronic Filing

The following transaction was entered on 6/3/2024 at 7:32 PM CDT and filed on 6/3/2024

| | |
|---|---|
| **Case Name:** | Castaneda v. State of Texas – Texas Tech University Health Sciences Center El Paso |
| **Case Number:** | 3:24–cv–00190–LS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Case assigned to District Judge Leon Schydlower. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (em)**

**3:24–cv–00190–LS Notice has been electronically mailed to:**

Enrique Chavez , Jr &nbsp &nbsp enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com

Michael Robert Anderson &nbsp &nbsp chavezlawfirm+manderson@chavezlawpc.com

**3:24–cv–00190–LS Notice has been delivered by other means to:**

Michael Matthew Osterberg
The Chavez Law Firm
2101 North Stanton St
El Paso,

```
MIME-Version:1.0
From:TXW_USDC_Notice@txwd.uscourts.gov
To:cmecf_notices@txwd.uscourts.gov
Bcc:
--Case Participants: Michael Robert Anderson (chavezlawfirm+manderson@chavezlawpc.com),
Enrique Chavez, Jr (enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com),
District Judge Leon Schydlower (erika_portillo@txwd.uscourts.gov,
leon_schydlower@txwd.uscourts.gov, veronica_medina@txwd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:30431943@txwd.uscourts.gov
Subject:Activity in Case 3:24-cv-00190-LS Castaneda v. State of Texas - Texas Tech
University Health Sciences Center El Paso To be Referred to EP Mag Judge
```
Content–Type: text/html

## U.S. District Court [LIVE]

## Western District of Texas

## Notice of Electronic Filing

The following transaction was entered on 6/3/2024 at 7:32 PM CDT and filed on 6/3/2024

| | |
|---|---|
| **Case Name:** | Castaneda v. State of Texas – Texas Tech University Health Sciences Center El Paso |
| **Case Number:** | 3:24–cv–00190–LS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**If ordered by the court, all referrals will be assigned to Magistrate Judge Berton (em)**

**3:24–cv–00190–LS Notice has been electronically mailed to:**

Enrique Chavez , Jr &nbsp &nbsp enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com

Michael Robert Anderson &nbsp &nbsp chavezlawfirm+manderson@chavezlawpc.com

**3:24–cv–00190–LS Notice has been delivered by other means to:**

Michael Matthew Osterberg
The Chavez Law Firm
2101 North Stanton St
El Paso,

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | |
_____ ) 
*Plaintiff(s)*

v.                                    )  Civil Action No. _____

) 
) 
) 
_____ ) 
*Defendant(s)*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT , PHILIP J. DEVLIN*

Date: _____        _____
                                                *Signature of Clerk or Deputy Clerk*



AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| Cecilia Castaneda<br><br>_____<br>*Plaintiff(s)*<br>v.<br>State of Texas - Texas Tech University Health<br>Sciences Center - El Paso<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 3:24-cv-00190-LS

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  State of Texas- aTexas Tech University Health Sciences Center El Paso
President, Richard Lange
TTUHSC El Paso Office of the President
5001 El Paso Drive
El Paso, Texas 79905

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Chavez Law Firm
Enrique Chavez, Jr.
2101 N. Stanton St.
El Paso, TX 79902

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT , PHILIP J. DEVLIN*

Date:  06/04/2024

*Signature of Clerk or Deputy Clerk*



AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 3:24-cv-00190-LS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas

| | |
|---|---|
| Cecilia Castaneda | )<br>)<br>)<br>)<br>) |
| _Plaintiff(s)_ | ) |
| v. | )  Civil Action No. 3:24-cv-00190-LS |
| State of Texas - Texas Tech University Health<br>Sciences Center - El Paso | )<br>)<br>) |
| | )<br>) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_ State of Texas- aTexas Tech University Health Sciences Center El Paso
President, Richard Lange
TTUHSC El Paso Office of the President
5001 El Paso Drive
El Paso, Texas 79905

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Chavez Law Firm
Enrique Chavez, Jr.
2101 N. Stanton St.
El Paso, TX 79902

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT, PHILIP J. DEVLIN_

Date: _____06/04/2024_____

_Signature of Clerk or Deputy Clerk_



AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 3:24-cv-00190-LS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* State of Texas - a Texas Tech University Health Sciences Center
was received by me on *(date)* El Paso, by delivering to its President, Richard Lange

❏ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)* Richard Lange _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* State of Texas - a Texas Tech University

Health Sciences Center El Paso _____ on *(date)* 6-26-24 _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   6-26-24

_____
*Server's signature*

Nicholas Vega, Process Server
*Printed name and title*

PO Box 920594, El Paso, TX 79902
*Server's address*

Additional information regarding attempted service, etc:

Print     Save As...          Reset

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendant.* | § | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT**

To the Honorable Judge Leon Schydlower:

Pursuant to Federal Rules of Civil Procedure 8 and 12, Defendant Texas Tech University Health Science Center-El Paso ("TTUHSCEP") files its answer to Plaintiff Cecilia Castaneda's original complaint.

Defendant denies each and every allegation in the Complaint except those expressly admitted below. In addition, Defendant has identified statements in the Complaint that are legal conclusions and non-factual statements, rather than factual allegations; no response to those conclusions or statements is required. To the extent a response may be required, Defendant denies the conclusions and statements in their entirety.

1.     TTUHSCEP lacks knowledge or information sufficient to form a belief about the truth of paragraph 1.

2.     TTUHSCEP admits the allegations in paragraph 2.

1

3.      The allegations in paragraph 3 are legal conclusions, as no facts are alleged for TTUHSCEP to admit or deny, and therefore no response is required. To the extent that response is required, TTUHSCEP admits that Plaintiff has pled a federal question.

4.      The allegations in paragraph 4 are legal conclusions, as no facts are alleged for TTUHSCEP to admit or deny, and therefore no response is required. To the extent that response is required, TTUHSCEP denies the allegations in paragraph 4.

5.      The allegations in paragraph 5 are legal conclusions, as no facts are alleged for TTUHSCEP to admit or deny, and therefore no response is required. To the extent that response is required, TTUHSCEP denies the allegations in paragraph 5.

6.      TTUHSCEP admits the allegations in paragraph 6.

7.      The allegations in paragraph 7 are legal conclusions, other than TTUHSCEP is an employer, and therefore no response is required. TTUHSCEP admits it is an employer but to the extent a response is required, denies the remaining allegations in paragraph 7.

8.      The allegations in paragraph 8 are legal conclusions, other than TTUHSCEP is an employer, and therefore no response is required TTUHSCEP admits it is an employer but to the extent a response is required, denies the remaining allegations in paragraph 8.

9.      TTUHSCEP admits the allegations in paragraph 9.

10.     TTUHSCEP lacks knowledge or information sufficient to form a belief about the truth of paragraph 10.

11.     TTUHSCEP denies the allegations in paragraph 11.

12.     TTUHSCEP denies the allegations in paragraph 12.

13.     TTUHSCEP lacks knowledge or information sufficient to form a belief about the truth of paragraph 13.

14.     TTUHSCEP denies the allegations in paragraph 14.

15.     TTUHSCEP admits that Terry Balderrama attended cosmetic appointments at TTUHSCEP but denies the remaining allegations in paragraph 15.

16.     TTUHSCEP admits the allegation in paragraph 16.

17.     TTUHSCEP denies the allegations in paragraph 17.

18.     TTUHSCEP lacks knowledge or information sufficient to form a belief about the truth of paragraph 18.

19.     TTUHSCEP denies the allegations in paragraph 19.

20.     TTUHSCEP denies the allegations in paragraph 20.

21.     TTUHSCEP denies the allegations in paragraph 21.

22.     TTUHSCEP denies the allegations in paragraph 22.

23.     Defendant admits Plaintiff was relocated to another clinic but denies the remaining allegations in paragraph 23.

24.     TTUHSCEP denies the allegations in paragraph 24.

25.     TTUHSCEP denies the allegations in paragraph 25.

26.     TTUHSCEP denies the allegations in paragraph 26.

27.     TTUHSCEP denies the allegations in paragraph 27.

28.     TTUHSCEP admits the allegations in paragraph 28.

29.     TTUHSCEP admits Plaintiff was terminated but denies the remaining allegations in paragraph 29.

30.     TTUHSCEP admits Alejandra Castaneda, Plaintiff's ex-sister-in-law, was terminated but denies the remaining allegations in paragraph 30.

31.     TTUHSCEP denies the allegations in paragraph 31.

32.     TTUHSCEP admits that Plaintiff is Cecelia Castaneda, and that Cecelia Castaneda is a former employee of TTUHSCEP, but to the extent that paragraph 32 asks TTUHSCEP to admit the allegations in paragraphs 5-32, deny.

33.     TTUHSCEP denies the allegations in paragraph 33, specifically that Plaintiff's alleged retaliation included the termination of her ex-sister-in-law, and therefore she is not a similar plaintiff as discussed in *Thompson* and *Burlington Northern*.

34.     TTUHSCEP denies the allegations in paragraph 34, as any claims alleged to have occurred before September 2, 2022, are time barred.

35.     TTUHSCEP lacks knowledge or information sufficient to form a belief about the truth of paragraph 35.

36.     The allegations in paragraph 36 are legal conclusions, and therefore no response is required. To the extent that response is required, TTUHSCEP denies Plaintiff is entitled to damages as alleged in paragraph 36.

37.     The allegations in paragraph 37 are legal conclusions, and therefore no response is required. To the extent that response is required, TTUHSCEP denies Plaintiff is entitled to punitive damages as alleged in paragraph 37.

38.     The allegations in paragraph 38 are legal conclusions, and therefore no response is required. To the extent that response is required, TTUHSCEP is not contesting the request for a jury trial.

39.     The allegations in paragraph 39 are legal conclusions, and therefore no response is required. To the extent that response is required, TTUHSCEP denies Plaintiff is entitled to attorney's fees and costs as alleged in paragraph 39.

40.     The allegations in paragraph 40 are legal conclusions, and therefore no response is required. To the extent that response is required, TTUHSCEP denies Plaintiff is entitled to court costs as alleged in paragraph 40.

## AFFIRMATIVE DEFENSES

41.     TTUHSCEP denies all allegations in the Complaint that have not been specifically admitted.

42.     TTUHSCEP affirmatively pleads that it has employment policies and training in place that comply with all applicable laws.

43.     Plaintiff's claims, in whole or in part, are barred by limitations, and to the extent that her claims or filings occurred outside the applicable statutory periods or where not thoroughly exhausted through any required administrative processes, including but not limited to reports to the Equal Employment Opportunity Commission ("EEOC"), any Texas state agency or local agency.

44.     Plaintiff's claims, in whole or in part, are barred by governmental, qualified, and/or sovereign immunity.

45.     Plaintiff's claims, in whole or in part, are barred to the extent she failed to exhaust her administrative remedies or meet all conditions precedent and statutory prerequisites prior to filing this lawsuit.

46.     TTUHSCEP had legitimate, non-discriminatory, and non-retaliatory reasons for all actions affecting Plaintiff.

47.     TTUHSCEP's decisions and actions regarding Plaintiff were wholly appropriate, and these same decisions and actions would have been taken regardless of any alleged unlawful motives, including retaliation.

48.     Plaintiff's own actions or omissions caused or contributed to her injuries, if any.

49.     Plaintiff failed to mitigate her damages, if any.

50.     Plaintiff's damages, if any, are subject to the applicable damage caps.

51.     Should Plaintiff prevail, which TTUHSCEP denies, TTUHSCEP denies that Plaintiff is entitled to exemplary damages, as all of TTUHSCEP's actions were done in good faith and without malice, willfulness, or intent. *Henry v. Corpcar Servs. Houston, Ltd.*, 625 Fed. Appx. 607, 614 (5th Cir. 2015).

52.     Should Plaintiff prevail, which TTUHSCEP denies, TTUHSCEP denies Plaintiff is entitled to punitive damages, as the government, government agencies, and political subdivisions are exempt from punitive damages.

53.     Should Plaintiff prevail, which TTUHSCEP denies, Plaintiff is not entitled to her attorneys' fees. *Carter v. Luminant Power Servs. Co.* 714 F.3d. 268, 270 (5th Cir. 2013).

## **PRAYER**

For these reasons, TTUHSCEP asks the Court to enter judgment that plaintiff take nothing, dismiss plaintiff's suit with prejudice, assess costs against plaintiff, and award TTUHSCEP all other relief the Court deems appropriate.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

6

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that that on July 16, 2024, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:24-CV-00190-LS |
| | § | |
| STATE OF TEXAS - TEXAS TECH | § | |
| UNIVERSITY HEALTH | § | |
| SCIENCES CENTER - EL PASO, | § | |
| | § | |
| Defendant. | § | |

## ORDER FOR RULE 26(f) REPORT AND PROPOSED SCHEDULING ORDER

The defendant having appeared, a Rule 26(f)[1] report and proposed scheduling order[2] are now required, and the parties are directed to the forms set out in Appendix N and Appendix B of the Local Court Rules, respectively. The parties should confer and file these joint pleadings by **August 16, 2024**.

**SO ORDERED.**

**SIGNED** and **ENTERED** on July 17, 2024.

_____
**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**

---

[1] Fed. R. Civ. P. 26(f).
[2] Fed. R. Civ. P. 16(b); Local Court Rule CV-16(c).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

CECILIA CASTANEDA, §
    *Plaintiff,* §
     §
v. §
     § CIVIL ACTION NO. 3:24-cv-00190-LS
STATE OF TEXAS – TEXAS TECH §
UNIVERSITY SCIENCE CENTER – EL §
PASO, §
    *Defendants.* §

## SCHEDULING ORDER

Pursuant to Rule 16, Federal Rules of Civil Procedure, the Court issues the following Scheduling Order:

1. A report on alternative dispute resolution in compliance with Rule CV-88 shall be filed by **November 1, 2024**. A motion objecting to ADR must be filed not later than 60 days before that deadline.

2. The parties asserting claims for relief shall submit a written offer of settlement to opposing parties by **October 1, 2024**, and each opposing party shall respond, in writing, by **November 1, 2024**.

3. The parties shall file all motions to amend or supplement pleadings or to join additional parties by **November 1, 2024**.

4. All parties asserting claims for relief shall file their designation of testifying experts and shall serve on all parties, but not file, the materials required by Federal Rule of Civil Procedure 26(a)(2)(B) by **April 4, 2025**. Parties resisting claims for relief shall file their designation of testifying experts and shall serve on all parties, but not file, the materials required by Federal Rule of Civil Procedure 26(a)(2)(B) by **April 30, 2025**. All designations of rebuttal experts shall be filed within 14 days of receipt of the report of the opposing expert.

5. An objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 shall be made by motion, specifically stating the basis for the objection and identifying the objectionable testimony, not later than 30 days of receipt of the written report of the expert's proposed testimony, or not later than 30 days of the expert's deposition, if a deposition is taken, whichever is later.

6. The parties shall complete all discovery on or before **May 15, 2025**. Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery.

7. All dispositive motions shall be filed not later than **May 30, 2025**.

8. This case is set for trial [docket call, or jury selection] on _____ at _.m. The parties should consult Rule CV-16 regarding matters to be filed in advance of trial.

SIGNED this _____ day of _____.


_____

UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendants.* | § | |

## JOINT FEDERAL RULE OF CIVIL PROCEDURE 26 REPORT

Pursuant to the Court's order, and Rule 26(f) of the Federal Rules of Civil Procedure, the Parties conducted a Rule 26(f) conference by telephonic conference attended by counsel for Plaintiff and Defendant on **July 31, 2024**. The parties hereby submit the following joint report:

1. **What are the causes of action, defenses, and counterclaims in this case? What are the elements of the cause(s) of action, defenses, and counterclaims pled?**

   **Plaintiff's causes of action:**

   Plaintiff has alleged claims for discrimination on the basis of sex, sexual harassment, and retaliation against Defendant resulting from Plaintiff's separation from employment.

   Plaintiff posits that the U.S. Supreme Court case of Muldrow v. City of St. Louis, No. 22-193 (U.S. Apr. 17, 2024) and the Fifth Circuit case of Hamilton v. Dallas County, 79 F.4th 494 (5th Circuit. 2023) lowered the threshold harm required for employees to prevail in Title VII claims. In Hamilton, the 5th Circuit overturned its prior precedent requiring a plaintiff to allege discrimination with respect to an "ultimate employment decision" in order to state a discrimination claim. The court held that a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the "terms, conditions, or privileges of employment."

   It is settled law that the creation of a hostile work environment through harassment is a form of prohibited discrimination when the harassment "alter[s] the conditions of the victim's employment". Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). This comports with the statutory language prohibiting discrimination "with respect to" or "in connection with" the "compensation, terms,

conditions, or privileges of employment". 42 U.S.C. §2000e-2(a)(1); Tex. Lab. Code sec. 21.051. This statutory language "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." Oncale, 523 U.S. at 78 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)) (emphasis added).

When analyzing discrimination claims based on sexual harassment, courts previously focused their analysis on whether the harm to the conditions of the victim's employment was sufficiently severe or pervasive to be actionable under Title VII. See E.E.O.C. v. WC & M Enters., Inc., 496 F.3d 393, 399 (5th Cir. 2007). In other words, an action could constitute sexual harassment, and alter the conditions of the victim's employment, but would not be actionable as discrimination unless the harassment met a heightened severity or pervasiveness standard.

Supreme Court recently reviewed Title VII and the severity of harm required in order to show a discriminate act alter the conditions of the victim's employment. Muldrow v. City of St. Louis, No. 22-193 (Apr. 17, 2024). Basing the opinion on the statutory text, the Supreme Court stated that "[t]he words 'discriminate against,' we have explained, refer to differences in treatment that injure employees." Muldrow, No. 22-193, at *8 (quoting Bostock v. Clayton County, 90 U.S. 644, 681 (2020), internal quotation marks omitted). Phrased differently, "the statute targets practices that treat a person worse because of sex or other protected trait." Muldrow, No. 22-193, at *8-9 (quoting Bostock, 590 U.S. at 658, internal quotation marks omitted).

The Supreme Court specifically held that, "according to the relevant text", a Title VII plaintiff-employee does not have to show "that the harm incurred was significant[, ...] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Muldrow, No. 22-193, at *9 (citation omitted). Under the statute, "'[d]iscriminate against' means treat worse, here based on sex." Muldrow, No. 22-193, at *9. Adding an additional requirement that the mistreatment be sufficiently severe or pervasive, before Title VII applies, "is to add words-and significant words, as it were-to the statute Congress enacted." Muldrow, No. 22-193, at *9.

The Supreme Court went on to criticize prior cases where courts rejected Title VII claims for discrimination, which altered the conditions of the victims' employment, but had not been considered sufficiently severe and "were rejected solely because courts rewrote Title VII, compelling workers to make a showing that the statutory text does not require." Muldrow, No. 22-193, at *10. Title VII "flatly prevents injury to individuals based on status, without distinguishing between significant and less significant harms." Muldrow, No. 22-193, at *12 (internal citation omitted). The Title VII plaintiff "need show only some injury respecting her employment terms or conditions", i.e., the discriminatory conduct "must have left her worse off, but need not have left her significantly so." Muldrow, No. 22-193, at *13.

In concurrence, Justice Kavanaugh elaborated on what "harms" constitute an actionable "injury", stating **"the text of Title VII does not require a separate showing of some harm. The discrimination is harm."** Muldrow, No. 22-193, at *21 (concurring, Kavanaugh, J.) (emphasis added).

Recent caselaw from the Fifth Circuit shows the Fifth Circuit follows the same interpretation as the Supreme Court in adhering to the text of Title VII. See Hamilton v. Dallas Cnty., 79 F.4th 494 (5th Cir. 2023). Specifically, the Fifth Circuit disavowed its prior caselaw that actionable adverse employment actions under Title VII were limited to "ultimate employment decisions" such as a termination. Hamilton, 79 F.4th at 499-501. Like the Supreme Court's analysis in Muldrow, the Fifth Circuit based its decision on the Title VII text. Hamilton, 79 F.4th at 499 ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute.") (quoting Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009)).

Based on the plain text of Title VII, "to plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the terms, conditions, or privileges of his or her employment." Hamilton, 79 F.4th at 502-503 (quoting 42 U.S.C. § 2000e-2(a)(1), internal quotation marks omitted). A plain reading of Title VII shows that Title VII's text, on its face, is not limited to economically adverse employment actions," and the Fifth Circuit refused to "construe the statute in this manner." Hamilton, 79 F.4th at 504.

Therefore, a Title VII plaintiff-employee does not need to prove the discrimination amounted to an "ultimate employment action" or was "severe" or "pervasive" because these terms and phrase are textual additions denounced by the U.S. Supreme Court and the Fifth Circuit. "Instead, a plaintiff need only show that she [or he] was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment'—just as the statute says." Hamilton, 79 F.4th at 506, quoting 42 U.S.C. § 2000e-2(a)(1) and Tex. Lab. Code § 21.051(1), i.e., applying the decision to TCHRA).

The Fifth Circuit specifically applied this holding to not just Title VII but also TCHRA. Hamilton, 79 F.4th at 498 ("The Officers also asserted a parallel state-law discrimination claim under the Texas Employment Discrimination Act, TEX. LAB. CODE §§ 21.001 et seq."); Hamilton, 79 F.4th at 506 n. 67, analyzing the statutory text of Title VII and TCHRA concurrently, as quoted above).

The Supreme Court subsequently adopted the same textual basis in holding that a Title VII plaintiff-employee does not have to show "that the harm incurred was significant[,] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Muldrow, No. 22-193, at *9 (citation omitted). Sexual harassment is a form of

prohibited discrimination when the harassment "alter[s] the conditions of the victim's employment". Oncale, 523 U.S. at 78 (quoting Harris, 510 U.S. at 21).

Accordingly, there is one element: Was Plaintiff treated worse because of sex, other protected category or protected conduct.

**<u>Defendant's Defenses:</u>**

Under the burden shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), TTUHSCEP had a legitimate, nondiscretionary reason for Plaintiff's termination. TTUHSCEP conducted investigation into inconsistencies into billing practices in the Department of Surgery in connection with Botox, Juvederm, and other injectable cosmetic procedures. It discovered that Plaintiff, an employee of the Department of Surgery, in consort with her ex-sister-in-law, who was Plaintiff's manager, were receiving—and giving friends and family—heavily discounted cosmetic injections. TTUHSCEP's decisions and actions regarding Plaintiff were wholly appropriate, and these same decisions and actions would have been taken regardless of any alleged unlawful motives, including discrimination and retaliation.

Plaintiff's claims, in whole or in part, are barred by limitations, and to the extent that her claims or filings occurred outside the applicable statutory periods or where not thoroughly exhausted through any required administrative processes. In addition, Plaintiff's claims, in whole or in part, are barred to the extent she failed to exhaust her administrative remedies or meet all conditions precedent and statutory prerequisites prior to filing this lawsuit. Any claims asserted for incidents of discrimination or retaliation before September 2, 2022, are time barred.

TTUHSCEP has employment policies and training in place that comply with all applicable laws.

Plaintiff's claims, in whole or in part, are barred by governmental, qualified, and/or sovereign immunity. Should Plaintiff prevail, which TTUHSCEP denies, TTUHSCEP denies Plaintiff is entitled to punitive damages, as the government, government agencies, and political subdivisions are exempt from punitive damages. Plaintiff's damages, if any, are subject to the applicable damage caps. Furthermore, should Plaintiff prevail, which TTUHSCEP denies, Plaintiff is not entitled to her attorneys' fees. *Carter v. Luminant Power Servs. Co.* 714 F.3d. 268, 270 (5th Cir. 2013).

Should Plaintiff prevail, which TTUHSCEP denies, TTUHSCEP denies that Plaintiff is entitled to exemplary damages, as all of TTUHSCEP's actions were done in good faith and without malice, willfulness, or intent. *Henry v. Corpcar Servs. Houston, Ltd.*, 625 Fed. Appx. 607, 614 (5th Cir. 2015).

2.    **Are there any outstanding jurisdictional issues?**

None. Jurisdiction is based on Federal Question jurisdiction.

**For removed cases based on diversity jurisdiction:**

a.    **Do the parties agree that the amount in controversy exceeded $75,000 at the time of removal? If not, each party should state its position on the amount in controversy.**

Not applicable to this case.

b.    **If any party is a partnership or limited liability company, have the parties confirmed the citizenship of all partners/members in determining whether diversity exists?**

Not applicable to this case.

3.    **Are there any unserved parties? If more than 90 days have passed since the filing of the Complaint or petition, should these unserved parties be dismissed?**

None.

4.    **Are there any agreements or stipulations that can be made about any facts in this case or any element in the cause(s) of action?**

The Parties stipulate to the following facts in this case:

- Plaintiff was an employee of TTUHSCEP at the time of her separation from employment.
- TTUHSCEP hired Plaintiff as a clinical assistant on August 13, 2012
- Plaintiff's husband at the time of her hiring was Ulysses Castaneda, who is an employee in the facilities department at TTUHSCEP.
- Ulysses Castaneda's sister is Alejandra Castaneda.
- TTUHSCEP hired Alejandra Castaneda as a medical clinic supervisor on April 1, 2017.
- Plaintiff was separated from employment on May 18, 2023.
- Plaintiff filed her charge of discrimination on June 29, 2023.

5.      **Are there any legal issues in this case that can be narrowed by agreement or by motion?**

The entry of a joint protective order to assist in discovery.

6.      **Are there any issues about preservation of discoverable information?**

The parties agree that discoverable information should be timely preserved and have been instructed about preserving same.

7.      **Are there any issues about disclosure or discovery of electronically stored information? In what forms should electronically-stored information be produced and will production include metadata?**

Pursuant to Rule 34(b)**,** the parties will seek responsive information and documentation which is ordinarily maintained or kept in the usual course of business. All responsive information shall be produced in searchable PDF format, with meta data preserved, including scanned copies of any responsive paper documentation.

Plaintiff will also take Rule 30(b)(6) depositions of Defendants' Designated Representatives on the following topics, for which notice is now hereby given:
- Defendant's creation, storage and maintenance of electronically stored information, and in physical formats, on the issues germane to the instant suit,
- Defendant's employment of Plaintiff, and the reasons and facts concerning the cessation of the employment relationship;
- the identity of key witnesses such as Defendant's decision makers, comparators and Plaintiff's replacements;
- the factual circumstances underlying Defendant's alleged discrimination of and retaliation against Plaintiff;
- Defendant's compensation of Plaintiff during employment and the compensation Plaintiff would have received had employment not ceased, including the value of all employment benefits;
- Defendants' affirmative defenses, if any;
- Defendant's personnel records of decision makers and comparators if any, and any other relevant matters.

TTUHSCEP objects to any assertion that these topics are appropriate and can constitute proper notice under Rule 30(b)(6). TTUHSCEP will address depositions at the appropriate time, as written discovery has only commenced.

**8.     What are the subjects on which discovery may be needed?**

Through interrogatories, Rule 34 requests of documents, electronically stored information and tangible things, requests for admissions and through the taking of Rule 30(b)(6) depositions of Defendants' Designated Representatives, Plaintiff will seek the discovery on the following topics, for which notice is hereby given:

-     Defendant's creation, storage and maintenance of electronically stored information, and in physical formats, on the issues germane to the instant suit,
-     Defendant's employment of Plaintiff, and the reasons and facts concerning the cessation of the employment relationship;
-     the identity of key witnesses such as Defendant's decision makers, comparators and Plaintiff's replacements;
-     the factual circumstances underlying Defendant's alleged discrimination of and retaliation against Plaintiff;
-     Defendant's compensation of Plaintiff during employment and the compensation Plaintiff would have received had employment not ceased, including the value of all employment benefits;
-     Defendants' affirmative defenses, if any;
-     Defendant's personnel records of decision makers and comparators if any, and any other relevant matters.

TTUHSCEP will seek discovery on Plaintiff's involvement in receiving and assisting others in receiving discounted medical injectables. TTUHSCEP will also seek discovery on all of Plaintiff's properly pled claims, including the legal and factual basis for her contentions.

**9.     Have initial disclosures been made?  If not, should any changes be made in the timing, form, or requirement for initial disclosures?**

Disclosures under rule 26a have been made.

**10.    What, if any, discovery has been completed? What discovery remains to be done and when should it be completed? Have the parties considered conducting discovery in phases or agreeing to limit discovery?**

The parties have exchanged disclosures pursuant to rule 26a. Plaintiff served discovery on August 8, 2024. Complete discovery remains to be done and should be completed by the Court's discovery deadline. The parties do not anticipate conducting discovery in phases or limiting discovery.

**11.    What, if any, discovery disputes exist?**

The Parties seek a hearing with the Court concerning scope of discovery given Plaintiff seeks discovery in connection with claims of sex discrimination and harassment, and retaliation. TTUHSCEP objects to any discovery that would seek information solely to support a claim for discrimination or harassment.

**12.    Have the parties discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502?**

Not at this time.

**13.    Have the parties discussed early mediation?**

The parties do not anticipate mediating until at least the exchange of written discovery answers, responses and production.

**14.    Have the parties considered seeking entry of a confidentiality and protective order and are there any other scheduling or discovery items requiring the court's attention?**

Because Plaintiff's medical records and information are confidential as a matter of law, Defendant will not seek, through process, to obtain such records and information without a valid, HIPAA compliant authorization duly executed by Plaintiff and such authorization will be limited in time and scope relevant solely to the issues in the instant cause. Given the nature of the claims at issue, Plaintiff will not unreasonably withhold consent of obtaining these files.

In light of the Supreme Court's ruling in *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995), in which the Supreme Court recognized a concern that employers routinely attempt to undertake overly broad and abusive discovery into an employee's background in employment cases, Defendant will only seek the production of Plaintiff's w-2s, 1099s, and other documents, excluding tax returns, which show Plaintiff's compensation from subsequent employers. TTUHSCEP does not agree to this limitation on discovery. TTUHSCEP will seek all relevant discovery, including discovery into the conspiracy between Plaintiff and others to receive and give out discounted medical injectables.

The parties do seek the entry of a protective order in the form promulgated by the Western District of Texas.

**SIGNED** on August 16, 2024.

Respectfully submitted,
**CHAVEZ LAW FIRM**
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772


By: */s/ Enriquez Chavez* (with permission)
Enrique Chavez, Jr., State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
*Attorneys for Plaintiff*


 AND

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division


*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
Lead Attorney for Defendant

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **3:24-CV-00190-LS** |
| STATE OF TEXAS - TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCES | § | |
| CENTER EL PASO, | § | |
| | § | |
| **Defendants.** | § | |

## SCHEDULING ORDER

Pursuant to Rule 16, Federal Rules of Civil Procedure, the Court issues the following Scheduling Order:

1. A report on alternative dispute resolution in compliance with Rule CV-88 shall be filed by **November 1, 2024**. A motion objecting to ADR must be filed not later than 60 days before that deadline.

2. The parties asserting claims for relief shall submit a written offer of settlement to opposing parties by **October 1, 2024**, and each opposing party shall respond, in writing, by **November 1, 2024**.

3. The parties shall file all motions to amend or supplement pleadings or to join additional parties by **November 1, 2024**.

4. All parties asserting claims for relief shall file their designation of testifying experts and shall serve on all parties, but not file, the materials required by Federal Rule of Civil Procedure 26(a)(2)(B) by **April 4, 2025**. Parties resisting claims for relief shall file their designation of testifying experts and shall serve on all parties, but not file, the materials required by Federal Rule

1

of Civil Procedure 26(a)(2)(B) by **April 30, 2025**. All designations of rebuttal experts shall be filed within 14 days of receipt of the report of the opposing expert.

5. An objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 shall be made by motion, specifically stating the basis for the objection and identifying the objectionable testimony, not later than **30** days of receipt of the written report of the expert's proposed testimony, or not later than **30** days of the expert's deposition, if a deposition is taken, whichever is later.

6. The parties shall complete all discovery on or before **May 15, 2025**. Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery.

7. All dispositive motions shall be filed not later than **May 30, 2025**.

8. This case is set for trial, jury selection on **September 29, 2025, at 9:00 a.m.** The parties should consult Rule CV-16 regarding matters to be filed in advance of trial.

      **SIGNED** and **ENTERED** on August 19, 2024.

 

 

_____
**LEON SCHYDLOWER
UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

|  |  |  |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
|  | § | |
| v. | § | |
|  | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant.* | § | |

---

**MOTION FOR ENTRY OF CONFIDENTIALITY ORDER**

---

**TO THE HONORABLE JUDGE LEON SCHYDLOWER:**

**NOW COMES** Defendant, Texas Tech University Health Sciences Center at El Paso ("TTUHSCEP") and files this opposed Motion for Entry of Confidentiality Order, and, in support thereof, shows the Court the following:

1.      TTUHSCEP respectfully requests that this Court sign the proposed confidentiality order, attached to this Motion as the Proposed Order.

2.      Plaintiff Cecilia Castaneda filed her original complaint on June 3, 2024. (Dkt. 1). TTUHSCEP filed its original answer and affirmative defenses on July 16, 2024 (Dkt. 5). The following day, this Honorable Court ordered the parties to prepare a joint report pursuant to Rule 26 of the Federal Rules of Civil Procedure (the "Joint 26f Report") by August 16, 2024. (Dkt. 6).

3.      On August 16, 2024, the parties submitted the Joint 26f Report. (Dkt. 8). In the Joint 26f Report, the parties agreed that a confidentiality order should be entered so all discovery could be conducted in an appropriate manner. (Dkt. 8 ¶ 14). The parties agreed that they would

---

*Cecilia Castaneda v. Texas Tech University Health Sciences Center at El Paso*          Page 1
Defendant's Motion for Entry of Confidentiality Order

48

use the form confidentiality order promulgated by the Western District of Texas. *Id.* The Joint 26f Report with relevant language highlighted is attached to this Motion as **Exhibit A.**

4.    Despite TTUHSCEP's multiple attempts to confer with Plaintiff on the entry of a confidentiality order, Plaintiff has never responded to these attempts. TTUHSCEP conferred on September 9, 2024, September 10, 2024, September 13, 2024, September 18, 2024, October 8, 2024, and October 10, 2024. TTUHSCEP even included a proposed confidentiality order in its September 13 attempt to confer, attached to this Motion as **Exhibit B.** Due to Plaintiff's silence, TTUHSCEP presumes Plaintiff is opposed to the entry of the order despite her agreement that in the 26f report that a confidentiality order is necessary.

5.    Plaintiff's counsel has received these emails, as he is responding from the same email address and sending other emails from this email address regarding completely unrelated matters.

6.    The lack of entry of a confidentiality order is impacting the discovery process. There are several relevant and responsive documents that are confidential in nature, including medical data. The parties cannot produce these documents until a confidentiality order is in place.

**PRAYER**

TTUHSCEP respectfully requests that the Court GRANT this Motion for Entry and enter the proposed confidentiality order in this case.

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

*Cecilia Castaneda v. Texas Tech University Health Sciences Center at El Paso*    Page 2
Defendant's Motion for Entry of Confidentiality Order

49

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

*Cecilia Castaneda v. Texas Tech University Health Sciences Center at El Paso*     Page 3
Defendant's Motion for Entry of Confidentiality Order

50

## CERTIFICATE OF CONFERENCE

I certify that on September 9, 2024, September 10, 2024, September 13, 2024, September 18, 2024, October 8, 2024, and October 10, 2024, I conferred with Plaintiff's counsel Enrique Chavez, Jr, via email regarding the subject of this Motion. Plaintiff's counsel has not responded to any of these attempts to confer, and thus the Motion is presumed to be opposed.

*/S/ STEPHANIE A. CRISCIONE*
**STEPHANIE A. CRISCIONE**
ASSISTANT ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

I certify that that on October 10, 2024, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/S/ STEPHANIE A. CRISCIONE*
**STEPHANIE A. CRISCIONE**
ASSISTANT ATTORNEY GENERAL

*Cecilia Castaneda v. Texas Tech University Health Sciences Center at El Paso*     Page 4
Defendant's Motion for Entry of Confidentiality Order

51

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
|     *Defendants.* | § | |

**JOINT FEDERAL RULE OF CIVIL PROCEDURE 26 REPORT**

Pursuant to the Court's order, and Rule 26(f) of the Federal Rules of Civil Procedure, the Parties conducted a Rule 26(f) conference by telephonic conference attended by counsel for Plaintiff and Defendant on **July 31, 2024**. The parties hereby submit the following joint report:

1.  **What are the causes of action, defenses, and counterclaims in this case? What are the elements of the cause(s) of action, defenses, and counterclaims pled?**

**Plaintiff's causes of action:**

Plaintiff has alleged claims for discrimination on the basis of sex, sexual harassment, and retaliation against Defendant resulting from Plaintiff's separation from employment.

Plaintiff posits that the U.S. Supreme Court case of Muldrow v. City of St. Louis, No. 22-193 (U.S. Apr. 17, 2024) and the Fifth Circuit case of Hamilton v. Dallas County, 79 F.4th 494 (5th Circuit. 2023) lowered the threshold harm required for employees to prevail in Title VII claims. In Hamilton, the 5th Circuit overturned its prior precedent requiring a plaintiff to allege discrimination with respect to an "ultimate employment decision" in order to state a discrimination claim. The court held that a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the "terms, conditions, or privileges of employment."

It is settled law that the creation of a hostile work environment through harassment is a form of prohibited discrimination when the harassment "alter[s] the conditions of the victim's employment". Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). This comports with the statutory language prohibiting discrimination "with respect to" or "in connection with" the "compensation, terms,

conditions, or privileges of employment". 42 U.S.C. §2000e-2(a)(1); Tex. Lab. Code sec. 21.051. This statutory language "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." Oncale, 523 U.S. at 78 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)) (emphasis added).

When analyzing discrimination claims based on sexual harassment, courts previously focused their analysis on whether the harm to the conditions of the victim's employment was sufficiently severe or pervasive to be actionable under Title VII. See E.E.O.C. v. WC & M Enters., Inc., 496 F.3d 393, 399 (5th Cir. 2007). In other words, an action could constitute sexual harassment, and alter the conditions of the victim's employment, but would not be actionable as discrimination unless the harassment met a heightened severity or pervasiveness standard.

Supreme Court recently reviewed Title VII and the severity of harm required in order to show a discriminate act alter the conditions of the victim's employment. Muldrow v. City of St. Louis, No. 22-193 (Apr. 17, 2024). Basing the opinion on the statutory text, the Supreme Court stated that "[t]he words 'discriminate against,' we have explained, refer to differences in treatment that injure employees." Muldrow, No. 22-193, at *8 (quoting Bostock v. Clayton County, 90 U.S. 644, 681 (2020), internal quotation marks omitted). Phrased differently, "the statute targets practices that treat a person worse because of sex or other protected trait." Muldrow, No. 22-193, at *8-9 (quoting Bostock, 590 U.S. at 658, internal quotation marks omitted).

The Supreme Court specifically held that, "according to the relevant text", a Title VII plaintiff-employee does not have to show "that the harm incurred was significant[, ...] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Muldrow, No. 22-193, at *9 (citation omitted). Under the statute, "'[d]iscriminate against' means treat worse, here based on sex." Muldrow, No. 22-193, at *9. Adding an additional requirement that the mistreatment be sufficiently severe or pervasive, before Title VII applies, "is to add words-and significant words, as it were-to the statute Congress enacted." Muldrow, No. 22-193, at *9.

The Supreme Court went on to criticize prior cases where courts rejected Title VII claims for discrimination, which altered the conditions of the victims' employment, but had not been considered sufficiently severe and "were rejected solely because courts rewrote Title VII, compelling workers to make a showing that the statutory text does not require." Muldrow, No. 22-193, at *10. Title VII "flatly prevents injury to individuals based on status, without distinguishing between significant and less significant harms." Muldrow, No. 22-193, at *12 (internal citation omitted). The Title VII plaintiff "need show only some injury respecting her employment terms or conditions", i.e., the discriminatory conduct "must have left her worse off, but need not have left her significantly so." Muldrow, No. 22-193, at *13.

In concurrence, Justice Kavanaugh elaborated on what "harms" constitute an actionable "injury", stating **"the text of Title VII does not require a separate showing of some harm. The discrimination is harm."** Muldrow, No. 22-193, at *21 (concurring, Kavanaugh, J.) (emphasis added).

Recent caselaw from the Fifth Circuit shows the Fifth Circuit follows the same interpretation as the Supreme Court in adhering to the text of Title VII. See Hamilton v. Dallas Cnty., 79 F.4th 494 (5th Cir. 2023). Specifically, the Fifth Circuit disavowed its prior caselaw that actionable adverse employment actions under Title VII were limited to "ultimate employment decisions" such as a termination. Hamilton, 79 F.4th at 499-501. Like the Supreme Court's analysis in Muldrow, the Fifth Circuit based its decision on the Title VII text. Hamilton, 79 F.4th at 499 ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute.") (quoting Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009)).

Based on the plain text of Title VII, "to plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the terms, conditions, or privileges of his or her employment." Hamilton, 79 F.4th at 502-503 (quoting 42 U.S.C. § 2000e-2(a)(1), internal quotation marks omitted). A plain reading of Title VII shows that Title VII's text, on its face, is not limited to economically adverse employment actions," and the Fifth Circuit refused to "construe the statute in this manner." Hamilton, 79 F.4th at 504.

Therefore, a Title VII plaintiff-employee does not need to prove the discrimination amounted to an "ultimate employment action" or was "severe" or "pervasive" because these terms and phrase are textual additions denounced by the U.S. Supreme Court and the Fifth Circuit. "Instead, a plaintiff need only show that she [or he] was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment'—just as the statute says." Hamilton, 79 F.4th at 506, quoting 42 U.S.C. § 2000e-2(a)(1) and Tex. Lab. Code § 21.051(1), i.e., applying the decision to TCHRA).

The Fifth Circuit specifically applied this holding to not just Title VII but also TCHRA. Hamilton, 79 F.4th at 498 ("The Officers also asserted a parallel state-law discrimination claim under the Texas Employment Discrimination Act, TEX. LAB. CODE §§ 21.001 et seq."); Hamilton, 79 F.4th at 506 n. 67, analyzing the statutory text of Title VII and TCHRA concurrently, as quoted above).

The Supreme Court subsequently adopted the same textual basis in holding that a Title VII plaintiff-employee does not have to show "that the harm incurred was significant[,] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Muldrow, No. 22-193, at *9 (citation omitted). Sexual harassment is a form of

prohibited discrimination when the harassment "alter[s] the conditions of the victim's employment". Oncale, 523 U.S. at 78 (quoting Harris, 510 U.S. at 21).

Accordingly, there is one element: Was Plaintiff treated worse because of sex, other protected category or protected conduct.

### **Defendant's Defenses:**

Under the burden shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), TTUHSCEP had a legitimate, nondiscretionary reason for Plaintiff's termination. TTUHSCEP conducted investigation into inconsistencies into billing practices in the Department of Surgery in connection with Botox, Juvederm, and other injectable cosmetic procedures. It discovered that Plaintiff, an employee of the Department of Surgery, in consort with her ex-sister-in-law, who was Plaintiff's manager, were receiving—and giving friends and family—heavily discounted cosmetic injections. TTUHSCEP's decisions and actions regarding Plaintiff were wholly appropriate, and these same decisions and actions would have been taken regardless of any alleged unlawful motives, including discrimination and retaliation.

Plaintiff's claims, in whole or in part, are barred by limitations, and to the extent that her claims or filings occurred outside the applicable statutory periods or where not thoroughly exhausted through any required administrative processes. In addition, Plaintiff's claims, in whole or in part, are barred to the extent she failed to exhaust her administrative remedies or meet all conditions precedent and statutory prerequisites prior to filing this lawsuit. Any claims asserted for incidents of discrimination or retaliation before September 2, 2022, are time barred.

TTUHSCEP has employment policies and training in place that comply with all applicable laws.

Plaintiff's claims, in whole or in part, are barred by governmental, qualified, and/or sovereign immunity. Should Plaintiff prevail, which TTUHSCEP denies, TTUHSCEP denies Plaintiff is entitled to punitive damages, as the government, government agencies, and political subdivisions are exempt from punitive damages. Plaintiff's damages, if any, are subject to the applicable damage caps. Furthermore, should Plaintiff prevail, which TTUHSCEP denies, Plaintiff is not entitled to her attorneys' fees. *Carter v. Luminant Power Servs. Co.* 714 F.3d. 268, 270 (5th Cir. 2013).

Should Plaintiff prevail, which TTUHSCEP denies, TTUHSCEP denies that Plaintiff is entitled to exemplary damages, as all of TTUHSCEP's actions were done in good faith and without malice, willfulness, or intent. *Henry v. Corpcar Servs. Houston, Ltd.*, 625 Fed. Appx. 607, 614 (5th Cir. 2015).

2.      **Are there any outstanding jurisdictional issues?**

None. Jurisdiction is based on Federal Question jurisdiction.

**For removed cases based on diversity jurisdiction:**

a.      **Do the parties agree that the amount in controversy exceeded $75,000 at the time of removal? If not, each party should state its position on the amount in controversy.**

Not applicable to this case.

b.      **If any party is a partnership or limited liability company, have the parties confirmed the citizenship of all partners/members in determining whether diversity exists?**

Not applicable to this case.

3.      **Are there any unserved parties? If more than 90 days have passed since the filing of the Complaint or petition, should these unserved parties be dismissed?**

None.

4.      **Are there any agreements or stipulations that can be made about any facts in this case or any element in the cause(s) of action?**

The Parties stipulate to the following facts in this case:

-   Plaintiff was an employee of TTUHSCEP at the time of her separation from employment.
-   TTUHSCEP hired Plaintiff as a clinical assistant on August 13, 2012
-   Plaintiff's husband at the time of her hiring was Ulysses Castaneda, who is an employee in the facilities department at TTUHSCEP.
-   Ulysses Castaneda's sister is Alejandra Castaneda.
-   TTUHSCEP hired Alejandra Castaneda as a medical clinic supervisor on April 1, 2017.
-   Plaintiff was separated from employment on May 18, 2023.
-   Plaintiff filed her charge of discrimination on June 29, 2023.

5. **Are there any legal issues in this case that can be narrowed by agreement or by motion?**

The entry of a joint protective order to assist in discovery.

6. **Are there any issues about preservation of discoverable information?**

The parties agree that discoverable information should be timely preserved and have been instructed about preserving same.

7. **Are there any issues about disclosure or discovery of electronically stored information? In what forms should electronically-stored information be produced and will production include metadata?**

Pursuant to Rule 34(b), the parties will seek responsive information and documentation which is ordinarily maintained or kept in the usual course of business. All responsive information shall be produced in searchable PDF format, with meta data preserved, including scanned copies of any responsive paper documentation.

Plaintiff will also take Rule 30(b)(6) depositions of Defendants' Designated Representatives on the following topics, for which notice is now hereby given:
- Defendant's creation, storage and maintenance of electronically stored information, and in physical formats, on the issues germane to the instant suit,
- Defendant's employment of Plaintiff, and the reasons and facts concerning the cessation of the employment relationship;
- the identity of key witnesses such as Defendant's decision makers, comparators and Plaintiff's replacements;
- the factual circumstances underlying Defendant's alleged discrimination of and retaliation against Plaintiff;
- Defendant's compensation of Plaintiff during employment and the compensation Plaintiff would have received had employment not ceased, including the value of all employment benefits;
- Defendants' affirmative defenses, if any;
- Defendant's personnel records of decision makers and comparators if any, and any other relevant matters.

TTUHSCEP objects to any assertion that these topics are appropriate and can constitute proper notice under Rule 30(b)(6). TTUHSCEP will address depositions at the appropriate time, as written discovery has only commenced.

**8.    What are the subjects on which discovery may be needed?**

Through interrogatories, Rule 34 requests of documents, electronically stored information and tangible things, requests for admissions and through the taking of Rule 30(b)(6) depositions of Defendants' Designated Representatives, Plaintiff will seek the discovery on the following topics, for which notice is hereby given:

- Defendant's creation, storage and maintenance of electronically stored information, and in physical formats, on the issues germane to the instant suit,
- Defendant's employment of Plaintiff, and the reasons and facts concerning the cessation of the employment relationship;
- the identity of key witnesses such as Defendant's decision makers, comparators and Plaintiff's replacements;
- the factual circumstances underlying Defendant's alleged discrimination of and retaliation against Plaintiff;
- Defendant's compensation of Plaintiff during employment and the compensation Plaintiff would have received had employment not ceased, including the value of all employment benefits;
- Defendants' affirmative defenses, if any;
- Defendant's personnel records of decision makers and comparators if any, and any other relevant matters.

TTUHSCEP will seek discovery on Plaintiff's involvement in receiving and assisting others in receiving discounted medical injectables. TTUHSCEP will also seek discovery on all of Plaintiff's properly pled claims, including the legal and factual basis for her contentions.

**9.    Have initial disclosures been made?  If not, should any changes be made in the timing, form, or requirement for initial disclosures?**

Disclosures under rule 26a have been made.

**10.    What, if any, discovery has been completed? What discovery remains to be done and when should it be completed? Have the parties considered conducting discovery in phases or agreeing to limit discovery?**

The parties have exchanged disclosures pursuant to rule 26a. Plaintiff served discovery on August 8, 2024. Complete discovery remains to be done and should be completed by the Court's discovery deadline. The parties do not anticipate conducting discovery in phases or limiting discovery.

**11.    What, if any, discovery disputes exist?**

The Parties seek a hearing with the Court concerning scope of discovery given Plaintiff seeks discovery in connection with claims of sex discrimination and harassment, and retaliation. TTUHSCEP objects to any discovery that would seek information solely to support a claim for discrimination or harassment.

**12.     Have the parties discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502?**

Not at this time.

**13.     Have the parties discussed early mediation?**

The parties do not anticipate mediating until at least the exchange of written discovery answers, responses and production.

**14.     Have the parties considered seeking entry of a confidentiality and protective order and are there any other scheduling or discovery items requiring the court's attention?**

Because Plaintiff's medical records and information are confidential as a matter of law, Defendant will not seek, through process, to obtain such records and information without a valid, HIPAA compliant authorization duly executed by Plaintiff and such authorization will be limited in time and scope relevant solely to the issues in the instant cause. Given the nature of the claims at issue, Plaintiff will not unreasonably withhold consent of obtaining these files.

In light of the Supreme Court's ruling in *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995), in which the Supreme Court recognized a concern that employers routinely attempt to undertake overly broad and abusive discovery into an employee's background in employment cases, Defendant will only seek the production of Plaintiff's w-2s, 1099s, and other documents, excluding tax returns, which show Plaintiff's compensation from subsequent employers. TTUHSCEP does not agree to this limitation on discovery. TTUHSCEP will seek all relevant discovery, including discovery into the conspiracy between Plaintiff and others to receive and give out discounted medical injectables.

The parties do seek the entry of a protective order in the form promulgated by the Western District of Texas.

**SIGNED** on August 16, 2024.

Respectfully submitted,
**CHAVEZ LAW FIRM**
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772


By: _/s/ Enriquez Chavez_ (with permission)
Enrique Chavez, Jr., State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
_Attorneys for Plaintiff_


 AND

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division


_/s/ Stephanie A. Criscione_
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
Lead Attorney for Defendant

# EXHIBIT B

| From: | Stephanie Criscione |
|---|---|
| To: | Enrique Chavez, Jr. at Chavez Law Firm |
| Cc: | "mikeosterberg@chavezlawpc.com"; Troy Sager; manderson@chavezlawpc.com |
| Subject: | RE: Request for Dates for Corporate Representative Deposition pursuant to Rule 30(b)(6)- Castaneda v TTHSCEP |
| Date: | Friday, September 13, 2024 9:54:00 PM |
| Attachments: | 20240913_Protective Order 2.docx |

Mr. Chavez,

Please see the proposed Confidentiality Order in this matter. It is the standard Western District Order. Please let me know if you agree to submit this to Judge Schydlower.

Best,

Stephanie A. Criscione
Assistant Attorney General
General Litigation Division
Direct: (512) 936-1675
Cell: (737) 230-1248

**From:** Stephanie Criscione
**Sent:** Tuesday, September 10, 2024 9:08 AM
**To:** Enrique Chavez, Jr. at Chavez Law Firm <EnriqueChavezJr@chavezlawpc.com>
**Cc:** 'mikeosterberg@chavezlawpc.com' <mikeosterberg@chavezlawpc.com>; Troy Sager <Troy.Sager@oag.texas.gov>; manderson@chavezlawpc.com
**Subject:** RE: Request for Dates for Corporate Representative Deposition pursuant to Rule 30(b)(6)- Castaneda v TTHSCEP

Mr. Chavez,

Please advise: have you heard from the court regarding our request for a hearing on the scope of discovery or the confidentiality order as noted in the 26f report? If not, please forward any redline you have to the standard Western District order for our review so we may submit to the Court.

Best,

Stephanie A. Criscione
Assistant Attorney General
General Litigation Division
Direct: (512) 936-1675
Cell: (737) 230-1248

**From:** Stephanie Criscione
**Sent:** Monday, September 9, 2024 2:45 PM
**To:** Enrique Chavez, Jr. at Chavez Law Firm <EnriqueChavezJr@chavezlawpc.com>
**Cc:** 'mikeosterberg@chavezlawpc.com' <mikeosterberg@chavezlawpc.com>; Troy Sager <Troy.Sager@oag.texas.gov>

**Subject:** RE: Request for Dates for Corporate Representative Deposition pursuant to Rule 30(b)(6)-Castaneda v TTHSCEP

Mr. Chavez,

**Please copy Troy Sager on all communications to my office.**

TTUHSCEP cannot designate corporate representatives without Plaintiff specifying her list of topics she seeks to depose as required by Rule 30(b)(6) so that TTUHSCEP may properly identify who from the organization is most appropriate to testify.

In any event, I am not available for a deposition until at least mid-October. Please provide dates the week of October 14 and a list of topics with specified particularity so I may confer with my client.

Finally, please let me know if you have heard from the court regarding our request for a hearing on the scope of discovery or the confidentiality order as noted in the 26f report. I am going into deposition preparation at 3 but can speak tomorrow at 9AM CST.

Best,

Stephanie A. Criscione
Assistant Attorney General
General Litigation Division
Direct: (512) 936-1675
Cell: (737) 230-1248

---

**From:** Enrique Chavez, Jr. at Chavez Law Firm <EnriqueChavezJr@chavezlawpc.com>
**Sent:** Monday, September 9, 2024 2:31 PM
**To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
**Cc:** 'mikeosterberg@chavezlawpc.com' <mikeosterberg@chavezlawpc.com>
**Subject:** Request for Dates for Corporate Representative Deposition pursuant to Rule 30(b)(6)-Castaneda v TTHSCEP

Please, provide us with dates for the taking of Defendant's Corporate Representative Deposition under Rule 30 (B)(6). If you do not provide us with dates, we will set the deposition date and such may be at a time that is inconvenient to you or your client.

This is an attempt to confer pursuant to Rule 30(B)(6), and under this Rule, Defendant has an obligation to confer. I remain,

Respectfully yours,

Enrique Chavez, Jr.
Chavez Law Firm
2101 N. Stanton, El Paso, Texas 79902
915 351 7772 Telephone

www.ChavezLawFirm.LAW

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendants.* | § | |

## CONFIDENTIALITY AND PROTECTIVE ORDER

Before the court is the joint motion of the parties for the entry of a confidentiality and protective order ("Protective Order"). Based on the parties' submissions and the record in this matter, the court finds that disclosure and discovery activity in this action are likely to involve production of confidential, sensitive, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, a protective order for such information is justified in this matter:

- to expedite the flow of information;

- to facilitate the prompt resolution of disputes over confidentiality of discovery materials;

- to adequately protect information the parties are entitled to keep confidential;

- to ensure that the parties are permitted reasonably necessary uses of such material in preparation for and in the conduct of trial;

- to address the handling of confidential materials at the end of the litigation; and

- to serve the ends of justice.

This Protective Order does not confer blanket protections on all disclosures of responses to discovery, and the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to be treated as confidential.

After careful consideration, it is **ORDERED** that the motion is **GRANTED**, and the court **ORDERS** the following:

## 1.    Confidential Information

"Classified Information" means any information of any type, kind, or character that is designated as "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during discovery, or otherwise.

## 2.    Qualified Persons

"Qualified Persons" means:

a.    For Counsel or Attorneys' Eyes-Only information:

    i.    retained counsel for the parties in this litigation and their respective staff;

    ii.    actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such person, have signed a document agreeing to be bound by the terms of this Protective Order and have been designated in writing by notice to all counsel;

    iii.    this court and its staff and any other tribunal, special master, or dispute resolution officer duly appointed or assigned in connection with this litigation; and

    iv.    litigation vendors, court reporters, video camera operators, translators, and other litigation support personnel.

b.    For Confidential information:

     i.    the persons identified in subparagraph 2(a);

     ii.    the party, if a natural person;

     iii.    if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case who, prior to any disclosure of Confidential information to such person, have signed a document agreeing to be bound by the terms of this Protective Order;

     iv.    actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, by their receipt of Confidential information are bound by the terms of this Protective Order;

     v.    jury and trial consultants and their staff and mock jurors who have signed a document agreeing to be bound by the terms of this Protective Order;

     vi.    any person who was an author, addressee, or intended or authorized recipient of the Confidential information and who agrees to keep the information confidential, provided that such persons may see and use the Confidential information but not retain a copy.

c.    Such other person as this court may designate after notice and an opportunity to be heard.

For purposes of subsections (a)(ii), the attorney who retains or designates such persons shall maintain the signed certifications of those persons.

**3.    Designation Criteria**

Classified Information. A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential. Information that is generally available to the public, such as public filings, catalogues, advertising materials, and the like, shall not be designated as Classified Information.

Information and documents that may be designated as Classified Information include, but are not limited to, trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

Correspondence and other communications between the parties or with nonparties may be designated as Classified Information if the communication was made with the understanding or reasonable expectation that the information would not become generally available to the public.

*For Counsel or Attorneys Only.* The designation "For Counsel Only" or "Attorneys' Eyes Only" shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, nonpublic financial information, pricing information, customer identification data, and certain study methodologies.

*Ultrasensitive Information.* At this point, the parties do not anticipate the need for higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that a court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

*Nonclassified Information.* Classified Information shall not include information that either:

  i.  is in the public domain at the time of disclosure, as evidenced by a written document;

  ii.   becomes part of the public domain through no fault of the recipient, as evidenced by a written document;

  iii.  the receiving party can show by written document was in its rightful and lawful possession at the time of disclosure; or

  iv.  lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

**4.  Use of Confidential Information**

All Classified Information provided by any party or nonparty in the course of this litigation shall be used solely for the purpose of preparation, trial, and appeal of this litigation and for no other purpose and shall not be disclosed except in accordance with the terms of this Order.

**5.  Marking of Documents**

Documents provided in this litigation may be designated by the producing person or by any party as Confidential information by marking each page of the documents so designated with a stamp indicating that the information is "Confidential." The designation should be made in a fashion or form that is conspicuous yet allows the Confidential information to remain legible. In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Originals shall be preserved for inspection.

**6.  Disclosure at Depositions**

Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this litigation, or (b) the deposition of a nonparty may be designated by any party as Confidential information by indicating on the record at the deposition that the testimony is "Confidential."

*Cecilia Castaneda v. Texas Tech University Health Science Center- El Paso*  Page 5 of 11
Confidentiality Order

70

Any party also may designate information disclosed at a deposition as Confidential information by notifying all parties in writing not later than 30 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Confidential information. All deposition transcripts shall be treated as Confidential information for a period of 30 days after initial receipt of the transcript.

To the extent possible, the court reporter shall segregate into separate transcripts information designated as Confidential information with blank, consecutively numbered pages being provided in a nondesignated main transcript. The separate transcript containing Confidential information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Confidential information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Confidential information is being used or discussed.

## 7. Disclosure to Qualified Persons

*To Whom.* Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with applicable law or the valid order of a court of competent jurisdiction. But if a disclosure is compelled by law or court order, the receiving party will notify the producing party as promptly as practicable (if at all possible, before making such disclosure). The receiving party shall seek a protective order or confidential treatment of such information or cooperate with the producing party to protect the information. Information designated as For Counsel Only shall be restricted in circulation to Qualified Persons described in subparagraph 2(a).

*Retention of Copies During This Litigation.* Copies of For Counsel Only information shall be maintained only in the offices of outside counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Any documents produced in this litigation, regardless of classification, that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of any such documents shall be made. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this litigation.

Each party's outside counsel shall maintain a log of all copies of For Counsel Only documents that are delivered to Qualified Persons.

### 8.  Unintentional Disclosures

Documents unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

If a receiving party learns of any unauthorized disclosure of Confidential information or For Counsel Only information, the party shall immediately upon learning of such disclosure inform the producing party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

### 9.  Documents Produced for Inspection Prior to Designation

In the event documents are produced for inspection prior to designation, the documents shall be treated as For Counsel Only during inspection. At the time of copying for the receiving parties, Classified Information shall be marked prominently "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by the producing party.

10.    **Consent to Disclosure and Use in Examination**

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

11.    **Challenging the Designation of Confidential Information**

*Classified Information.* A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless the court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information.

*Qualified Persons.* In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the

dispute cannot be resolved, the objecting party shall have 21 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 21 days from service of the request to move the court for an order denying the disputed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting party shall demonstrate that disclosure to the disputed person would expose the objecting party to a substantial risk of harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless the court enters an order preserving the designation.

### 12.    Challenging Release of Confidential Information to Qualified Persons

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this litigation, the party shall do one of the following: (1) with the consent of the producing party, file only a redacted copy of the information; (2) where appropriate (e.g., in connection with discovery and evidentiary motions) provide the information solely for in camera review; or (3) file such information under seal with the court consistent with the sealing requirements of the court.

Nothing in this Order shall limit the parties' rights or ability to offer evidence at a hearing or trial. The manner of using any Classified Information at a hearing or trial and the status of Classified Information resulting from any such use will be determined by the court.

### 13.    Manner of Use in Proceedings

The clerk of this court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, and other papers filed under seal in this litigation that have been designated, in whole or in part, as Classified Information by any party to this litigation consistent with the sealing requirements of the court.

14.     **Filing Under Seal**

Not later than 120 days after conclusion of this litigation and any appeal related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2 (except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as this court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

15.     **Return of Documents**

Insofar as the provisions of this Protective Order, or any other protective orders entered in this litigation, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this litigation, except that (a) there shall be no restriction on documents that are used as exhibits in open court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the court with respect to dissolution or modification of this, or any other, protective order.

16.     **Ongoing Obligations**

This order shall not bar any attorney in the course of rendering advice to such attorney's client with respect to this litigation from conveying to any party client the attorney's evaluation in a general way of Classified Information produced or exchanged under the terms of this order; provided, however, that in rendering such advice and otherwise communicating with the client, the attorney shall not disclose the specific contents of any Classified Information produced by another party if such disclosure would be contrary to the terms of this Protective Order.

*Cecilia Castaneda v. Texas Tech University Health Science Center- El Paso*     Page 10 of 11
Confidentiality Order

**17.    Duty to Ensure Compliance**

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

**18.    Waiver**

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work-product protection is waived by disclosure connected with this litigation.

**19.    Modification and Exceptions**

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

It is SO ORDERED this _____ day of _____, 2024.

_____
HONORABLE JUDGE LEON SCHYDLOWER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| | § | |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendants*. | § | |

## CONFIDENTIALITY AND PROTECTIVE ORDER

Before the court is the joint motion of the parties for the entry of a confidentiality and protective order ("Protective Order"). Based on the parties' submissions and the record in this matter, the court finds that disclosure and discovery activity in this action are likely to involve production of confidential, sensitive, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, a protective order for such information is justified in this matter:

- to expedite the flow of information;

- to facilitate the prompt resolution of disputes over confidentiality of discovery materials;

- to adequately protect information the parties are entitled to keep confidential;

- to ensure that the parties are permitted reasonably necessary uses of such material in preparation for and in the conduct of trial;

- to address the handling of confidential materials at the end of the litigation; and

- to serve the ends of justice.

This Protective Order does not confer blanket protections on all disclosures of responses to discovery, and the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to be treated as confidential.

After careful consideration, it is **ORDERED** that the motion is **GRANTED**, and the court **ORDERS** the following:

### 1. Confidential Information

"Classified Information" means any information of any type, kind, or character that is designated as "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during discovery, or otherwise.

### 2. Qualified Persons

"Qualified Persons" means:

a.    For Counsel or Attorneys' Eyes-Only information:

    i.    retained counsel for the parties in this litigation and their respective staff;

    ii.    actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such person, have signed a document agreeing to be bound by the terms of this Protective Order and have been designated in writing by notice to all counsel;

    iii.    this court and its staff and any other tribunal, special master, or dispute resolution officer duly appointed or assigned in connection with this litigation; and

    iv.    litigation vendors, court reporters, video camera operators, translators, and other litigation support personnel.

b.      For Confidential information:

    i.      the persons identified in subparagraph 2(a);

    ii.     the party, if a natural person;

    iii.    if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case who, prior to any disclosure of Confidential information to such person, have signed a document agreeing to be bound by the terms of this Protective Order;

    iv.     actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, by their receipt of Confidential information are bound by the terms of this Protective Order;

    v.      jury and trial consultants and their staff and mock jurors who have signed a document agreeing to be bound by the terms of this Protective Order;

    vi.     any person who was an author, addressee, or intended or authorized recipient of the Confidential information and who agrees to keep the information confidential, provided that such persons may see and use the Confidential information but not retain a copy.

c.      Such other person as this court may designate after notice and an opportunity to be heard.

For purposes of subsections (a)(ii), the attorney who retains or designates such persons shall maintain the signed certifications of those persons.

**3.      Designation Criteria**

Classified Information. A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential. Information that is generally available to the public, such as public filings, catalogues, advertising materials, and the like, shall not be designated as Classified Information.

Information and documents that may be designated as Classified Information include, but are not limited to, trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

Correspondence and other communications between the parties or with nonparties may be designated as Classified Information if the communication was made with the understanding or reasonable expectation that the information would not become generally available to the public.

*For Counsel or Attorneys Only*. The designation "For Counsel Only" or "Attorneys' Eyes Only" shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, nonpublic financial information, pricing information, customer identification data, and certain study methodologies.

*Ultrasensitive Information*. At this point, the parties do not anticipate the need for higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that a court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

*Nonclassified Information*. Classified Information shall not include information that either:

    i.     is in the public domain at the time of disclosure, as evidenced by a written document;

ii.     becomes part of the public domain through no fault of the recipient, as evidenced by a written document;

iii.    the receiving party can show by written document was in its rightful and lawful possession at the time of disclosure; or

iv.     lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

**4.      Use of Confidential Information**

All Classified Information provided by any party or nonparty in the course of this litigation shall be used solely for the purpose of preparation, trial, and appeal of this litigation and for no other purpose and shall not be disclosed except in accordance with the terms of this Order.

**5.      Marking of Documents**

Documents provided in this litigation may be designated by the producing person or by any party as Confidential information by marking each page of the documents so designated with a stamp indicating that the information is "Confidential." The designation should be made in a fashion or form that is conspicuous yet allows the Confidential information to remain legible. In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Originals shall be preserved for inspection.

**6.      Disclosure at Depositions**

Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this litigation, or (b) the deposition of a nonparty may be designated by any party as Confidential information by indicating on the record at the deposition that the testimony is "Confidential."

Any party also may designate information disclosed at a deposition as Confidential information by notifying all parties in writing not later than 30 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Confidential information. All deposition transcripts shall be treated as Confidential information for a period of 30 days after initial receipt of the transcript.

To the extent possible, the court reporter shall segregate into separate transcripts information designated as Confidential information with blank, consecutively numbered pages being provided in a nondesignated main transcript. The separate transcript containing Confidential information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Confidential information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Confidential information is being used or discussed.

## 7.    Disclosure to Qualified Persons

*To Whom.* Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with applicable law or the valid order of a court of competent jurisdiction. But if a disclosure is compelled by law or court order, the receiving party will notify the producing party as promptly as practicable (if at all possible, before making such disclosure). The receiving party shall seek a protective order or confidential treatment of such information or cooperate with the producing party to protect the information. Information designated as For Counsel Only shall be restricted in circulation to Qualified Persons described in subparagraph 2(a).

*Retention of Copies During This Litigation*. Copies of For Counsel Only information shall be maintained only in the offices of outside counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Any documents produced in this litigation, regardless of classification, that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of any such documents shall be made. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this litigation.

Each party's outside counsel shall maintain a log of all copies of For Counsel Only documents that are delivered to Qualified Persons.

### 8.    Unintentional Disclosures

Documents unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

If a receiving party learns of any unauthorized disclosure of Confidential information or For Counsel Only information, the party shall immediately upon learning of such disclosure inform the producing party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

### 9.    Documents Produced for Inspection Prior to Designation

In the event documents are produced for inspection prior to designation, the documents shall be treated as For Counsel Only during inspection. At the time of copying for the receiving parties, Classified Information shall be marked prominently "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by the producing party.

10.    **Consent to Disclosure and Use in Examination**

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

11.    **Challenging the Designation of Confidential Information**

*Classified Information.* A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless the court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information.

*Qualified Persons.* In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the

dispute cannot be resolved, the objecting party shall have 21 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 21 days from service of the request to move the court for an order denying the disputed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting party shall demonstrate that disclosure to the disputed person would expose the objecting party to a substantial risk of harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless the court enters an order preserving the designation.

### 12.    Challenging Release of Confidential Information to Qualified Persons

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this litigation, the party shall do one of the following: (1) with the consent of the producing party, file only a redacted copy of the information; (2) where appropriate (e.g., in connection with discovery and evidentiary motions) provide the information solely for in camera review; or (3) file such information under seal with the court consistent with the sealing requirements of the court.

Nothing in this Order shall limit the parties' rights or ability to offer evidence at a hearing or trial. The manner of using any Classified Information at a hearing or trial and the status of Classified Information resulting from any such use will be determined by the court.

### 13.    Manner of Use in Proceedings

The clerk of this court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, and other papers filed under seal in this litigation that have been designated, in whole or in part, as Classified Information by any party to this litigation consistent with the sealing requirements of the court.

14. **Filing Under Seal**

Not later than 120 days after conclusion of this litigation and any appeal related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2 (except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as this court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

15. **Return of Documents**

Insofar as the provisions of this Protective Order, or any other protective orders entered in this litigation, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this litigation, except that (a) there shall be no restriction on documents that are used as exhibits in open court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the court with respect to dissolution or modification of this, or any other, protective order.

16. **Ongoing Obligations**

This order shall not bar any attorney in the course of rendering advice to such attorney's client with respect to this litigation from conveying to any party client the attorney's evaluation in a general way of Classified Information produced or exchanged under the terms of this order; provided, however, that in rendering such advice and otherwise communicating with the client, the attorney shall not disclose the specific contents of any Classified Information produced by another party if such disclosure would be contrary to the terms of this Protective Order.

### 17.    Duty to Ensure Compliance

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

### 18.    Waiver

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work-product protection is waived by disclosure connected with this litigation.

### 19.    Modification and Exceptions

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

It is SO ORDERED this _____ day of _____, 2024.

_____
HONORABLE JUDGE LEON SCHYDLOWER

```
MIME-Version:1.0
From:TXW_USDC_Notice@txwd.uscourts.gov
To:cmecf_notices@txwd.uscourts.gov
Bcc:
--Case Participants: Michael Robert Anderson (chavezlawfirm+manderson@chavezlawpc.com),
Enrique Chavez, Jr (enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com),
Stephanie A. Criscione (elena.eydelman-natividad@oag.texas.gov,
stephanie.criscione@oag.gov, stephanieacriscione@gmail.com), District Judge Leon
Schydlower (erika_portillo@txwd.uscourts.gov, leon_schydlower@txwd.uscourts.gov,
veronica_medina@txwd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:31096140@txwd.uscourts.gov
Subject:Activity in Case 3:24-cv-00190-LS Castaneda v. State of Texas - Texas Tech
University Health Sciences Center El Paso Order on Motion for Entry of Confidentiality and
Protective Order
```
Content–Type: text/html

## U.S. District Court [LIVE]

### Western District of Texas

**Notice of Electronic Filing**

The following transaction was entered on 10/10/2024 at 11:20 AM CDT and filed on 10/10/2024

| | |
|---|---|
| **Case Name:** | Castaneda v. State of Texas – Texas Tech University Health Sciences Center El Paso |
| **Case Number:** | 3:24–cv–00190–LS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Text Order GRANTING [10] Unopposed Motion for Entry of Confidentiality and Protective Order entered by District Judge Leon Schydlower. Michael Osterberg, counsel for Plaintiff, indicated non–opposition to the motion. (This is a text–only entry generated by the court. There is no document associated with this entry.) (LS)**

**3:24–cv–00190–LS Notice has been electronically mailed to:**

Enrique Chavez , Jr &nbsp &nbsp enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com

Michael Robert Anderson &nbsp &nbsp chavezlawfirm+manderson@chavezlawpc.com

Stephanie A. Criscione &nbsp &nbsp stephanie.criscione@oag.gov,
Elena.Eydelman–Natividad@oag.texas.gov, stephanieacriscione@gmail.com

**3:24–cv–00190–LS Notice has been delivered by other means to:**

Michael Matthew Osterberg
The Chavez Law Firm
2101 North Stanton St
El Paso,

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| | § | |
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| | § | |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendants*. | § | |

---

## AGREED CONFIDENTIALITY AND PROTECTIVE ORDER

---

Before the court is an unopposed motion for the entry of a confidentiality and protective order ("Protective Order"). Based on the parties' submissions and the record in this matter, the court finds that disclosure and discovery activity in this action are likely to involve production of confidential, sensitive, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, a protective order for such information is justified in this matter:

- to expedite the flow of information;

- to facilitate the prompt resolution of disputes over confidentiality of discovery materials;

- to adequately protect information the parties are entitled to keep confidential;

- to ensure that the parties are permitted reasonably necessary uses of such material in preparation for and in the conduct of trial;

- to address the handling of confidential materials at the end of the litigation; and

- to serve the ends of justice.

This Protective Order does not confer blanket protections on all disclosures of responses to discovery, and the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to be treated as confidential.

After careful consideration, it is **ORDERED** that the motion is **GRANTED**, and the court **ORDERS** the following:

### 1. Confidential Information

"Classified Information" means any information of any type, kind, or character that is designated as "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during discovery, or otherwise.

### 2. Qualified Persons

"Qualified Persons" means:

    a.    For Counsel or Attorneys' Eyes-Only information:

        i.    retained counsel for the parties in this litigation and their respective staff;

        ii.    actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such person, have signed a document agreeing to be bound by the terms of this Protective Order and have been designated in writing by notice to all counsel;

        iii.    this court and its staff and any other tribunal, special master, or dispute resolution officer duly appointed or assigned in connection with this litigation; and

        iv.    litigation vendors, court reporters, video camera operators, translators, and other litigation support personnel.

b.    For Confidential information:

     i.      the persons identified in subparagraph 2(a);

     ii.     the party, if a natural person;

     iii.    if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case who, prior to any disclosure of Confidential information to such person, have signed a document agreeing to be bound by the terms of this Protective Order;

     iv.    actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, by their receipt of Confidential information are bound by the terms of this Protective Order;

     v.     jury and trial consultants and their staff and mock jurors who have signed a document agreeing to be bound by the terms of this Protective Order;

     vi.    any person who was an author, addressee, or intended or authorized recipient of the Confidential information and who agrees to keep the information confidential, provided that such persons may see and use the Confidential information but not retain a copy.

c.    Such other person as this court may designate after notice and an opportunity to be heard.

For purposes of subsections (a)(ii), the attorney who retains or designates such persons shall maintain the signed certifications of those persons.

**3.    Designation Criteria**

Classified Information. A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential. Information that is generally available to the public, such as public filings, catalogues, advertising materials, and the like, shall not be designated as Classified Information.

Information and documents that may be designated as Classified Information include, but are not limited to, trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

Correspondence and other communications between the parties or with nonparties may be designated as Classified Information if the communication was made with the understanding or reasonable expectation that the information would not become generally available to the public.

*For Counsel or Attorneys Only.* The designation "For Counsel Only" or "Attorneys' Eyes Only" shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, nonpublic financial information, pricing information, customer identification data, and certain study methodologies.

*Ultrasensitive Information.* At this point, the parties do not anticipate the need for higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that a court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

*Nonclassified Information.* Classified Information shall not include information that either:

     i.     is in the public domain at the time of disclosure, as evidenced by a written document;

ii.     becomes part of the public domain through no fault of the recipient, as evidenced by a written document;

iii.    the receiving party can show by written document was in its rightful and lawful possession at the time of disclosure; or

iv.     lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

**4.     Use of Confidential Information**

All Classified Information provided by any party or nonparty in the course of this litigation shall be used solely for the purpose of preparation, trial, and appeal of this litigation and for no other purpose and shall not be disclosed except in accordance with the terms of this Order.

**5.     Marking of Documents**

Documents provided in this litigation may be designated by the producing person or by any party as Confidential information by marking each page of the documents so designated with a stamp indicating that the information is "Confidential." The designation should be made in a fashion or form that is conspicuous yet allows the Confidential information to remain legible. In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Originals shall be preserved for inspection.

**6.     Disclosure at Depositions**

Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this litigation, or (b) the deposition of a nonparty may be designated by any party as Confidential information by indicating on the record at the deposition that the testimony is "Confidential."

Any party also may designate information disclosed at a deposition as Confidential information by notifying all parties in writing not later than 30 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Confidential information. All deposition transcripts shall be treated as Confidential information for a period of 30 days after initial receipt of the transcript.

To the extent possible, the court reporter shall segregate into separate transcripts information designated as Confidential information with blank, consecutively numbered pages being provided in a nondesignated main transcript. The separate transcript containing Confidential information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Confidential information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Confidential information is being used or discussed.

### 7.   Disclosure to Qualified Persons

*To Whom.* Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with applicable law or the valid order of a court of competent jurisdiction. But if a disclosure is compelled by law or court order, the receiving party will notify the producing party as promptly as practicable (if at all possible, before making such disclosure). The receiving party shall seek a protective order or confidential treatment of such information or cooperate with the producing party to protect the information. Information designated as For Counsel Only shall be restricted in circulation to Qualified Persons described in subparagraph 2(a).

*Retention of Copies During This Litigation*. Copies of For Counsel Only information shall be maintained only in the offices of outside counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Any documents produced in this litigation, regardless of classification, that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of any such documents shall be made. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this litigation.

Each party's outside counsel shall maintain a log of all copies of For Counsel Only documents that are delivered to Qualified Persons.

8.      **Unintentional Disclosures**

Documents unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

If a receiving party learns of any unauthorized disclosure of Confidential information or For Counsel Only information, the party shall immediately upon learning of such disclosure inform the producing party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

9.      **Documents Produced for Inspection Prior to Designation**

In the event documents are produced for inspection prior to designation, the documents shall be treated as For Counsel Only during inspection. At the time of copying for the receiving parties, Classified Information shall be marked prominently "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by the producing party.

### 10.   Consent to Disclosure and Use in Examination

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

### 11.   Challenging the Designation of Confidential Information

*Classified Information.* A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless the court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information.

*Qualified Persons.* In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the

dispute cannot be resolved, the objecting party shall have 21 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 21 days from service of the request to move the court for an order denying the disputed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting party shall demonstrate that disclosure to the disputed person would expose the objecting party to a substantial risk of harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless the court enters an order preserving the designation.

### 12.     Challenging Release of Confidential Information to Qualified Persons

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this litigation, the party shall do one of the following: (1) with the consent of the producing party, file only a redacted copy of the information; (2) where appropriate (e.g., in connection with discovery and evidentiary motions) provide the information solely for in camera review; or (3) file such information under seal with the court consistent with the sealing requirements of the court.

Nothing in this Order shall limit the parties' rights or ability to offer evidence at a hearing or trial. The manner of using any Classified Information at a hearing or trial and the status of Classified Information resulting from any such use will be determined by the court.

### 13.     Manner of Use in Proceedings

The clerk of this court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, and other papers filed under seal in this litigation that have been designated, in whole or in part, as Classified Information by any party to this litigation consistent with the sealing requirements of the court.

### 14.    Filing Under Seal

Not later than 120 days after conclusion of this litigation and any appeal related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2 (except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as this court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

### 15.    Return of Documents

Insofar as the provisions of this Protective Order, or any other protective orders entered in this litigation, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this litigation, except that (a) there shall be no restriction on documents that are used as exhibits in open court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the court with respect to dissolution or modification of this, or any other, protective order.

### 16.    Ongoing Obligations

This order shall not bar any attorney in the course of rendering advice to such attorney's client with respect to this litigation from conveying to any party client the attorney's evaluation in a general way of Classified Information produced or exchanged under the terms of this order; provided, however, that in rendering such advice and otherwise communicating with the client, the attorney shall not disclose the specific contents of any Classified Information produced by another party if such disclosure would be contrary to the terms of this Protective Order.

17.     **Duty to Ensure Compliance**

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

18.     **Waiver**

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work-product protection is waived by disclosure connected with this litigation.

19.     **Modification and Exceptions**

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

It is SO ORDERED this 10th day of October, 2024.

_____
HONORABLE JUDGE LEON SCHYDLOWER

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant*. | § | |

## JOINT ALTERNATE DISPUTE RESOLUTION REPORT

**TO THE HONORABLE JUDGE LEON SCHYDLOWER:**

Pursuant to Rule CV-88 of the Local Rules of the Western District of Texas and the parties'
agreed scheduling order, Dkt. 9, entered on August 19, 2024, the parties submit the following
report regarding the parties' proposed plan for Alternate Dispute Resolution ("ADR"):

1. The parties agree that the parties will engage in mediation as their form of ADR.

2. The parties agree that the parties will use Mitchell Moss as a mediator. Mediation
will take place via videoconferencing.

3. The parties agree that the parties will split the cost of the mediator evenly.

4. The parties agreed that mediation will take place on or before March 1, 2025. The
parties feel that enough discovery can be conducted by this date to have an effective mediation
and keep costs reasonable.

5. Plaintiff Cecilia Castaneda will attend mediation along with her counsel, Enrique
Chavez, Jr.

6. Defendant Texas Tech University Health Science Center at El Paso will attend via
its corporate counsel, William Webster and its litigation counsel, Assistant Attorney General

Stephanie A. Criscione. Texas Tech University Health Science Center at El Paso reserves the right

for another member of its Office of General Counsel to attend mediation as well as Mr. Webster

and Ms. Criscione.

      7.      At the conclusion of the mediation, Mitchell Moss will submit the report to the

court using the form promulgated by the Western District of Texas, attached to this report as

**Exhibit A.**

                          Respectfully Submitted,

                          **KEN PAXTON**
                          Attorney General of Texas

                          **BRENT WEBSTER**
                          First Assistant Attorney General

                          **JAMES LLOYD**
                          Deputy Attorney General for Civil Litigation

                          **KIMBERLY GDULA**
                          Chief, General Litigation Division

                          */s/ Stephanie A. Criscione*
                          **STEPHANIE A. CRISCIONE**
                          Assistant Attorney General
                          Texas Bar No. 24109768
                          Office of the Attorney General
                          P.O. Box 12548 Capitol Station
                          Austin, Texas 78711-25848
                          (512) 475-4104 Fax: (512) 320-0667
                          Stephanie.Criscione@oag.texas.gov
                          **LEAD COUNSEL FOR DEFENDANT**

                          -      **AND**      -

                          **CHAVEZ LAW FIRM**
                          2101N. Stanton Street
                          El Paso, Texas 79902
                          (915) 351-7772

By:
      */s/ Enrique Chavez, Jr. /s/ (signed with permission)*
_____

Enrique Chavez, Jr.
State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
Michael R. Anderson
State Bar No. 24087103
manderson@chavezlawpc.com
Michael M. Osterberg
mikeosterberg@chavezlawpc.com
State Bar No. 24108991

### CERTIFICATE OF SERVICE

I certify that that on October 29, 2024, this document was served via electronic mail, delivery receipt and read receipt requested, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

      */s/ Stephanie A. Criscione*
      **STEPHANIE A. CRISCIONE**
      Assistant Attorney General

# EXHIBIT A

UNITED STATES DISTRICT COURT

Western District of Texas

**Alternative Dispute Resolution Summary**

1.    Style of case: _____

2.    Civil action number: _____

3.    Nature of suit: _____

4.    Date of Mediation: _____

5.    When did the case settle? ☐ Before ADR    ☐ In ADR    ☐ Did Not Settle

6.    What was your total fee?   $_____   or   ☐ Pro Bono

7.    How was this Mediation initiated?   ☐ by court order   or   ☐ agreement of the parties

8.    Please provide the names, addresses, and telephone numbers of counsel:

Name: _____    Name: _____

Address: _____    Address: _____

_____    _____

Phone: _____    Phone: _____

Name: _____    Name: _____

Address: _____    Address: _____

_____    _____

Phone: _____    Phone: _____

9.    Additional comments: _____

_____

_____    _____
Signature of Neutral    Date

_____    _____
Address    Phone

_____

*Neutral must file completed form in duplicate with the U.S. District Clerk within 5 days after completion of ADR or, if settlement occurs prior to session, within 5 days of neutral's notice by the parties of settlement.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

Cecilia Castaneda,
     Plaintiff,

v.

                                  Cause No. 3:24-CV-00190-LS

State of Texas - Texas Tech Univ. Health Science Center - El Paso,
     Defendant.

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT

Plaintiff, Cecilia Castaneda ("Employee Castaneda" or "Requesting Party") now files this Motion to Compel Defendant, State of Texas - Texas Tech University Health Science Center - El Paso ("Employer Texas") or "Withholding Party") to respond Adequately to Discovery and shows as follows:

### I. RELEVANT FACTUAL & PROCEDURAL HISTORY

On June 3, 2024, Plaintiff filed its complaint, charging that Defendant discriminated against Plaintiff and retaliated against her by terminating her employment and her sister-in-law's employment after the Plaintiff complained of another employee groping her at work. *See generally* ECF No. 1. Defendant's responses to Plaintiff's interrogatories claim that Defendant terminated Plaintiff "due to her involvement in billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members," Ex. D, Defendant's Answer to Interrogatory 5, adding that the written termination letter stated "[t]his action is being taken because you have not complied with TTUHSC EP polices [sic] required of your position." In so doing, Defendant put its purported reasons for Plaintiff's termination at issue.

Accordingly, on August 6, 2024, Plaintiff served requests for production and interrogatories, requesting, *inter alia*, the names and contact information for all other employees over the past four years who violated the policy that Defendant alleges Plaintiff violated, Ex. A at

Interrogatory 10, and those employees' full personnel files showing any discipline those employees received. *Id.* at Request for Production 10A, 10B.  On September 12, 2024, Plaintiff served a Notice of 30(b)(6) Corporate Representative Deposition. Ex. B.[1] That notice included a *subpoena duces tecum*, requesting, *inter alia*, "[a]ll documents showing termination, write ups, or discipline, in part, because the employee used an employee discount for a medical procedure for that employee or a family member, from 2013 to the present, and <u>all documents showing mention of such discounts for a medical procedure</u> in employee evaluations, personnel action notices, memoranda, emails, instant messages, and <u>in Defendant's databases</u>[,]" which would include the medical records showing which services were obtained, and billing records showing the discounted rate paid.[2] [3] *Id.* (Emphasis added). On September 5, 2024, Defendant served its objections and responses to Plaintiff's requests for production, Ex. C, and responses to Plaintiff's requests for interrogatories. Ex. D.

Defendant has yet to produce these requested comparator files, despite their relevance and despite significant efforts at conferral.

---

[1] Plaintiff served a substantively identical Notice of 30(b)(6) Corporate Representative Deposition with *subpoena duces tecum* on December 19, 2024. The original Notice set the deposition for October 21, 2024, and the second notice set the deposition for February 24, 2025.

[2] Hereinafter, these documents will be collectively referred to as the "comparator files."

[3] *See Daywalker v. Univ. of Tex. Med. Branch at Galveston*, Civil Action 3:20- cv-00099, at *2-3 (S.D. Tex. Sep. 9, 2021) which makes clear that as long as there is a HIPAA qualified protective order in place, one that restricts use of the documents to the litigation and their return after the case is over, then HIPAA is not a bar to discovery. The protective order in place here meets those requirements. ECF No. 11 ("Agreed Confidentiality and Protective Order").

## II. THE COMPARATOR FILES REQUESTED ARE RELEVANT AND DISCOVERABLE BECAUSE IF OTHER EMPLOYEES ARE NOT TERMINATED OR DISCIPLINED IN ANY WAY FOR TAKING EMPLOYEE DISCOUNTS ON COSMETIC PROCEDURES, DEFENDANT'S "LEGITIMATE, NON-DISCRIMINATORY REASON" FOR TERMINATING PLAINTIFF IS A PRETEXTUAL EXCUSE FOR THE REAL REASON, RETALIATION FOR ENGAGING IN PROTECTED CONDUCT.

Under Federal Rule of Civil Procedure 26(b)(1),

[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.*

Records of other employees receiving discounted cosmetic procedures and discipline, if any, imposed as a result are relevant to Plaintiff's claim. *See id.* If other employees took the discount for themselves or family members, and did not receive discipline from Defendant, "a reasonable factfinder could conclude that [Defendant's] articulated reason for the alleged retaliatory termination was pretextual." *Hammond v. Jacobs Field Services*, 499 Fed. Appx 377, 383 (5th Cir. 2020) (terminating an employee for violating previously unenforced policy constitutes evidence of pretext *and* illegal motivation). "Although it is true that [Plaintiff's] action violated [Defendant's] policy, there is evidence in the record indicating that this policy was seldom if ever enforced. Rather, the record shows that entering the plant by following another vehicle through the gate was routine and even encouraged… ." *See id.*

If Defendant claims this policy violation led to Plaintiff's termination, and other employees were not terminated for violating this same policy by obtaining discounts for family members, that is further evidence that Defendant is putting forth a false excuse, a pretext, to hide

its actual illegal motivation of retaliation for Plaintiff's engagement in protected activity. *See Hammond*, *supra*.

Plaintiff's request is "proportional to the needs of the case" and "importan[t] … in resolving the issues" as these documents speak to the central issue in this lawsuit: whether Defendant fired Plaintiff in retaliation, and excuse it by citing to a "seldom enforced" policy violation, evidence from which "a reasonable factfinder could conclude that [Defendant's] articulated reason for the alleged retaliatory termination was pretextual." *See Hammond*, *supra.*, Fed. R. Civ. P. 26(b)(1). The Plaintiff has no access to these records relative to Defendant's level of access, and Defendant has not claimed that production would be unduly burdensome or expensive. Fed R. Civ. P. 26(b)(1); s*ee also, e.g., McLeod, Alexander, Powel Apffel, v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990) (holding that simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive," is inadequate to "voice a successful objection").

### III. DISCOVERY RESPONSES "SUBJECT TO" AN OBJECTION ARE DISFAVORED AND LEAVE THE PLAINTIFF UNCERTAIN ABOUT WHAT INFORMATION HAS ACTUALLY BEEN WITHHELD AND WHY.

Plaintiff initially requested these records on August 6, 2024 (Ex. A) and September 12, 2024 (Ex. B).[4] Each of these responses were due 30 days after service. Defendant's response to Plaintiff's specific requests at Interrogatory 10, and Production 10A and 10B purport to respond but come "subject to" multiple objections. Ex. E at pages 8-10. For instance, at Defendant's

---

[4] Notably, Defendant never served objections to the *subpoena duces tecum* attached to Plaintiff's Notice of 30(b)(6) Corporate Representative Deposition, rendering any objections to this request waived. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.") (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)).

Response to Interrogatory 10, Defendant claims that the only other employee who took these discounts was Plaintiff's sister-in-law. Ex. E at 8. However, this response is preceded by an objection stating

> TTUHSCEP objects to this interrogatory to the extent it is irrelevant and not proportional to the needs of the case in that other employees committed violations of the policies that Plaintiff violated that warranted termination that are so dissimilar to Plaintiff's termination to be incomparable and therefore not probative.

*Id.* Defendant's responses to Plaintiff's Request for Production 10A and 10B suffer from the same lack of clarity, following their objection with a vague directive to "see documents produced in this case." *Id.* at 9-10.

Defendant's responses "subject to" objections leave the Plaintiff uncertain as to whether the documents requested have been produced, or whether they are shielded behind Defendant's objection. *See Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC,* No. 3:17-CV-2719-B, 2018 WL 3655574, at *18 (N.D. Tex. July 16, 2018) (**"The failures to follow the Federal Rules' requirements for specificity in objecting and responding and answering, and answering or responding "subject to and without waiving objections," are practices that attorneys must stop, as the undersigned and many other judges in this circuit and elsewhere have now made clear for several years."**) (Citing 34 different cases for this proposition) (emphasis added).

The El Paso Division of the Western District of Texas is not immune to this sort of discovery practice; courts in this district have similarly made clear that "reflexively" objecting in this manner is "manifestly confusing at best and misleading at worst." *See Blair v. Pride Indus., Inc.*, No. EP-14-CV-00183-DCG, 2015 WL 10818665, at *1 (W.D. Tex. July 17, 2015) (Castaneda, J.) ("Responding to requests for production "subject to" and or "without waiving objections" is

manifestly confusing at best and misleading at worst. *Id*. The responding party has the burden of responding to the requests to the extent the requests are not objectionable and must explain the extent to which such request is overbroad, irrelevant, unduly burdensome, or otherwise objectionable so that both the requesting party and the court can determine the scope of what has been produced and what may remain to be produced if such objections are overruled. *Id*., at 24. Rule 26(g) was enacted "to bring an end to the ... abusive practice of objecting to discovery requests reflexively–but not reflectively–and without factual basis." *Heller*, 303 F.R.D. at 487 (quoting *Mancia v. Mayflower Textile Svs. Co.*, 253 F.R.D. 354, 358 (D.Md.2008))").

Simply put, given Defendant's responses to Plaintiff's discovery requests, and Defendant's noncommittal responses in conferral about these documents, *see infra.*, Plaintiff has no idea if these documents are hiding behind one of Defendant's general, nonspecific objections. *See Blair*, *supra. See also Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 60 (E.D. La. 2024)[5] (citing Fed. R. Civ. P. 34). at 69 ("Further, it is improper for parties responding to discovery to provide responses with the caveat that they are given "subject to and without waiving" objections. Federal courts have repeatedly recognized that such language is improper and inconsistent with the Federal Rules.").

**IV. IN CONFERRAL ON THIS DISCOVERY DISPUTE, DEFENDANT WOULD NOT CONFIRM OR DENY THAT THE REQUESTED RECORDS WERE RELEVANT, DISCOVERABLE, OR FULLY PRODUCED, AND PURPORTED TO APPARENTLY HAVE PRODUCED SOME RESPONSIVE RECORDS AMONG APPROXIMATELY 2100 PAGES OF DEGRADED, UNSEARCHABLE, AND UNLABELED PDFS IN NO APPARENT ORDER.**

On or about December 20, 2024, Plaintiff and Defendant conferred via phone call about discovery production. Plaintiff and Defendant touched based on certain matters and agreed to reconnect after the holidays to confirm when production would occur. On or about the week of

---

[5] *Review denied sub nom. Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*, No. CV 22-4561, 2024 WL 5086077 (E.D. La. Dec. 12, 2024).

January 20, 2025, Plaintiff and Defendant appeared to resolve their discovery matters; Plaintiff agreed to turn over phone records requested by Defendant, and Defendant seemingly agreed to turn over the comparator files. The parties agreed to produce to each other in early to mid February, **to give each counsel time to review the productions before Plaintiff's deposition on February 21, and Defendant's 30(b)(6) Corporate Representative deposition to occur beginning on February 24**. *See* n. 1, *supra*.

On or about February 13, 2025, one week in advance of the Plaintiff's deposition, Plaintiff turned over the phone records to Defendant. However, Defendant failed to provide the comparator files at any time before the scheduled 30(b)(6) deposition, despite significant conferral on the matter where Plaintiff explained their relevance, and the need to receive them before the 30(b)(6) deposition to review them in advance for use at the deposition. *See* Ex. E at 21 (Jan. 23 email from Plaintiff explaining non-applicability of HIPAA), 20 (Jan. 27 email from Plaintiff seeking update on production). In response to Plaintiff's Jan. 27 email, Defendant made no mentionthat the documents would not be produced. *Id.* at 19. Plaintiff followed up again on Feb. 7, *id.* at 17, and Defendant sought further clarification about that which Plaintiff sought. *Id.* at 16-17. In response, Plaintiff explained precisely what Plaintiff requested, citing to Plaintiff's discovery requests and *subpoena duces tecum. Id.* at 15. Plaintiff further clarified the portion of the *subpoena duces tecum* covered the requests, *id.* at 13-14, and **also provided a targeted list of employees and family members who have received the discounted procedures**. *Id.* at 12-13. Plaintiff again explained the relevance of the documents, *id.* at 10, and on Feb. 21 urged their production in advance of the 30(b)(6) deposition scheduled for Feb. 24. *Id.* at 9.

The documents were not produced in advance of the 30(b)(6) deposition, leaving Plaintiff no choice but to postpone the depositions until production occurred, wasting valuable time in the discovery period.

In September and November 2024, and February 2025, Defendant produced approximately 200 pages, 1400 pages, 500 pages, respectively, of unlabeled, degraded and unsearchable PDF documents in no apparent order. Upon review, the productions do not contain the comparator files. Plaintiff again sought the comparator files via email on February 25, *id.* at 6-7, and Defendant represented that the production was in the process of being supplemented. *Id.* at 5-6. In neither of those emails did Defendant assert that the documents were not discoverable. Finally, on March 4, Plaintiff claimed that confidential surgical sheets were included, but curiously claimed that "[]you and your client has admitted that there are no comparators in this case." *Id.* at 1-2.[6]

Plaintiff is entirely uncertain as to whether or not the comparator files have been produced given Defendant's seemingly shifting position on their discoverability, and cannot easily determine if they have been produced, given the degraded, unsearchable nature of the over 2000 pages of PDFs received in this case. *Covad Commc'ns Co. v. Revonet, Inc.*, 260 F.R.D. 5, 9 (D.D.C. 2009) ("The cases interpreting Federal Rule of Civil Procedure 34 conclude that it is therefore improper to take an electronically searchable document and either destroy or degrade the document's ability to be searched." [(collecting cases)]"); *See Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 338 (N.D.N.Y. 2008) (citing *Sparton Corp. v. United States*, 77 Fed.Cl. 10, 16 (Fed.Cl.2007) (asserting that the producing party may not provide documents in a "mass of

---

[6] Plaintiff listed the names of specific individuals who received the discount in a Feb. 18 email, *see* Ex. E at 12, and, although the transcript is not yet prepared, the undersigned recalls Plaintiff listing several employees who received the discounts in her testimony. Plaintiff intends to supplement this motion, once the transcript is received by Plaintiff from the court reporter.

undifferentiated, unlabeled documents" but instead must provide them in some "organized, indexed fashion")); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) ("[Defendant] asserts that directing plaintiffs to find the discovery among volumes of irrelevant information complies with Federal Rules of Civil Procedure. To the contrary, **producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34** [(collecting cases)]") (Emphasis added).[7]

**Plaintiff has reviewed the discovery provided by Defendant and can find no comparator files, despite their relevance to the issues in this cause and discoverability under Federal Rule of Civil Procedure 26**. *Hammond v. Jacobs Field Services*, 499 Fed. Appx 377, 383 (5th Cir. 2020) (terminating an employee for violating previously unenforced policy constitutes evidence of pretext and illegal motivation).

## V. CONCLUSION

The court set a May 15, 2025 discovery deadline by its order dated August 19, 2024. ECF No. 9 at ¶ 6. Defendants' responses to Plaintiff's Requests for Production and Interrogatories, Ex. A, were due September 5. The cumulative effect of Defendant's obstructive, shifting responses to Plaintiff's requests for plainly relevant documents, see *Hammond*, *supra.*, has been to waste 188 days, or over 6 months, of the originally allotted discovery period. Plaintiff is <u>still</u> unable to set the 30(b)(6) deposition and deposition of Dr. Richard Lange, the individual who terminated Plaintiff, because Plaintiff needs the comparator files to effectively depose the witnesses.

---

[7] Plaintiff reached out directly to Defendant to learn whether or not the comparator files were actually produced, given the degraded, unsearchable, unlabeled nature of Defendant's production, in an effort to avoid a motion to compel about the issues with their production "of documents in no apparent order" in violation of Rule 34. *See Wagner, supra.*; Ex. E at 1, 2 (Mar. 4 emails). As of the time of filing, eight days later, Plaintiff has received no response.

This unnecessary and avoidable delay caused by Defendant's refusal to produce the comparator files has caused prejudice to the Plaintiff in timely prosecuting her wrongful termination claim against Defendant. *See OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 306 (N.D.N.Y. 2006) (stating, in granting a plaintiff's motion for expedited discovery, that "[i]t has been said that justice delayed is justice denied. And, as I have already noted, the interjection of delay into litigation for the mere sake of delay serves no useful purpose.").

By the time Defendant responds to this motion, the Plaintiff replies, and the court makes its considered ruling, it seems inevitable that the discovery period may need to expand, regrettably causing all involved to waste valuable time and resources litigating the discoverability of plainly relevant documents.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Honorable Court overrule Defendant's objections and compel it to respond adequately to discovery by producing the material Plaintiff seeks, that the court award Plaintiff attorney's fees, and such other and further relief to which she is justly entitled, in law and in equity because the requested comparator files could lead "a reasonable factfinder could conclude that [Defendant's] articulated reason for the alleged retaliatory termination was pretextual." *Hammond, supra.*

[Signature block follows on next page]

Page 10 of 10

**SIGNED** on this 12th day of March, 2025.

Respectfully submitted,

Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772

By: _____

Enrique Chavez, Jr., State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
Michael Anderson, State Bar No. 24087103
manderson@chavezlawpc.com
Michael M. Osterberg, State Bar No. 24108991
mikeosterberg@chavezlawpc.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Cecilia Castaneda,
     Plaintiff,

v.                                  Cause No. 3:24-CV-00190-LS

State of Texas - Texas Tech
University Health Science Center -
El Paso
     Defendant.

## **ORDER**

On this day, the Court considered "Plaintiff's Motion to Compel Discovery from Defendant."

It is **ORDERED, ADJUDGED, AND DECREED** that "Plaintiff's Motion to Compel Discovery from Defendant" is **GRANTED.** Defendant shall produce to Plaintiff the requested discovery within 20 days of the date of this order.

**IT IS SO ORDRED.**

Signed this _____ day of _____, 2025.


_____
LEON SCHYDLOWER
UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE AND CONFERENCE**

The foregoing instrument was e-filed and e-served on the following counsel of record through the Court's e-filing system on March 12, 2025:

Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin, Texas 78711-25848
Telephone: 512-475-4104
Facsimile: 512-320-0667
Stephanie A. Criscione
stephanie.criscione@oag.texas.gov

I certify that Plaintiff's counsel has complied with the Federal Rules in conferring with Defendant's counsel in an attempt to resolve these discovery disputes as detailed in Section IV, *supra.*

Michael M. Osterberg

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURTS FOR
THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Cecilia Castaneda

      Plaintiff,

v.                             Cause No. 3:24-cv-00190-LS

Texas Tech Health Sciences Center

      Defendant

### PLAINTIFF'S RULE 34(b) REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION IN NATIVE ELECTRONIC FORMATS, DOCUMENTS AND TANGIBLE THINGS TO DEFENDANT; INTERROGATORIES; AND NOTICE OF REQUIRED DISCLOSURES

TO:   Texas Tech Health Sciences Center.

You are requested to respond, answer and produce, accordingly, responsive answers and electronically stored information and documents to these discovery requests to the Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902. no later than thirty (30) days from the date of your receipt.

**SIGNED** on August 6, 2024.

                            Respectfully submitted,

                            **Chavez Law Firm**
                            2101 N. Stanton Street
                            El Paso, Texas 79902
                            915/351-7772

By:      _____
                 Enrique Chavez, Jr., State Bar No. 24001873
                 enriquechavezjr@chavezlawpc.com
                 Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

On August 6, 2024, I certify that the foregoing instrument was served on the following attorneys of record by electronic means:

Office of the Attorney General
P.O. Box 12548 Capitol Station,Austin, Texas   78711-25848
512-475-4104, fax 512-320-0667
Stephanie A. Criscione Stephanie.Criscione@oag.texas.gov

Enrique Chavez, Jr.

**Federal Rule of Civil Procedure 34(b) Request for Form of Production**

*1. Definitions*

1.1. The requested information items herein include electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container file.

1.2. Requested information items may come from all data sources such as locations or media used to house information items. Data sources include places, like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

*2. General Provisions*

2.1. **To reduce cost and preserve maximum utility of electronically stored information, production in native electronic formats shall be the required form of Electronically Stored Information ("ESI") production in response to discovery in this cause. Unless these instructions expressly permit or require conversion, native electronic file formats *shall not* be converted from their usual and customary format to other formats for production**. *See* Fed. R. Civ. P. 34(b) Tex. R. Civ. P. 196.4.

2.2. Defendant is obliged to consider for preservation and identification all potentially responsive information items and data sources over which Defendant (including its employees, agents, officers, and directors) has possession, physical custody, or a right or ability to exert direction or control. The belief that an employee, agent, or contractor may fail to act upon, or conform to, an exercise of direction or control is not a justification for Defendant to fail to undertake an exercise of direction or control directed to preservation, identification, and, as potentially responsive or relevant, production of information items and data sources.

2.3. Production of information in electronic formats shall not relieve Defendant of the obligation to act with reasonable diligence to preserve the native electronic data sources of the information items produced and relevant metadata. Defendant shall be vigilant not to wipe or dispose of source media.

2.4. Where, in the usual course of business, a paper document has been imaged as a TIFF or PDF file or an electronic file has been printed or converted to an imaged format, the electronic file and the hard copy or imaged counterpart *may not* be treated as identical or cumulative such that the paper/imaged format may be produced in lieu of its electronic source.

2.5. Defendant must produce Optical Character Recognition ("OCR") textual content when Defendant produces images in lieu of paper originals. However, Defendant is not

obligated to undertake OCR for information items in the PDF, TIFF, or JPG file formats when Defendant does not hold the textual contents of such files in an electronically searchable form at the time of the request for production; provided, however, that if Defendant adds or acquires such electronic searchability, Defendant shall supplement production to make such capability available to Plaintiff in a reasonable manner at Defendant's cost.

*3. Scope*

3.1.  Defendant must act with reasonable diligence to identify and produce responsive, non-privileged ESI under its care, in its custody, or subject to its control, notwithstanding its location, format, or medium.

3.2.   Defendant shall produce responsive, non-privileged files with the following extensions: ace, arc, arj, arx, bh, cal, cat, csv, dat, db, dbx, doc, docx, dot, dotm, dotx, dst, dstx, efx, email, eml, gnu, gra, gz, gzip, jar, lha, mbox, mbx, mdb, mde, mde, mpp, msg, nsf, ost, pdf, pnf, pot, potx, ppt, pptx, pst, pub, rar, rpt, rtf, shw, tar, taz, thmx, tif, tiff, txt, tz, wbk, wk4, wmf, wpd, wps, wri, xla, xlam, xlm, xls, xlsm, xlsx, xlt, xltx, z, zip.

3.3.   The file types listed in 3.2 must be identified and considered in searching for potentially responsive ESI; however, this is not an exclusive list of all potentially responsive file types.   Defendant is expected to apply its knowledge of information systems and applications used by employees when seeking to identify potentially responsive file types, as well as to make a reasonably diligent search for responsive file types not listed.

*4. Unique Production Identifier ("UPI")*

4.1.   Other than paper originals and images of paper documents (including redacted ESI), no ESI produced in discovery need be converted to a paginated format nor embossed with a Bates number.

4.2.   Each item of ESI (e.g., native file, document image, or e-mail message) shall be identified by naming the item to correspond to a UPI according to the following protocol:

4.2.1.   The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying Defendant as making production;

4.2.2.   The next nine (9) characters will be a unique, sequential numeric value assigned to the item by Defendant.   This value shall be padded with leading zeroes as needed to preserve its length;

4.2.3.   The final five (5) characters are reserved to a sequence beginning with a dash (-) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to     pleadings.

4.2.4.   By way of example, a Microsoft Word document produced by defendant Acme in its native format might be named: ACME000000123.doc.   Were the document printed out    for use in deposition, page six of the printed item would be embossed with the unique identifier ACME000000123-0006.

*5. Form of Production of E-Mail and Attachments*

5.1.    E-mail from Exchange/Outlook environments will be produced in the single message MAPI-compliant MSG format.    Messages in webmail, Lotus Notes, or GroupWise formats shall be converted to the MSG format with care taken, as feasible, to preserve as discrete fields the information listed in 7.4.

5.2.    Attachments to e-mails need not be produced separately from the transmitting message when the attachments are embedded within the message as MIME-compliant, Base-64 content (or other encoding scheme employed in the native source).

*6. Databases*

6.1.    Prior to production of any database, the Defendant shall meet and confer regarding the reasonableness and feasibility of any request for production of, or from, a database including the scope, form, and content of any such production.    However, Defendant shall make reasonable efforts to produce responsive information and data from databases using existing query and reporting capabilities of the database software. To facilitate such interrogation, Defendant shall act reasonably and cooperatively to comply with requests from Plaintiff for information about the reporting capabilities, structure, organization, query language, and schema of the database.

*7. Load Files*

7.1.    Consistent with the provisions of these instructions, Defendant shall produce responsive ESI to Plaintiff in its *native electronic format,* and when ESI is accompanied by a load file, Defendant shall produce load files in the Concordance load file format.

7.3.    Required Fields: The load file shall include the following delimited fields:

    7.3.1.    Identifier – UPI- The unique production identifier of the item;

    7.3.2.    Source Name – NAME - The original name of the item or file when collected from the source custodian or system;

    7.3.3.    MD5 Hash – MD5 - The MD5 hash value of the item as produced;

    7.3.4.    Custodian – CUSTODIAN -The unique identifier for the original custodian or source system from which the item was collected;

    7.3.5.    Source Path – SPATH -The fully qualified file path from root of the location from which the item was collected;

    7.3.6.    Production Path – NATIVELINK -The file path to the item from the root of the production media;

    7.3.7.    Modified Date – MODDATE -The last modified date of the item when collected from the source custodian or system;

    7.3.8.    Modified Time – MODTIME - The last modified time of the item when collected from the source custodian or system; and

    7.3.9.    UTC Offset – UTCOFF - The UTC/GMT offset of the item's modified date and time.

7.4.    The following additional fields shall accompany production of e-mail messages:

    7.4.1.    To – RECIPIENT – Addressee(s) of the message;

    7.4.2.    From – FROM – The e-mail address of the person sending the message;

7.4.3.  CC – CC – Person(s) copied on the message;

7.4.4.  BCC – BCC – Person(s) blind copied on the message;

7.4.5.  Date Sent – DATESENT – date the message was sent;

7.4.6.  Time Sent – TIMESENT – time the message was sent;

7.4.7.  Subject – SUBJECT – Subject line of the message;

7.4.8.  Date Received – DATERCVD – date the message was received;

7.4.9.  Time Received – TIMERCVD – time the message was received;

7.4.10.  Attachments – ATTACHMENTID – The beginning UPI(s) of attachments, delimited by comma;

7.4.11.  Mail Folder Path – MAILPATH – the path of the message from the root of the mail folder; and

7.4.12.  Message ID – MESSAGEID – The Microsoft Outlook or similar unique message identifier.

7.5.  The following additional fields shall accompany images of paper documents:

7.5.1.  Beginning Identifier – BEGNO – The beginning unique production identifier for the first page of the document;

7.5.2.  Ending Identifier – ENDNO – The ending unique production identifier for the first page of the document;

7.5.3.  Page Count – PGCOUNT – The total number of pages in the document;

7.5.4.  Location – LOCATION – The source box or other location identifier needed to trace the document to its source.

7.6.  E-Mail Messages and Attachments: Text shall be extracted from native e-mail message bodies and produced as document-level text files (.txt) named to correspond to the UPI of the message and organized into separate folder(s) from the messages.  The full text of attachments to messages need not be extracted; however, if it is extracted, it must be produced as document-level text files (.txt) named to correspond to the UPI of the attachments and organized into separate folder(s) from the messages.

7.7.  Document Images: Text extracted from paper document images using optical character recognition shall be produced as document-level text files (.txt) named to correspond to the UPI of the image and organized into separate folder(s) from the images.

*8. Deduplication*

8.1.  Defendant *shall not* globally (i.e. horizontally) deduplicate production or apply e-mail threading without express authorization from Plaintiff or the Court.

*9. Redaction*

9.1.  Files that must be redacted shall be produced as TIFF or PDF images accompanied by load files conforming to 7 (above) and containing extracted text acquired after redaction (i.e., excluding redacted content).

9.2.  Defendant may employ native redaction techniques so long as the method of redaction employed does not significantly impair the usability or searchability of the redacted item and the fact of alteration is disclosed.

9.3.   Redactions must be logged in the manner of any other responsive material withheld on claims of privilege or confidentiality.

*10.   Imaging and Unitization*

10.1.   Imaging: Paper documents produced electronically shall be:

 10.1.1   Imaged at 300 DPI as single-page Group IV TIFF or multipage PDF files;

 10.1.2.   Produced with OCR text;

 10.1.3.   Reflective, without visual degradation, of the full and complete information contained in the original document; and,

 10.1.4.   In compliance with reasonable requests for color image formats of the original at Defendant's cost, if an original document contains color used in a manner material to the import or understanding of the document.   Color documents shall be produced as PDF or JPG files.

10.2.   Unitization: If a scanned document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file.   For documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.   The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.   If more than one level of parent-child relationship exists, documents shall be kept in order, but all will be treated as children of the initial parent document.

*11.   Cooperation and Transparency*

11.1.   Defendant shall identify and facilitate access to the contents of encrypted, corrupted, or difficult-to-access files produced.   Defendant shall confer with Plaintiff to fashion reasonable, precise, and cost-effective search strategies and to agree upon and implement appropriate measures for quality assurance and quality control.   Defendant shall be forthcoming and transparent in disclosing its use of mechanized tools to cull responsive data.

*12.   Production Media and Transmittal*

12.1.   Production volumes below 12 gigabytes may be produced on three or fewer DVD-ROM optical disks for Windows-compatible personal computers.

12.2.   Production volumes greater than 12 gigabytes shall be produced as uncompressed data on Windows-compatible external hard disk drives employing the USB 2.0 or USB 3.0 interface.

12.3.   Production media shall be prominently and uniquely labeled to identify Defendant, the date of production, and the range of UPI on the medium.

12.4.   Defendant shall accompany the production with a written transmittal that sets out the:

 12.4.1.   Range of Unique Item Identifiers included within the production;

12.4.2.  The total number of items produced;

12.4.3.  The structure of the load file, including the delimiters employed and a list of delimited fields in the order in which they are employed in the load file;

12.4.4.  Confirmation that the number of items produced matches the load file(s); and

12.4.5.  A privilege log identifying any documents withheld from the data sources being produced, if any.

12.5.  Defendant shall exercise care to guard against truncation or data loss attendant to overlong file names and file paths.

**Rule 34(b) directive:**

This Request for Production seeks the production of electronically stored information, and documents in their respective, original formats, as kept by Producing Party in the usual course of business. Hence, there are two categories for each request. Category A requests request information that is originally kept as electronically stored information or ESI. Category B requests request information that is originally kept in a physical format, such as paper files, in folders, as printed photographs, etc. Requests for production of ESI herein DO <u>NOT</u> OVERLAP with requests for production or documents originally maintained in a physical format, as the information or materials sought come from different sources.

For example, if Producing Party maintains some information electronically, ESI, on a desktop, laptop or server hard drive, then Category A requests for production herein will apply to such information, and demand is made that such ESI be produced in its native electronic format as kept by producing party in the regular course of business. Texas Rule of Civil Procedure 196.4, governing the production of ESI, does NOT permit producing party to produce such ESI in a degraded form, e.g., converting word documents into PDF documents, or into paper copies.

As a further example, if documentation maintained by Producing Party is normally kept in a file cabinet, paper folders, in a handwritten journal or paper calendar, then category B requests for production apply to such documentation. Again, demand is made herein that such documentation ordinarily maintained in paper or physical format be produced in physical or paper format.

NEITHER, Category A nor Category B requests for production allow for the production of information in degraded form.

## <u>Part ONE: REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI), DOCUMENTS AND TANGIBLE THINGS.</u>

<u>REQUEST FOR PRODUCTION NO. 1 (ESI)</u>

Without wiping out or deleting source media and metadata, produce all of Defendant's  files and subfiles, documents and electronic information which are kept and maintained on Cecilia Castaneda ("Plaintiff") in native electronic file formats and as kept in the usual course of business, as follows:

a. all work absence and attendance log files on and for Plaintiff,

e. Plaintiffs employee evaluations and disciplinary files,

g. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and

denials, accommodations, reports, complaints, grievances, investigations, terminations, lay offs, separations, etc., about Plaintiff,

i. all documents and files created by those with successive authority over Plaintiff, including supervisors, about the <u>subject matters</u> complained of in Plaintiff's lawsuit,

j. all emails and attachments to and from Plaintiff's supervisors' about Plaintiff,

k. all emails and attachments to and from Plaintiff's managers' about Plaintiff,

l. all emails and attachments to and from Defendant's Human Resources personnel about the Plaintiff's complaints or reports of sexual harassment,

m. all text messages and instant messages to and from Plaintiff's supervisors' and managers' accounts about Plaintiff,

n. all text messages and instant messages to and from Defendant's Human Resources personnel accounts about Plaintiff,

o. Plaintiff's payroll history, payroll and compensation files,

p. Plaintiff's employee benefits files for the duration of all employment periods with Defendant,

q. Plaintiff's training files,

r. Plaintiff's applications and new hire orientation file,

s. all witness statements taken concerning Plaintiff during all investigations about Plaintiff,

t. all witness statements taken concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

u. excepting attorney-client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff's complaints and reports, if any, during Plaintiff's employment with Defendant.

w. Plaintiff's complete employee file with subfiles regardless of what Defendant calls them.


<u>REQUEST FOR PRODUCTION NO. 2 (PHYSICAL FILES)</u>

Produce all of Defendant's physical, i.e hard files and documents, as maintained in the ordinary course of business, on Plaintiff as follows:

a. all work absence and attendance log files on and for Plaintiff,

d. all notices to and from Plaintiff concerning all other leaves,

e. Plaintiffs employee evaluations and disciplinary files,

f. Plaintiff's worker's compensation and medical files,

g. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

i. all documents and files created by those with successive authority over Plaintiff, including supervisors, about the subject matters complained of in Plaintiff's lawsuit,

j. Plaintiff's payroll history, payroll and compensation files,

k. Plaintiff's employee benefits files for the duration of all employment periods with Defendant,

m. Plaintiff's applications and new hire orientation file,

n. all witness statements taken concerning Plaintiff during all investigations about Plaintiff,

o. all witness statements taken concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

p. excepting attorney client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff's complaints and reports, if any, during Plaintiff's employment with Defendant.

r. Plaintiff's complete employee file and all subparts regardless of what Defendant calls them.

REQUEST FOR PRODUCTION NO. 3

Produce all video files and recordings, audio files and recordings, notebooks, pamphlets and posters, provided to or shown to Plaintiff before hiring and during the course of Plaintiff's employment with Defendant relating to illegal discrimination made the basis of this lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

REQUEST FOR PRODUCTION NO. 4

Produce all of Defendant's employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks evidencing the policies and procedures which Defendant applies to its employees concerning illegal discrimination made the basis of Plaintiff's lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

REQUEST FOR PRODUCTION NO. 5

Produce all of Defendant's handbooks, manuals, memos, advisories and notices relating to all actions which are to be taken by Defendant in response to a report or complaint of illegal discrimination or retaliation by an employee, including written procedures and protocols for investigating such reports and complaints.

REQUEST FOR PRODUCTION NO. 6

If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, please produce all electronically stored information in native electronic file format showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters shown during such training.

REQUEST FOR PRODUCTION NO. 7

If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, produce all documentation showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters received during such training.

REQUEST FOR PRODUCTION NO. 8

Produce all electronically stored information, in native electronic file format as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

REQUEST FOR PRODUCTION NO. 9

Produce all documentation, as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

REQUEST FOR PRODUCTION NO. 10

Produce all documentation describing Plaintiff's job duties and essential job functions during all work periods with Defendant.

REQUEST FOR PRODUCTION NO. 11

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all investigators relating to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination.

REQUEST FOR PRODUCTION NO. 12

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all state government agencies including the Workforce Commission and the Civil Rights Division relating to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination.

REQUEST FOR PRODUCTION NO. 13

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all federal government agencies such as the EEOC, relating

to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination and/or retaliation.

## Part TWO: INTERROGATORIES AND
## SECOND REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED
## INFORMATION (ESI), DOCUMENTS AND TANGIBLE THINGS

INTERROGATORY NO. 1

Identify by name, last known address, telephone number and job title, Plaintiff's immediate supervisor or supervisors and all others with successive authority over the Plaintiff and the Plaintiff's work while employed with Defendant.

INTERROGATORY NO. 2

Identify by name, last known address, telephone number and job title all persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years.

INTERROGATORY NO. 3

Provide Plaintiff's job title and describe Plaintiff's job functions and duties.

INTERROGATORY NO. 4

Identify, describe and provide the amounts of all pay rates, wages, and employment benefits, e.g., medical insurance, dental insurance, workers' compensation insurance, other insurance, 401K plan benefits, pension benefits, etc., provided to or available to Plaintiff just before she was terminated and during the course of Plaintiff's employment with Defendant.

INTERROGATORY NO. 5

Provide every reason you gave to Plaintiff for her termination the day she was terminated.

INTERROGATORY NO. 6

In connection with the immediately preceding Interrogatory, identify by name, last known address, telephone number and job title the persons with knowledge of the reasons or circumstances surrounding Defendant's layoff or discharge of Plaintiff or, otherwise, Plaintiff's separation from employment with Defendant.

<u>INTERROGATORY NO. 7</u>

Identify by name, last known address, telephone number and job title the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant.

<u>REQUEST FOR PRODUCTION NO. 7A</u>

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h.that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

REQUEST FOR PRODUCTION NO 7B

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding Interrogatory who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

INTERROGATORY NO. 8

Identify by name, last known address, telephone number and job title the persons, other than those identified in the immediately preceding Interrogatory, who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant.

Page 17 of 28

135

## REQUEST FOR PRODUCTION NO. 8A

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows :

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

## REQUEST FOR PRODUCTION NO. 8B

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>INTERROGATORY NO. 9</u>

Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.

<u>INTERROGATORY NO. 10</u>

Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory.

<u>REQUEST FOR PRODUCTION NO. 10A</u>

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>REQUEST FOR PRODUCTION NO. 10B</u>

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>INTERROGATORY NO. 11</u>

Describe and identify any training, including by way of courses, classes or other mediums, whether formal or informal, which Defendant's agents and employees have been provided on the subject of illegal discrimination made the basis of Plaintiff's lawsuit.

<u>INTERROGATORY NO. 12</u>

Identify by name, address, telephone number and job title, Defendant's agents or employees who have received any of the training described in the immediately preceding Interrogatory regarding illegal discrimination made the basis of Plaintiff's lawsuit.

<u>INTERROGATORY NO. 13</u>

Identify by name, last known address, telephone number and job title all persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline and employee benefits over the last five years, including but not limited to those carrying out the procedures or decisions relating to Plaintiff.

<u>INTERROGATORY NO. 14</u>

Identify by name, last known address, telephone number, and date of birth the person(s) who took over Plaintiff's job duties.

<u>REQUEST FOR PRODUCTION NO. 14A</u>

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>REQUEST FOR PRODUCTION NO. 14B</u>

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>INTERROGATORY NO. 15</u>

If in response to discovery you withheld any information, documents or material due to "privacy" or "confidentiality" concerns, or under a claim of privilege, describe the information, documents or material withheld and identify the privilege, if any, asserted for each item or group of items withheld.

<u>INTERROGATORY NO. 16</u>

Describe in reasonable detail the investigation and or investigations Defendant undertook into Plaintiff's claims of discrimination and or retaliation by providing the names, last known addresses and phone numbers of the investigators, the witnesses whom were identified, the date each witness was communicated with, the information received from each witness or document and the outcome of the investigation and/or investigations.

## INTERROGATORY NO. 17

Identify by name, job title, last known address and telephone number Defendant's employees who, over the last three (3) years, have received any type of leave, including the reasons for each leave, e.g. disability leave, pregnancy leave, military leave, worker's compensation injury leave, bereavement leave, personal leave or any other leave.

## REQUEST FOR PRODUCTION NO. 17A

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>REQUEST FOR PRODUCTION NO. 17B</u>

  Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h.that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

## Part THREE: NOTICE OF REQUIRED DISCLOSURES

Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) Required Disclosures.
(1) *Initial Disclosure.*
(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.
[]
(C) *Time for Initial Disclosures—In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.
(D) *Time for Initial Disclosures—For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.
(E) *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges

the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) *Disclosure of Expert Testimony.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

Page 28 of 28

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISOBN

Cecilia Castaneda

      Plaintiff,

v.                                          3:24-cv-00190-LS

Texas Tech Health Sciences Center

      Defendant

### PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION OF DEFENDANT'S DESIGNATED REPRESENTATIVES WITH DUCES TECUM

TO:    Defendant, Texas Tech Health Sciences Center.

      Pursuant to the Federal Rules of Civil Procedure, Plaintiff(s) will take the sworn deposition testimony of **the Designated Representative(s)** of Texas Tech Health Sciences Center who is/are to be sworn by an officer authorized to administer oaths at Rasberry and Associates, 201 E. Main, Suite 1616, El Paso, Texas 79901, Telephone 915-533-1199, on October 21, 2024 at 10:00 a.m. and continuing day to day until its conclusion. Plaintiff will depose the Designated Representative(s) on the topics attached hereto, as Exhibit A. As part of the obligation to confer, if Defendant's designees are unavailable on the date above, you are requested to provide a range of dates on which to take these 30(b)(6) depositions. You are also commanded to produce within 30 days of your receipt of this notice, the documents listed in the attached duces tecum.   The deposition will be recorded stenographically and by video.

**SIGNED** on September 12, 2024.

                        Respectfully submitted,
                        **Chavez Law Firm**
                        2101 N. Stanton Street
                        El Paso, Texas 79902
                        915-351-7772

By:   _____
                        Enrique Chavez, Jr., State Bar No. 24001873
                        enriquechavezjr@chavezlawpc.com
                        Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

On September 12, 2024, I certify that the foregoing instrument was on the following attorneys of record by electronic means:

Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, TX  78711-25848
telephone 512-475-4104
fax 512-320-0667
Stephanie A. Criscione
Stephanie.Criscione@oag.texas.gov

_____
                       Enrique Chavez, Jr.

# EXHIBIT A

## TOPICS

1. The **data sources and types of media** Defendant used to house, store, maintain, hold and/or keep Defendant's employment and personnel information about Plaintiff, comparator employees and its decision makers concerning related employment decisions made and actions taken by Defendant's agents, and the specific locations where electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container is kept by Defendant. Data sources include places like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

2. The sexual harassment of Plaintiff, Plaintiff's reports of sexual harassment, Defendant's investigation of all reports of sexual harassment of Plaintiff, and Defendant's termination of Plaintiff.

3. The **substance of training**, if any, which Defendant provided **to Plaintiff**, specifically, before hiring and during the course of Plaintiff's employment with Defendant relating to (a) sex discrimination, including sexual harassment, and retaliation (b) preventing sex discrimination, including sexual harassment, and retaliation, and (c) the workplace polices, protocols, and procedures it applies to its employees generally, including the substance of Defendant's policies, protocols, and procedures as written in its employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks

4. The **substance of training**, if any, which Defendant provides its employees, specifically Richard Lange, Terry Balderrama, Rene Vallejo, Jennifer Erickson, Leticia Cano, David Bergen, and Andrew Conkovich, if any about (a) sex discrimination, including sexual harassment, and retaliation (b) preventing sex discrimination, including sexual harassment, and retaliation, and (c) the workplace polices, protocols, and procedures it applies to its employees generally, including the substance of Defendant's policies, protocols, and procedures as written in its employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks.

5. The **substance of training**, if any, which Defendant provides its employees, specifically Richard Lange, Terry Balderrama, Rene Vallejo, Jennifer Erickson, Leticia Cano, David Bergen, and Andrew Conkovich about what action, if any, is to be taken in response to a **report or complaint of sexual harassment, sex discrimination, and retaliation**

**in the workplace,** including the substance of written procedures and protocols for investigating such reports and complaints.

6. The factual basis, or lack thereof, for **Defendant's employment and personnel decisions** which led to or contributed, in any way, to the **separation** of Plaintiff from Defendant's employment, including the identify of those **who** made, ratified and contributed to such decisions, **how** such decisions were made, **how** such decisions were **documented**, if at all, **when** such decisions were made, the location and substance of any and all **documentation**, including electronically stored information ("ESI"), concerning such decisions, if any, as well as the **creation dates, modification dates and authorship** of such documentation and electronically stored information.

7. The factual basis, or lack thereof, for **Defendant's employment and personnel decisions** which led to or contributed, in any way, to any and all **discipline** of Plaintiff, if any, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information ("ESI"), concerning such decisions, if any, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

8. Defendant's communications concerning the matters of sexual harassment, sex discrimination, and retaliation complained of in Plaintiff's lawsuit, including the identity of those who made, ratified and/or contributed to such communications, how such communications were made, how such communications were documented, if at all, when such communications were made, the location and substance of any and all documentation memorializing such communications, including electronically stored information, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

9. The substance of and factual basis for Defendant's corporate knowledge of the **monetary value, including the market value, of Plaintiff's compensation** and all employee benefits, including medical insurance, dental insurance, workers' compensation coverage insurance, other insurance, 401K plan benefits, and pension benefits available to Plaintiff during all employment periods with Defendant or to be available to Plaintiff in the future including upon termination of any probationary period or any waiting period. If the value of Plaintiff's benefits may be stated as a percentage of salary or wages, Defendant should be prepared to testify as to this amount/percentage as well.

10. The factual basis, or lack thereof, for Defendant's **employee evaluations** of Plaintiff, the employment decisions it then took, or did not take, as a result of such evaluations, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information, concerning such decisions, if any, as well as the creation

dates, modification dates and authorship of such documentation and electronically stored information.

11. Excepting attorney-client communications and work product, the substance of and factual basis for **Defendant's corporate knowledge of all statements** about the discriminatory and retaliatory acts Plaintiff complains of, including all statements made by any and all persons before, during or after any formal or informal investigatory process.

12. The factual basis for **decisions by Human Resources and those with decisional or executive authority** for the promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, and separations, if any, of Plaintiff, and other employees in similar positions to Plaintiff, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information, concerning such decisions, if any, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

13. The substance of training, if any, which Defendant provides its employees, supervisors, and managers about what action, if any, is to be taken in response to a report or complaint of sexual harassment, sex discrimination or retaliation in the workplace, including the substance of written procedures and protocols for investigating such reports and complaints.

14. The actions, if any, Defendant took to protect the Plaintiff from further sexual harassment, sex discrimination, and retaliation once it was placed on notice of the potential for such discriminatory conduct.

15. Disciplinary actions, if any, it took against Defendant's employees for actions taken or decisions made regarding Plaintiff.

16. The contents and substance of any policies, protocols, and procedures, as well as the enforcement or non-enforcement of such policies, protocols, and procedures, regarding discounted medical procedures for employees and family members, from 2013 to the present.

17. The discounted medical procedures list, menu or document created, amended approved, adopted, and or ratified by Terry Balderrama.

18. The substance of all emails, instant messages, and written communications by and among Terry Balderrama and Defendant's employees in any way discussing discounted medical procedures over the last five years.

19. The identity of all employees — by name, address, phone number, date of birth, position, and whether or not the employee had complained of sexual harassment — whom Defendant terminated, wrote up, or otherwise disciplined, in part, because the employee used an employee discount for a medical procedure for that employee or a family member, from 2013 to the present, and what actions Defendant took to document, if at all, that a discount was or was not taken, including but not merely limited to mention of such in employee evaluations,

personnel action notices, memoranda, emails, instant messages, and in Defendant's databases.

## DUCES TECUM

1. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Richard Lange about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

2. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Terry Balderrama about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

3. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Rene Vallejo about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

4. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Jennifer Erickson about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

5. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Leticia Cano about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

6. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from David Bergeon about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

7. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Andrew Conkovich about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

8. All witness statements concerning Plaintiff's reports of discriminatory comments with respect to sex discrimination, sexual harassment, and retaliation, from 2020 to the present, her

154

disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

9. All employee evaluations of Plaintiff.

10. All disciplinary notices to Plaintiff.

11. All emails, instant messages, other electronically stored information and hand-written noes in any way memorializing the decision-making process and decision to separate Plaintiff from her employment with Defendant.

12. The contents and substance of any policies, protocols, and procedures, as well as the enforcement or non-enforcement of such policies, protocols, and procedures, regarding discounted medical procedures for employees and family members, from 2013 to the present.

13. All emails, instant messages, and written communications by and among Terry Balderrama and Defendant's employees in any way discussing discounted medical procedures over the last five years.

14. The discounted medical procedures list, menu or document created, amended approved, adopted, and or ratified by Terry Balderrama.

15. All documents showing termination, write ups, or discipline, in part, because the employee used an employee discount for a medical procedure for that employee or a family member, from 2013 to the present, and all documents showing mention of such discounts for a medical procedure in employee evaluations, personnel action notices, memoranda, emails, instant messages, and in Defendant's databases.

16. All documents and electronically stored information forming the basis for Defendant's corporate knowledge for topics 1-19.

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant.* | § | |

---

## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S REQUESTS FOR PRODUCTION

---

TO:  Plaintiff, Cecilia Castaneda, by and through her attorneys of record, Enrique Chavez, Jr., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902

Defendant Texas Tech University Health Science Center- El Paso ("TTUHSCEP") and

serves these responses to Requests for Production pursuant to Rule 34(b) of the Federal Rules of

Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

1

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

**CERTIFICATE OF SERVICE**

I certify that that on September 5, 2024, this document was served via electronic mail, delivery receipt and read receipt requested, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

## RESPONSES

**REQUEST FOR PRODUCTON 1:** Without wiping out or deleting source media and metadata, produce all of Defendant's files and subfiles, documents and electronic information which are kept and maintained on Cecilia Castaneda ("Plaintiff ") in native electronic file formats and as kept in the usual course of business, as follows:

a)   All work absence and attendance log files on and for Plaintiff,

b)   Plaintiff's employee evaluations and disciplinary files, all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, reports, complaints, grievances, investigations, terminations, layoffs, separations, etc., about Plaintiff,

c)   All documents and files created by those with successive authority over Plaintiff, including supervisors, about the subject matters complained of in Plaintiff 's lawsuit,

d)   All emails and attachments to and from Plaintiff 's supervisors' about Plaintiff,

e)   All emails and attachments to and from Plaintiff 's managers' about Plaintiff,

f)   All emails and attachments to and from Defendant's Human Resources personnel about the Plaintiff's complaints or reports of sexual harassment,

g)   All text messages and instant messages to and from Plaintiff 's supervisors' and managers' accounts about Plaintiff,

h)   All text messages and instant messages to and from Defendant's Human Resources personnel accounts about Plaintiff,

i)   Plaintiff 's payroll history, payroll and compensation files,

j)   Plaintiff 's employee benefits files for the duration of all employment periods with Defendant,

k)   Plaintiff 's training files,

l)   Plaintiff 's applications and new hire orientation file,

m)   All witness statements taken concerning Plaintiff during all investigations about Plaintiff,

n)   All witness statements taken concerning Plaintiff during all investigations about

o)   Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

p)   Excepting attorney-client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff 's complaints and reports, if any, during Plaintiff's employment with Defendant.

q)   Plaintiff 's complete employee file with subfiles regardless of what Defendant calls them.

**RESPONSE:  OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff has not set any sort of time limit on the documents it seeks. TTUHSCEP further objects to this request as overly broad and not properly limited in scope. Plaintiff seeks responsive documents related to seventeen subcategories of documents, all of differing topics.

3

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 2:** Produce all of Defendant's physical, i.e. hard files and documents, as maintained in the ordinary course of business, on Plaintiff as follows:

a)     All work absence and attendance log files on and for Plaintiff,

b)     All notices to and from Plaintiff concerning all other leaves,

c)     Plaintiffs employee evaluations and disciplinary files,

d)     Plaintiff 's worker's compensation and medical files,

e)     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

f)     All documents and files created by those with successive authority over Plaintiff, including supervisors, about the subject matters complained of in Plaintiff 's lawsuit,

g)     Plaintiff 's payroll history, payroll and compensation files,

h)     Plaintiff 's employee benefits files for the duration of all employment periods with Defendant,

i)     Plaintiff 's applications and new hire orientation file,

j)     All witness statements taken concerning Plaintiff during all investigations about Plaintiff,

k)     All witness statements taken concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

l)     Excepting attorney client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff 's complaints and reports, if any, during Plaintiff's employment with Defendant.

m)     Plaintiff 's complete employee file and all subparts regardless of what Defendant calls them.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff has not set any sort of time limit on the documents it seeks. TTUHSCEP further objects to this request as overly broad and not properly limited in scope. Plaintiff seeks responsive documents related to thirteen subcategories of documents, all of differing topics.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 3:** Produce all video files and recordings, audio files and recordings, notebooks, pamphlets and posters, provided to or shown to Plaintiff before hiring and during the course of Plaintiff's employment with Defendant relating to illegal discrimination made

4

the basis of this lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. TTUHSCEP further objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 4:** Produce all of Defendant's employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks evidencing the policies and procedures which Defendant applies to its employees concerning illegal discrimination made the basis of Plaintiff's lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 5:** Produce all of Defendant's handbooks, manuals, memos, advisories and notices relating to all actions which are to be taken by Defendant in response to a report or complaint of illegal discrimination or retaliation by an employee, including written procedures and protocols for investigating such reports and complaints.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 6:** If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, please produce all electronically stored information in native electronic file format showing

attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters shown during such training.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 7:** If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, produce all documentation showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters received during such training.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 8:** Produce all electronically stored information, in native electronic file format as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Whether Dr. Lange has been disciplined over the past five years is irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issues.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 9:** Produce all documentation, as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

6

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Whether Dr. Lange has been disciplined over the past five years is irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issues. TTUHSCEP further objects to this request as duplicative of Request for Production 9.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 10:**      Produce all documentation describing Plaintiff 's job duties and essential job functions during all work periods with Defendant.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Documentation reflecting job description over ten years old has little probative value to resolve the issues at hand in this lawsuit.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 11:**      Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all investigators relating to Plaintiff 's employment, taxes, benefits, and reports and complaints of discrimination.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination. TTUHSCEP further objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCEP for over a decade before her termination. Documentation reflecting Plaintiff's employment over ten years old has little probative value to resolve the issues at hand in this lawsuit.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 12:** Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all state government agencies including the Workforce

Commission and the Civil Rights Division relating to Plaintiff 's employment, taxes, benefits, and reports and complaints of discrimination.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff does not provide a time limit to this request. TTUHSCEP further objects to this request to the extent it requests  any  discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination. TTUHSCE further objects to the extent that this request seeks information related to any state claims. Plaintiff has not properly raised any claims under Texas state law, so TTUHSCEP objects to the extent that responsive documents go solely to any state law claims.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 13:**     Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all federal government agencies such as the EEOC, relating to Plaintiff 's employment, taxes, benefits, and reports and complaints of discrimination and/or retaliation.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff does not provide a time limit to this request. TTUHSCEP further objects to this request to the extent it requests  any  discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S INTERROGATORIES

---

TO:  Plaintiff, Cecilia Castaneda, by and through her attorneys of record, Enrique Chavez, Jr., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902

Defendant Texas Tech University Health Science Center- El Paso ("TTUHSCEP") and serves these responses to Interrogatories pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

1

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 2409867
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

### CERTIFICATE OF SERVICE

I certify that that on September 5, 2024, this document was served via electronic mail, delivery receipt and read receipt requested, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

2

## **INTERROGATORIES**

**INTERROGATORY 1:**     Identify by name, last known address, telephone number and job title, Plaintiff 's immediate supervisor or supervisors and all others with successive authority over the Plaintiff and the Plaintiff 's work while employed with Defendant.

**ANSWER:**     **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is overly broad, not properly limited in time, and therefore irrelevant and not proportional to the needs of the case. Successive authority over Plaintiff other than her immediate supervisor and those with authority to make ultimate employment decisions are irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issue of whether TTUHSCEP retaliated against Plaintiff to the extent that they were not involved in the employment decision. Furthermore, Plaintiff's interrogatory is not limited in time, and requests information for over ten years, as Plaintiff was employed by TTUHSCEP for ten years prior to her termination.

Subject to and without waiving the foregoing objection, Plaintiff's immediate supervisor at the time of her termination was Brenda Argueta, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848, (512) 936-1675.

**INTERROGATORY 2:**     Identify by name, last known address, telephone number and job title all persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years.

**ANSWER:**     **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant and no proportional to the needs of the case. Persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years is irrelevant and not proportional to the needs of the case as a five-year history is of low importance to resolving the issues whether TTUHSCEP retaliated against Plaintiff in connection to those that they were not involved in the employment decision.

Subject to and without waiving the foregoing objection, the person responsible for making TTUHSCEP's employment decisions regarding hiring, firing, leave, discipline, and employment benefits at the time of Plaintiff's termination was President Richard Lange, MD, with input from HR leadership and department leadership, subject to and in accordance with State of Texas and federal law.

**INTERROGATORY 3:**     Provide Plaintiff 's job title and describe Plaintiff's job functions and duties.

**ANSWER:**     Plaintiff's job title was Certified Medical Assistant. In addition, pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business

records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 4:**    Identify, describe and provide the amounts of all pay rates, wages, and employment benefits, e.g., medical insurance, dental insurance, workers' compensation insurance, other insurance, 401K plan benefits, pension benefits, etc., provided to or available to Plaintiff just before she was terminated and during the course of Plaintiff's employment with Defendant.

**ANSWER:**    Pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 5:**    Provide every reason you gave to Plaintiff for her termination the day she was terminated.

**ANSWER:**    Plaintiff was verbally told that her employment was being terminated due to her involvement in billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members. The written notification stated that "[t]his action is being taken because you have not complied with TTUHSC EP polices *(sic)* required of your position."

**INTERROGATORY 6:**    In connection with the immediately preceding Interrogatory, identify by name, last known address, telephone number and job title the persons with knowledge of the reasons or circumstances surrounding Defendant's layoff or discharge of Plaintiff or, otherwise, Plaintiff 's separation from employment with Defendant.

**ANSWER:**    Richard Lange, MD; President, TTUHSC EP; Dean, PLFSOM, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Andrew Conkovich; VP of Institutional Compliance, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Jennifer Erickson; VP of Human Resources, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
David Bergeon; Managing Director of Human Resources, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Jose Castro, MD; Assistant Professor, Division Chief of Plastic & Reconstructive Surgery, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Patty McCarrol; former VP of Clinical Administration:

4

**INTERROGATORY 7:**      Identify by name, last known address, telephone number and job title the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant.

**ANSWER:**      Richard Lange, MD; President, TTUHSC EP; Dean, PLFSOM, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848

**REQUEST FOR PRODUCTION 7A:** Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant, in their native electronic file formats and as kept in the usual course of business, as follows:

  a.      That person's work absence and attendance log files,
  b.      That person's employee evaluations and disciplinary files,
  c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,
  d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
  e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
  f.      All text messages and instant messages from that person about Plaintiff,
  g.      That person's training files,
  h.      That person's applications and new hire orientation file,
  i.      All witness statements taken by and from that person during all investigations about Plaintiff,
  j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** <u>**OBJECTION:**</u> TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 7B:**      Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding Interrogatory who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant as follows:

a.  That person's work absence and attendance log files,
b.  That person's employee evaluations and disciplinary files,
c.  All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
d.  All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
e.  All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
f.  All text messages and instant messages from that person about Plaintiff,
g.  That person's training files,
h.  That person's applications and new hire orientation file,
i.  All witness statements taken by and from that person during all investigations about Plaintiff,
j.  All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 8:**    Identify by name, last known address, telephone number and job title the persons, other than those identified in the immediately preceding Interrogatory, who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant.

**ANSWER:**   No other employee other than Dr. Lange authorized the decision to terminate Plaintiff.

**REQUEST FOR PRODUCTION 8A:**    Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a.  That person's work absence and attendance log files,
b.  That person's employee evaluations and disciplinary files,

     c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

     d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

     e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

     f.      All text messages and instant messages from that person about Plaintiff,

     g.      That person's training files,

     h.      That person's applications and new hire orientation file,

     i.      All witness statements taken by and from that person during all investigations about Plaintiff,

     j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 8B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory as follows:

     a.      That person's work absence and attendance log files,

     b.      That person's employee evaluations and disciplinary files,

     c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

     d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

     e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

     f.      All text messages and instant messages from that person about Plaintiff,

     g.      That person's training files

     h.      That person's applications and new hire orientation file,

    i.     All witness statements taken by and from that person during all investigations about Plaintiff,

    j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 9:**    Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.

**ANSWER:**    Pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 10:**    Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant and not proportional to the needs of the case in that other employees committed violations of the policies that Plaintiff violated that warranted termination that are so dissimilar to Plaintiff's termination to be incomparable and therefore not probative.

Subject to and without waiving the foregoing objection, Plaintiff was terminated pursuant to TTU System Reg. 07.07(4)(b)(iv), which stated that Plaintiff failed to "[perform] work in a professional manner and in accordance with expected standards of performance." Alejandra Castaneda, who can be reached by and through Enrique Chavez Jr.., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 Stanton Street, El Paso, Texas 79902 was also terminated for billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members.

8

**REQUEST FOR PRODUCTION 10A:** Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

     a.     That person's work absence and attendance log files,

     b.     That person's employee evaluations and disciplinary files,

     c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

     d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

     e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

     f.     All text messages and instant messages from that person about Plaintiff,

     g.     That person's training files,

     h.     That person's applications and new hire orientation file,

     i.     All witness statements taken by and from that person during all investigations about Plaintiff,

     j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 10B:** Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

     a.     That person's work absence and attendance log files,

     b.     That person's employee evaluations and disciplinary files,

     c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

     d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.       All text messages and instant messages from that person about Plaintiff,

g.      That person's training files,

h.      That person's applications and new hire orientation file,

i.       All witness statements taken by and from that person during all investigations about Plaintiff,

j.       All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 11:**    Describe and identify any training, including by way of courses, classes or other mediums, whether formal or informal, which Defendant's agents and employees have been provided on the subject of illegal discrimination made the basis of Plaintiff's lawsuit

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to the extent that this interrogatory request any discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, all employees must complete the training entitled "Title IX, Sexual Misconduct, and Clery Act" (certified and approved by TWC). Further, Pursuant to Rule 33(d), Defendant is reviewing its business records and will produced business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 12:**    Identify by name, address, telephone number and job title, Defendant's agents or employees who have received any of the training described in the immediately preceding Interrogatory regarding illegal discrimination made the basis of Plaintiff's lawsuit.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is overly broad, not properly limited in time, and therefore irrelevant and not proportional to the needs of the case. It is irrelevant if anyone who was not involved in this matter received training and therefore those records are irrelevant are not proportional to the needs of the case due to their low importance to resolving the issue of whether

10

TTUHSCEP retaliated against Plaintiff. Furthermore, Plaintiff's interrogatory is not limited in time, and requests information for over ten years, as Plaintiff was employed by TTUHSCEP for ten years prior to her termination. TTUHSCEP further objects to the extent that this interrogatory request any discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, pursuant to TTUHSCEP regulations, all employees must go through training. In addition, pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 13:**    Identify by name, last known address, telephone number and job title all persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline, and employee benefits over the last five years, including but not limited to those carrying out the procedures or decisions relating to Plaintiff.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant. All persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline, and employee benefits over the last five years is irrelevant.

Subject to and without waiving the foregoing objection, the person charged with carrying out procedures or decisions regarding hiring, firing, discipline and employee benefits at the time Plaintiff was employed were Rebecca Salcido (former VP of HR) and Jennifer Erickson (current VP of HR).

**INTERROGATORY 14:**    Identify by name, last known address, telephone number, and date of birth the person(s) who took over Plaintiff's job duties.

**ANSWER:**    Robyn Aguilar, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848, took over Plaintiff's position on July 16, 2024. Her date of birth is June 9, 2001.

**REQUEST FOR PRODUCTION 14A:**    Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

   a.    That person's work absence and attendance log files,
   b.    That person's employee evaluations and disciplinary files,
   c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and

11

denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.      All text messages and instant messages from that person about Plaintiff,

g.      That person's training files,

h.      That person's applications and new hire orientation file,

i.      All witness statements taken by and from that person during all investigations about Plaintiff,

j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Ms. Aguilar's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 14B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a.      That person's work absence and attendance log files,

b.      That person's employee evaluations and disciplinary files,

c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.      All text messages and instant messages from that person about Plaintiff,

g.      That person's training files,

h.      That person's applications and new hire orientation file,

i.      All witness statements taken by and from that person during all investigations about Plaintiff,

12

**j.**     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Ms. Aguilar's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 15:**    If in response to discovery you withheld any information, documents or material due to "privacy" or "confidentiality" concerns, or under a claim of privilege, describe the information, documents or material withheld and identify the privilege, if any, asserted for each item or group of items withheld.

**ANSWER:**    Documents protected by the attorney clients and work product privileges have been withheld. Documents are still being reviewed and a document log will be produced. Furthermore, documents have been withheld due to confidentiality awaiting execution of the protective order as agreed in the parties' 26f report.

**INTERROGATORY 16:**    Describe in reasonable detail the investigation and or investigations Defendant undertook into Plaintiff's claims of discrimination and or retaliation by providing the names, last known addresses and phone numbers of the investigators, the witnesses whom were identified, the date each witness was communicated with, the information received from each witness or document and the outcome of the investigation and/or investigations.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this request to the extent that it requests information related to a discrimination claim. Plaintiff has not properly raised a claim for discrimination in her complaint, and therefore is not entitled to discovery on this issue.

Subject to and without waiving the foregoing objection, upon receiving Plaintiff's complaint, TTUHSCEP opened a file to conduct an investigation. The complaint was received on Ms. Balderrama's last day of employment, and therefore no investigation was performed.

**INTERROGATORY 17:**    Identify by name, job title, last known address and telephone number Defendant's employees who, over the last three (3) years, have received any type of leave, including the reasons for each leave, e.g. disability leave, pregnancy leave, military leave, worker's compensation injury leave, bereavement leave, personal leave or any other leave.

13

178

**ANSWER:**   <u>**OBJECTION:**</u> TTUHSCEP objects to this interrogatory as it requests information irrelevant to the lawsuit. Other employees who requested leave is irrelevant and are not proportional to the needs of the case due to their low importance to resolving the issue of whether TTUHSCEP retaliated against Plaintiff.

**REQUEST FOR PRODUCTION 17A:**   Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

    a.      That person's work absence and attendance log files,
    b.      That person's employee evaluations and disciplinary files,
    c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
    d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
    e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
    f.      All text messages and instant messages from that person about Plaintiff,
    g.      That person's training files,
    h.      That person's applications and new hire orientation file,
    i.      All witness statements taken by and from that person during all investigations about Plaintiff,
    j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:**   <u>**OBJECTION:**</u> TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. The personnel files of any employee who took leave in the previous three years is irrelevant to the issues at this lawsuit.

**REQUEST FOR PRODUCTION 17B:**   Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:
    a.      That person's work absence and attendance log files,
    b.      That person's employee evaluations and disciplinary files,
    c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,
    d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

14

    e.       All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

    f.        All text messages and instant messages from that person about Plaintiff,

    g.      That person's training files

    h.      That person's applications and new hire orientation file,

    i.        All witness statements taken by and from that person during all investigations about Plaintiff,

    j.        All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.


**RESPONSE:** **OBJECTION:** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. The personnel files of any employee who took leave in the previous three years is irrelevant to the issues at this lawsuit.

# EXHIBIT E

# RE: Castaneda/TTUHSCEP Consolidation

| From | 'Enrique Chavez Jr' <EnriqueChavezJr@chavezlawpc.com> |
|------|------|
| To | Stephanie Criscione<Stephanie.Criscione@oag.texas.gov> |
| CC | Laura Hendrix<Laura.Hendrix@oag.texas.gov> |
| Date | Tuesday, March 4th, 2025 at 11:01 AM |

That's a misrepresentation, Ms. Criscione. I have NOT admitted that there are no comparators. Also, Ms. Castaneda gave dozens of names of employees and employee family members who received discounts for cosmetic procedures during her deposition.

Also, as part of our conferral and in an attempt to resolve this issue, we emailed you **at your request**, a list of employees and family members who received the discount so you could search your client's records.

In the spirit of collegiality, we are unopposed to your motion to consolidate.

**HOWEVER, the questions remains, which you continue to evade, did you produce the billing, medical records and disciplinary records, if any, for employees who received a discount or had a discount for family members by virtue of being employed at TTUHSC**?? If you have produced the information you previously agreed to produce, then just tell us clearly that you have, or have not.


Respectfully yours,

Enrique Chavez, Jr.
Chavez Law Firm
2101 N. Stanton, El Paso, Texas 79902
915 351 7772 Telephone

www.ChavezLawFirm.LAW

On Tue, Mar 4, 2025 at 10:45 AM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> Mr. Chavez,
>
>
> Both you and your client has admitted that there are no comparators in this case, as she admitted at deposition that no male employee in surgery allegedly received discounts.
>
>
> As for the supplement, you can see that included in the supplemental documents, marked as confidential, contain surgical procedure sheets reflecting names you contend received discounted procedures. This includes Jesus Balderamma, who you can see paid full price.

1

If you are now unopposed we can amend our filing.


Best,


Stephanie A. Criscione

Assistant Attorney General

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

---

**From:** Enrique Chavez, Jr. at Chavez Law Firm <EnriqueChavezJr@chavezlawpc.com>
**Sent:** Tuesday, March 4, 2025 11:36 AM
**To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
**Cc:** Laura Hendrix <Laura.Hendrix@oag.texas.gov>
**Subject:** RE: Castaneda/TTUHSCEP Consolidation


Ms. Criscione,


We've been asking for comparator information/documentation and conferring with you about same for months now. You just dumped 1,400 pages on us, some of which looks duplicative of what you previously produced. We just want to know if you provided the comparator information/documentation which you agreed to produce. Did you?


As to Defendant's motion to consolidate, we were very clear that we would be unopposed if you produce the comparator information which we've been discussing for months. Representing to the court that we are unopposed in light of our conferrals regarding same would be a misrepresentation to the court. Or are you saying that you have not produced the comparator information and as such you must designate us as opposed?


Respectfully yours,

Enrique Chavez, Jr.

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

www.ChavezLawFirm.LAW

On Tue, Mar 4, 2025 at 10:06 AM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> Mr. Osterberg,

> As you will not give me a straight answer, I will mark you as opposed. We will be filing this immediately.

> Best,

> Stephanie A. Criscione

> Assistant Attorney General

> General Litigation Division

> Direct: (512) 936-1675

> Cell: (737) 230-1248

> **From:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
> **Sent:** Friday, February 28, 2025 6:39 PM
> **To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
> **Cc:** Laura Hendrix <Laura.Hendrix@oag.texas.gov>
> **Subject:** RE: Castaneda/TTUHSCEP Consolidation

> Good afternoon,

Does this production contain all of the comparator files that we asked for? That being, medical records and billing records for all of the other employees and employee family members that received discounted procedures? Thanks, Mike

Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent from Proton Mail for iOS

On Fri, Feb 28, 2025 at 3:17 PM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> All,
>
> The documents were supplemented. Please let me know about the consolidation by 3PM on Monday otherwise I will assume you are opposed.
>
> Best,

Stephanie A. Criscione

Assistant Attorney General

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

---

**From:** Stephanie Criscione
**Sent:** Friday, February 28, 2025 1:18 PM
**To:** Enrique Chavez, Jr. at Chavez Law Firm <EnriqueChavezJr@chavezlawpc.com>;
'mikeosterberg@chavezlawpc.com' <mikeosterberg@chavezlawpc.com>; manderson@chavezlawpc.com;
'legalassistant@chavezlawpc.com' <legalassistant@chavezlawpc.com>
**Cc:** Laura Hendrix <Laura.Hendrix@oag.texas.gov>
**Subject:** Castaneda/TTUHSCEP Consolidation

Good Afternoon All,

I anticipate another supplemental production to occur by the end of the day. With that supplement, what is your position on the consolidation? Last time we conferred it seemed if TTUHSCEP supplemented your client would not be opposed to the consolidation. Please let me know if this is still the case.

Best,

Stephanie A. Criscione

Assistant Attorney General

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

# RE: *Next week's depositions postponed* RE: Castaneda- Motion to Consolidate

| From | Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> |
| --- | --- |
| To | 'mikeosterberg@chavezlawpc.com' <MikeOsterberg@chavezlawpc.com> |
| CC | Laura Hendrix <Laura.Hendrix@oag.texas.gov>, Elena Eydelman-Natividad <Elena.Eydelman-Natividad@oag.texas.gov> |
| Date | Tuesday, February 25th, 2025 at 2:59 PM |

Mr. Osterberg,

We are in the process of getting documents loaded into our document management system for review and production.

When can I anticipate the divorce decree (as testified to during the deposition), all missing text messages and emails, Ms. Castaneda's outstanding paystubs and proof of withdrawal of retirement account?

Best,

Stephanie A. Criscione

Assistant Attorney General

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

---

**From:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
**Sent:** Tuesday, February 25, 2025 2:42 PM
**To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
**Cc:** Laura Hendrix <Laura.Hendrix@oag.texas.gov>; Elena Eydelman-Natividad <Elena.Eydelman-Natividad@oag.texas.gov>
**Subject:** Re: *Next week's depositions postponed* RE: Castaneda- Motion to Consolidate

Good afternoon,

I am writing to follow up on the below email from last Friday. Will you be producing the documents as requested? If so, when?

Also, please provide new dates in which we can take the depositions that were previously scheduled for this week (Erickson, Conkovich, Lange, Payne). Thanks, Mike

Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Friday, February 21st, 2025 at 5:10 PM, Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com> wrote:

> Good evening Ms. Criscione,

7

188

It was very nice to meet you in person today. I am writing because, as you may have seen from the recent email to the court reporter that I CC'd you on, Plaintiff will not be proceeding with the depositions next week.

I have called off the depositions because, as I mentioned in the earlier email, we have not yet received the paper discovery necessary to conduct the depositions. We discussed in December and January your provision of the comparator files by roughly 2 weeks prior to next week's depositions. We both agreed that we would produce what we each agreed to produce with sufficient time to review them before the depositions.

Plaintiff has provided Defendant with the requested text messages and call logs, but Plaintiff has not received the comparator files from Defendant.

If now you believe they are not discoverable, that would unfortunately leave us at an impasse requiring court intervention. If you do still plan to produce them, please let me know so we can plan the depositions accordingly.

Hope you had a safe trip back to Austin today. If you have any questions, please feel free to reach out as always. Thanks, Mike

Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in

error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Friday, February 21st, 2025 at 9:09 AM, Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com> wrote:

> Also, we need these comparator files by the end of the day today.

> We've been speaking about this issue over phone and email since December. In December we chatted briefly about the discovery each of us sought from the other in December, and agreed to talk again in January after the holidays.

> In early January, we agreed that I would provide the call logs and texts, and you would provide the comparator files approximately 2 weeks before these depositions so we could each prepare. We have provided the documents you requested.

> You have not provided the documents that you agreed to produce. We need them by EOD today to review and prepare in advance of the depositions next week. Thanks, Mike

> Respectfully yours,

> Michael M. Osterberg

> Associate Attorney

> Chavez Law Firm

> 2101 N. Stanton, El Paso, Texas 79902

> 915 351 7772 Telephone

> mikeosterberg@chavezlawpc.com

9

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Friday, February 21st, 2025 at 9:05 AM, Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com> wrote:

> Good afternoon,
>
> Employee family members receiving discounted medical procedures would apparently be a violation of hospital policy - the same hospital policy that allegedly formed the basis for the adverse employment action against our clients.
>
> Records of those discounted procedures, and records of whether, if at all, the employees received an adverse employment action as a result of letting their family members take the discounts, are relevant because those employees would be comparators for our clients.
>
> It shows that people don't get fired for receiving discounts, and here it was a pretext for our clients termination in an attempt to hide the real reason - retaliation for complaining about sexual harassment.
>
> Thanks, Mike
>
> Respectfully yours,
>
> Michael M. Osterberg
>
> Associate Attorney

10

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Wednesday, February 19th, 2025 at 8:51 AM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> Good Morning,
>
> I will look into employees and discuss with my client, but I am still failing to see how non-employees are relevant to this lawsuit.
>
> Best,
>
> Stephanie A. Criscione
>
> Assistant Attorney General
>
> General Litigation Division
>
> Direct: (512) 936-1675
>
> Cell: (737) 230-1248

11

**From:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
**Sent:** Tuesday, February 18, 2025 4:34 PM
**To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
**Cc:** Laura Hendrix <Laura.Hendrix@oag.texas.gov>; Elena Eydelman-Natividad <Elena.Eydelman-Natividad@oag.texas.gov>; 'legalassistant@chavezlawpc.com' <legalassistant@chavezlawpc.com>
**Subject:** RE: Castaneda- Motion to Consolidate

Good afternoon,

In our call earlier today, you asked for specific names of people who have received discounted medical procedure so your client could collect those records.

Jesus Francisco Balderrama (Terry's husband)

Michelle Annette Portillo (Terry's sister)

Dr. Prieto from pediatrics

Angelica Castro

Angelica Rodriguez (wife of Dr. Jose Castro)

Aaron Sanchez from pediatrics

Alejandra Lopez from pediatrics

Cecilia Lindsay from pediatrics

Dennice Sepulveda from internal medicine

Sylvia Lopez

Please let us know when we can expect to receive the records. Thanks, Mike

Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com


Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.


Sent with Proton Mail secure email.


On Thursday, February 13th, 2025 at 10:49 AM, Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com> wrote:

> Stephanie,
>
> SDT #12 asks for the contents and substance of the procedures, more specifically defined in the request as discounted medical procedures. #15 asks for all documents showing mention of discounts for medical procedures in, among other places Defendant databases. The language of the subpoena covers medical and billing records showing who got discounted medical procedures.
>
> I also understood that you already agreed to produce these in our prior conferral, pending this HIPAA issue, which, as the case law shows, is a non-issue.
>
> Please let me know when I can expect these documents. We are in the process of producing you that which we agreed to produced, i.e., the phone records. You should have those today if you do not have them already. Thanks, Mike
>
>
> Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com


Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.



Sent from Proton Mail for iOS



On Wed, Feb 12, 2025 at 12:59 PM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> Mike,
>
> Furthermore, which subpoena duces tecum are you contending encompasses the medical records? Because to my reading of the subpoena, none do.
>
> Best,
>
> Stephanie A. Criscione
>
> Assistant Attorney General

14

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

---

**From:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
**Sent:** Friday, February 7, 2025 4:36 PM
**To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
**Cc:** Laura Hendrix <Laura.Hendrix@oag.texas.gov>; Elena Eydelman-Natividad <Elena.Eydelman-Natividad@oag.texas.gov>; 'legalassistant@chavezlawpc.com' <legalassistant@chavezlawpc.com>
**Subject:** RE: Castaneda- Motion to Consolidate

Stephanie,

Per Interrogatory 10, we are seeking the names, job titles, last known address, and telephone number for Defendant Employees, over the last 4 years, who violated the policies that Defendant is alleged to have violated, i.e. receiving discounted cosmetic procedures.

Per RFP 10A and 10B, we are seeking those employees full personnel files as described more fully in the request for production.

The subpoena duces tecum attached to the notice of deposition for your corporate representative, served on September 12, 2024 (which originally set the depos for October 21) and December 19, 2024 with the deposition set for later this month, also subpoenas documents about these medical procedures, employees or employee family members who got discounted medical services, and, if any was imposed, disciplinary actions against those employees. This would include the records, medical records, showing that these employees did in fact receive the medical treatment at a discounted rate.

We are working on your request as well. Thanks, Mike

Respectfully yours,

15

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Friday, February 7th, 2025 at 3:11 PM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> Mike,
>
> I understand your position. To be clear, you want the unredacted medical information of any TTUHSCEP employee who received Botox injections. Is there a time frame? If I remember your requests correctly, they were unlimited in time and a basis for our objections to the request.
>
> I also need our requested materials. Respectfully, TTUHSCEP has produced thousands of pages, with each file being a separate PDF in order for ease of understanding the documents, including multi-page email chains and familial attachments. Plaintiff has produced around 100 pages in 1 PDF, including 1 email that is clearly a screenshot of an email chain. You represented to me in our call on January 23 that you would be amending interrogatories and producing responsive documents. I need to know the status by Monday as well.

16

Best,


Stephanie A. Criscione

Assistant Attorney General

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

---

**From:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
**Sent:** Friday, February 7, 2025 3:40 PM
**To:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
**Cc:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>; Elena Eydelman-Natividad <Elena.Eydelman-Natividad@oag.texas.gov>
**Subject:** RE: Castaneda- Motion to Consolidate


Good afternoon,


Please let us know when we can expect to receive the requested materials. In order to prepare for the depositions, we need this material by Monday Feb 10. Otherwise, we will have no choice but to seek court intervention. As discussed in my prior email, the case law is perfectly clear on this issue - the requested material is discoverable and HIPAA is not a bar to discovery.


Thanks, Mike


Respectfully yours,


Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

17

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Friday, January 31st, 2025 at 1:30 PM, Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com> wrote:

> Ms. Criscione,
>
> Thanks for your response. We will wait to hear more from you about those requested materials. As for the emails, we utilize a communal email inbox, so we all see every email regardless of who is CC'd. Thanks,
>
> Mike
>
> Respectfully yours,
>
> Michael M. Osterberg
>
> Associate Attorney
>
> Chavez Law Firm
>
> 2101 N. Stanton, El Paso, Texas 79902
>
> 915 351 7772 Telephone
>
> mikeosterberg@chavezlawpc.com

18

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent from Proton Mail for iOS

On Fri, Jan 31, 2025 at 10:21 AM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

Mr. Osterberg,

As I mentioned during our call last week, I am in trial through next Friday. I will review the materials you sent me and discuss them with my client. I appreciate your patience.

Can you also clarify who I should be including in emails to your office? I want to ensure everyone is kept in the loop on your end. I appreciate you copying Ms. Eydelman-Natividad.

Best

Stephanie A. Criscione

Assistant Attorney General

General Litigation Division

Direct: (512) 936-1675

Cell: (737) 230-1248

19

**From:** Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com>
**Sent:** Monday, January 27, 2025 6:31 PM
**To:** Stephanie Criscione <Stephanie.Criscione@oag.texas.gov>
**Cc:** Elena Eydelman-Natividad <Elena.Eydelman-Natividad@oag.texas.gov>
**Subject:** Re: Castaneda- Motion to Consolidate

Good afternoon,

Following up on my below email. Please advise if the defendant will be turning over the requested records without an AEO designation and in their unredacted form. Thanks, Mike

Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

20

On Thursday, January 23rd, 2025 at 11:57 AM, Mike Osterberg at Chavez Law Firm <MikeOsterberg@chavezlawpc.com> wrote:

Good morning,

Regarding the HIPAA issue, we do not believe redaction or an attorneys' eyes only designation are necessary to permit the production we seek.

Attached you will find the case Daywalker v. Univ. of Tex. Med. Branch at Galveston, Civil Action 3:20- cv-00099, at *2-3 (S.D. Tex. Sep. 9, 2021) which makes clear that as long as there is a HIPAA qualified protective order in place, one that restricts use of the documents to the litigation and their return after the case is over, then HIPAA is not a bar to discovery. The protective order in place here meets those requirements.

Please let me know if you agree to turn the documents over - to include the full personnel files, medical records, and billing records for other employees that received cosmetic procedures, without an AEO designation and in their unredacted form. Given how clear the caselaw is, we would have no choice but to file a motion to compel if you cannot agree.

Regarding consolidation, we are prepared to agree to consolidation once we receive the discovery we seek as described above.

Please let me know if you have any questions or would like to discuss any of this. Thanks, Mike

Respectfully yours,

Michael M. Osterberg

Associate Attorney

Chavez Law Firm

2101 N. Stanton, El Paso, Texas 79902

915 351 7772 Telephone

21

202

mikeosterberg@chavezlawpc.com

Confidentiality Notice: The information contained in this email/facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this message – except its direct delivery to the intended recipient – is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this message along with its contents, and delete from your system.

Sent with Proton Mail secure email.

On Thursday, January 23rd, 2025 at 9:56 AM, Stephanie Criscione <Stephanie.Criscione@oag.texas.gov> wrote:

> Good Morning All,
>
> Please see the proposed Motion and Order to Consolidate the two Castaneda matters as discussed with Mr. Osterberg. Please let me know if this is agreed. As I stated, I am in meetings the rest of the day but could chat 4PM MST.
>
> Best,
>
> Stephanie A. Criscione
>
> Assistant Attorney General
>
> General Litigation Division
>
> Direct: (512) 936-1675
>
> Cell: (737) 230-1248

22

IN IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendant*. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

TO THE HONORABLE JUDGE LEON SCHYDLOWER:

COMES NOW Defendant, Texas Tech University Health Science Center-El Paso ("TTUHSCEP") and files this response to Plaintiff Cecilia Castaneda's Motion to Compel, and in support thereof, shows the Court the following:

## I.    INTRODUCTION

Plaintiff seeks documents that, by her own admission, are irrelevant to the lawsuit. Plaintiff admitted in deposition that there were no male employees of the surgery department who received discounted injectable procedures. Without a similarly situated employee to establish a prima facie case of discrimination, there is no need for evidence of pretext. Plaintiff's fishing expedition into the private medical data of other TTUHSCEP employees, and, even more egregiously, non-employee family members of employees who Plaintiff contends received discounted injectable procedures cannot stand.

## II.    PROCEDURAL HISTORY

Plaintiff, a certified medical assistant at TTUHSCEP's surgery clinic and her ex-sister-in-law, the surgery clinic supervisor, were both terminated in May 2023 for receiving discounted cosmetic injectables and for facilitating discounted cosmetic injectables for both employees and their non-employee family members.

Plaintiff filed her original complaint on June 3, 2024, alleging sex discrimination, retaliation, and sexual harassment (Dkt. 1.) TTUHSCEP filed its original answer on July 16, 2024 (Dkt. 5), citing legitimate nondiscriminatory reasons for her termination.

On August 16, 2024, the parties submitted their joint 26f report. (Dkt. 8). The parties agreed in the joint 26f report that a confidentiality order was required. *Id.* However, due to Plaintiff's lack of response, TTUHSCEP was forced to file a Motion for Entry of Confidentiality Order. (Dkt. 10). The Confidentiality Order was not entered until October 10, 2024 (Dkt. 11).

Before the parties submitted their 26f report, Plaintiff served her First Requests for Production and Interrogatories on August 6, 2024. *See* Exhibit A attached to this response. In this 28-page combined document, Plaintiff requested the "name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory." *See* Exhibit A, Interrogatory 10. Interrogatory 10 referenced interrogatory 9, which asked TTUHSCEP to "Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant." Exhibit A, Interrogatory 9. Plaintiff also embedded Requests for Production into her interrogatories.

Plaintiff further sought the deposition of corporate representatives for TTUHSCEP. Attached to the notice of deposition was a subpoena duces tecum, which requested "all documents

showing **termination, write ups, or discipline,** in part, **because the employee used an employee discount for a medical procedure for that employee or a family member,** from 2013 to the present, and **all documents showing mention of such discounts for a medical procedure in employee evaluations, personnel action notices, memoranda, emails, instant messages**, and in Defendant's databases". *See* Exhibit B, Plaintiff's Notice of Deposition, attached to this response.

TTUHSCEP served its responses timely on September 5, 2024. *See* Exhibits C-D attached to this response. In response to Interrogatory 10, TTUHSCEP objected that it was "irrelevant and not proportional to the needs of the case in that other employees committed violations of the policies that Plaintiff violated that warranted termination that are so dissimilar to Plaintiff's termination to be incomparable and therefore not probative." *See* Exhibit C, at Interrogatory 10. TTUHSCEP served amended interrogatory responses on October 24, 2024. *See* Exhibit D, TTUHSCEP's First Amended Responses to Interrogatories, attached to this response. TTUHSCEP also produced the personnel file of Alejandra Castaneda in response to Request for Production 10A and 10B.

TTUHSCEP took the deposition of Cecilia Castaneda on February 21, 2025. *See* Exhibit D attached to this response. Ms. Castaneda was asked what male members of the surgery department received discounted Botox procedures, where she admitted there were none. Exhibit D, page 48 Line 8 through Page 49 Line 11. Ms. Castaneda testified female employees of the surgery department who allegedly received discounted injectables included Leticia Cano and Terry Balderamma, both of whom were no longer employed by TTUHSCEP at the time Plaintiff was terminated. Further, neither were certified medical assistants or clinic supervisors. Finally, Plaintiff listed several employees of TTUHSCEP, not within the surgery department, who received these discounts.

## III.    ARGUMENTS AND AUTHORITIES

Plaintiff's Motion should be denied because Plaintiff has already produced responsive documents and any additional documents that Plaintiff seeks are wholly irrelevant and thus her seeking these documents constitutes a fishing expedition. Given Plaintiff's continuous request for documents that, in TTUHSCEP, were never requested and are undiscoverable, TTUHSCEP respectfully requests that the Court deny the Motion and sustain TTUHSCEP's objections.

    a.    <u>TTUHSCEP provided documents responsive to the requests at issue.</u>

In response to Request for Production 10A and 10B, TTUHSCEP provided the entire personnel file for Alejandra Castaneda, who was the only employee identified in response to Interrogatory 10. Request for Production 10A and 10B referenced Interrogatory 10. She was the only other employee of the surgery department who was terminated for receiving discounted cosmetic injectables. As Alejandra Castaneda is also represented by Plaintiff's counsel, TTUHSCEP stated she could be contacted through Plaintiff's counsel.

Plaintiff contends that TTUHSCEP improperly objected to Request for Production 10A and 10B because they produced documents "subject to" the objection. Dkt. 13 at pg 5. TTUHSCEP properly "blue penciled" Plaintiff's request, as TTUHSCEP had an obligation to comply with the non-objectionable portion of the request. Fed. R. Civ. P. 34(b)(2)(A); *Resea Project Aps v. Restoring Integrity To the Oceans, Inc.*, No. SA-21-CV-1132-JKP, 2023 U.S. Dist. LEXIS 73973 (W.D. Tex. 2023) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014)). TTUHSCEP produced documents related to Alejandra Castaneda, and later produced documents related to Ulysses Castaneda, Leticia Cano, and Terry Balderamma upon conferral with opposing counsel.

By filing her Motion, Plaintiff seems to request that TTUHSCEP produce documents so that Plaintiff may prove a negative. Plaintiff requests the Court order TTUHSCEP to produce documents stating whether these employees received injectables, if they received discounts, and any discipline connected to the discounted receipt of these injectables. But Plaintiff then argues that the absence of those documents shows pretext. That is not proper argument for a Motion to Compel but could have easily been discussed with TTUHSCEP's corporate representative on this topic at deposition, which Plaintiff unilaterally canceled. TTUHSCEP has already indicated that there are no other comparator files, as any violations of policies committed by other employees were so dissimilar to the basis of Plaintiff's termination that they are incomparable and not probative. TTUHSCEP cannot produce what does not exist—the only documents TTUHSCEP maintains that show employees' violations by receiving discounted injectables are in Plaintiff's file.

Furthermore, this dispute has made it clear that Plaintiff's requests are overly broad, as Plaintiff continuously asks for additional documents when a review of TTUHSCEP's production would show what has already been produced substantially complies with Plaintiff's request.[1] Finally, any documents, to the extent they existed, that would have been confidential based on HIPAA could not be turned over until October 10, 2024 when the confidentiality order was entered. TTUHSCEP requests the Court deny the Motion.

   b.   <u>Plaintiff's discovery requests are too broad, seek medical data of non-employees and employees outside of the surgery department and therefore are undiscoverable as outside the scope of discovery.</u>

The trial court has the obligation to limit discovery where the burden or expense of the proposed discovery outweighs its likely benefit "considering the needs of the case, the amount in

---

[1] TTUHSCEP has additional arguments related to what has been produced. Given the confidential nature of the documents, TTUHSCEP would prefer to make those arguments to the Court pursuant to the confidentiality order.

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C); *Montoya v. State Farm Lloyds*, No. 7:14-CV-182, 2015 U.S. Dist. LEXIS 199712 (S.D. Tex. 2015) This includes the power to tailor the discovery process and dictate the narrowing of discovery. *Leyva v. Bascai, Inc.*, No. 1:23-CV-01348-DII, 2024 U.S. Dist. LEXIS 21205 at * 13 (W.D. Tex. Feb. 6, 2024) Trial courts have broad discretion to issue an order to protect a party from annoyance or undue burden related to discovery. Fed. R. Civ. P. 26(c)(1); *Beltran v. City of Austin*, No. 1:22-CV-00015-LY, 2022 U.S. Dist. LEXIS 190618 (W.D. Tex. Oct. 19, 2022) (citing *Equal Emp't Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

Plaintiff seeks medical data and billing records for all TTUHSCEP employees she contends are "comparators" for her claims so she can try to support her argument of pretext. (Dkt. 13, pgs. 3-6). The Fifth Circuit is clear that comparators for a disparate treatment claim must be "similarly situated," meaning they are nearly identical. *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020). Nearly identical means that the employes shared the same job or responsibilities and shared the same supervisor. *Id.*

Plaintiff admitted that there were no male members of the surgery department received discounted Botox. Exhibit D, page 48 Line 8 through Page 49 Line 11. Any other employees who may or may not have received discounted medical procedures are irrelevant because legally, they cannot constitute comparators. They are not similarly situated because they do not share job titles, job responsibilities, or supervisors.

In addition, Plaintiff's reliance on *Daywalker v. Univ. of Tex. Med. Branch at Galveston*, No. 3:20-cv-00099, 2021 U.S. Dist. LEXIS 170916 (S.D. Tex. 2021) is inapposite. The medical data in this case was completely relevant, because the proffered reasoning for Daywalker's

termination was her alleged failure to ensure patient safety. *Id.* at *4. Meaning, patient data was directly relevant. Putting aside the fact that there is no proper comparator, employee medical data is irrelevant to billing procedure. There is no need for Plaintiff to obtain those files, because they are outside the scope of discovery and would invade the privacy of not only current employees, but former employees and non-employees. TTUHSCEP respectfully requests that the Court deny the Motion to Compel and sustain the objections.

      c.    <u>Plaintiff's counsel failed to confer regarding searchability of TTUHSCEP's production.</u>

Plaintiff complains that TTUHSCEP's over 2000-page production in this case is "unsearchable." This is the first time Plaintiff has complained about the format and searchability of TTUHSCEP's production. TTUHSCEP produced almost 2500 pages, all individualized files, over the course of six months. No production was one, never ending document, nor was any document was degraded.

      d.    <u>The discovery period does not close on May 15, 2025, because the parties jointly requested consolidation.</u>

The parties jointly requested this cause be consolidated with 3:24-cv-00189, *Alejandra Castaneda v. Texas Tech University Health Sciences Center El Paso* (Dkt. 23, 3:24-cv-00189). In its original consolidation request, TTUHSCEP requested the Court adopt the scheduling order entered in the companion case. (Dkt. 22, 3:24-cv-00189). The scheduling order in the companion case provides that the discovery period extends until July 25, 2025 (Dkt 21, 3:24-cv-00189). There is ample time to reschedule corporate representative depositions.

TTUHSCEP requests a hearing on this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, TTUHSCEP respectfully requests the Court DENY the Motion to Compel and SUSTAIN the objections to the challenged requests. In the event that the Court grants the Motion, TTUHSCEP respectfully requests that the Court DENY the request for attorneys' fees and find that the objection and response was substantially justified pursuant to Federal Rule of Civil Procedure 37(a)(5)(A)(ii).

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that that on March 19, 2025, this document was filed electronically via the Court's

CM/ECF system, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ STEPHANIE A. CRISCIONE /s/*
**STEPHANIE A. CRISCIONE**

IN THE UNITED STATES DISTRICT COURTS FOR
THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Cecilia Castaneda

      Plaintiff,

v.                             Cause No. 3:24-cv-00190-LS

Texas Tech Health Sciences Center

      Defendant

### PLAINTIFF'S RULE 34(b) REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION IN NATIVE ELECTRONIC FORMATS, DOCUMENTS AND TANGIBLE THINGS TO DEFENDANT; INTERROGATORIES; AND NOTICE OF REQUIRED DISCLOSURES

TO:   Texas Tech Health Sciences Center.

You are requested to respond, answer and produce, accordingly, responsive answers and electronically stored information and documents to these discovery requests to the Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902. no later than thirty (30) days from the date of your receipt.

**SIGNED** on August 6, 2024.

                         Respectfully submitted,

                         **Chavez Law Firm**
                         2101 N. Stanton Street
                         El Paso, Texas 79902
                         915/351-7772

By:   _____
              Enrique Chavez, Jr., State Bar No. 24001873
              enriquechavezjr@chavezlawpc.com
              Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

On August 6, 2024, I certify that the foregoing instrument was served on the following attorneys of record by electronic means:

Office of the Attorney General
P.O. Box 12548 Capitol Station,Austin, Texas   78711-25848
512-475-4104, fax 512-320-0667
Stephanie A. Criscione Stephanie.Criscione@oag.texas.gov

Enrique Chavez, Jr.

# Federal Rule of Civil Procedure 34(b) Request for Form of Production

*1. Definitions*

1.1. The requested information items herein include electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container file.

1.2. Requested information items may come from all data sources such as locations or media used to house information items. Data sources include places, like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

*2. General Provisions*

2.1. **To reduce cost and preserve maximum utility of electronically stored information, production in native electronic formats shall be the required form of Electronically Stored Information ("ESI") production in response to discovery in this cause. Unless these instructions expressly permit or require conversion, native electronic file formats *shall not* be converted from their usual and customary format to other formats for production**. *See* Fed. R. Civ. P. 34(b) Tex. R. Civ. P. 196.4.

2.2. Defendant is obliged to consider for preservation and identification all potentially responsive information items and data sources over which Defendant (including its employees, agents, officers, and directors) has possession, physical custody, or a right or ability to exert direction or control. The belief that an employee, agent, or contractor may fail to act upon, or conform to, an exercise of direction or control is not a justification for Defendant to fail to undertake an exercise of direction or control directed to preservation, identification, and, as potentially responsive or relevant, production of information items and data sources.

2.3. Production of information in electronic formats shall not relieve Defendant of the obligation to act with reasonable diligence to preserve the native electronic data sources of the information items produced and relevant metadata. Defendant shall be vigilant not to wipe or dispose of source media.

2.4. Where, in the usual course of business, a paper document has been imaged as a TIFF or PDF file or an electronic file has been printed or converted to an imaged format, the electronic file and the hard copy or imaged counterpart *may not* be treated as identical or cumulative such that the paper/imaged format may be produced in lieu of its electronic source.

2.5. Defendant must produce Optical Character Recognition ("OCR") textual content when Defendant produces images in lieu of paper originals. However, Defendant is not

obligated to undertake OCR for information items in the PDF, TIFF, or JPG file formats when Defendant does not hold the textual contents of such files in an electronically searchable form at the time of the request for production; provided, however, that if Defendant adds or acquires such electronic searchability, Defendant shall supplement production to make such capability available to Plaintiff in a reasonable manner at Defendant's cost.

*3. Scope*

3.1.   Defendant must act with reasonable diligence to identify and produce responsive, non-privileged ESI under its care, in its custody, or subject to its control, notwithstanding its location, format, or medium.

3.2.    Defendant shall produce responsive, non-privileged files with the following extensions: ace, arc, arj, arx, bh, cal, cat, csv, dat, db, dbx, doc, docx, dot, dotm, dotx, dst, dstx, efx, email, eml, gnu, gra, gz, gzip, jar, lha, mbox, mbx, mdb, mde, mde, mpp, msg, nsf, ost, pdf, pnf, pot, potx, ppt, pptx, pst, pub, rar, rpt, rtf, shw, tar, taz, thmx, tif, tiff, txt, tz, wbk, wk4, wmf, wpd, wps, wri, xla, xlam, xlm, xls, xlsm, xlsx, xlt, xltx, z, zip.

3.3.   The file types listed in 3.2 must be identified and considered in searching for potentially responsive ESI; however, this is not an exclusive list of all potentially responsive file types.   Defendant is expected to apply its knowledge of information systems and applications used by employees when seeking to identify potentially responsive file types, as well as to make a reasonably diligent search for responsive file types not listed.

*4. Unique Production Identifier ("UPI")*

4.1.   Other than paper originals and images of paper documents (including redacted ESI), no ESI produced in discovery need be converted to a paginated format nor embossed with a Bates number.

4.2.   Each item of ESI (e.g., native file, document image, or e-mail message) shall be identified by naming the item to correspond to a UPI according to the following protocol:

      4.2.1.    The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying Defendant as making production;

      4.2.2.   The next nine (9) characters will be a unique, sequential numeric value assigned to the item by Defendant.   This value shall be padded with leading zeroes as needed to preserve its length;

      4.2.3.   The final five (5) characters are reserved to a sequence beginning with a dash (-) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to     pleadings.

      4.2.4.   By way of example, a Microsoft Word document produced by defendant Acme in its native format might be named: ACME000000123.doc.   Were the document printed out    for use in deposition, page six of the printed item would be embossed with the unique identifier ACME000000123-0006.

*5. Form of Production of E-Mail and Attachments*

5.1.    E-mail from Exchange/Outlook environments will be produced in the single message MAPI-compliant MSG format.    Messages in webmail, Lotus Notes, or GroupWise formats shall be converted to the MSG format with care taken, as feasible, to preserve as discrete fields the information listed in 7.4.

5.2.    Attachments to e-mails need not be produced separately from the transmitting message when the attachments are embedded within the message as MIME-compliant, Base-64 content (or other encoding scheme employed in the native source).

*6. Databases*

6.1.    Prior to production of any database, the Defendant shall meet and confer regarding the reasonableness and feasibility of any request for production of, or from, a database including the scope, form, and content of any such production.    However, Defendant shall make reasonable efforts to produce responsive information and data from databases using existing query and reporting capabilities of the database software. To facilitate such interrogation, Defendant shall act reasonably and cooperatively to comply with requests from Plaintiff for information about the reporting capabilities, structure, organization, query language, and schema of the database.

*7. Load Files*

7.1.    Consistent with the provisions of these instructions, Defendant shall produce responsive ESI to Plaintiff in its *native electronic format*, and when ESI is accompanied by a load file, Defendant shall produce load files in the Concordance load file format.

7.3.    Required Fields: The load file shall include the following delimited fields:

7.3.1.    Identifier − UPI- The unique production identifier of the item;

7.3.2.    Source Name − NAME - The original name of the item or file when collected from the source custodian or system;

7.3.3.    MD5 Hash − MD5 - The MD5 hash value of the item as produced;

7.3.4.    Custodian − CUSTODIAN -The unique identifier for the original custodian or source system from which the item was collected;

7.3.5.    Source Path − SPATH -The fully qualified file path from root of the location from which the item was collected;

7.3.6.    Production Path − NATIVELINK -The file path to the item from the root of the production media;

7.3.7.    Modified Date − MODDATE -The last modified date of the item when collected from the source custodian or system;

7.3.8.    Modified Time − MODTIME - The last modified time of the item when collected from the source custodian or system; and

7.3.9.    UTC Offset − UTCOFF - The UTC/GMT offset of the item's modified date and time.

7.4.    The following additional fields shall accompany production of e-mail messages:

7.4.1.    To − RECIPIENT − Addressee(s) of the message;

7.4.2.    From − FROM − The e-mail address of the person sending the message;

Page 5 of 28

7.4.3.   CC − CC − Person(s) copied on the message;

7.4.4.   BCC − BCC − Person(s) blind copied on the message;

7.4.5.   Date Sent − DATESENT − date the message was sent;

7.4.6.   Time Sent − TIMESENT − time the message was sent;

7.4.7.   Subject − SUBJECT − Subject line of the message;

7.4.8.   Date Received − DATERCVD − date the message was received;

7.4.9.   Time Received − TIMERCVD − time the message was received;

7.4.10.   Attachments − ATTACHMENTID − The beginning UPI(s) of attachments, delimited by comma;

7.4.11.   Mail Folder Path − MAILPATH − the path of the message from the root of the mail folder; and

7.4.12.   Message ID − MESSAGEID − The Microsoft Outlook or similar unique message identifier.

7.5.   The following additional fields shall accompany images of paper documents:

7.5.1.   Beginning Identifier − BEGNO − The beginning unique production identifier for the first page of the document;

7.5.2.   Ending Identifier − ENDNO − The ending unique production identifier for the first page of the document;

7.5.3.   Page Count − PGCOUNT − The total number of pages in the document;

7.5.4.   Location − LOCATION − The source box or other location identifier needed to trace the document to its source.

7.6.   E-Mail Messages and Attachments: Text shall be extracted from native e-mail message bodies and produced as document-level text files (.txt) named to correspond to the UPI of the message and organized into separate folder(s) from the messages.  The full text of attachments to messages need not be extracted; however, if it is extracted, it must be produced as document-level text files (.txt) named to correspond to the UPI of the attachments and organized into separate folder(s) from the messages.

7.7.   Document Images: Text extracted from paper document images using optical character recognition shall be produced as document-level text files (.txt) named to correspond to the UPI of the image and organized into separate folder(s) from the images.

*8. Deduplication*

8.1.   Defendant *shall not* globally (i.e. horizontally) deduplicate production or apply e-mail threading without express authorization from Plaintiff or the Court.

*9. Redaction*

9.1.   Files that must be redacted shall be produced as TIFF or PDF images accompanied by load files conforming to 7 (above) and containing extracted text acquired after redaction (i.e., excluding redacted content).

9.2.   Defendant may employ native redaction techniques so long as the method of redaction employed does not significantly impair the usability or searchability of the redacted item and the fact of alteration is disclosed.

9.3.  Redactions must be logged in the manner of any other responsive material withheld on claims of privilege or confidentiality.

*10.  Imaging and Unitization*

10.1.  Imaging: Paper documents produced electronically shall be:

      10.1.1  Imaged at 300 DPI as single-page Group IV TIFF or multipage PDF files;

      10.1.2.  Produced with OCR text;

      10.1.3.  Reflective, without visual degradation, of the full and complete information contained in the original document; and,

      10.1.4.  In compliance with reasonable requests for color image formats of the original at Defendant's cost, if an original document contains color used in a manner material to the import or understanding of the document.  Color documents shall be produced as PDF or JPG files.

10.2.  Unitization: If a scanned document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file.  For documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.  The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.  If more than one level of parent-child relationship exists, documents shall be kept in order, but all will be treated as children of the initial parent document.

*11.  Cooperation and Transparency*

11.1.  Defendant shall identify and facilitate access to the contents of encrypted, corrupted, or difficult-to-access files produced.  Defendant shall confer with Plaintiff to fashion reasonable, precise, and cost-effective search strategies and to agree upon and implement appropriate measures for quality assurance and quality control.  Defendant shall be forthcoming and transparent in disclosing its use of mechanized tools to cull responsive data.

*12.  Production Media and Transmittal*

12.1.  Production volumes below 12 gigabytes may be produced on three or fewer DVD-ROM optical disks for Windows-compatible personal computers.

12.2.  Production volumes greater than 12 gigabytes shall be produced as uncompressed data on Windows-compatible external hard disk drives employing the USB 2.0 or USB 3.0 interface.

12.3.  Production media shall be prominently and uniquely labeled to identify Defendant, the date of production, and the range of UPI on the medium.

12.4.  Defendant shall accompany the production with a written transmittal that sets out the:

      12.4.1.  Range of Unique Item Identifiers included within the production;

12.4.2.  The total number of items produced;

12.4.3.  The structure of the load file, including the delimiters employed and a list of delimited fields in the order in which they are employed in the load file;

12.4.4.  Confirmation that the number of items produced matches the load file(s); and

12.4.5.  A privilege log identifying any documents withheld from the data sources being produced, if any.

12.5.  Defendant shall exercise care to guard against truncation or data loss attendant to overlong file names and file paths.

**Rule 34(b) directive:**

This Request for Production seeks the production of electronically stored information, and documents in their respective, original formats, as kept by Producing Party in the usual course of business. Hence, there are two categories for each request. Category A requests request information that is originally kept as electronically stored information or ESI. Category B requests request information that is originally kept in a physical format, such as paper files, in folders, as printed photographs, etc. Requests for production of ESI herein DO <u>NOT</u> OVERLAP with requests for production or documents originally maintained in a physical format, as the information or materials sought come from different sources.

For example, if Producing Party maintains some information electronically, ESI, on a desktop, laptop or server hard drive, then Category A requests for production herein will apply to such information, and demand is made that such ESI be produced in its native electronic format as kept by producing party in the regular course of business. Texas Rule of Civil Procedure 196.4, governing the production of ESI, does NOT permit producing party to produce such ESI in a degraded form, e.g., converting word documents into PDF documents, or into paper copies.

As a further example, if documentation maintained by Producing Party is normally kept in a file cabinet, paper folders, in a handwritten journal or paper calendar, then category B requests for production apply to such documentation. Again, demand is made herein that such documentation ordinarily maintained in paper or physical format be produced in physical or paper format.

NEITHER, Category A nor Category B requests for production allow for the production of information in degraded form.

## Part ONE: REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI), DOCUMENTS AND TANGIBLE THINGS.

REQUEST FOR PRODUCTION NO. 1 (ESI)

Without wiping out or deleting source media and metadata, produce all of Defendant's  files and subfiles, documents and electronic information which are kept and maintained on Cecilia Castaneda ("Plaintiff") in native electronic file formats and as kept in the usual course of business, as follows:

a. all work absence and attendance log files on and for Plaintiff,

e. Plaintiffs employee evaluations and disciplinary files,

g. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and

denials, accommodations, reports, complaints, grievances, investigations, terminations, lay offs, separations, etc., about Plaintiff,

i. all documents and files created by those with successive authority over Plaintiff, including supervisors, about the subject matters complained of in Plaintiff's lawsuit,

j. all emails and attachments to and from Plaintiff's supervisors' about Plaintiff,

k. all emails and attachments to and from Plaintiff's managers' about Plaintiff,

l. all emails and attachments to and from Defendant's Human Resources personnel about the Plaintiff's complaints or reports of sexual harassment,

m. all text messages and instant messages to and from Plaintiff's supervisors' and managers' accounts about Plaintiff,

n. all text messages and instant messages to and from Defendant's Human Resources personnel accounts about Plaintiff,

o. Plaintiff's payroll history, payroll and compensation files,

p. Plaintiff's employee benefits files for the duration of all employment periods with Defendant,

q. Plaintiff's training files,

r. Plaintiff's applications and new hire orientation file,

s. all witness statements taken concerning Plaintiff during all investigations about Plaintiff,

t. all witness statements taken concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

u. excepting attorney-client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff's complaints and reports, if any, during Plaintiff's employment with Defendant.

w. Plaintiff's complete employee file with subfiles regardless of what Defendant calls them.


REQUEST FOR PRODUCTION NO. 2 (PHYSICAL FILES)

Produce all of Defendant's physical, i.e hard files and documents, as maintained in the ordinary course of business, on Plaintiff as follows:

Page 10 of 28

a. all work absence and attendance log files on and for Plaintiff,

d. all notices to and from Plaintiff concerning all other leaves,

e. Plaintiffs employee evaluations and disciplinary files,

f. Plaintiff's worker's compensation and medical files,

g. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

i. all documents and files created by those with successive authority over Plaintiff, including supervisors, about the <u>subject matters</u> complained of in Plaintiff's lawsuit,

j. Plaintiff's payroll history, payroll and compensation files,

k. Plaintiff's employee benefits files for the duration of all employment periods with Defendant,

m. Plaintiff's applications and new hire orientation file,

n. all witness statements taken concerning Plaintiff during all investigations about Plaintiff,

o. all witness statements taken concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

p. excepting attorney client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff's complaints and reports, if any, during Plaintiff's employment with Defendant.

r. Plaintiff's complete employee file and all subparts regardless of what Defendant calls them.

<u>REQUEST FOR PRODUCTION NO. 3</u>

Produce all video files and recordings, audio files and recordings, notebooks, pamphlets and posters, provided to or shown to Plaintiff before hiring and during the course of Plaintiff's employment with Defendant relating to illegal discrimination made the basis of this lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

REQUEST FOR PRODUCTION NO. 4

Produce all of Defendant's employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks evidencing the policies and procedures which Defendant applies to its employees concerning illegal discrimination made the basis of Plaintiff's lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

REQUEST FOR PRODUCTION NO. 5

Produce all of Defendant's handbooks, manuals, memos, advisories and notices relating to all actions which are to be taken by Defendant in response to a report or complaint of illegal discrimination or retaliation by an employee, including written procedures and protocols for investigating such reports and complaints.

REQUEST FOR PRODUCTION NO. 6

If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, please produce all electronically stored information in native electronic file format showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters shown during such training.

REQUEST FOR PRODUCTION NO. 7

If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, produce all documentation showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters received during such training.

REQUEST FOR PRODUCTION NO. 8

Produce all electronically stored information, in native electronic file format as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

REQUEST FOR PRODUCTION NO. 9

Produce all documentation, as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

REQUEST FOR PRODUCTION NO. 10

Produce all documentation describing Plaintiff's job duties and essential job functions during all work periods with Defendant.

REQUEST FOR PRODUCTION NO. 11

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all investigators relating to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination.

REQUEST FOR PRODUCTION NO. 12

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all state government agencies including the Workforce Commission and the Civil Rights Division relating to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination.

REQUEST FOR PRODUCTION NO. 13

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all federal government agencies such as the EEOC, relating

to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination and/or retaliation.

**Part TWO: INTERROGATORIES AND
SECOND REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED
INFORMATION (ESI), DOCUMENTS AND TANGIBLE THINGS**

INTERROGATORY NO. 1

Identify by name, last known address, telephone number and job title, Plaintiff's immediate supervisor or supervisors and all others with successive authority over the Plaintiff and the Plaintiff's work while employed with Defendant.

INTERROGATORY NO. 2

Identify by name, last known address, telephone number and job title all persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years.

INTERROGATORY NO. 3

Provide Plaintiff's job title and describe Plaintiff's job functions and duties.

INTERROGATORY NO. 4

Identify, describe and provide the amounts of all pay rates, wages, and employment benefits, e.g., medical insurance, dental insurance, workers' compensation insurance, other insurance, 401K plan benefits, pension benefits, etc., provided to or available to Plaintiff just before she was terminated and during the course of Plaintiff's employment with Defendant.

INTERROGATORY NO. 5

Provide every reason you gave to Plaintiff for her termination the day she was terminated.

INTERROGATORY NO. 6

In connection with the immediately preceding Interrogatory, identify by name, last known address, telephone number and job title the persons with knowledge of the reasons or circumstances surrounding Defendant's layoff or discharge of Plaintiff or, otherwise, Plaintiff's separation from employment with Defendant.

## INTERROGATORY NO. 7

Identify by name, last known address, telephone number and job title the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant.

## REQUEST FOR PRODUCTION NO. 7A

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

REQUEST FOR PRODUCTION NO 7B

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding Interrogatory who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

INTERROGATORY NO. 8

Identify by name, last known address, telephone number and job title the persons, other than those identified in the immediately preceding Interrogatory, who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant.

REQUEST FOR PRODUCTION NO. 8A

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows :

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

REQUEST FOR PRODUCTION NO. 8B

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

Page 18 of 28

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

## INTERROGATORY NO. 9

Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.

## INTERROGATORY NO. 10

Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory.

## REQUEST FOR PRODUCTION NO. 10A

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>REQUEST FOR PRODUCTION NO. 10B</u>

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

Page 20 of 28

232

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h.that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

INTERROGATORY NO. 11

Describe and identify any training, including by way of courses, classes or other mediums, whether formal or informal, which Defendant's agents and employees have been provided on the subject of illegal discrimination made the basis of Plaintiff's lawsuit.

INTERROGATORY NO. 12

Identify by name, address, telephone number and job title, Defendant's agents or employees who have received any of the training described in the immediately preceding Interrogatory regarding illegal discrimination made the basis of Plaintiff's lawsuit.

INTERROGATORY NO. 13

Identify by name, last known address, telephone number and job title all persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline and employee benefits over the last five years, including but not limited to those carrying out the procedures or decisions relating to Plaintiff.

INTERROGATORY NO. 14

Identify by name, last known address, telephone number, and date of birth the person(s) who took over Plaintiff's job duties.

REQUEST FOR PRODUCTION NO. 14A

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>REQUEST FOR PRODUCTION NO. 14B</u>

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

<u>INTERROGATORY NO. 15</u>

If in response to discovery you withheld any information, documents or material due to "privacy" or "confidentiality" concerns, or under a claim of privilege, describe the information, documents or material withheld and identify the privilege, if any, asserted for each item or group of items withheld.

<u>INTERROGATORY NO. 16</u>

Describe in reasonable detail the investigation and or investigations Defendant undertook into Plaintiff's claims of discrimination and or retaliation by providing the names, last known addresses and phone numbers of the investigators, the witnesses whom were identified, the date each witness was communicated with, the information received from each witness or document and the outcome of the investigation and/or investigations.

<u>INTERROGATORY NO. 17</u>

Identify by name, job title, last known address and telephone number Defendant's employees who, over the last three (3) years, have received any type of leave, including the reasons for each leave, e.g. disability leave, pregnancy leave, military leave, worker's compensation injury leave, bereavement leave, personal leave or any other leave.

<u>REQUEST FOR PRODUCTION NO. 17A</u>

Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

Page 24 of 28

REQUEST FOR PRODUCTION NO. 17B

Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

d. all files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

e. all emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

# Part THREE: NOTICE OF REQUIRED DISCLOSURES

Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) Required Disclosures.

(1) *Initial Disclosure.*

(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

[]

(C) *Time for Initial Disclosures—In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

(D) *Time for Initial Disclosures—For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

(E) *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges

Page 26 of 28

the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) *Disclosure of Expert Testimony.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

Page 28 of 28

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S INTERROGATORIES

---

TO:   Plaintiff, Cecilia Castaneda, by and through her attorneys of record, Enrique Chavez, Jr., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902

Defendant Texas Tech University Health Science Center- El Paso ("TTUHSCEP") and serves these responses to Interrogatories pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

1

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 2409867
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

### CERTIFICATE OF SERVICE

I certify that that on September 5, 2024, this document was served via electronic mail, delivery receipt and read receipt requested, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

2

## INTERROGATORIES

**INTERROGATORY 1:**    Identify by name, last known address, telephone number and job title, Plaintiff 's immediate supervisor or supervisors and all others with successive authority over the Plaintiff and the Plaintiff 's work while employed with Defendant.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is overly broad, not properly limited in time, and therefore irrelevant and not proportional to the needs of the case. Successive authority over Plaintiff other than her immediate supervisor and those with authority to make ultimate employment decisions are irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issue of whether TTUHSCEP retaliated against Plaintiff to the extent that they were not involved in the employment decision. Furthermore, Plaintiff's interrogatory is not limited in time, and requests information for over ten years, as Plaintiff was employed by TTUHSCEP for ten years prior to her termination.

Subject to and without waiving the foregoing objection, Plaintiff's immediate supervisor at the time of her termination was Brenda Argueta, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848, (512) 936-1675.

**INTERROGATORY 2:**    Identify by name, last known address, telephone number and job title all persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant and no proportional to the needs of the case. Persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years is irrelevant and not proportional to the needs of the case as a five-year history is of low importance to resolving the issues whether TTUHSCEP retaliated against Plaintiff in connection to those that they were not involved in the employment decision.

Subject to and without waiving the foregoing objection, the person responsible for making TTUHSCEP's employment decisions regarding hiring, firing, leave, discipline, and employment benefits at the time of Plaintiff's termination was President Richard Lange, MD, with input from HR leadership and department leadership, subject to and in accordance with State of Texas and federal law.

**INTERROGATORY 3:**    Provide Plaintiff 's job title and describe Plaintiff's job functions and duties.

**ANSWER:**    Plaintiff's job title was Certified Medical Assistant. In addition, pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business

3

records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 4:**     Identify, describe and provide the amounts of all pay rates, wages, and employment benefits, e.g., medical insurance, dental insurance, workers' compensation insurance, other insurance, 401K plan benefits, pension benefits, etc., provided to or available to Plaintiff just before she was terminated and during the course of Plaintiff's employment with Defendant.

**ANSWER:**     Pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 5:**     Provide every reason you gave to Plaintiff for her termination the day she was terminated.

**ANSWER:**     Plaintiff was verbally told that her employment was being terminated due to her involvement in billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members. The written notification stated that "[t]his action is being taken because you have not complied with TTUHSC EP polices *(sic)* required of your position."

**INTERROGATORY 6:**     In connection with the immediately preceding Interrogatory, identify by name, last known address, telephone number and job title the persons with knowledge of the reasons or circumstances surrounding Defendant's layoff or discharge of Plaintiff or, otherwise, Plaintiff 's separation from employment with Defendant.

**ANSWER:**     Richard Lange, MD; President, TTUHSC EP; Dean, PLFSOM, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Andrew Conkovich; VP of Institutional Compliance, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Jennifer Erickson; VP of Human Resources, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
David Bergeon; Managing Director of Human Resources, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Jose Castro, MD; Assistant Professor, Division Chief of Plastic & Reconstructive Surgery, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
Patty McCarrol; former VP of Clinical Administration:

**INTERROGATORY 7:**     Identify by name, last known address, telephone number and job title the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant.

**ANSWER:**     Richard Lange, MD; President, TTUHSC EP; Dean, PLFSOM, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848

**REQUEST FOR PRODUCTION 7A:** Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant, in their native electronic file formats and as kept in the usual course of business, as follows:

   a.     That person's work absence and attendance log files,
   b.     That person's employee evaluations and disciplinary files,
   c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,
   d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
   e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
   f.     All text messages and instant messages from that person about Plaintiff,
   g.     That person's training files,
   h.     That person's applications and new hire orientation file,
   i.     All witness statements taken by and from that person during all investigations about Plaintiff,
   j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 7B:**     Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding Interrogatory who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant as follows:

5

    a.     That person's work absence and attendance log files,

    b.     That person's employee evaluations and disciplinary files,

    c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

    d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff's lawsuit,

    e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff's lawsuit,

    f.     All text messages and instant messages from that person about Plaintiff,

    g.     That person's training files,

    h.     That person's applications and new hire orientation file,

    i.     All witness statements taken by and from that person during all investigations about Plaintiff,

    j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 8:** Identify by name, last known address, telephone number and job title the persons, other than those identified in the immediately preceding Interrogatory, who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant.

**ANSWER:** No other employee other than Dr. Lange authorized the decision to terminate Plaintiff.

**REQUEST FOR PRODUCTION 8A:** Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

    a.     That person's work absence and attendance log files,

    b.     That person's employee evaluations and disciplinary files,

    c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

    d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

    e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

    f.     All text messages and instant messages from that person about Plaintiff,

    g.     That person's training files,

    h.     That person's applications and new hire orientation file,

    i.     All witness statements taken by and from that person during all investigations about Plaintiff,

    j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

    Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 8B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory as follows:

    a.     That person's work absence and attendance log files,

    b.     That person's employee evaluations and disciplinary files,

    c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

    d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

    e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

    f.     All text messages and instant messages from that person about Plaintiff,

    g.     That person's training files

    h.     That person's applications and new hire orientation file,

i.      All witness statements taken by and from that person during all investigations about Plaintiff,

j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 9:**      Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.

**ANSWER:**      Pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 10:**      Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory.

**ANSWER: OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant and not proportional to the needs of the case in that other employees committed violations of the policies that Plaintiff violated that warranted termination that are so dissimilar to Plaintiff's termination to be incomparable and therefore not probative.

Subject to and without waiving the foregoing objection, Plaintiff was terminated pursuant to TTU System Reg. 07.07(4)(b)(iv), which stated that Plaintiff failed to "[perform] work in a professional manner and in accordance with expected standards of performance." Alejandra Castaneda, who can be reached by and through Enrique Chavez Jr.., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 Stanton Street, El Paso, Texas 79902was also terminated for billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members.

8

**REQUEST FOR PRODUCTION 10A:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

      a.     That person's work absence and attendance log files,

      b.     That person's employee evaluations and disciplinary files,

      c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

      d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

      e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

      f.     All text messages and instant messages from that person about Plaintiff,

      g.     That person's training files,

      h.     That person's applications and new hire orientation file,

      i.     All witness statements taken by and from that person during all investigations about Plaintiff,

      j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:**    **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production.

           Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 10B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

      a.     That person's work absence and attendance log files,

      b.     That person's employee evaluations and disciplinary files,

      c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

      d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.   All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
f.   All text messages and instant messages from that person about Plaintiff,
g.   That person's training files,
h.   That person's applications and new hire orientation file,
i.   All witness statements taken by and from that person during all investigations about Plaintiff,
j.   All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 11:**    Describe and identify any training, including by way of courses, classes or other mediums, whether formal or informal, which Defendant's agents and employees have been provided on the subject of illegal discrimination made the basis of Plaintiff's lawsuit

**ANSWER:** **OBJECTION:** TTUHSCEP objects to the extent that this interrogatory request any discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, all employees must complete the training entitled "Title IX, Sexual Misconduct, and Clery Act" (certified and approved by TWC). Further, Pursuant to Rule 33(d), Defendant is reviewing its business records and will produced business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 12:**    Identify by name, address, telephone number and job title, Defendant's agents or employees who have received any of the training described in the immediately preceding Interrogatory regarding illegal discrimination made the basis of Plaintiff's lawsuit.

**ANSWER:** **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is overly broad, not properly limited in time, and therefore irrelevant and not proportional to the needs of the case. It is irrelevant if anyone who was not involved in this matter received training and therefore those records are irrelevant are not proportional to the needs of the case due to their low importance to resolving the issue of whether

TTUHSCEP retaliated against Plaintiff. Furthermore, Plaintiff's interrogatory is not limited in time, and requests information for over ten years, as Plaintiff was employed by TTUHSCEP for ten years prior to her termination. TTUHSCEP further objects to the extent that this interrogatory request any discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, pursuant to TTUHSCEP regulations, all employees must go through training. In addition, pursuant to Rule 33(d), Defendant is reviewing its business records and will produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 13:**    Identify by name, last known address, telephone number and job title all persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline, and employee benefits over the last five years, including but not limited to those carrying out the procedures or decisions relating to Plaintiff.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant. All persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline, and employee benefits over the last five years is irrelevant.

Subject to and without waiving the foregoing objection, the person charged with carrying out procedures or decisions regarding hiring, firing, discipline and employee benefits at the time Plaintiff was employed were Rebecca Salcido (former VP of HR) and Jennifer Erickson (current VP of HR).

**INTERROGATORY 14:**    Identify by name, last known address, telephone number, and date of birth the person(s) who took over Plaintiff 's job duties.

**ANSWER:**    Robyn Aguilar, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848, took over Plaintiff's position on July 16, 2024. Her date of birth is June 9, 2001.

**REQUEST FOR PRODUCTION 14A:**    Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

    a.    That person's work absence and attendance log files,
    b.    That person's employee evaluations and disciplinary files,
    c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and

denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d.  All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.  All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.  All text messages and instant messages from that person about Plaintiff,

g.  That person's training files,

h.  That person's applications and new hire orientation file,

i.  All witness statements taken by and from that person during all investigations about Plaintiff,

j.  All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE: <u>OBJECTION:</u>** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Ms. Aguilar's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 14B:** Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a.  That person's work absence and attendance log files,

b.  That person's employee evaluations and disciplinary files,

c.  All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d.  All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.  All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.  All text messages and instant messages from that person about Plaintiff,

g.  That person's training files,

h.  That person's applications and new hire orientation file,

i.  All witness statements taken by and from that person during all investigations about Plaintiff,

**j.**    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Ms. Aguilar's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 15:**    If in response to discovery you withheld any information, documents or material due to "privacy" or "confidentiality" concerns, or under a claim of privilege, describe the information, documents or material withheld and identify the privilege, if any, asserted for each item or group of items withheld.

**ANSWER:**    Documents protected by the attorney clients and work product privileges have been withheld. Documents are still being reviewed and a document log will be produced. Furthermore, documents have been withheld due to confidentiality awaiting execution of the protective order as agreed in the parties' 26f report.

**INTERROGATORY 16:**    Describe in reasonable detail the investigation and or investigations Defendant undertook into Plaintiff's claims of discrimination and or retaliation by providing the names, last known addresses and phone numbers of the investigators, the witnesses whom were identified, the date each witness was communicated with, the information received from each witness or document and the outcome of the investigation and/or investigations.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to this request to the extent that it requests information related to a discrimination claim. Plaintiff has not properly raised a claim for discrimination in her complaint, and therefore is not entitled to discovery on this issue.

Subject to and without waiving the foregoing objection, upon receiving Plaintiff's complaint, TTUHSCEP opened a file to conduct an investigation. The complaint was received on Ms. Balderrama's last day of employment, and therefore no investigation was performed.

**INTERROGATORY 17:**    Identify by name, job title, last known address and telephone number Defendant's employees who, over the last three (3) years, have received any type of leave, including the reasons for each leave, e.g. disability leave, pregnancy leave, military leave, worker's compensation injury leave, bereavement leave, personal leave or any other leave.

13

**ANSWER:**     **OBJECTION:** TTUHSCEP objects to this interrogatory as it requests information irrelevant to the lawsuit. Other employees who requested leave is irrelevant and are not proportional to the needs of the case due to their low importance to resolving the issue of whether TTUHSCEP retaliated against Plaintiff.

**REQUEST FOR PRODUCTION 17A:**     Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

   a.    That person's work absence and attendance log files,
   b.    That person's employee evaluations and disciplinary files,
   c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
   d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
   e.    All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
   f.    All text messages and instant messages from that person about Plaintiff,
   g.    That person's training files,
   h.    That person's applications and new hire orientation file,
   i.    All witness statements taken by and from that person during all investigations about Plaintiff,
   j.    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. The personnel files of any employee who took leave in the previous three years is irrelevant to the issues at this lawsuit.

**REQUEST FOR PRODUCTION 17B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:
   a.    That person's work absence and attendance log files,
   b.    That person's employee evaluations and disciplinary files,
   c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,
   d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

14

e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.      All text messages and instant messages from that person about Plaintiff,

g.      That person's training files

h.      That person's applications and new hire orientation file,

i.      All witness statements taken by and from that person during all investigations about Plaintiff,

j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **<u>OBJECTION:</u>** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. The personnel files of any employee who took leave in the previous three years is irrelevant to the issues at this lawsuit.

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant.* | § | |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S REQUESTS FOR PRODUCTION

TO:   Plaintiff, Cecilia Castaneda, by and through her attorneys of record, Enrique Chavez, Jr., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902

Defendant Texas Tech University Health Science Center- El Paso ("TTUHSCEP") and serves these responses to Requests for Production pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

1

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

## CERTIFICATE OF SERVICE

I certify that that on September 5, 2024, this document was served via electronic mail, delivery receipt and read receipt requested, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

# RESPONSES

**REQUEST FOR PRODUCTON 1:** Without wiping out or deleting source media and metadata, produce all of Defendant's files and subfiles, documents and electronic information which are kept and maintained on Cecilia Castaneda ("Plaintiff ") in native electronic file formats and as kept in the usual course of business, as follows:

   a)   All work absence and attendance log files on and for Plaintiff,
   b)   Plaintiff's employee evaluations and disciplinary files, all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, reports, complaints, grievances, investigations, terminations, layoffs, separations, etc., about Plaintiff,
   c)   All documents and files created by those with successive authority over Plaintiff, including supervisors, about the subject matters complained of in Plaintiff 's lawsuit,
   d)   All emails and attachments to and from Plaintiff 's supervisors' about Plaintiff,
   e)   All emails and attachments to and from Plaintiff 's managers' about Plaintiff,
   f)   All emails and attachments to and from Defendant's Human Resources personnel about the Plaintiff's complaints or reports of sexual harassment,
   g)   All text messages and instant messages to and from Plaintiff 's supervisors' and managers' accounts about Plaintiff,
   h)   All text messages and instant messages to and from Defendant's Human Resources personnel accounts about Plaintiff,
   i)   Plaintiff 's payroll history, payroll and compensation files,
   j)   Plaintiff 's employee benefits files for the duration of all employment periods with Defendant,
   k)   Plaintiff 's training files,
   l)   Plaintiff 's applications and new hire orientation file,
   m)   All witness statements taken concerning Plaintiff during all investigations about Plaintiff,
   n)   All witness statements taken concerning Plaintiff during all investigations about
   o)   Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.
   p)   Excepting attorney-client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff 's complaints and reports, if any, during Plaintiff's employment with Defendant.
   q)   Plaintiff 's complete employee file with subfiles regardless of what Defendant calls them.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff has not set any sort of time limit on the documents it seeks. TTUHSCEP further objects to this request as overly broad and not properly limited in scope. Plaintiff seeks responsive documents related to seventeen subcategories of documents, all of differing topics.

3

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 2:** Produce all of Defendant's physical, i.e. hard files and documents, as maintained in the ordinary course of business, on Plaintiff as follows:

a)      All work absence and attendance log files on and for Plaintiff,

b)      All notices to and from Plaintiff concerning all other leaves,

c)      Plaintiffs employee evaluations and disciplinary files,

d)      Plaintiff 's worker's compensation and medical files,

e)      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

f)      All documents and files created by those with successive authority over Plaintiff, including supervisors, about the subject matters complained of in Plaintiff 's lawsuit,

g)      Plaintiff 's payroll history, payroll and compensation files,

h)      Plaintiff 's employee benefits files for the duration of all employment periods with Defendant,

i)      Plaintiff 's applications and new hire orientation file,

j)      All witness statements taken concerning Plaintiff during all investigations about Plaintiff,

k)      All witness statements taken concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

l)      Excepting attorney client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff 's complaints and reports, if any, during Plaintiff's employment with Defendant.

m)      Plaintiff 's complete employee file and all subparts regardless of what Defendant calls them.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff has not set any sort of time limit on the documents it seeks. TTUHSCEP further objects to this request as overly broad and not properly limited in scope. Plaintiff seeks responsive documents related to thirteen subcategories of documents, all of differing topics.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 3:** Produce all video files and recordings, audio files and recordings, notebooks, pamphlets and posters, provided to or shown to Plaintiff before hiring and during the course of Plaintiff's employment with Defendant relating to illegal discrimination made

the basis of this lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. TTUHSCEP further objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 4:** Produce all of Defendant's employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks evidencing the policies and procedures which Defendant applies to its employees concerning illegal discrimination made the basis of Plaintiff's lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 5:** Produce all of Defendant's handbooks, manuals, memos, advisories and notices relating to all actions which are to be taken by Defendant in response to a report or complaint of illegal discrimination or retaliation by an employee, including written procedures and protocols for investigating such reports and complaints.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 6:** If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, please produce all electronically stored information in native electronic file format showing

attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters shown during such training.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 7:** If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation over the last five years, produce all documentation showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters received during such training.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 8:** Produce all electronically stored information, in native electronic file format as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Whether Dr. Lange has been disciplined over the past five years is irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issues.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 9:** Produce all documentation, as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Whether Dr. Lange has been disciplined over the past five years is irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issues. TTUHSCEP further objects to this request as duplicative of Request for Production 9.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 10:**       Produce all documentation describing Plaintiff's job duties and essential job functions during all work periods with Defendant.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Documentation reflecting job description over ten years old has little probative value to resolve the issues at hand in this lawsuit.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 11:**       Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all investigators relating to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as it requests information irrelevant to the dispute. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination. TTUHSCEP further objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCEP for over a decade before her termination. Documentation reflecting Plaintiff's employment over ten years old has little probative value to resolve the issues at hand in this lawsuit.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 12:** Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all state government agencies including the Workforce

Commission and the Civil Rights Division relating to Plaintiff 's employment, taxes, benefits, and reports and complaints of discrimination.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff does not provide a time limit to this request. TTUHSCEP further objects to this request to the extent it requests  any  discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination. TTUHSCE further objects to the extent that this request seeks information related to any state claims. Plaintiff has not properly raised any claims under Texas state law, so TTUHSCEP objects to the extent that responsive documents go solely to any state law claims.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTON 13:**        Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all federal government agencies such as the EEOC, relating to Plaintiff 's employment, taxes, benefits, and reports and complaints of discrimination and/or retaliation.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this request as overly broad and not properly limited in time. Plaintiff was an employee of TTUHSCE for over a decade before her termination. Plaintiff does not provide a time limit to this request. TTUHSCEP further objects to this request to the extent it requests  any  discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES

---

TO:  Plaintiff, Cecilia Castaneda, by and through her attorneys of record, Enrique Chavez, Jr., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902

Defendant Texas Tech University Health Science Center- El Paso ("TTUHSCEP") and serves these first amended objections and responses to Interrogatories pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*          Page 1 of 16
Defendant's First Amended Responses to First Set of Interrogatories

264

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24019867
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

### CERTIFICATE OF SERVICE

I certify that that on October 24, 2024, this document was served via electronic mail, delivery receipt and read receipt requested, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

/s/ Stephanie A. Criscione
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*                    Page 2 of 16
Defendant's First Amended Responses to First Set of Interrogatories

265

## INTERROGATORIES

**INTERROGATORY 1:**   Identify by name, last known address, telephone number and job title, Plaintiff 's immediate supervisor or supervisors and all others with successive authority over the Plaintiff and the Plaintiff 's work while employed with Defendant.

**ANSWER:**   **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is overly broad, not properly limited in time, and therefore irrelevant and not proportional to the needs of the case. Successive authority over Plaintiff other than her immediate supervisor and those with authority to make ultimate employment decisions are irrelevant to this case and are not proportional to the needs of the case due to their low importance to resolving the issue of whether TTUHSCEP retaliated against Plaintiff to the extent that they were not involved in the employment decision. Furthermore, Plaintiff's interrogatory is not limited in time, and requests information for over ten years, as Plaintiff was employed by TTUHSCEP for ten years prior to her termination.

Subject to and without waiving the foregoing objection, Plaintiff's immediate supervisor at the time of her termination was Brenda Argueta, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848, (512) 936-1675. Before Brenda Argueta, Plaintiff was supervised by Alejandra Castaneda and Sylvia Lopez.

**INTERROGATORY 2:**   Identify by name, last known address, telephone number and job title all persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline, and employment benefits over the last five years.

**ANSWER:**   **OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant and no proportional to the needs of the case. Persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years is irrelevant and not proportional to the needs of the case as a five-year history is of low importance to resolving the issues whether TTUHSCEP retaliated against Plaintiff in connection to those that they were not involved in the employment decision.

Subject to and without waiving the foregoing objection, the persons responsible for making TTUHSCEP's employment decisions regarding hiring, firing, leave, discipline, and employment benefits at the time of Plaintiff's termination was President Richard Lange, MD, with input from Jennifer Erickson, Andrew Conkovich, Alan Tyroch, Rene Vallejo, and Leticia Cano, subject to and in accordance with State of Texas and federal law.

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*     Page 3 of 16
Defendant's First Amended Responses to First Set of Interrogatories

266

**INTERROGATORY 3:**    Provide Plaintiff 's job title and describe Plaintiff's job functions and duties.

**ANSWER:**    Plaintiff's job title was Certified Medical Assistant. In addition, pursuant to Rule 33(d), Defendant has reviewed its business records and is producing business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 4:**    Identify, describe and provide the amounts of all pay rates, wages, and employment benefits, e.g., medical insurance, dental insurance, workers' compensation insurance, other insurance, 401K plan benefits, pension benefits, etc., provided to or available to Plaintiff just before she was terminated and during the course of Plaintiff's employment with Defendant.

**ANSWER:**    Pursuant to Rule 33(d), Defendant has reviewed its business records and is producing business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 5:**    Provide every reason you gave to Plaintiff for her termination the day she was terminated.

**ANSWER:**    Plaintiff was verbally told that her employment was being terminated due to her involvement in billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members. The written notification stated that "[t]his action is being taken because you have not complied with TTUHSC EP polices *(sic)* required of your position."

**INTERROGATORY 6:**    In connection with the immediately preceding Interrogatory, identify by name, last known address, telephone number and job title the persons with knowledge of the reasons or circumstances surrounding Defendant's layoff or discharge of Plaintiff or, otherwise, Plaintiff 's separation from employment with Defendant.

**ANSWER:**    The following persons have knowledge of the reasons for Plaintiff's discharge:

- Richard Lange, MD; President, TTUHSCEP; Dean, PLFSOM, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
- Andrew Conkovich; VP of Institutional Compliance, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
- Jennifer Erickson; VP of Human Resources, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
- David Bergeon; Managing Director of Human Resources, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848
- Jose Castro, MD; Assistant Professor, Division Chief of Plastic & Reconstructive Surgery, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848

- Patty McCarrol; former VP of Clinical Administration:

**INTERROGATORY 7:**    Identify by name, last known address, telephone number and job title the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant.

**ANSWER:**    Richard Lange, MD; President, TTUHSC EP; Dean, PLFSOM**,** c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848

**REQUEST FOR PRODUCTION 7A:** Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant, in their native electronic file formats and as kept in the usual course of business, as follows:

a.    That person's work absence and attendance log files,
b.    That person's employee evaluations and disciplinary files,
c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,
d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
e.    All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
f.    All text messages and instant messages from that person about Plaintiff,
g.    That person's training files,
h.    That person's applications and new hire orientation file,
i.    All witness statements taken by and from that person during all investigations about Plaintiff,
j.    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:**    <u>**OBJECTION:**</u> TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 7B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*                    Page 5 of 16
Defendant's First Amended Responses to First Set of Interrogatories

268

Interrogatory who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant as follows:

a.      That person's work absence and attendance log files,

b.      That person's employee evaluations and disciplinary files,

c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.      All text messages and instant messages from that person about Plaintiff,

g.      That person's training files,

h.      That person's applications and new hire orientation file,

i.      All witness statements taken by and from that person during all investigations about Plaintiff,

j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 8:**    Identify by name, last known address, telephone number and job title the persons, other than those identified in the immediately preceding Interrogatory, who approved, authorized or ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant.

**ANSWER:**    No other employee other than Dr. Lange authorized the decision to terminate Plaintiff.

**REQUEST FOR PRODUCTION 8A:**    Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*      Page 6 of 16
*Defendant's First Amended Responses to First Set of Interrogatories*

269

immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a.      That person's work absence and attendance log files,
b.      That person's employee evaluations and disciplinary files,
c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
e.      All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
f.      All text messages and instant messages from that person about Plaintiff,
g.      That person's training files,
h.      That person's applications and new hire orientation file,
i.      All witness statements taken by and from that person during all investigations about Plaintiff,
j.      All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 8B:**      Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory as follows:

a.      That person's work absence and attendance log files,
b.      That person's employee evaluations and disciplinary files,
c.      All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
d.      All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*      Page 7 of 16
*Defendant's First Amended Responses to First Set of Interrogatories*

270

e.   All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.   All text messages and instant messages from that person about Plaintiff,

g.   That person's training files

h.   That person's applications and new hire orientation file,

i.   All witness statements taken by and from that person during all investigations about Plaintiff,

j.   All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE: OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Dr. Lange's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 9:**   Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.

**ANSWER:**   Pursuant to Rule 33(d), Defendant has reviewed its business records and is producing produce business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 10:**   Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory.

**ANSWER: OBJECTION:** TTUHSCEP objects to this interrogatory to the extent it is irrelevant and not proportional to the needs of the case in that other employees committed violations of the policies that Plaintiff violated that warranted termination that are so dissimilar to Plaintiff's termination to be incomparable and therefore not probative.

Subject to and without waiving the foregoing objection, Plaintiff was terminated pursuant to TTU System Reg. 07.07(4)(b)(iv), which stated that Plaintiff failed to "[perform] work in a professional manner and in accordance with expected standards of performance." Alejandra Castaneda, who can be reached by and through Enrique Chavez Jr.., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 Stanton Street, El Paso, Texas 79902 was also terminated

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*          Page 8 of 16
Defendant's First Amended Responses to First Set of Interrogatories

271

for billing improprieties associated with the Juvederm filler and Botox procedures for herself and her family members.

**REQUEST FOR PRODUCTION 10A:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a.    That person's work absence and attendance log files,
b.    That person's employee evaluations and disciplinary files,
c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
e.    All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
f.    All text messages and instant messages from that person about Plaintiff,
g.    That person's training files,
h.    That person's applications and new hire orientation file,
i.    All witness statements taken by and from that person during all investigations about Plaintiff,
j.    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE: __OBJECTION:__** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 10B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

a.    That person's work absence and attendance log files,
b.    That person's employee evaluations and disciplinary files,
c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*    Page 9 of 16
*Defendant's First Amended Responses to First Set of Interrogatories*

272

denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.    All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.    All text messages and instant messages from that person about Plaintiff,

g.    That person's training files,

h.    That person's applications and new hire orientation file,

i.    All witness statements taken by and from that person during all investigations about Plaintiff,

j.    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 11:**    Describe and identify any training, including by way of courses, classes or other mediums, whether formal or informal, which Defendant's agents and employees have been provided on the subject of illegal discrimination made the basis of Plaintiff's lawsuit.

**ANSWER:**    **OBJECTION:** TTUHSCEP objects to the extent that this interrogatory request any discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, all employees must complete the training entitled "Title IX, Sexual Misconduct, and Clery Act" (certified and approved by TWC).  In addition, pursuant to Rule 33(d), Defendant has reviewed its business records and is producing business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 12:**    Identify by name, address, telephone number and job title, Defendant's agents or employees who have received any of the training described in the immediately preceding Interrogatory regarding illegal discrimination made the basis of Plaintiff's lawsuit.

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*    Page 10 of 16
Defendant's First Amended Responses to First Set of Interrogatories

273

**ANSWER:**     <u>**OBJECTION:**</u> TTUHSCEP objects to this interrogatory to the extent it is overly broad, not properly limited in time, and therefore irrelevant and not proportional to the needs of the case. It is irrelevant if anyone who was not involved in this matter received training and therefore those records are irrelevant are not proportional to the needs of the case due to their low importance to resolving the issue of whether TTUHSCEP retaliated against Plaintiff. Furthermore, Plaintiff's interrogatory is not limited in time, and requests information for over ten years, as Plaintiff was employed by TTUHSCEP for ten years prior to her termination. TTUHSCEP further objects to the extent that this interrogatory request any discovery related to any claim for discrimination, as that information is irrelevant. Plaintiff has not properly raised a discrimination claim, so TTUHSCEP objects to the extent that responsive documents go solely to the claim of discrimination.

Subject to and without waiving the foregoing objection, pursuant to TTUHSCEP regulations, all employees must go through training. In addition, pursuant to Rule 33(d), Defendant has reviewed its business records and is producing business records responsive to this interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 13:**     Identify by name, last known address, telephone number and job title all persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline, and employee benefits over the last five years, including but not limited to those carrying out the procedures or decisions relating to Plaintiff.

**ANSWER:**     <u>**OBJECTION:**</u> TTUHSCEP objects to this interrogatory to the extent it is irrelevant. All persons in Defendant's Human Resources Department, or any such department charged with carrying out procedures or decisions regarding hiring, firing, discipline, and employee benefits over the last five years is irrelevant.

Subject to and without waiving the foregoing objection, the person charged with carrying out procedures or decisions regarding hiring, firing, discipline and employee benefits at the time Plaintiff was employed were Rebecca Salcido (former Vice President of Human Resources), Jennifer Erickson (current Vice President of Human Resources), and David Bergeon (current managing director of Human Resources).

**INTERROGATORY 14:**     Identify by name, last known address, telephone number, and date of birth the person(s) who took over Plaintiff 's job duties.

**ANSWER:**     Robyn Aguilar, c/o Office of the Texas Attorney General, P.O. Box 12548 Capitol Station, Austin, Texas 78711-25848, took over Plaintiff's position on July 16, 2024. Her date of birth is June 9, 2001.

**REQUEST FOR PRODUCTION 14A:**     Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*                    Page 11 of 16
Defendant's First Amended Responses to First Set of Interrogatories

274

immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

    a.     That person's work absence and attendance log files,

    b.     That person's employee evaluations and disciplinary files,

    c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

    d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

    e.     All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

    f.     All text messages and instant messages from that person about Plaintiff,

    g.     That person's training files,

    h.     That person's applications and new hire orientation file,

    i.     All witness statements taken by and from that person during all investigations about Plaintiff,

    j.     All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Ms. Aguilar's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**REQUEST FOR PRODUCTION 14B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:

    a.     That person's work absence and attendance log files,

    b.     That person's employee evaluations and disciplinary files,

    c.     All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

    d.     All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*        Page 12 of 16
Defendant's First Amended Responses to First Set of Interrogatories

275

e.  All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
f.  All text messages and instant messages from that person about Plaintiff,
g.  That person's training files,
h.  That person's applications and new hire orientation file,
i.  All witness statements taken by and from that person during all investigations about Plaintiff,
**j.**  All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** **OBJECTION:** TTUHSCEP objects to this as it is unnecessarily duplicative. TTUHSCEP objects as this is not the proper format for discovery in that Plaintiff requests documents be produced in written interrogatories instead of in requests for production. TTUHSCEP further objects that requests 7.a(a)-(c), 7.a(g)-(h) are overly broad and irrelevant. Ms. Aguilar's personnel file is irrelevant to the issues at this lawsuit. This request is further not properly limited in time.

Subject to and without waiving the foregoing objection, please see documents produced in this case. TTUHSCEP reserves the right to amend this response and supplement accordingly pursuant to the Rules of Civil Procedure.

**INTERROGATORY 15:**  If in response to discovery you withheld any information, documents or material due to "privacy" or "confidentiality" concerns, or under a claim of privilege, describe the information, documents or material withheld and identify the privilege, if any, asserted for each item or group of items withheld.

**ANSWER:**  Documents protected by the attorney clients and work product privileges have been withheld. Please see the privilege log included with Defendant's production.

**INTERROGATORY 16:**  Describe in reasonable detail the investigation and or investigations Defendant undertook into Plaintiff's claims of discrimination and or retaliation by providing the names, last known addresses and phone numbers of the investigators, the witnesses whom were identified, the date each witness was communicated with, the information received from each witness or document and the outcome of the investigation and/or investigations.

**ANSWER:**  **OBJECTION:** TTUHSCEP objects to this request to the extent that it requests information related to a discrimination claim. Plaintiff has not properly raised a claim for discrimination in her complaint, and therefore is not entitled to discovery on this issue.

Subject to and without waiving the foregoing objection**,** upon receiving Plaintiff's complaint, TTUHSCEP opened a file to conduct an investigation. The complaint was received on Ms. Balderrama's last day of employment, and therefore no investigation was performed. In addition, pursuant to Rule 33(d), Defendant has reviewed its business records and is producing business records responsive to this

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*     Page 13 of 16
*Defendant's First Amended Responses to First Set of Interrogatories*

276

interrogatory. The burden of ascertaining the answer is substantially the same for both parties.

**INTERROGATORY 17:**    Identify by name, job title, last known address and telephone number Defendant's employees who, over the last three (3) years, have received any type of leave, including the reasons for each leave, e.g. disability leave, pregnancy leave, military leave, worker's compensation injury leave, bereavement leave, personal leave or any other leave.

**ANSWER:**    Plaintiff has withdrawn this interrogatory.

**REQUEST FOR PRODUCTION 17A:**    Produce Defendant's files and subfiles, documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

    a.    That person's work absence and attendance log files,
    b.    That person's employee evaluations and disciplinary files,
    c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,
    d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,
    e.    All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,
    f.    All text messages and instant messages from that person about Plaintiff,
    g.    That person's training files,
    h.    That person's applications and new hire orientation file,
    i.    All witness statements taken by and from that person during all investigations about Plaintiff,
    j.    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** Plaintiff has withdrawn this request.

**REQUEST FOR PRODUCTION 17B:**    Produce Defendant's files and subfiles, and documents which are kept and maintained on the persons, identified in the immediately preceding Interrogatory, as follows:
    a.    That person's work absence and attendance log files,
    b.    That person's employee evaluations and disciplinary files,
    c.    All files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*                    Page 14 of 16
Defendant's First Amended Responses to First Set of Interrogatories

277

denials, accommodations, investigations, terminations, lay offs, separations, etc., about Plaintiff,

d.    All files created by those with successive authority over that person including supervisors about the subject matters complained of in Plaintiff 's lawsuit,

e.    All emails and attachments to and from that person's work email accounts about the subject matters complained of in Plaintiff 's lawsuit,

f.    All text messages and instant messages from that person about Plaintiff,

g.    That person's training files

h.    That person's applications and new hire orientation file,

i.    All witness statements taken by and from that person during all investigations about Plaintiff,

j.    All witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff 's reports and complaints during Plaintiff's employment with Defendant.

**RESPONSE:** Plaintiff has withdrawn this request.

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*                    Page 15 of 16
Defendant's First Amended Responses to First Set of Interrogatories

278

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA,<br>*Plaintiff*, | § § § | |
| v. | § § | |
| STATE OF TEXAS – TEXAS TECH<br>UNIVERSITY SCIENCE CENTER – EL<br>PASO,<br>*Defendants*. | § § § § § | CIVIL ACTION NO. 3:24-cv-00190-LS |

## VERIFICATION

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jennifer Erickson, Vice President of Human Resources for Texas Tech University Health Science Center-El Paso ("TTUHSCEP"), and being by me duly sworn, upon his oath stated that he has read the foregoing amended answers to Plaintiff's First Set of Interrogatories to TTUHSCEP, and that the information contained therein are within her personal knowledge or have been provided to her by other representatives of TTUHSCEP, and are true and correct.

_____
Jennifer Erickson

SUBSCRIBED AND SWORN TO before me on this the **23** day of October, 2024, to which witness my hand and seal of office.

_____



NOTARY PUBLIC, STATE OF TEXAS

---

*Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso*          Page 16 of 16
Defendant's First Amended Responses to First Set of Interrogatories

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISOBN

Cecilia Castaneda

   Plaintiff,

v.               3:24-cv-00190-LS

Texas Tech Health Sciences Center

   Defendant

## PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION OF DEFENDANT'S DESIGNATED REPRESENTATIVES WITH DUCES TECUM

TO: Defendant, Texas Tech Health Sciences Center.

Pursuant to the Federal Rules of Civil Procedure, Plaintiff(s) will take the sworn deposition testimony of the Designated Representative(s) of Texas Tech Health Sciences Center who is/are to be sworn by an officer authorized to administer oaths at Rasberry and Associates, 201 E. Main, Suite 1616, El Paso, Texas 79901, Telephone 915-533-1199, on Feb. 24, 25, & 27, 2025 at 10:00 a.m. and continuing day to day until its conclusion. Plaintiff will depose the Designated Representative(s) on the topics attached hereto, as Exhibit A. As part of the obligation to confer, if Defendant's designees are unavailable on the date above, you are requested to provide a range of dates on which to take these 30(b)(6) depositions. You are also commanded to produce within 30 days of your receipt of this notice, the documents listed in the attached duces tecum. The deposition will be recorded stenographically and by video.

**SIGNED** on December 19, 2024.

        Respectfully submitted,
        **Chavez Law Firm**
        2101 N. Stanton Street
        El Paso, Texas 79902
        915-351-7772

  By: _____
        Enrique Chavez, Jr., State Bar No. 24001873
        enriquechavezjr@chavezlawpc.com
        Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

On December 19, 2024, I certify that the forgoing instrument was served on the following counsel of record by electronic means:

Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, TX  78711-25848
telephone 512-475-4104
fax 512-320-0667
Stephanie A. Criscione
Stephanie.Criscione@oag.texas.gov

_____
Enrique Chavez, Jr.

# EXHIBIT A

## TOPICS

1. The **data sources and types of media** Defendant used to house, store, maintain, hold and/or keep Defendant's employment and personnel information about Plaintiff, comparator employees and its decision makers concerning related employment decisions made and actions taken by Defendant's agents, and the specific locations where electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container is kept by Defendant. Data sources include places like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

2. The sexual harassment of Plaintiff, Plaintiff's reports of sexual harassment, Defendant's investigation of all reports of sexual harassment of Plaintiff, and Defendant's termination of Plaintiff.

3. The **substance of training**, if any, which Defendant provided **to Plaintiff**, specifically, before hiring and during the course of Plaintiff's employment with Defendant relating to (a) sex discrimination, including sexual harassment, and retaliation (b) preventing sex discrimination, including sexual harassment, and retaliation, and (c) the workplace polices, protocols, and procedures it applies to its employees generally, including the substance of Defendant's policies, protocols, and procedures as written in its employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks

4. The **substance of training**, if any, which Defendant provides its employees, specifically Richard Lange, Terry Balderrama, Rene Vallejo, Jennifer Erickson, Leticia Cano, David Bergen, and Andrew Conkovich, if any about (a) sex discrimination, including sexual harassment, and retaliation (b) preventing sex discrimination, including sexual harassment, and retaliation, and (c) the workplace polices, protocols, and procedures it applies to its employees generally, including the substance of Defendant's policies, protocols, and procedures as written in its employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks.

5. The **substance of training**, if any, which Defendant provides its employees, specifically Richard Lange, Terry Balderrama, Rene Vallejo, Jennifer Erickson, Leticia Cano, David Bergen, and Andrew Conkovich about what action, if any, is to be taken in response to a **report or complaint of sexual harassment, sex discrimination, and retaliation**

**in the workplace,** including the substance of written procedures and protocols for investigating such reports and complaints.

6.  The factual basis, or lack thereof, for **Defendant's employment and personnel decisions** which led to or contributed, in any way, to the **separation** of Plaintiff from Defendant's employment, including the identify of those **who** made, ratified and contributed to such decisions, **how** such decisions were made, **how** such decisions were **documented**, if at all, **when** such decisions were made, the location and substance of any and all **documentation**, including electronically stored information ("ESI"), concerning such decisions, if any, as well as the **creation dates, modification dates and authorship** of such documentation and electronically stored information.

7.  The factual basis, or lack thereof, for **Defendant's employment and personnel decisions** which led to or contributed, in any way, to any and all **discipline** of Plaintiff, if any, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information ("ESI"), concerning such decisions, if any, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

8.  Defendant's communications concerning the matters of sexual harassment, sex discrimination, and retaliation complained of in Plaintiff's lawsuit, including the identity of those who made, ratified and/or contributed to such communications, how such communications were made, how such communications were documented, if at all, when such communications were made, the location and substance of any and all documentation memorializing such communications, including electronically stored information, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

9.  The substance of and factual basis for Defendant's corporate knowledge of the **monetary value, including the market value, of Plaintiff's compensation** and all employee benefits, including medical insurance, dental insurance, workers' compensation coverage insurance, other insurance, 401K plan benefits, and pension benefits available to Plaintiff during all employment periods with Defendant or to be available to Plaintiff in the future including upon termination of any probationary period or any waiting period. If the value of Plaintiff's benefits may be stated as a percentage of salary or wages, Defendant should be prepared to testify as to this amount/percentage as well.

10. The factual basis, or lack thereof, for Defendant's **employee evaluations** of Plaintiff, the employment decisions it then took, or did not take, as a result of such evaluations, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information, concerning such decisions, if any, as well as the creation

dates, modification dates and authorship of such documentation and electronically stored information.

11. Excepting attorney-client communications and work product, the substance of and factual basis for **Defendant's corporate knowledge of all statements** about the discriminatory and retaliatory acts Plaintiff complains of, including all statements made by any and all persons before, during or after any formal or informal investigatory process.

12. The factual basis for **decisions by Human Resources and those with decisional or executive authority** for the promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, and separations, if any, of Plaintiff, and other employees in similar positions to Plaintiff, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information, concerning such decisions, if any, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

13. The substance of training, if any, which Defendant provides its employees, supervisors, and managers about what action, if any, is to be taken in response to a report or complaint of sexual harassment, sex discrimination or retaliation in the workplace, including the substance of written procedures and protocols for investigating such reports and complaints.

14. The actions, if any, Defendant took to protect the Plaintiff from further sexual harassment, sex discrimination, and retaliation once it was placed on notice of the potential for such discriminatory conduct.

15. Disciplinary actions, if any, it took against Defendant's employees for actions taken or decisions made regarding Plaintiff.

16. The contents and substance of any policies, protocols, and procedures, as well as the enforcement or non-enforcement of such policies, protocols, and procedures, regarding discounted medical procedures for employees and family members, from 2013 to the present.

17. The discounted medical procedures list, menu or document created, amended approved, adopted, and or ratified by Terry Balderrama.

18. The substance of all emails, instant messages, and written communications by and among Terry Balderrama and Defendant's employees in any way discussing discounted medical procedures over the last five years.

19. The identity of all employees — by name, address, phone number, date of birth, position, and whether or not the employee had complained of sexual harassment — whom Defendant terminated, wrote up, or otherwise disciplined, in part, because the employee used an employee discount for a medical procedure for that employee or a family member, from 2013 to the present, and what actions Defendant took to document, if at all, that a discount was or was not taken, including but not merely limited to mention of such in employee evaluations,

284

personnel action notices, memoranda, emails, instant messages, and in Defendant's databases.

## DUCES TECUM

1. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Richard Lange about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

2. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Terry Balderrama about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

3. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Rene Vallejo about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

4. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Jennifer Erickson about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

5. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Leticia Cano about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

6. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from David Bergeon about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

7. All handwritten notes, emails, memos, investigatory notes, and written communications to, by or from Andrew Conkovich about Plaintiff's reports of sexual harassment, her disciplinary write ups, if any and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

8. All witness statements concerning Plaintiff's reports of discriminatory comments with respect to sex discrimination, sexual harassment, and retaliation, from 2020 to the present, her

286

disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

9. All employee evaluations of Plaintiff.

10. All disciplinary notices to Plaintiff.

11. All emails, instant messages, other electronically stored information and hand-written noes in any way memorializing the decision-making process and decision to separate Plaintiff from her employment with Defendant.

12. The contents and substance of any policies, protocols, and procedures, as well as the enforcement or non-enforcement of such policies, protocols, and procedures, regarding discounted medical procedures for employees and family members, from 2013 to the present.

13. All emails, instant messages, and written communications by and among Terry Balderrama and Defendant's employees in any way discussing discounted medical procedures over the last five years.

14. The discounted medical procedures list, menu or document created, amended approved, adopted, and or ratified by Terry Balderrama.

15. All documents showing termination, write ups, or discipline, in part, because the employee used an employee discount for a medical procedure for that employee or a family member, from 2013 to the present, and all documents showing mention of such discounts for a medical procedure in employee evaluations, personnel action notices, memoranda, emails, instant messages, and in Defendant's databases.

16. All documents and electronically stored information forming the basis for Defendant's corporate knowledge for topics 1-19.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

CECILIA CASTANEDA,                )
                                  )
        Plaintiff,                )
                                  )
v.                                ) CIVIL ACTION NO.
                                  ) 3:24-cv-00190-LS
STATE OF TEXAS-TEXAS TECH         )
UNIVERSITY HEALTH SCIENCE         )
CENTER-EL PASO,                   )
                                  )
        Defendant.                )

------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF
CECILIA CASTANEDA
FEBRUARY 21, 2025

------------------------------------

     The Oral and Videotaped Deposition of

CECILIA CASTANEDA, produced as a witness at the instance

of the Defendant, and duly sworn, was taken in the

above-styled and numbered cause on Friday,

February 21, 2025, from 10:05 a.m. to 1:10 p.m., in and

for the State of Texas, reported by machine shorthand,

at 201 East Main, El Paso, Texas 79901, pursuant to the

Federal Rules of Civil Procedure and the provisions

stated on the record or attached hereto.

Stenographically Reported By:

Suzette Ramirez

2

1                    A P P E A R A N C E S

2   For the Plaintiff:

3        Mr. Michael M. Osterberg
         Chavez Law Firm
4        2101 N. Stanton Street
         El Paso, Texas 79902
5        mikeosterberg@chavezlawpc.com

6
    For the Defendant:
7
         Ms. Stephanie A. Criscione
8        Office of the Attorney General
         209 West 14th Street, 6th Floor
9        Austin, Texas 78701
         stephanie.criscione@oag.texas.gov
10

11  Also Present:

12       Rodrigo Velarde, Videographer
         Billy Webster
13       Amelia Partida

14

15

16                      I N D E X

17  WITNESS:

18  CECILIA CASTANEDA

19       Examination By Ms. Criscione              4

20  CHANGES AND SIGNATURE                        107

21  REPORTER'S CERTIFICATION                     109

22

23

24

25

| EXHIBIT | DESCRIPTION | PAGE |
|---------|-------------|------|
| Exhibit 1 | Email | 8 |
| Exhibit 2 | Email | 9 |
| Exhibit 3 | Screenshot of Email | 9 |
| Exhibit 5 | Requests for Production | 15 |
| Exhibit 6 | Plaintiff's Second Disclosures | 20 |
| Exhibit 7 | Email | 26 |
| Exhibit 8 | Employee Affidavit | 36 |
| Exhibit 9 | Operating Policy and Procedure | 39 |
| Exhibit 10 | Performance Evaluation | 41 |
| Exhibit 11 | Plaintiff's Original Complaint | 44 |
| Exhibit 12 | Job Response | 51 |
| Exhibit 13 | Requests for Admission | 69 |
| Exhibit 14 | Charge of Discrimination | 71 |
| Exhibit 15 | Email | 82 |
| Exhibit 16 | Email | 98 |

1          THE VIDEOGRAPHER:  This is the deposition

2   of Cecilia Castaneda, in the matter of Cecilia Castaneda

3   versus State of Texas, et. al.

4          Our location is 201 East Main Street, suite

5   1616, in El Paso, Texas.

6          And we're on the record at 10:05 a.m.

7          My name is Rodrigo Velarde.  The address is

8   9901 Brodie Lane, Austin, Texas, 78748.

9          Will all parties please introduce

10  themselves after which the court reporter will swear in

11  the witness.

12          MR. OSTERBERG:  Michael Osterberg from the

13  Chavez Law Firm for the plaintiff, Cecilia Castaneda.

14          MS. CRISCIONE:  Stephanie Criscione from

15  the Office of the Attorney General for the defendant

16  Texas Tech University Health Sciences Center-El Paso.

17                CECILIA CASTANEDA,

18  having been duly sworn by the Stenographic Reporter,

19  testified as follows:

20                    EXAMINATION

21  BY MS. CRISCIONE:

22      Q.  **Good morning.**

23      A.  Good morning.

24      Q.  **Please state your full name for the record.**

25      A.  Cecilia Castaneda.

1     Q.  And, Ms. Castaneda, have we ever met before?

2     A.  No.

3     Q.  So do you understand that I represent Texas

4 Tech University Health Sciences Center-El Paso in this

5 lawsuit?

6     A.  Yes.

7     Q.  And for ease of the record 'cause that's a bit

8 of a mouthful, I'm gonna just call it Texas Tech-El

9 Paso.

10        Is that okay?

11     A.  That's fine.

12     Q.  Now, I -- I wanna be -- clear up something from

13 the beginning.

14        You are suing the university, Texas Tech-El

15 Paso.  Correct?

16        MR. OSTERBERG:  Objection --

17     A.  Yes.

18        MR. OSTERBERG:  -- form.

19     Q.  (BY MS. CRISCIONE)  You're suing a state

20 university.  Correct?

21        MR. OSTERBERG:  Objection, form.

22     A.  Yes.

23     Q.  (BY MS. CRISCIONE)  You're not suing the state

24 itself.

25        MR. OSTERBERG:  Objection, form.

1              You can answer.

2         A.  No.

3         Q.  (BY MS. CRISCIONE)  Okay.  I'm gonna go over a

4    few ground rules, as well.

5              The first thing is you're gonna -- we've

6    already had some examples of it, but even if your

7    attorney objects, you're still gonna answer my

8    questions.  Okay?

9         A.  Yes.

10             MR. OSTERBERG:  And I would just like to

11   caveat that with I can instruct you not to answer a

12   question.

13             THE WITNESS:  Yes, sir.

14             MS. CRISCIONE:  Are we gonna have to start

15   already, Mr. Osterberg?

16             MR. OSTERBERG:  You're giving my client

17   legal advice on the record, so I'm clarifying what her

18   rights are at the deposition.

19             MS. CRISCIONE:  Well, if you would let me

20   continue, I would've caveated with, "But if you need to

21   speak with your attorney, you're more than welcome."

22             MR. OSTERBERG:  Please do.

23        Q.  (BY MS. CRISCIONE)  So your attorney -- your

24   attorney may instruct you not to answer because he

25   believes there is a privilege violation.

7

1         Do you understand that?

2              MR. OSTERBERG:  Objection, form.

3      A.  Yes.

4      Q.  (BY MS. CRISCIONE)  You're doing great so far,

5  but no -- all verbal answers.  No "uh-huhs" or "uh-uhs"

6  for the record.  Okay?

7      A.  Yes.

8      Q.  If you need a break, just let me know.  I would

9  just ask that if there's a question pending, you answer

10  before we take a break.

11      A.  Okay.

12      Q.  Okay.  You know, I tend to try to go in hour

13  increments because we all need our second cup of coffee,

14  we all need a break.  So we'll probably go about an

15  hour, we'll get a break and then at -- at about noon,

16  we'll do lunch and stuff.

17              If you do not under- -- ask -- understand a

18  question, please ask me to rephrase, again, for clarity

19  of the record.

20              Is that okay?

21      A.  Yes.

22      Q.  Sounds great.

23              Now, other than your attorneys, did you

24  speak with anyone regarding your deposition here today?

25      A.  No.

1      Q.  And what documents did you review in
2  preparation for your deposition here today?
3      A.  I reviewed documents that were presented to me.
4      Q.  And do you remember what those documents were?
5      A.  They were emails and my -- what I -- there were
6  emails and there were -- when I submitted my claim for
7  the sexual harassment.
8      Q.  So when you refer to your e- -- emails, are you
9  referring to emails that you sent?
10     A.  That I sent.
11     Q.  I'm gonna start with -- it's a bit of a big
12 tab, but tab 6 in your binder.  This is plaintiff's
13 first round of production.  And we're gonna start with
14 Castaneda --
15             Yes.
16             -- gonna start with Castaneda 000025.  And
17 this is gonna be Deposition Exhibit 1.
18             Ms. Castaneda, is this one of the emails
19 you reviewed in preparation for your deposition here
20 today?
21             (Exhibit marked, Exhibit 1.)
22     A.  Yes, ma'am.
23             MS. CRISCIONE:  Castaneda 00026 [sic] is
24 gonna be Exhibit 2.
25     Q.  (BY MS. CRISCIONE)  Ms. Castaneda, is this

1    another one of the emails that you reviewed in

2    preparation for your deposition here today?

3                    (Exhibit marked, Exhibit 2.)

4        A.  Yes, ma'am.

5                    MS. CRISCIONE:  And then we're gonna go to

6    Castaneda 00083 [sic].  It's gonna be --

7                    MR. OSTERBERG:  These all from tab 6?

8                    MS. CRISCIONE:  Yes.

9                    MR. OSTERBERG:  Thanks.

10                   MS. CRISCIONE:  This is gonna be Deposition

11   Exhibit 3.

12       Q.  (BY MS. CRISCIONE)  Ms. Castaneda, is this

13   another email that you reviewed in preparation for your

14   deposition here today?

15                   (Exhibit marked, Exhibit 3.)

16       A.  No.

17       Q.  (BY MS. CRISCIONE)  So were Exhibit- --

18   Deposition Exhibits 1 and 2 the only emails that you

19   reviewed in preparation for your deposition here today?

20       A.  I reviewed these and I reviewed others that

21   were going back and forth with the supervisors.

22       Q.  So you have emails going back and forth between

23   you and supervisors.

24       A.  No, not for me.

25                   Supervisors that -- Rene Vallejo from H- --

1  that were going to HR with Jennifer Erickson, with

2  David Bergeon.

3      **Q.  So these are emails produced by Texas Tech**

4  **University.**

5      A.  Yes, ma'am.

6      **Q.  Okay.  Now, I wanna go quickly to Exhibit 3.**

7          **Now, Ms. Castaneda, do you understand that**

8  **this was part of your production in -- in response to**

9  **Texas Tech-El Paso's request for production?**

10     A.  Can you rephrase the question.

11     **Q.  Yeah.**

12         **So you see the number on the bottom**

13 **right-hand corner that says Castaneda 0000- -- 2 -- 83?**

14     A.  Yes.

15     **Q.  Now, I'll represent to you that these were**

16 **pro- -- produced to Texas Tech from your attorneys.**

17         **Do you understand that?**

18     A.  Yes.

19     **Q.  So did you provide this screenshot to your**

20 **attorneys for production?**

21     A.  No.

22     **Q.  How did you obtain this document, then?**

23     A.  From Alejandra Castaneda.

24         I didn't provide this.

25     **Q.  So she forwarded this to you.**

1    A.   No.  I didn't provide this information.

2    **Q.  So she would know why the email is cut off.**

3    A.   I don't know.

4         MR. OSTERBERG:  Objection, form.

5    **Q.  (BY MS. CRISCIONE)  So we talked about the**

6  **emails.  We talked about your complaint.**

7    A.   Yes.

8    **Q.  Were there any other documents you reviewed in**

9  **preparation for your deposition here today?**

10   A.   The other documents that I saw were some

11 nepotism forms that I signed when I barely got hired.  I

12 also saw -- Texas Tech sent over some HIPAA -- HIPAA

13 policies.  They also sent over some -- like I said, the

14 emails that were going back and forth after I got

15 terminated and these were the emails that I was sending

16 after I filed my sexual harassment.

17   **Q.  Did you --**

18        **Let me ask you this.**

19        **Did you review any documents that did not**

20 **have a number in the lower right-hand corner, to your**

21 **recollection?**

22   A.   I don't recall.

23   **Q.  Where were you born?**

24   A.   Los Alamitos, California.

25   **Q.  When did you move to El Paso?**

1       A.   1992.

2          Q.   **And why'd you move here?**

3       A.   My grandparents, they wanted to move down here

4   to El Paso.  A better lifestyle.

5          Q.   **So did you wind up going to high school here?**

6       A.   Yes.

7          Q.   **Where'd you go to high school?**

8       A.   Andress High School.

9          Q.   **Where'd you go to college?**

10      A.   I went to commun- -- El Paso Community College,

11  Western Technical and University of Phoenix.

12         Q.   **And what degree did you get?**

13      A.   I have a bachelor's in health care

14  administration.

15         Q.   **Are you married?**

16      A.   No.

17         Q.   **Were you married?**

18      A.   Yes.

19         Q.   **When did you get divorced?**

20      A.   I got divorced in August of 2022.

21         Q.   **How are you feeling today?**

22              MR. OSTERBERG:   Objection --

23      A.   Good.

24              MR. OSTERBERG:   -- form.

25              MS. CRISCIONE:   Basis?

```
 1              MR. OSTERBERG:  It's not relevant.

 2        Q.  (BY MS. CRISCIONE)  Are you on any medications

 3   that could impact your testimony here today?

 4        A.  I took Lexapro and Xanax.  Those are

 5   medications that I take.

 6        Q.  When were you prescribed Lexapro?

 7        A.  Five, six years ago.

 8        Q.  And when were you prescribed Xanax?

 9        A.  Five, six years ago.

10        Q.  Do you have an email address?

11        A.  Yes.

12        Q.  What is that email address?

13        A.  ceciliamartinez34@gmail.com.

14        Q.  Do you have any others?

15        A.  cecilia.castaneda@ehn.com.

16        Q.  Any others?

17        A.  .org.

18        Q.  .org?

19        A.  No.

20        Q.  Okay.  I'm sorry.  I cut you off.

21             Let- -- let's go -- let's go back.

22             So you have the one email address,

23   ceciliamartinez --

24             And I'm sorry, that was at?

25        A.  That's my personal.
```

```
 1      Q.  That's your personal.

 2              And then there's the ceciliaca- --

 3  castaneda one.

 4      A.  Yes.

 5      Q.  And where is that?

 6      A.  @EHN, my work.

 7      Q.  When did you -- when did you establish the

 8  personal email?

 9      A.  Years back.  Like more than 10 years back.  I

10  can't recall.

11      Q.  Did you use that email to apply for jobs after

12  you were terminated from Texas Tech-El Paso?

13      A.  Yes.

14      Q.  Did you use that email to communicate with

15  anybody regarding your termination?

16      A.  No.

17      Q.  Did you --

18      A.  Oh, yes.

19              Sorry.

20              Yes.

21      Q.  So you used that email to communicate with

22  somebody regarding your termination.

23      A.  Correct.

24      Q.  Would it surprise you that we've never seen any

25  emails from that address?
```

1          MR. OSTERBERG:  Objection, form.

2     A.  No.

3     Q.  (BY MS. CRISCIONE)  Why wouldn't it not

4  surprise you?

5     A.  Because I put it down, also, when I applied at

6  Texas Tech for an email.

7     Q.  Well, I'm sorry.  Maybe I wasn't clear.

8          And actually, this may be a better way to

9  do this.

10          This is tab 3 in your binder.

11          MS. CRISCIONE:  And we are already at 5.

12  Okay.

13          (Exhibit marked, Exhibit 5.)

14     Q.  (BY MS. CRISCIONE)  Ms. Castaneda, have you

15  seen this document before?

16     A.  No.

17     Q.  So you never received this document previously.

18     A.  No.

19     Q.  So if you look at the front, it says that these

20  are your responses to Texas Tech-El Paso's requests for

21  production.

22          Do you see that in the first page?

23     A.  Yes.

24     Q.  And these were submitted by your attorneys to

25  my office.  Correct?

1          MR. OSTERBERG:  Objection, form.

2       A.  I don't know if I --

3            I don't know.

4       Q.  (BY MS. CRISCIONE)  Well, here, go to that next

5  page.

6            Did you ever email with the Equal

7  Opportu- -- Employment Opportunity Commission from that

8  personal email address?

9       A.  Yes.

10      Q.  Did you ever email between you and

11  Alejandra Castaneda regarding this lawsuit or the facts

12  surrounding this lawsuit from that personal email

13  address?

14      A.  No.

15      Q.  Did you ever email with Ulysses Castaneda about

16  the facts of this lawsuit?

17      A.  No.

18      Q.  Did you email with any other employees, agents

19  or authorized representatives of Texas Tech-El Paso from

20  that personal email address regarding the facts of this

21  lawsuit?

22      A.  Can you rephrase it.

23      Q.  Right.  Yeah.

24            So flip over that next page.  Request for

25  Production 6.

1          Now, there were several employees that

2  you -- that you were familiar with after your

3  termination from Texas Tech-El Paso.  Correct?

4       A.  Correct.

5       Q.  Did you email from that personal email address

6  with any of those employees regarding the facts of this

7  lawsuit from that personal email address?

8       A.  I emailed prior to the lawsuit.

9       Q.  From that personal email address.

10      A.  Correct.

11      Q.  Regarding these issues.

12      A.  My sexual harassment, correct.

13      Q.  From that personal email.

14      A.  Correct.

15      Q.  So you've submitted all the -- you have all

16  those emails.

17          Did you turn those over to your attorney?

18          MR. OSTERBERG:  Objection, form.

19      A.  Yes.

20      Q.  (BY MS. CRISCIONE)  All of those emails from

21  the personal email you turned over to your attorney.

22      A.  Yes.

23      Q.  Would it surprise you that they have not been

24  produced in this case?

25          MR. OSTERBERG:  Objection, form.

1    A.  I don't know.

2    Q.  (BY MS. CRISCIONE)  Do you have a cell phone?

3    A.  Yes.

4    Q.  What's the number on that cell phone?

5    A.  (915) 422-4753.

6    Q.  Do you have any other cell phones?

7    A.  Yes.

8    Q.  What is that cell phone number?

9    A.  It's the work one.

10   Q.  And when did you receive that work number?

11   A.  On September 18, 2023.

12   Q.  Did you ever text with Alejandra Castaneda

13 regarding the facts of this case from that personal cell

14 phone?

15   A.  Yes.

16   Q.  Did you ever text with Ulysses Castaneda from

17 that personal cell phone?

18   A.  Yes.

19   Q.  Regarding the facts of this case.

20   A.  Not the facts.  Just what was going on.

21   Q.  But the --

22   A.  Some --

23   Q.  -- circumstances surrounding this case.

24   A.  Yes.

25   Q.  What ab- -- did you text with any employees of

1  Texas Tech-El Paso from that personal cell phone about

2  this case?

3       A.   No.

4       Q.   Do you use WhatsApp?

5       A.   Yes.

6       Q.   Did you use WhatsApp to communicate with

7  Alejandra Castaneda regarding the facts of this case?

8       A.   No.

9       Q.   Did you use WhatsApp to communicate with

10 Ulysses Castaneda regarding the facts of this case?

11      A.   No.

12      Q.   Did you use WhatsApp to communicate with any

13 employees of -- either current or former of Texas

14 Tech-El Paso regarding the facts of this case?

15      A.   No.

16      Q.   Do you use any other messaging application

17 other than WhatsApp?

18      A.   Just the regular text message.

19      Q.   No Slack?

20      A.   I don't know what that is.

21      Q.   No worries.

22            No Microsoft Teams?

23      A.   No.

24      Q.   Do you have an Instagram?

25      A.   No.

1    Q.  Do you have a Facebook?

2    A.  No.

3    Q.  A LinkedIn?

4    A.  Yes.

5    Q.  A TikTok?

6    A.  No.

7    Q.  Did you use LinkedIn to apply for jobs after

8  you were terminated from Texas Tech-El Paso?

9    A.  Yes.

10   Q.  Did you use LinkedIn to communicate with

11 anybody about the facts that underlie thi- -- this

12 lawsuit on LinkedIn?

13   A.  No.

14   Q.  Turning to --

15            This is tab 2.

16            Ms. Castaneda, I am showing you what has

17 been marked as Deposition Exhibit 6.

18            Have you ever seen this document before?

19            (Exhibit marked, Exhibit 6.)

20   A.  No.

21   Q.  (BY MS. CRISCIONE)  Well, I will represent to

22 you that this -- these are disclosures that your

23 attorneys forwarded to my office and I will say these

24 are the ones from August, given that the ones from

25 yesterday were served while I was midair, I had --

 1  didn't have a chance to print them.

 2              So the --

 3              MS. CRISCIONE:  And I believe we can

 4  stipulate that the only change made between these and

 5  the ones served yesterday was the one addition of

 6  Pat Montes.

 7              MR. OSTERBERG:  Yes.

 8      Q.  (BY MS. CRISCIONE)  So if -- if you flip to

 9  page 3 of these disclosures, if you would take a look at

10  sub- -- the table under subsection A.

11              And like I said, there is a name missing

12  that myself and your attorney just stipulated on the

13  record.

14              Please take a look.

15              Are there any other persons that you

16  believe have knowledge of the facts of this case that

17  are not listed in this table?

18              MR. OSTERBERG:  Just to clarify, the table

19  goes on for several pages.

20              MS. CRISCIONE:  Yeah.

21              MR. OSTERBERG:  Just wanna make sure.

22              MS. CRISCIONE:  I think -- I believe three

23  pages.  I will stipulate to that, as well.

24      A.  Can you rephrase that question.

25      Q.  (BY MS. CRISCIONE)  Yeah.

1              So wha- -- what -- what I'll --

2              If you look at A, what this asks is for the

3    name and some contact information of individuals likely

4    to have discoverable information relevant to the facts,

5    so individuals who have knowledge of this lawsuit.

6              So the first page, we've got yourself,

7    we've got Ms. Balderrama, Mr. Vallejo, Ms. Erickson,

8    Ms. Cano, Mr. Bergeon, Mr. Conkovich and

9    Ms. Alejandra Castaneda.  Correct?

10       A.   Correct.

11       Q.   And flipping to the second page, we have

12   Dr. Lange, Ms. Yu, Ms. Mercado, Ms. Lopez, Dr. Castro,

13   Mr. Ulysses Castaneda, Ms. Argueta, Ms. Chacon,

14   Ms. Munoz.

15              Is that correct on the second page?

16       A.   Yes.

17       Q.   And if you flip to the third, there's

18   Ms. Esqueda, Ms. Cosio, Ms. McCarroll, Mr. Gutierrez,

19   Ms. Rusk, Ms. Padilla and Dr. Diamond.  And like we

20   discussed, Ms. Montes has also been disclosed.

21              Is there anybody else, to your knowledge,

22   and recollection that would have facts regarding this

23   case that have not been included on that list?

24              MR. OSTERBERG:  Objection, form.

25       A.   I think I'm understanding your --

1          Are you asking anyone else who knows about

2    the cosmetic employee discount or just about this case?

3        **Q.  (BY MS. CRISCIONE)  Anything related to --**

4              **Well, here.  Thank you for asking that**

5    **clarifying question.**

6              **Is there anybody else o- -- that is not on**

7    **this list that has information related to your**

8    **allegations of sexual harassment, sex discrimination and**

9    **retaliation against Texas Tech-El Paso?**

10             MR. OSTERBERG:  Objection, form.

11       **Q.  (BY MS. CRISCIONE)  To your knowledge.**

12             MR. OSTERBERG:  Objection, form.

13       A.  To my knowledge, regarding my sexual

14   harassment, these are the people involved.  But

15   regarding people who knew about the discount of Botox

16   and filler, there's names missing.

17       **Q.  (BY MS. CRISCIONE)  And what are those names?**

18       A.  It's Dr. Prieto, Carmen.  Aaron Rodriguez.

19   Cecilia Lindsey.  Denise Sepulveda.  Wife of

20   Dr. Jose Castro, Angelica Rodriguez.

21   Angelica Rodriguez, a provider there at the surgery

22   clinic.

23       **Q.  And -- and I'm gonna stop you there.**

24             **Angelica Rodriguez was the name you just**

25   **gave me.  Correct?**

1      A.   Uh-huh.

2      Q.   That -- that's yes?

3      A.   Yes.

4      Q.   And she -- you said she was a provider at the

5   surgery clinic?

6      A.   Correct.

7      Q.   What was she a provider of?

8      A.   Nurse practitioner.

9      Q.   And is it your understanding --

10          When you say she has knowledge of the

11   cosmetic procedure discounts, was she giving procedures

12   or did she receive the procedures?

13      A.   She received.

14      Q.   How do you know she received the discount?

15      A.   Because she was set up with an appointment.

16          All employees who would go get Botox

17   injections would receive employee discount.

18      Q.   And what was that employee discount?

19      A.   The Botox unit was from three, four, five, $7

20   per unit.

21          I'm not done with the names, though.

22   There's still more names.

23      Q.   Okay.

24      A.   Did I give you Alejandra Lopez?

25      Q.   Okay.

1    A.  And then it was a family of Dr. Diamond.

2  Jesus Balderrama.  Michelle Portillo.

3           I'm thinking.

4    **Q.  Yeah.**

5    A.  I'm --

6           Okay.  I'm done with those names.

7           But Georgina Gonzalez knew also about the

8  discount.  Ashley Tarin.  Erika Herrera.  And the

9  building team, Anastasia Tave, T-A-V-E, with Pat Montes,

10  who was her supervisor.

11   **Q.  Okay.  I'm gonna walk through some of these**

12  **names in a bit, but let -- let me ask you this.**

13           **How did you come up with this list of**

14  **names?**

15   A.  I was present for some of them when they were

16  getting their injections.

17   **Q.  Okay.  So if these people had knowledge of**

18  **the --**

19           **And let --**

20           **Strike that.**

21           **Is it your testimony that it was common**

22  **knowledge that employees received discounts on Botox?**

23   A.  Yes.

24   **Q.  Did employees also receive discounts on**

25  **Juvéderm?**

1      A.  I don't know.

2      Q.  If you knew that these people were aware of the
3  cosmetic discounts, why were they not included in this
4  list?

5              MR. OSTERBERG:  Objection, form.

6      A.  I don't know.

7      Q.  (BY MS. CRISCIONE)  This is tab 18 in your
8  binder.

9              Ms. Castaneda, I am handing you what's been
10  marked as Deposition Exhibit 7.

11              And at the break, we'll clean up your area
12  for the court reporter.

13              Have you seen this email recently?

14              (Exhibit marked, Exhibit 7.)

15      A.  No.

16      Q.  (BY MS. CRISCIONE)  So if you will -- I'll
17  ta- -- give you a minute to review it.

18      A.  Okay.

19      Q.  And who is this email from?

20      A.  Alejandra Castaneda.

21      Q.  And when was it sent?

22      A.  February 8, 2023.

23      Q.  And this was before you lodged your sexual
24  harassment co- -- complaint.  Correct?

25      A.  Correct.

1    Q.  Now, I wanna --

2         There's a long list of people who are

3    copied on this email, so I wanna get clear as to who

4    everybody is.

5         Who is Brenda Argueta?

6         And if I'm pronoun- -- mispronouncing

7    people's names, please correct me.

8    A.  She at that time was the surgery scheduler.

9    Q.  Who was Gloria Gallardo?

10   A.  She at the time was a PSS.

11   Q.  And what's a PSS?

12   A.  A patient service specialist.

13   Q.  Who is Georgina Gonzalez?

14   A.  CMA.

15   Q.  Who is Suzette Gonzalez?

16   A.  CMA.

17   Q.  Who is Erica Herrera?

18   A.  CMAs.

19   Q.  Who was Aleida La-Salde?

20   A.  CMA.

21   Q.  And this next name, is that you,

22   Cecilia Martinez?

23   A.  Yes, ma'am.

24   Q.  Who was Victoria Mercado?

25   A.  A PSS.

1    Q.   Who was Jessica Portillo-Rodriguez?

2    A.   CMA.

3    Q.   And Ashley Tarin?

4    A.   CMA.

5    Q.   Okay.  Ana Yu?

6    A.   PSS.

7    Q.   And Vanessa Zepeda?

8    A.   Another CMA.

9    Q.   And is Vanessa Zepeda the same person as

10   Vanessa Chacon?

11   A.   Yes.

12   Q.   When did she change her name?

13   A.   Vanessa?

14   Q.   Yes.

15   A.   I don't know.

16   Q.   So this email from Alejandra to the people we

17   just went through, was this everybody -- obviously

18   excluding Dr. Diamond and Dr. Castro -- was this

19   everybody within surgery?

20   A.   Correct.

21   Q.   Now --

22        And -- and I wanna clarify.

23        You testified earlier that the employee

24   discount was three, four or $5.  Correct?

25   A.   Correct.

1      Q.  Now, when Ms. Castaneda is telling everybody

2   that you need to enter in the comment section Cosmetic

3   Botox $10, what was she instructing you-all to do?

4               MR. OSTERBERG:  Objection, form.

5      Q.  (BY MS. CRISCIONE)  To your recollection.

6               MR. OSTERBERG:  Objection, form.

7      A.  To my recollection, she was telling us when

8   scheduling the appointment for patients who wanted a

9   Botox cosmetic, that you needed to write in the comment

10  section that they were there to receive cosmetic

11  injections.

12     Q.  (BY MS. CRISCIONE)  And -- and she gave a price

13  of $10 per unit.  Correct?

14     A.  Correct.

15     Q.  How was the employee -- after this email, how

16  was the employee discount enforced when every person was

17  required -- when every appointment was required to have

18  this comment?

19               MR. OSTERBERG:  Objection, form.

20     A.  Can you rephrase that.

21     Q.  (BY MS. CRISCIONE)  Yeah.

22               So everybody --

23               Anytime --

24               And maybe it's better to walk through it

25  this way.

 1              Any time --

 2              And we'll start from February 8th, 2023,

 3   forward.  Correct?

 4       A.  (Nonverbal response).

 5       Q.  Any time someone was scheduling a Botox

 6   appointment, this comment needed to be made in their

 7   appointment schedule.  Correct?

 8       A.  Correct.

 9       Q.  And this is the price per unit that -- for the

10   Botox.  Correct?

11       A.  At that time.

12       Q.  So if an employee was getting Botox after

13   February 8th, 2023, how was the employee discount noted?

14       A.  There was a form that we had to fill out.  So

15   where it would said [sic] $10 per unit, it would get

16   scratched out and they would write $4, $5, $6, $7.

17       Q.  Okay.  And on that form, are you suggesting

18   that Dr. Prieto would have had that form scratched out

19   and would've gotten the discount?

20       A.  Yes.

21       Q.  That Mr. Rodriguez would've had that scratched

22   out?

23       A.  Yes.

24       Q.  That Ms. Lindsey would've had that scratched

25   out?

1     A.   Yes.

2     Q.   And I missed his last name.

3          Danny --

4     A.   Danny?

5     Q.   You -- I believe you said a Danny was a part of

6  that list.  Maybe I misheard you?

7     A.   No, I didn't say Danny.

8     Q.   Okay.  But Angelica Rodriguez would've had that

9  scratched out?

10    A.   Yes.

11    Q.   Angela [sic] Rodriguez would've had that

12  scratched out?

13    A.   Yes.

14    Q.   Alejandra Lopez would've had that scratched

15  out?

16    A.   Yes.

17    Q.   When you say family of Dr. Diamond, who were

18  you referring to?

19    A.   His mother.

20    Q.   Who was that?

21    A.   I can't recall her name.

22    Q.   Okay.  Jesus Balderrama would've had that

23  scratched out?

24    A.   Yes.

25    Q.   Michelle Portillo would've that scratched out?

```
 1      A.  Yes.

 2      Q.  Ms. -- Ms. Gonzalez would've had that scratched

 3  out?

 4      A.  She was aware that there was cosmetic

 5  procedures.

 6              I mean cosmetic employee discount.

 7              Sorry.

 8      Q.  And is it your contention that she was giving

 9  the employees these discounts?

10      A.  No.

11      Q.  But she was aware of it.

12      A.  Correct.  Everyone in the surgery clinic was

13  aware of the employee discounts.

14      Q.  If someone was aware of something, that doesn't

15  make it policy.  Correct?

16              MR. OSTERBERG:  Objection, form.

17      A.  Can you rephrase that.

18      Q.  (BY MS. CRISCIONE)  Yeah.

19              So we have workplace practices.  Correct?

20      A.  Yes.

21      Q.  But that doesn't mean it's the policy of the

22  institution we work for that -- for those practices.

23  Correct?

24              MR. OSTERBERG:  Objection, form.

25      A.  Correct.
```

```
 1              May I state something?
 2              Before this email, this was going on for
 3   years.  When Terry Balderrama got there, she was the one
 4   who made these prices, her and Sylvia Lopez.  Before
 5   this email went out, they were the ones who created
 6   those prices.
 7       Q.  (BY MS. CRISCIONE)  Well, so -- let's --
 8   let's --
 9              There wasn't a question and I'm -- I'm
10   sorry I didn't go through this.
11              This is a question and answer period.  So
12   I'm just gonna -- I'm gonna ask you to answer my
13   questions.  But I'm gonna go -- but I appreciate the
14   clarification.
15              If you go back to Exhibit 3.
16       A.  Uh-huh.
17       Q.  This is the email that you testified that you
18   received from Alejandra Castaneda.  Correct?
19       A.  No.  I didn't receive this email.  I'm not even
20   on the email.
21       Q.  And, again, thank you for that clarification.
22              But you testified that Alejandra is the one
23   who pulled this email because she is copied on it.
24   Correct?
25              MR. OSTERBERG:  Objection, form.
```

```
 1      A.   Correct.

 2      Q.   (BY MS. CRISCIONE)   And based on the surface of

 3  this email, there are two attachments.   Correct?

 4      A.   Correct.

 5      Q.   So how did you find out that this email --

 6              Well, here, actually, let me ask you this.

 7              Is it your contention that this is the

 8  email where those prices were set?

 9      A.   This is regarding medical procedures for the

10  body.   This isn't cosmetic Botox.

11      Q.   So then how did you -- how do you know that

12  Ms. Balderrama was the one who set the pricing?

13      A.   Because they came from Sylvia Lopez --

14      Q.   And how --

15      A.   -- who was the unit manager at that time.

16      Q.   And how do you know --

17              And how did Sylvia Lopez communicate that

18  to you?

19      A.   By word.

20      Q.   So by word of mouth.

21      A.   Yes, ma'am.

22              And by word of mouth, that's how all the

23  prices got distributed around Texas Tech.   That's how

24  other people from other clinics were going to get

25  cosmetic Botox and employee discount.   It was by word of
```

1    mouth.

2        Q.    When was this policy put into place?

3        A.    There was no policy.

4        Q.    Well, when was this word of mouth distributed?

5        A.    I believe around 2021.  Year 2021.

6        Q.    And when did Ms. Lopez leave?

7        A.    She left 2022.

8        Q.    And who was her replacement?

9        A.    She put Alejandra Castaneda.

10       Q.    And who put her in that position?

11       A.    Sylvia Lopez.

12       Q.    So Sylvia Lopez promoted Ms. Castaneda.

13       A.    Correct.

14       Q.    And what is your relationship to Alejandra?

15       A.    Friend.

16       Q.    She's not your ex-sister-in-law?

17       A.    Well, she's my ex-sister-in-law.

18       Q.    And at the time she was promoted, you were

19   still married to Ul- -- Ulysses?

20       A.    Yes.

21            MS. CRISCIONE:  This is tab 22 in the

22   binder.

23            We're at Exhibit 8.  Correct?

24            (Discussion off the stenographic record.)

25       Q.    (BY MS. CRISCIONE)  Ms. Castaneda, I am handing

1    you your Deposition Exhibit 8.  I will give you a moment

2    to review it.

3                (Exhibit marked, Exhibit 8.)

4        A.  Yes.

5        Q.  (BY MS. CRISCIONE)  And you see in

6    paragraph 3 --

7                Well, before we get into this, I'm gonna

8    back up.

9                You were a CMA.  Correct?

10       A.  Correct.

11       Q.  And CMA stands for --

12       A.  Certified medical assistant.

13       Q.  Who was your direct supervisor?

14               Well, what was the title of your direct

15   supervisor?

16       A.  It was the manager -- unit manager.

17       Q.  Unit manager.

18               And who was their direct supervisor?

19       A.  Rene Vallejo.

20       Q.  And what is Rene's title?

21       A.  He's a senior administrator -- senior

22   administrator, I believe, for surgery.

23       Q.  And who was Mr. Vallejo's supervisor?

24       A.  Dr. Almentera.

25       Q.  Now, how was Ms. Balderrama related to your

1    position?

2    A.  After Rene Vallejo opened a position for a

3    senior administrator to con- -- to see over the clinical

4    side, he hired her and she was my superior.

5    **Q.  She was your superior, but was she ever your**

6    **supervisor?**

7    A.  Direct supervisor, no.

8    **Q.  And when you say "direct supervisor," how many**

9    **levels were in between you and Ms. Balderrama?**

10    A.  One.

11    **Q.  So in between you and Ms. Balderrama there was**

12    **one level.  Correct?**

13    A.  Yes.  The unit manager.

14    **Q.  And previously, that was Ms. Lopez.**

15    A.  Correct.

16    **Q.  And then when Ms. Lopez left, that became**

17    **Ms. Alejandra Castaneda.**

18    A.  Correct.

19    **Q.  Who we've already discussed is Ulysses's**

20    **sister.**

21    A.  Yes.

22    **Q.  And Ulysses is your ex-husband.**

23    A.  Correct.

24    **Q.  Turning back to Deposition Exhibit 8.**

25            **Going to paragraph 3, the first paragraph**

 1    that you are not related within the third degree by

 2    consanguinity, blood, or second-degree by affinity,

 3    marriage...

 4              And then scrolling down two paragraphs

 5    [sic] to Texas Tech Health Science Center who has direct

 6    appointive power over this position in whole or in part.

 7              And then --

 8              Did I read that correctly?

 9    A.  Yes, you did.

10    Q.  And then the next paragraph:  The proli- --

11    prohibited relationships include...

12              And then two lines down:  The spouse's

13    parents, children, brothers and sisters.

14              Do you see that?

15    A.  Yes.

16    Q.  So based on this --

17              And you signed this when you first were --

18    A.  Hired.

19    Q.  -- hired.  Correct?

20    A.  (Nonverbal response).

21    Q.  When Ms. Castaneda became the unit manager, was

22    she not then in a direct appointive power over your

23    position?

24              MR. OSTERBERG:  Objection, form.

25    A.  Yes, she was.

1      Q.  (BY MS. CRISCIONE)  And to be clear, she was

2  your spouse's brother -- or sister -- excuse me -- at

3  the time.

4      A.  Correct.

5      Q.  Have you reviewed --

6           Or are you aware that Texas Tech-El Paso

7  has a nepotism policy?

8      A.  I'm aware.

9      Q.  And have you reviewed it recently?

10     A.  Yes.

11     Q.  And we're gonna take a look at it now.

12          If I can find it in my binder.

13          MS. CRISCIONE:  You know, while -- while I

14  look for this, we've been going about an hour.  Wanna

15  take about a 10-minute break?

16          MR. OSTERBERG:  Sure.

17          THE VIDEOGRAPHER:  The time is 10:52.

18  We're off the record.

19          (A recess was taken.)

20          THE VIDEOGRAPHER:  The time is 11:06.

21  We're back on the record.

22     Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I am handing

23  you Deposition Exhibit 9.

24          Have you seen this before?

25          (Exhibit marked, Exhibit 9.)

1           MR. OSTERBERG:  Can you identify the

2    document.

3           MS. CRISCIONE:  Yeah.

4           So this is Castaneda 00087 [sic].  It's

5    Texas Tech-El Paso Operating Policy and Procedure, 7.08

6    [sic] Nepotism.

7           So this would be part of the large tab 6.

8       A.  Yes.

9       Q.  (BY MS. CRISCIONE)  Okay.  So flipping to

10   page 2.

11          Well, first --

12          Yeah, page 2.

13          And if you look at subsection D of the

14   policy and procedure, under -- which is under the larger

15   heading Prohibition Applicable to Administrators,

16   Supervisors, and Others.

17          So then:  No employee may approve,

18   recommend, or otherwise take action with regard to the

19   appointment, reappointment, promotion, salary, or

20   supervision of an individual related to the employee

21   within a prohibited degree.

22          Did I read that correctly?

23      A.  Yes.

24      Q.  And you would agree with me that once

25   Ms. Alejandra Castaneda got promoted to unit manager,

 1  she was a supervisor of an individual related to a

 2  prohibited degree.

 3       A.  Yes.

 4       Q.  Now, if we scroll down to section F on that

 5  same page:  If the appointment, reappointment,

 6  reclassification, or promotion of an employee makes the

 7  employee an administrative supervisor over an employee

 8  who is related within a prohibited degree, all

 9  subsequent personnel and compensation actions affecting

10  the subordinate employee shall become the responsibility

11  of the higher administrative supervisor.

12            Is that correct?

13       A.  Correct.

14       Q.  So Ms. Castaneda should have transitioned

15  duties to an above supervisor based on that.  Correct?

16       A.  Correct.

17            MR. OSTERBERG:  Objection, form.

18       Q.  (BY MS. CRISCIONE)  This is tab 8 in your

19  binder.

20            MR. OSTERBERG:  What tab?  Sorry.

21            MS. CRISCIONE:  8.

22       Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I am handing

23  you Deposition Exhibit 10.

24            Have you seen this document before?

25            (Exhibit marked, Exhibit 10.)

```
 1        A.   Yes.

 2        Q.   (BY MS. CRISCIONE)   Thi- -- what is it?

 3        A.   My evaluation.

 4        Q.   And who was -- who filled out this evaluation?

 5        A.   Alejandra.

 6        Q.   And what is the date of this evaluation?

 7        A.   January 4, 2023.

 8        Q.   And do you see where it says Supervisor

 9   Comments, she refers to you as Mrs.?

10        A.   Yes.

11        Q.   So based on the policy we looked in Exhibit 9,

12   Ms. Alejandra Castaneda should not have filled out this

13   form.  Correct?

14             MR. OSTERBERG:   Objection, form.

15        A.   When this evaluation was filled out, she was --

16   I was already divorced.

17        Q.   (BY MS. CRISCIONE)   So it's your contention

18   that she had full authority to be your supervisor upon

19   your divorce.

20             MR. OSTERBERG:   Objection, form.

21        A.   Can you rephrase that.

22        Q.   (BY MS. CRISCIONE)   Yeah.

23             So you were divorced by this performance

24   evaluation.  Correct?

25        A.   Correct.
```

1    Q.  And we just looked at the nepotism policy where

2  when an employee is within the prohibited consangu- --

3  consanguinu- --

4          Or excuse me.  That's a hard word

5  sometimes, especially in the morning.

6          -- the prohibited degree, the

7  responsibility of the supervision goes to the next

8  supervisor above that, the prohibited relation.

9  Correct?

10          MR. OSTERBERG:  Objection, form.

11    A.  Correct.

12    Q.  (BY MS. CRISCIONE)  So it is it -- is it your

13  testimony that subsection F became null and void upon

14  your divorce?

15          MR. OSTERBERG:  Objection, form.

16    A.  Correct.

17    Q.  (BY MS. CRISCIONE)  So she had the authority to

18  supervise you --

19          MR. OSTERBERG:  Objection --

20    Q.  (BY MS. CRISCIONE)  -- upon --

21          MR. OSTERBERG:  -- form.

22    Q.  (BY MS. CRISCIONE)  -- your divorce.

23          MR. OSTERBERG:  Asked and answered.

24          You don't have to answer.

25    Q.  (BY MS. CRISCIONE)  We're gonna turn to tab 1.

```
 1              Ms. Castaneda, I'm handing you Deposition
 2   Exhibit 11.
 3              You recognize this?
 4              (Exhibit marked, Exhibit 11.)
 5    A.  Yes.
 6    Q.  (BY MS. CRISCIONE)  Okay.  And I'm gonna turn
 7   to page 5 of this document of paragraph 33.
 8              As part of the claims in the lawsuit --
 9              And to be clear for the record, this is
10   your lawsuit against Texas Tech-El Paso.  Correct?
11              MR. OSTERBERG:  Objection, form.
12              MS. CRISCIONE:  Basis?
13              MR. OSTERBERG:  Legal conclusion.
14    Q.  (BY MS. CRISCIONE)  Ms. Castaneda, who are you
15   suing?
16              MR. OSTERBERG:  Objection, form.
17    Q.  (BY MS. CRISCIONE)  Answer the question.
18    A.  Texas Tech.
19    Q.  So going to paragraph 33 where part of the
20   lawsuit says:  Defendant's retaliation against Plaintiff
21   includes the termination of Plaintiff's
22   ex-sister-in-law...
23              Did I read that correctly?
24    A.  Yes.
25    Q.  And then scroll.
```

 1            And then skipping a few words to:

 2    Protected activity of a close family member.

 3            Do I -- did I read that correctly, as well?

 4        A.  Correct.

 5        Q.  So I -- I wanna understand.

 6            Part of your retaliation claim is

 7    Ms. Alejandra Castaneda's termination.  Correct?

 8            MR. OSTERBERG:  Objection, form.

 9        A.  Correct.

10        Q.  (BY MS. CRISCIONE)  But it is also your

11    contention that the moment you got divorced,

12    Ms. Castaneda had the authority to supervise you.

13    Correct?

14            MR. OSTERBERG:  Objection, form.

15        A.  Correct.

16            Can I say something?

17            When they promoted Alejandra to that

18    supervising position, everyone knew that her and I were

19    related at that moment.  Everyone.  Terry Balderrama.

20    Leticia Cano.  Rene Vallejo.  Sandra Alderete.

21            MS. CRISCIONE:  Objection, nonresponsive.

22        Q.  (BY MS. CRISCIONE)  I'm gonna go back to

23    Deposition Exhibit -- the nepotism policy.

24        A.  This one?

25        Q.  Yes.

```
 1                    Page --

 2              MR. OSTERBERG:  That -- is that Number 9?

 3  Sorry.

 4              MS. CRISCIONE:  Yes.

 5              MR. OSTERBERG:  Okay.

 6      Q.  (BY MS. CRISCIONE)  Page 3.  Subsection D and

 7  this is under section 3 of this policy.

 8              (Reading)  In the event of [sic] an

 9  employee's marriage, reappointment, reclassification,

10  promotion, or reassignment places the employee under an

11  administrative supervisor who is related within a

12  prohibited degree, or makes the employee an

13  administrative supervisor over an employee who's [sic]

14  related within a prohibited degree, the employee's

15  administrator must complete an Application of [sic]

16  Waiver of Nepotism and submit it through the [sic]

17  administrative channels to the president and the

18  chancellor for their approval so it can be reported to a

19  Board of Regents.

20              To your knowledge, did Ms. Castaneda submit

21  an Application of Waiver of Nepotism?

22              MR. OSTERBERG:  Objection, form.

23      A.  No.

24      Q.  (BY MS. CRISCIONE)  To your knowledge, did

25  Leticia Cano submit an Application of Waiver of
```

1   Nepotism?

2              MR. OSTERBERG:  Objection, form.

3       A.  No.

4       Q.  (BY MS. CRISCIONE)  To your knowledge, did

5   Terry Balderrama submit an Application for Waiver of

6   Nepotism?

7       A.  No.

8              MR. OSTERBERG:  Objection, form.

9       Q.  (BY MS. CRISCIONE)  Did Rene Vallejo submit an

10  Application of Waiver of Nepotism?

11             MR. OSTERBERG:  Objection, form.

12      A.  No.

13      Q.  (BY MS. CRISCIONE)  Describe your relationship

14  to Alejandra.

15             MR. OSTERBERG:  Objection, form.

16             MS. CRISCIONE:  Mr. Osterberg, basis?

17             MR. OSTERBERG:  Calls for a narrative.

18             You can answer.

19      A.  I would say she's my friend.  She helps me --

20  she would help me take care of the kids when I needed

21  someone to take care of the kids, which are her nephews

22  and niece.

23      Q.  (BY MS. CRISCIONE)  Did you ask her for a job

24  reference for a promotion you were seeking at Texas

25  Tech-El Paso?

1    A.  Can you rephrase it.

2    **Q.  Well, before you were terminated, did you apply**

3    **for a promotion at Texas Tech-El Paso?**

4    A.  I applied for a managing position.

5    **Q.  And was this at the time that**

6    **Alejandra Castaneda was supervising you?**

7    A.  Correct.

8    **Q.  I wanna turn back to that list you gave me of**

9    **people who had knowledge of the Botox procedures.**

10           **Of that list who actually obtained**

11   **discounted Botox procedures?**

12   A.  Leticia Cano.  Terry Balderrama.  Terry's

13   husband, Jesus Balderrama.  Terry's daughter,

14   Taylor Balderrama.  Cecilia Lindsey.  Alejandra Lopez.

15   Denise Sepulveda.  And Angela -- Angelica Rodriguez.

16   And then the wife of Dr. Castro, Angelica Rodriguez.

17   Aaron Rodriguez.  And Ulysses Castaneda got it.

18   **Q.  And how many --**

19   A.  Sylvia Lo- -- Sylvia Lopez.

20           Sorry.  I wasn't done.

21   **Q.  No.**

22   A.  Alejandra Lopez.  Did I say her name?

23           I don't...

24   **Q.  If you repeat, it's fine.**

25   A.  Dr. Carmen Prieto.

1     Q.  Is that it?

2     A.  Yes, ma'am.

3     Q.  How many of those were male?

4     A.  Three.

5     Q.  And how many of them worked in surgery?

6     A.  None.

7     Q.  And of those three that were male, how many

8 were actually employed by Texas Tech?

9     A.  Two.

10    Q.  Which ones?

11    A.  Ulysses Castaneda and Aaron Rodriguez.

12    Q.  Where was Aaron Rodriguez employed?

13    A.  Pediatrics.

14    Q.  What's his title?

15    A.  LVN.

16    Q.  You were working at Texas Tech during the

17 pandemic.  Correct?

18    A.  Correct.

19    Q.  Can you describe the procedures in place in the

20 surgery clinic during COVID?

21          MR. OSTERBERG:  Objection, form.

22    A.  What I recall, we had to work from home.  We

23 were work- -- some peop- -- some employees were working

24 from home.  And then they made some teams, team A and

25 team B, to show up to the clinic when it was our turn to

1  go.

2           Patients -- the number of patients went

3  down due to the six-feet space.

4           That's what I recall.

5       Q.  (BY MS. CRISCIONE)  And who was on team A?

6       A.  I don't remember.  But I was one of the ones

7  who had to work from home, answering the phone,

8  answering patient medical concerns.

9       Q.  So how often were --

10          You were working from home during COVID.

11  Correct?

12      A.  (Nonverbal response).

13      Q.  100 percent?

14      A.  100 percent.

15      Q.  When did you come back to the office?

16      A.  I went back in April.  April --

17          No.

18          May or June of 2020.

19      Q.  So only for about a three-month period.

20      A.  (Nonverbal response).

21      Q.  And were -- were --

22          You don't recall if you were team A or

23  team B?

24      A.  No, I don't recall.

25      Q.  Do you remember who was on your team?

```
 1       A.  No.

 2       Q.  Do you know policies for senior administrators

 3  during COVID?

 4              MR. OSTERBERG:  Objection, form.

 5       A.  No.

 6       Q.  (BY MS. CRISCIONE)  Were senior administrators

 7  allowed to work from home during COVID, to your

 8  knowledge?

 9       A.  Yes.

10       Q.  How often?

11              MR. OSTERBERG:  Objection, form.

12       A.  They were able to work remotely.

13       Q.  (BY MS. CRISCIONE)  This is tab 10 in your

14  binder.

15              MS. CRISCIONE:  We're at 12?

16       Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I am handing

17  you Deposition Exhibit 12.

18              Have you seen this recently?

19              (Exhibit marked, Exhibit 12.)

20       A.  Yes.

21       Q.  (BY MS. CRISCIONE)  And what is it?

22       A.  It's the application that I submitted for the

23  medical clinic supervisor for the northeast clinic.

24       Q.  Okay.  And this is the nepotism form for that

25  job.  Correct?
```

52

1    A.   Correct.

2    Q.   If you flip to page 2 of Exhibit 12.

3            When was this added?

4    A.   On February 14, 2023.

5    Q.   And you list on page 1 Ulysses Castaneda as

6  spouse.  Correct?

7    A.   Correct.

8    Q.   But you do not list Alejandra Castaneda as your

9  sister-in-law.  Correct?

10   A.   Correct.

11   Q.   And to be clear, this --

12           Excuse me.  Withdrawn.

13           I'm gonna go back to the disclosures, which

14  I believe was Deposition Exhibit 3?  2 or 3.

15   A.   That one?

16   Q.   Yes.

17           We had a lot of exhibits.

18           Turning to page 3 of this exhibit, who is

19  Ronnie Gutierrez?

20   A.   Page 3?

21   Q.   Yes.

22   A.   This?

23   Q.   Yes.

24   A.   Ronnie Gutierrez?

25   Q.   Yes.

1             Under Patty McCarroll and -- between

2    Patty McCarroll and Diana Rusk.

3        A.   Ronnie.

4             I don't know who that is.

5        Q.   Okay.  So turning to the next page, subsection

6    C, where it says:  A computation of any category damages

7    claimed by the party, making available for inspection

8    and copying [sic] documents and ov- -- other evidentiary

9    material, on which such computation is based.

10            So if you look at the next paragraph on the

11   date Employee Cecilia Castaneda was terminated, earning,

12   on average, approximately $42,170.16 per year.

13            Why is that on average?

14            MR. OSTERBERG:  Objection, form.

15       A.   I don't know.

16       Q.   (BY MS. CRISCIONE)  Ms. Castaneda, do you

17   understand that as the plaintiff, it is your obligation

18   to understand the factual basis surrounding your

19   lawsuit?

20            MR. OSTERBERG:  Objection, form.

21            You don't have to answer that.

22            MS. CRISCIONE:  Basis, Mr. Osterberg?

23            MR. OSTERBERG:  It's argumentative,

24   harassing.

25            MS. CRISCIONE:  Let's go off the record

1  very quickly.

2              THE VIDEOGRAPHER:  The time is 11:29.

3  We're off the record.

4              (Off the record.)

5              THE VIDEOGRAPHER:  The time is still 11:29.

6  We're back on the record.

7      Q.  (BY MS. CRISCIONE)  Ms. Castaneda, were you a

8  salaried employee or a hourly employee with

9  Texas Tech-El Paso?

10     A.  Hourly.

11     Q.  So would there be records of your hours worked

12 from Texas Tech-El Paso?

13     A.  There should be, yes.

14     Q.  You would clock in and out?

15     A.  Yes.

16     Q.  Did you ever work overtime?

17     A.  Sometimes.

18     Q.  How often?

19     A.  When clinics were running long.

20     Q.  What was your hourly -- what was your hourly

21 wage at Texas Tech-El Paso?

22     A.  It was 16 --

23              Gosh, I don't remember.

24              Roughly?

25     Q.  So --

1       A.  I don't remember.

2       **Q.  So around $16 an hour?**

3       A.  16.60?

4       **Q.  And what's your current wage?**

5       A.  It's 21.54.

6       **Q.  When you were receiving benefits from**

7   **Texas Tech-El Paso, were you -- and before you were**

8   **divorced, were you and Ulysses on separate plans or on a**

9   **joint plan?**

10              MR. OSTERBERG:  Objection, form.

11      A.  Separate plans.

12      **Q.  (BY MS. CRISCIONE)  So you had sep- -- separate**

13  **health.**

14      A.  Correct.

15      **Q.  Separate dental.**

16      A.  Correct.

17      **Q.  Separate vision.**

18      A.  Correct.

19      **Q.  And when were you -- wh- --**

20              **Where are you currently employed?**

21      A.  Emergence Health Network.

22      **Q.  Emergence Health Network.**

23              **And --**

24              **Like you testified.**

25              **And when did you receive that job?**

56

1    A.   September 18, 2023.

2        Q.   **So you were out of work for approximately four**

3    **months?**

4    A.   Yes, ma'am.

5        Q.   **And based on your disclosures, you believe you**

6    **have lost approximately $64,000 as of the date of these**

7    **disclosures?**

8            MR. OSTERBERG:   Objection, form.

9    A.   Around there, yes.

10       Q.   **(BY MS. CRISCIONE)   Even though you're being**

11   **paid more at your new job?**

12           MR. OSTERBERG:   Objection, form.

13   A.   Yes.

14       Q.   **(BY MS. CRISCIONE)   So even though you're being**

15   **paid more at your new job, you still believe you lost**

16   **this amount of money?**

17           MR. OSTERBERG:   Objection, form.

18   A.   Yes.

19           MS. CRISCIONE:   What is the basis of that?

20           MR. OSTERBERG:   Asked and answered.

21           MS. CRISCIONE:   Mr. Osterberg, I'm asking

22   her the factual basis of her damages.  If you're gonna

23   prevent me from asking, I'm gonna have to close this

24   deposition.

25           MR. OSTERBERG:   You asked her the same

1  question two times in a row, so I objected on the basis

2  of asked and answered.

3      **Q.  (BY MS. CRISCIONE)  How did you calculate**

4  **these -- the loss of $64,000 and change?**

5      A.  After I lost my job, I lost my health care

6  insurance.  My kids lost their health care insurance.  I

7  was worried about how I was gonna pay for my mortgage,

8  my utilities, my car payment, my car insurance.  How I

9  was gonna pay medication for my father 'cause my father

10  lives with me.

11          Me losing my job jeopardized my family's

12  income.  I even -- me losing my health care insurance, I

13  even lost me being treated for what I get treated for

14  and my medication.  I stopped my medication and it took

15  whole toll on me mentally and physically.

16          Also, I felt very anxious.  I felt sad.  I

17  felt humiliated.  I even had to get into my retirement

18  money.  That's how far I went.

19          There were times when I wouldn't sleep at

20  night.  I will be pacing back and forth.  I would sit up

21  in my room in my bed, middle of the night, thinking how

22  I got in this position.

23          It really affected me mentally and

24  physically.  And it affected my family, as well.  My

25  kids.  My father.  I felt like I wasn't providing for

1  them as a mother should.  I feared that we weren't gonna

2  have food.  It took a toll on me and on my family.

3          And mentally, since I had to stop taking my

4  medication, it really affected me.  I would break out in

5  hives, ugly hives, from the head to the toe, of how

6  stressed I was.  I would have migraines.  I would vomit

7  with my migraines.

8          That's how me losing my job impacted my

9  family.

10      **Q.  I appreciate that and I understand and thank**

11  **you for that.  And I -- I -- and I truly appreciate**

12  **that -- that color.**

13          **That wasn't my question, though, and I'm --**

14  **I'm gonna object to nonresponsive just because my**

15  **question was -- we have a very specific, you know --**

16  **there's -- there's money involved here.  We understand**

17  **that.**

18          **And -- and some of that information was**

19  **very helpful because I believe you said you dipped into**

20  **your retirement fund?**

21      A.  (Nonverbal response).

22      **Q.  About how much did you dip into your retirement**

23  **fund?**

24      A.  I had to take out everything.  22,000.  Those

25  10 years that I worked hard, I lost in a matter of

```
 1   seconds.
 2       Q.  So -- so 22,000 in your retirement fund.
 3       A.  (Nonverbal response).
 4       Q.  Is that part of this 62,000 calculation?
 5              Or excuse me.
 6              64,000 and change.
 7       A.  Yes.
 8       Q.  You also mentioned in that what -- what we were
 9   discussing about health insurance.
10              Did you purchase private health insurance?
11       A.  No.  I didn't qualify.
12       Q.  You didn't qualify.  Okay.
13              What about were there any expenses during
14   this time frame that, you know --
15              I understand you -- you stopped taking your
16   medication.
17              Were there any other expenses regarding
18   medical for -- that were related to the loss of this
19   health insurance at that time?
20       A.  No.  It was just that.
21       Q.  So we -- we talked about the 22,000.  And thank
22   you for that, that -- that is helpful.
23              So we're -- we're at a difference of
24   about --
25              And I went to law school, it's 'cause I
```

1   cannot do math.

2              64 minus 22 is about 42.  So I'm just

3   trying to understand where that other 42,000 came from.

4              So as part of that, the loss of the money

5   between May and September when you got your new job, how

6   much of that --

7              And I'm sorry.  I -- I know --

8              Because we took the break earlier, I wanna

9   try -- and I'm gonna try to be as quick as possible

10  'cause I know once we hit noon, we can take a longer

11  break and I appreciate your being here.

12             So the 64- -- we talked about the 22-, so

13  we're still missing about 42-.

14             How much are you seeking for the May to

15  September time frame of being out of work?

16             Do you know that number?

17       A.   No.

18       Q.   Do you know how that's calculated?

19       A.   No.

20       Q.   And then in the next paragraph, you u- --

21  there's a -- a calculation of 51,447.59 until retirement

22  at 67.  Correct?

23       A.   Yes.

24       Q.   How was that number calculated?

25             MR. OSTERBERG:  Objection, form.

61

```
 1        A.  I don't know.

 2        Q.  (BY MS. CRISCIONE)  Okay.  Now, is my

 3   understanding that you are seeking --

 4              It's the 64,000 that we talked about

 5   earlier and change.  And I -- I like to use round

 6   numbers because who likes to talk about the -- the

 7   dollar -- the cents?

 8              And then the -- the 51-  -- the 51-.

 9              Are you seeking 51- through your reti- --

10   51,000 calculated expounded out until you're 67?

11        A.  I -- I don't know.

12        Q.  And we -- we talked about you -- you were born

13   in '86.  Correct?

14        A.  Correct.

15        Q.  So -- actually, I believe my fiancé was born in

16   '86.

17              So that makes you 39?

18        A.  38.

19        Q.  38.

20              Depends on the --

21              Yeah.  He turns 39 in June.  I should know

22   that.

23              The -- so by math, that's about another --

24   a little under 30 years between what -- what -- how --

25   what, now and 67?
```

1    A.   Yes.

2    Q.   So are you seeking 50- -- 51,000 expounded out

3  for that almost 30 years to your retirement age?

4    A.   I don't know.

5    Q.   Okay.

6    A.   I --

7    Q.   I understand.

8    A.   I haven't gone over numbers.

9    Q.   Understood.

10        I wanna skip to that final section of

11  this -- this page, Identity of Experts.

12        Now, I see here your attorney Mr. Chavez is

13  on here.  Correct?

14   A.   Correct.

15   Q.   But then there's a George Andristos.

16        Do you see that?

17   A.   Yes.

18   Q.   Do you know who that is?

19   A.   No.

20   Q.   You've never spoken to him?

21   A.   No.

22   Q.   You haven't retained him in connection with

23  this lawsuit?

24   A.   No.

25   Q.   And next name is a Mr. John Wenke.

```
 1              Do you see that?

 2     A.   Yes.

 3     Q.   Have you retained him in this lawsuit?

 4     A.   No.

 5     Q.   Have you ever spoken with him?

 6     A.   No.

 7     Q.   And then obviously you have Mr. Chavez.

 8              And then Daniela Labinoti.  I think I'm

 9  pronouncing that correctly.

10     A.   I have never spoken to her.

11     Q.   Okay.  And you haven't retained her, either, in

12  this case.

13     A.   Correct.

14     Q.   Do you know if they've provi- -- been provided

15  any information regarding this case to testify?

16              MR. OSTERBERG:  Objection, form.

17     A.   I don't know.

18     Q.   (BY MS. CRISCIONE)  Okay.  But you've never --

19  like you said, you've never spoken to any of them.

20     A.   No.

21     Q.   Now I wanna go back to the requests for

22  production very quickly.  I believe that was either 2 or

23  3.  We're kind of jumping around just from answers and

24  things.  And I appreciate your patience.  It may have

25  been 5, actually, now that you say that.  Now that we
```

 1    say that.  We'll reorganize all of these at a break.

 2                    Yes.  There we go.

 3                    So we've gone through --

 4                    So we've talked about -- we've talked about

 5    how we're -- you're calculating some of your damages.

 6    Right?

 7         A.   (Nonverbal response).

 8         Q.   And we talked about that retirement fund.

 9                    So do you know --

10                    Have you turned that o- -- the statement of

11    that to your lawyer?

12         A.   No.

13         Q.   Can I ask why not?

14                    MR. OSTERBERG:  Objection, form.

15         A.   I mentioned it, but I haven't turned it in.  I

16    need -- I haven't turned it in.

17         Q.   (BY MS. CRISCIONE)  Okay.  I'm gonna just --

18                    Flipping to pa- -- the last page of this

19    document, rest -- Request for Production 35.

20                    MR. OSTERBERG:  Sorry.  What tab is that?

21                    MS. CRISCIONE:  It -- it's that same --

22    it's the requests for production.  So it's tab 3.

23         Q.   (BY MS. CRISCIONE)  So Request for Production

24    35 documents reflecting current employment, inclu- --

25    including current salary.

1                   I believe we have --

2                   And we can look at tab 6 and what -- what's

3    been produced.

4                   I believe we have pay stubs starting April

5    of 2024.

6                   Were you receiving biweekly pay stubs from

7    the start of your employment in September of '23?

8        A.  Yes.

9        Q.  Is that easily accessible to you?

10       A.  Yes.

11       Q.  Would that be something you could get at the

12   lunch break that we could review?

13                  Or is that something you need to go into a

14   system for?

15       A.  I need to go into a system.

16       Q.  Understood.  Thank you.

17                  MS. CRISCIONE:  We would ask that just

18   those be produced as soon as practicable.

19                  MR. OSTERBERG:  Noted.

20                  MS. CRISCIONE:  Yeah.  Just for the re- --

21   just for the record, the -- the ta- -- the statements

22   start at Castaneda 00044 [sic] and the first check date

23   is April 5th, 2024.

24       Q.  (BY MS. CRISCIONE)  So other than those --

25                  Here, actually, I think it's gonna be more

 1    helpful to go back to your petition -- or your -- excuse

 2    me -- your complaint, which I believe was 10 --

 3    Exhibit 10.

 4         A.  11?

 5         Q.  Yes, 11.

 6              I'm sorry.

 7              We've got a lot of documents here and we're

 8    trying to keep them all aligned.

 9              So then flipping to page 6 of that

10    document.

11              On paragraph 37, you're -- you allege that

12    you're entitled to recover punitive damages under

13    Title VII.

14              What is the factual basis for punitives

15    against a state institution?

16              MR. OSTERBERG:  Objection, form.

17         A.  Can you rephrase that question, please.

18         Q.  (BY MS. CRISCIONE)  Yeah.

19              So we -- we've talked about how

20    Texas Tech-El Paso is a state university.  Correct?

21         A.  Correct.

22         Q.  And in your petition, you are seeking punitive

23    damages.  Correct?

24         A.  Correct.

25         Q.  And you've reviewed this pe- -- complaint with

1   your lawyers.  Correct?

2       A.  Correct.

3       Q.  You understand the factual basis for your

4   lawsuit.  Correct?

5       A.  Correct.

6       Q.  The damage- -- you understand the damages you

7   are seeking.  Correct?

8               MR. OSTERBERG:  Objection, form.

9       A.  Correct.

10      Q.  (BY MS. CRISCIONE)  And you understand the --

11  you know, you have a general idea of what laws you are

12  suing under.

13              MR. OSTERBERG:  Objection, form.

14      Q.  (BY MS. CRISCIONE)  Correct?

15      A.  Correct.

16      Q.  I'm -- I'm not asking you to form a legal

17  opinion.  You know, we've all heard of -- you know,

18  ev- -- you know, we all go through EEO training.  We all

19  kind of have a general idea about Title VII and

20  Title VIIII.  Right?

21              MR. OSTERBERG:  Objection, form.

22      A.  Yes.

23      Q.  (BY MS. CRISCIONE)  Okay.  So what is the

24  factual basis?

25              You know, why do you think you're entitled

1   to punitive damages in this case against Texas Tech-El

2   Paso?

3                MR. OSTERBERG:  Objection, form.

4        A.  Can you explain "punitive."

5        Q.  (BY MS. CRISCIONE)  So -- so I cannot.  I

6   cannot give you legal advice.  That's something you need

7   to speak to your lawyer about.

8                But -- so are you -- are you asking -- when

9   we -- when we go -- if we have to go to trial, are you

10  asking -- are you gonna be asking the jury to award

11  damages to you to punish Texas Tech-El Paso for what

12  happened to you?

13               MR. OSTERBERG:  Objection, form.

14       A.  Yes.

15       Q.  (BY MS. CRISCIONE)  Do you know that number?

16       A.  No.

17       Q.  How much have you paid Mr. Chavez's firm to

18  date?

19               MR. OSTERBERG:  Objection.

20               Don't answer that.

21       Q.  (BY MS. CRISCIONE)  Ms. -- Ms. Castaneda,

22  turning to Exhibit 11 and pa- -- paragraph 39, it says

23  you're entitled to recover reasonable and necessary

24  attorney's fees.  Correct?

25       A.  Yes.

1    Q.  So you are seeking reimbursement of your

2  attorney's fees in this lawsuit.  Correct?

3    A.  Correct.

4    Q.  So if we went to trial and you asked the jury

5  to award you a number in terms of attorney's fees, what

6  would you be asking the jury for?

7                MR. OSTERBERG:  Objection, form.

8    A.  I don't have the number on the top of my head

9  right now.

10    Q.  (BY MS. CRISCIONE)  Is -- are they billing at a

11  hourly rate?

12                MR. OSTERBERG:  Objection, form.

13                Don't answer the question.

14                MS. CRISCIONE:  It's 10 to 12:00.  Let's

15  take a break.

16                THE VIDEOGRAPHER:  The time is 11:49.

17  We're off the record.

18                (A recess was taken.)

19                THE VIDEOGRAPHER:  Time is 12:06.  We're

20  back on the record.

21    Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I am handing

22  you Deposition Exhibit 13.

23                Have you reviewed this document?

24                (Exhibit marked, Exhibit 13.)

25    A.  Yes.

1      Q.  (BY MS. CRISCIONE)  Okay.  I wanna look at the

2  sec- -- the third page of this document, Request for

3  Admission 1.

4              MS. CRISCIONE:  And I am sorry.  This is

5  tab 4.

6      Q.  (BY MS. CRISCIONE)  So that says -- do you see

7  where it says:  Admit that you filed your complaint with

8  the Equal Opportunity -- Equal Employment Opportunity

9  Commission on June 29, 2023?

10              And it says that that was denied.  Is that

11  correct?

12              That's what this document says?

13      A.  Yes.

14      Q.  Okay.  What part of that statement is not

15  factually accurate?

16              MR. OSTERBERG:  Objection, form.

17      A.  I'm not sure.

18      Q.  (BY MS. CRISCIONE)  Would it help you to

19  actually look at your EEOC charge?

20      A.  Yes.

21      Q.  Okay.  I can absolutely do that.  Let me just

22  find it.

23              So this is within tab 6, Castaneda 00029

24  [sic].  And this is two pages.

25              So we're gonna make this Exhib- --

71

1    Deposition Exhibit 14, I'm handing you.

2              So do you recognize this as your Charge of

3    Discrimination?

4              (Exhibit marked, Exhibit 14.)

5         A.   Yes.

6         Q.   (BY MS. CRISCIONE)   And do you see here in the

7    top right corner Charge Presented To and there's an "X"

8    next to EEOC?

9         A.   Yes.

10        Q.   And to your understanding, that means the Equal

11   Employment Opportunity division.

12        A.   Yes.

13        Q.   Or Emplo- --

14             Yes.

15             And then if you flick -- flip to the second

16   page.

17             On the bottom where -- bottom left-hand

18   corner where you signed this document, what is the date

19   there?

20        A.   June 29, 2023.

21        Q.   Okay.   So do you -- as you sit here, do you

22   have any reason to believe that this document was filed

23   before June 29, 2023?

24        A.   I can't recall.

25        Q.   Is it possible it was signed on June 29, 2023,

1    but filed afterwards?

2                    MR. OSTERBERG:  Objection, form.

3        A.  I don't remember.

4        Q.  (BY MS. CRISCIONE)  Okay.  So -- so then going

5    back to Exhibit 13, Request for Admission 1, you -- you

6    just don't remember enough about this statement to know

7    what you disagree factually with in Request for

8    Admission 1.  Correct?

9        A.  Correct.

10       Q.  Okay.  Then Request for Admission 7:  Admit

11   that you paid $200 on March 23rd, 2023, to --

12                   Here it's abbreviated TTUHSCEP, but that is

13   a mouthful, so Texas Tech-El Paso is better.

14                   And do you see where it says "Denied"?

15       A.  Yes.

16       Q.  What about -- what factually about that

17   statement do you disagree with?

18       A.  That's not the amount that I paid.

19       Q.  How much did you pay?

20       A.  286.

21       Q.  And did you pay cash or card?

22       A.  Card.

23       Q.  What credit card was that on?

24       A.  I believe it was the First Light Federal Credit

25   Union one.

1    Q.  Okay.  And is that a- -- account still open?

2    A.  Yes.

3    Q.  So you still have access to the statement where

4  you paid the 286 on the card?

5    A.  Yes, I should.

6    Q.  Okay.

7         MS. CRISCIONE:  And, Mr. Osterberg, I

8  believe that would be responsive to Request for

9  Production 33 and 34, so we would ask that those be

10  produced.

11         MR. OSTERBERG:  Noted.

12         MS. CRISCIONE:  Thank you.  I appreciate

13  it.

14    Q.  (BY MS. CRISCIONE)  Now, before we took our

15  break, you mentioned that there were teams that were

16  implemented during COVID to ensure the -- the six-feet

17  separation.  Correct?

18    A.  Yes.

19    Q.  How often would those teams rotate?

20    A.  Every other day.

21    Q.  Okay.  And -- and this probably should've been

22  a question I asked at the outset, but how often were you

23  in prepandemic, kind of just your standard work

24  schedule, what was your standard work schedule?

25    A.  From 7:30 to 4:30 or 8:00 to 5:00.

1    Q.  And was that Monday through Friday?

2    A.  Yes.

3    Q.  Was -- were there people who worked separately

4  on Saturdays or Sundays for emergencies or was the

5  clinic just completely closed on the weekends?

6    A.  Clinic closed on weekends.

7    Q.  Okay.  Do you remember --

8            And I know it's been a while and I

9  apologize.

10           Do you remember the kind of makeup of those

11  teams?

12           Like how many CMAs, how many PSS.  Kind of

13  what -- the general look of those teams.

14    A.  For CMAs, I believe it was two to four.  For

15  PSSs in the front, I can't recall if it was one or two.

16    Q.  Okay.  And how many CMAs were employed in the

17  surgery department?

18           Let's start in 2020.

19           MR. OSTERBERG:  Objection, form.

20    A.  Eight.

21           Eight.

22    Q.  (BY MS. CRISCIONE)  And I know we don't wanna

23  dig up this -- the -- that email that we looked at

24  previously, but from your recolle- --

25           And if you need to use it to refresh your

75

1    recollection, please do so.

2              Were there any CMAs that were employed in

3    2023 that either got hired or were -- was there shifts

4    between 2020 and 2023 or were there -- were -- was it

5    the same CMAs for those three years?

6              MR. OSTERBERG:  Objection, form.

7         A.  They were new CMAs.

8         Q.  (BY MS. CRISCIONE)  Okay.  Who was new in 2023?

9              And, yeah, if we need to pull up that

10   email, it may actually be best to have names.

11             Yeah, that was tab 18.  The February 8th

12   email.  Yeah.

13        A.  So the new CMA was Brenda Argueta.  New PSS,

14   Gloria Gallardo.  New CMA, Georgina Gonzalez.  New CMA,

15   Suzette Gonzalez.  Erika Herrera, new.  Aleida La-Salde.

16   Victoria Mercado, new PSS.  Jessica Portillo-Rodriguez,

17   new CMA.  Ashley Tarin, new CMA.  Ana Yu, new PSS.

18        Q.  So actually, the only C- -- and -- the only CMA

19   who was working in 2020, who was also working in 2023 --

20   what it sounds like from your testimony and please

21   correct me -- was you.

22        A.  It is I and Vanessa Zepeda.

23        Q.  So you and Vanessa.

24        A.  Yes.

25        Q.  Okay.  Do you remember the names of CMAs who

```
 1   were working in the clinic in 2020?

 2               I know it's been a while.

 3        A.  Yolanda Romero.  Nicole Wright.  Norma Sanchez.

 4   Edgar Silva.  Angie Marquez.

 5        Q.  And spell Marquez, please.

 6        A.  M-A-R-Q-U-E-Z.

 7        Q.  Thank you.

 8        A.  And then it was I.  And Vanessa was added I

 9   think towards --

10               No, she was there.

11        Q.  Okay.

12        A.  Vanessa was there.

13               MR. OSTERBERG:  Bless you.

14               (Discussion off the stenographic record.)

15        Q.  (BY MS. CRISCIONE)  Do you remember --

16               I know you said Vanessa was there in 2020.

17               Do you remember when Ms. Zepeda got hired?

18               Oh, and I guess she's Ms. Chacon now.

19   Right?

20               Correct?

21        A.  Correct.

22               No, I don't remember.

23        Q.  Okay.  But it was pre-20- -- it was pre-2020.

24        A.  I believe so.

25        Q.  Okay.  Do you --
```

1          I wanna talk about when you were moved from
2   the surgery clinic.
3              Do you remember when that was?
4      A.  In March.  In March, David Bergeon was when he
5   started emailing me about nepotism.  And I can't
6   remember if it was the last towards -- the ending of
7   March or the beginning of April and I was even asking to
8   be put under another supervisor.
9      Q.  So it -- it's your testimony that there should
10  be emails between you and Mr. Bergeon about the issues
11  with you and Ms. Alejandra Castaneda and be put under
12  another supervisor.
13     A.  He -- he never responded to me, or
14  Jennifer Erickson.  I would reach out to them and they
15  never responded to me.
16              And the title -- these (indicating), the
17  title of my email was Concern.  It was concern about
18  that and it was concern about the sexual harassment.  I
19  never got an email back or a phone call.
20     Q.  Okay.  So -- so it is your testimony that those
21  emails that we looked at, which I believe are Deposition
22  Exhibits 2 and 3, were attempting to address both the
23  nepotism issue and the complaint of sexual harassment.
24     A.  Correct.
25     Q.  Okay.  But neither of them got back to you.

1    A.   Neither of them.

2         I even reached out to Leticia Cano and I

3    told her to put me somewhere else 'cause I didn't want

4    any problems.

5    **Q.   So you were the one who requested the transfer.**

6    A.   Correct.

7         And Leticia Cano's response was that no one

8    told her anything about it and that she wasn't gonna say

9    anything.

10        So I was reaching out for help.

11   **Q.   Uh-huh.**

12   A.   I was seeking help and no one responded to me.

13   **Q.   Well, you -- you were moved over to the breast**

14   **clinic.**

15   A.   Correct.

16   **Q.   And when was that?**

17   A.   I can't remember if it was the ending of March

18   or beginning of April.

19   **Q.   But sometime within --**

20   A.   The -- that time frame, correct.

21   **Q.   Did you --**

22   A.   I'm sorry?

23   **Q.   No, no.  Go ahead.**

24   A.   Leticia Cano wanted me to be moved to

25   Transmountain cam- -- campus --

1    Q.  Uh-huh.

2    A.  -- Dr. Castro sent an email saying for me not

3  to be moved, for me to be moved to the breast clinic.

4    Q.  Okay.  Did your pay decrease?

5    A.  No.

6    Q.  Did your job title change?

7    A.  No.

8    Q.  Did your benefits change?

9    A.  No.

10    Q.  So was your relocation --

11         Well, are you contending that your

12  relocation was retaliation for your sexual harassment

13  complaint?

14    A.  Yes.

15         MR. OSTERBERG:  Objection, form.

16    Q.  (BY MS. CRISCIONE)  How is it retaliation when

17  you requested it?

18         MR. OSTERBERG:  Objection, form.

19    A.  It's retaliation because when they gave

20  Alejandra that promotion, they knew.  They did nothing

21  about it.  Terry.  Leticia.  Sylvia was aware who wanted

22  to make that change.  Rene knew how her and I -- my

23  relationship was.  No one moved me.  No one said

24  anything about nepotism.  Until after the fact that I

25  made that claim against Terry Balderrama is when I

1  received that email from David Bergeon about nepotism.

2              And then when he started talking about

3  nepotism, I told him, "I've been here an employee for

4  10-plus years.  I'm not a problematic employee.  Move

5  me.  I don't want any problems."

6              I went to Leticia Cano, I said, "Hey, I had

7  a meeting with David Bergeon.  This and this.  This is

8  what happened."

9              And her response was, "No one told me

10 anything and I'm not gonna do anything."  She even

11 shrugged her shoulders.

12             So no one -- to me, no one helped me at

13 all.  When I was trying to seek help, no one helped me.

14      **Q.  (BY MS. CRISCIONE)  Is it your contention that**

15 **because these administrators knew of your relationship,**

16 **that the university as a whole should've known about**

17 **your relationship?**

18      A.  With Alejandra?

19      **Q.  Yes.**

20      A.  Yes.

21      **Q.  Do you contend that Jennifer Erickson knew**

22 **about your relationship with Alejandra before**

23 **February of 2023?**

24      A.  Yes.

25      **Q.  What is the factual basis of that contention?**

1    A.  She had a close relationship with

2  Terry Balderrama and Leticia Cano.

3    **Q.  What is the basis for your...**

4    A.  They talked.  They -- every time I sent an

5  email to Jennifer Erickson --

6          For an example.  There was a merit that was

7  going awan- -- around.  I sent an email to

8  Jennifer Erickson, I asked her why did I not receive a

9  merit.  We're short-staffed.  I explained all these

10 things how I felt we're stressed.  We're tired.  Is like

11 our work not good enough to be receiving merits.

12         The first thing she did was send it to

13 Terry.  She sent that email straight to Terry.  Terry

14 called me into her office, she gave me the cold

15 shoulder.  Leticia Cano was there.  And I was following

16 orders.  The one who sent me to do -- send that email

17 was Sylvia Lopez.

18   **Q.  So it's your contention that Ms. Lopez told you**

19 **to contact Ms. Erickson regarding the merit.**

20   A.  Correct.

21   **Q.  And Ms. Erickson, just so we're clear, is the**

22 **director of HR for the entire university.  Correct?**

23   A.  Correct.

24   **Q.  Did you not think it was more appropriate to go**

25 **to your supervisor, who would've authorized the merit**

1  increase, to discuss the merit increase?

2      A.  I did.

3          MR. OSTERBERG:  Objection, form.

4      Q.  (BY MS. CRISCIONE)  So why wouldn't you go to

5  Terry directly?

6      A.  I went to Sylvia Lopez two or three times with

7  my concerns and she said send the email to

8  Jennifer Erickson.

9          MS. CRISCIONE:  This is tab 7.

10          We're at 16.

11          (Discussion off the stenographic record.)

12      Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I'm handing

13  you Deposition Exhibit 15.

14          Is this the email that you were referring

15  to?

16          (Exhibit marked, Exhibit 15.)

17      A.  Yes, ma'am.

18      Q.  (BY MS. CRISCIONE)  Okay.  So I wanna start at

19  the top of this email chain on page 2.

20          If you flip over to page 2 --

21      A.  Sorry.

22      Q.  -- where Ms. Erickson is responding to a

23  voicemail that you left her.  Is that -- is that

24  correct?

25      A.  Correct.

1    Q.  So are you contending that there is an email

2  other than this chain regarding the merit increase?

3    A.  Can you repeat the question, I'm sorry.

4    Q.  Yeah.

5        So you -- you -- you testified that you

6  went to Sylvia and Sylvia said to send Erick- --

7  Jennifer Erickson an email.  Correct?

8    A.  Correct.

9    Q.  Now, this thread, which you just testified is

10 about these merit increase issues --

11   A.  Yes.

12   Q.  -- the chain starts -- and actually, it starts

13 on page 3 -- as a voice message left for Ms. Erickson

14 from Surgery Surgery CMA.

15       Do you see that?

16   A.  Yes.

17   Q.  And then Ms. Erickson respond- -- or forwards

18 that voicemail to you asking if it was you who left that

19 voicemail.  Correct?

20   A.  Correct.

21   Q.  So my -- my question is is there another email

22 that -- to Ms. Erickson regarding this issue?

23   A.  Regarding this issue, no, but there's another

24 email that I reached out to her.

25   Q.  And a- -- is --

1          Are you referring to that April 2023 email?

2     A.   No.  There was one before that.

3     Q.   So that your -- it's your testimony that there

4  should be an email from you to Ms. Erickson between

5  August of 2022 and April of 2023 regarding the merit

6  increase.

7     A.   It's regarding something else.  It was

8  regarding a complaint against Leticia Cano.

9     Q.   So you lodged a complaint against Leticia.

10    A.   Correct.

11    Q.   And is that separate from the complaint that

12 you lodged against Ms. Balderrama?

13    A.   Correct.

14    Q.   And was that complaint against Ms. Cano a -- a

15 complaint of discrimination, retaliation or harassment?

16         MR. OSTERBERG:  Objection, form.

17    A.   No.  That was the first com- -- it was totally

18 separate, that other complaint.

19    Q.   (BY MS. CRISCIONE)  Okay.  And when was that

20 complaint sent?

21    A.   After this.  It was between this and before I

22 was gonna graduate from [sic] my bachelor's.  'Cause

23 she -- Leticia Cano made a comment.

24    Q.   A comment about your bachelor's?

25    A.   Correct.

1      Q.   Okay.  And if you look at the first page of

2   that where Ms. Erickson responds to your email that

3   merit increases are based on departmental funding and

4   determined by each department's leadership; however any

5   and all staff who received a base salary adjustment

6   between March 1st and Mar- -- or -- and August 1st are

7   ineligible for another merit increase for the next six

8   months.

9           And she cites you to a -- a policy.

10  Correct?

11     A.   Correct.

12     Q.   (Reading)  Records indicate you received a base

13  increase on 4/1/2022 as part of the CMA classification

14  adjustment.

15          Did you receive a base increase in

16  April of 2022?

17     A.   I don't recall.

18     Q.   But as you sit here today, you have no evidence

19  to suggest that you did not receive a -- a merit

20  increase in April of 2022.

21     A.   I don't think I did, that's why I sent her

22  the -- the email asking for why I didn't receive one.

23     Q.   Do you have direct deposits?

24          Well --

25     A.   Yes.

1      Q.  You received direct deposits from your -- from

2  Texas Tech-El Paso.

3      A.  Yes.

4      Q.  What bank was that to?

5      A.  First Light.

6      Q.  And you -- you still have that account.

7      A.  Yes.

8      Q.  And you could go back into those records and

9  look at your paychecks for that time period.  Correct?

10     A.  Yes.

11     Q.  Why didn't you go to Dr. Castro about the merit

12  increase issue?

13     A.  He didn't have anything to do with it.

14     Q.  Why didn't you go to Dr. Figueroa?

15     A.  I don't know him.

16     Q.  Dr. Diamond?

17     A.  He wasn't there.

18     Q.  Rene --

19     A.  Or --

20     Q.  -- Vallejo?

21         Oh, I'm sorry.  I cut you off.

22     A.  Rene Vallejo, I didn't go to him.  I went

23  directly to Sylvia Lopez.

24     Q.  If -- if you felt Sylvia and Jennifer weren't

25  helpful, why didn't you go to Rene?

1    A.  'Cause that's when they sent the email to Terry

2 and it had to end there.

3    **Q.  Why do you -- why do you say it had to end**

4 **there?**

5    A.  Because Terry was a very strong character.  She

6 is woman.  She'll give you the cold shoulder if she

7 doesn't like what you say.  She'll give you the cold

8 shoulder if you do something that she doesn't want you

9 to do.

10    **Q.  Do you know when Terry Balderrama resigned?**

11    A.  In March.  I don't know the ex- -- I think the

12 first week of March.

13    **Q.  If I told you she had submitted her resignation**

14 **mid-January to Texas Tech-El Paso, do you have any**

15 **evidence to dispute that?**

16    A.  No.  I didn't know.  I didn't even think about

17 that.

18    **Q.  When you were emplo- -- first employed by**

19 **Texas Tech-El Paso, did you receive training?**

20    A.  Yes.

21    **Q.  Did that training include antidiscrimination,**

22 **antiretaliation and antisexual harassment training?**

23    A.  Yes.

24    **Q.  Were you required to review -- or re- -- re- --**

25 **renew that training while you were employed there?**

1    A.  Correct.

2       Q.  Is it your understanding that all employees

3  were required to renew that training while they were

4  still with the university?

5            MR. OSTERBERG:  Objection, form.

6    A.  Yes.

7       Q.  (BY MS. CRISCIONE)  And you --

8            Is it --

9            To your knowledge, all employees were

10  required to complete that training upon their

11  onboarding.  Correct?

12            MR. OSTERBERG:  Objection, form.

13    A.  Correct.

14       Q.  (BY MS. CRISCIONE)  And are you aware of

15  Texas Tech-El Paso's written antidiscrimination

16  policies?

17    A.  No.  Not at the top of my head.

18       Q.  Okay.  But you know they exist.

19    A.  Correct.

20       Q.  Are you also aware of -- that Texas

21  Tech-El Paso is subject to systemwide antidiscrimination

22  policies?

23    A.  Can you rephrase that.

24       Q.  Yeah.

25            So Texas Tech Health Sen- -- Sciences

 1    Center-El Paso is part of the Texas Tech University

 2    system.  Correct?

 3         A.  Correct.

 4         Q.  And as part of one of the -- as one of the

 5    institutions within the system, they are subject not

 6    only to their own policies, but to policies instituted

 7    out in Lubbock by Texas Tech.

 8                   Are you aware of that?

 9                   MR. OSTERBERG:  Objection, form.

10         A.  I wasn't aware of that.

11         Q.  (BY MS. CRISCIONE)  Okay.  So have you -- so

12    you have never reviewed Texas Tech systemwide

13    antidiscrimination policies.

14         A.  No.

15         Q.  You have never reviewed systemwide Texas Tech

16    antiretaliation policies.

17         A.  I only did what I was told to do with the

18    trainings.  I don't know if that has to do with it.

19         Q.  Okay.  But so you -- you at -- you were not

20    intimately familiar with the policies and structures of

21    how Texas Tech investigates claims of discrimination,

22    retaliation and harassment.  Correct?

23                   MR. OSTERBERG:  Objection, form.

24         A.  Correct.

25         Q.  (BY MS. CRISCIONE)  You reported the alleged

1  harassment end of February of 2023.  Correct?

2              Or excuse me.

3              End of February 2023.

4              I apologize.

5      A.  It was the 20th or the 21st of February.

6      Q.  **What spurred you to make the report?**

7      A.  After the incident happened in December, every

8  day that I was going to work, I was scared.  I felt

9  humiliated.  I felt like I was the one at blame.  But

10  then as the days went by, I said to myself, I can't

11  continue coming like this to work.  You're coming to

12  work to work.  You shouldn't be coming to work being

13  fearful.

14              So that day that I went to go speak to

15  Mr. Rene Vallejo, I told him how Terry would make

16  comments about my body, especially my bottom.  I told

17  him how that one day when she was in the minor room, it

18  was I, Dr. Diamond, her husband, Jesus Balderrama, her

19  daughter, Taylor Balderrama.  After I went over the

20  timeout with them for her to receive her Botox

21  injections, I walked past her and that's when she

22  slapped and grabbed my bottom.

23              At that instant, I felt very invaded.  My

24  personal space was invaded.  I felt shocked.

25  Embarrassed.  And I even walked funny by the door, like

91

1  I wanted to crawl and hide.  I just felt disgusted.

2              So after that, I told myself repeatedly

3  every day if you speak up, if you speak up, you're gonna

4  get fired.  That's the reason why I didn't say anything.

5              But as times -- as the days went by, I was

6  like I can't continue feeling like this 'cause it was

7  taking an emotional toll on me mentally, physically.

8              I didn't tell anybody.  No one.  I didn't

9  tell no one that happened.

10             And that day, when I went to go tell

11 Mr. Vallejo what happened to me, how she would talk

12 about my body and how that incident happened, I broke

13 down crying and I was scared, like super scared.

14             And he said, "I'm very sorry you had to go

15 through this," he's like, "but I'm gonna need to report

16 this."

17             To this day I feel ashamed.  I feel

18 disgusted.  And that's when it happened.  After that

19 incident happened, he reported to Jennifer Erickson.  I

20 remember I had to fill out that form twice.  And he was

21 even filling out that form.

22             And then after Terry left, that's when

23 Lubbock called me and they're like, "We can't do

24 anything because Terry Balderrama's no longer an

25 employee."

1          But after I made that complaint, I said to

2   myself, "I know I'm gonna get fired."  That's what

3   withheld me from saying anything from December to

4   February because I was scared.

5          And look what happened.  I got fired.

6      Q.  **Other than Mr. Vallejo, had you told anybody**

7   **what had happened?**

8      A.  Alejandra would witness -- that day that I told

9   her that I was gonna go say stuff to Mr. Vallejo about

10  what happened to me, Alejandra would witness

11  Terry Balderrama making comments about my body.  She

12  would make comments about my body to her sister,

13  Michelle Portillo, and I just felt very uncomfortable.

14  That's the word.  I felt uncomfortable and I felt

15  disgusted.

16          That's why I say Terry's a very powerful

17  lady and she can make you feel so tiny.

18      Q.  **With Alejandra being your supervisor, you know,**

19  **she would've had the authority to do something.**

20  **Correct?**

21      A.  Correct.  But at that time when all that

22  incident was happened [sic], it was Sylvia Lopez.

23          So those comments that Terry would make

24  about my body were going on for months.  That's

25  something that -- that I dealt with.

1          And I honestly wish that I spoke up sooner,

2  but I was scared.  I was scared that this was gonna

3  happen and it still happened.

4          I was an employee there for 10 years, never

5  had a write-up, never had a coaching.  All my

6  evaluations were good.  I was a very good employee and

7  dedicated.  And I went through that.

8          And it changed me.  It changed me not to

9  trust.  It changed me to keep my personal space and to

10  have my guard up.  It changed me not to trust

11  leadership.

12      **Q.  Had you mentioned anything to Ms. Lopez before?**

13      A.  No, I didn't say anything.

14          Like I said, I was scared.

15      **Q.  To your recollection, did she ever witness any**

16  **of this?**

17      A.  I can't recall.

18      **Q.  Now, you said Dr. Diamond was in the room with**

19  **you when it happened.**

20      A.  Yes.

21      **Q.  And -- and to be clear, I just wanna back --**

22  **back up.**

23          **Ms. Balderrama was having this procedure**

24  **herself when this occurred.**

25      A.  Correct.

1     Q.  So she was in her capacity as a patient rather

2 than your supervisor at -- at that current moment.

3           MR. OSTERBERG:  Objection, form.

4     A.  Correct.

5     Q.  (BY MS. CRISCIONE)  She was not on the clock at

6 this point.

7           MR. OSTERBERG:  Objection, form.

8     A.  I don't know if she clocked in or clocked out.

9     Q.  (BY MS. CRISCIONE)  Okay.

10     A.  She didn't have to, she was salary.

11     Q.  Okay.  Understood.

12           But she wasn't -- she was scheduled for

13 that day, to your recollection.

14           MR. OSTERBERG:  Objection, form.

15     A.  Yes.

16     Q.  (BY MS. CRISCIONE)  Okay.  And -- and you

17 mentioned Dr. Diamond.

18           Do you -- do you think Dr. Diamond

19 witnessed anything?

20           Do -- do your -- to your knowledge, do you

21 think he --

22     A.  He didn't see.

23     Q.  So --

24     A.  His back was towards -- he was preparing the

25 syringes.

1      Q.  Okay.  So -- and actually, I think this is
2  gonna help kind of orient us to how the -- with the --
3  how the room works.

4            So let's say, using this room as a example,
5  and where Mr. -- where Dr. Diamond was is kind of where
6  you're sitting and the -- where he was pai- -- preparing
7  the -- the syringes is to -- is -- his back is -- he's
8  facing that wall.

9      A.  He was facing that way.

10     Q.  Okay.

11     A.  It's exactly -- the door was right there.
12  Terry's sitting here.  Jesus Balderrama's sitting where
13  he's sitting.  And Taylor Balderrama is sitting over
14  there.

15     Q.  So to be clear, Taylor Balderrama is sitting
16  where Mr. Osterberg is sitting.

17     A.  Correct.

18     Q.  Jesus Balderrama is sitting where Mr. Webster
19  is sitting.

20     A.  Correct.

21     Q.  Okay.  And Ms. Balderrama was sitting where you
22  were.

23     A.  Correct.

24     Q.  Dr. Diamond is kind off in this left-hand
25  corner preparing the syringes.

1      A.  Correct.

2      **Q.  How big are these rooms?**

3      A.  It's from I would say where that first photo

4  frame is to here or maybe a little bit smaller.  Maybe a

5  little bit smaller.

6              Maybe to where that gray thing is.

7      **Q.  So when you say the "gray thing," the gray slab**

8  **on the right-hand wall?**

9      A.  Correct.

10     **Q.  Okay.**

11     A.  The first one over there.

12     **Q.  The first one.**

13             **So right -- right by the door so...**

14     A.  Correct.

15     **Q.  Okay.  Where --**

16             **So she's sitting there.  His back is --**

17             **Where were you standing and walking that**

18  **this occurred?**

19             **And I'm -- I'm not trying to make you**

20  **relive this, I'm just trying to understand how this**

21  **happened.**

22     A.  I was standing right here, right here, going

23  over her timeout procedure 'cause you need to do a

24  timeout before you get an injection.

25     **Q.  Uh-huh.**

1      A.  And I said, "Okay, I'm done."  I walked over

2   here.  And when I was passing her here, that's when she

3   went like this (indicating) to me when I was walking by.

4      Q.  So you --

5              Is -- was there a table in this room or

6   were -- are you just kind of pointing to this corner

7   just so that --

8      A.  I'm pointing to the corner where I was

9   standing.

10     Q.  Okay.  So she would --

11             You were kind of to her right -- right-hand

12  side, a little off --

13     A.  Yes.

14     Q.  -- you came around towards her.  And then when

15  you got to her left-hand side.

16     A.  Correct.

17     Q.  Okay.  And -- and I appreciate it.  I know that

18  this is difficult.  Trust me, I know that this is

19  difficult.  I'm just trying to understand.

20             At this --

21             And did- --

22             And this happened December '22.

23     A.  Correct.

24     Q.  By this point, who was the -- who was your

25  supervisor?

1                     **Syv- -- Syv- -- Sylvia or Alejandra?**

2       A.   December 2022.

3                     I think it was -- I think it was Alejandra.

4                     MS. CRISCIONE:   This is tab 16.

5                     (Discussion off the stenographic record.)

6                     MS. CRISCIONE:   Tab 16, Exhibit 16.

7                     (Exhibit marked, Exhibit 16.)

8       **Q.   (BY MS. CRISCIONE)   Ms. Castaneda, I am handing**

9    **you an email.**

10                    **Do you recognize this?**

11      A.   It's regarding policies.

12      **Q.   So I just wanna ask.**

13                    **This last part of --**

14                    **Well, first off, do you remember what sort**

15   **of useful links --**

16                    **When you clicked on this -- when you**

17   **clicked on this link that was sent to you from**

18   **Alejandra Castaneda to you, Brenda Argueta,**

19   **Georgina Gonzalez, Suzette Gonzalez, Erica Herrera,**

20   **Victoria Mercado, Ashley Tarin, Ana Yu and**

21   **Vanessa Zepeda, what sort of resources would this lead**

22   **you to?**

23      A.   I don't know.  I -- I'm not even gonna guess

24   'cause I don't even remember.

25      **Q.   I -- I understand.**

1          **The next sentence:  Please go through it**

2  **and save it so we all may know [sic] and when to use it,**

3  **if being asked by QI.**

4                    **What is QI?**

5      A.   Quality improvement.

6      **Q.   What is quality improvement's job, to your**

7  **recollection?**

8      A.   To make sure that the patient safety standards

9  are met, policies are met.  That we're obeying

10 everything for patient safety.  And in preparation for

11 joint commission.

12     **Q.   The joint commission was han- -- happening at**

13 **this time.**

14     A.   No, no, no.  They just --

15     **Q.   No?**

16     A.   -- go around to clinics making sure that

17 everything's up to standard.

18     **Q.   When -- when they --**

19             **When you say "policies," is that just for**

20 **patient safety or is that -- does that include all**

21 **policies of Texas Tech-El Paso?**

22     A.   All policies Tech -- of Texas Tech.

23     **Q.   Had surgery had a QI visit recently, to your**

24 **recollection, when Alejandra sent this email?**

25     A.   I don't remember.

100

1    Q.  You wouldn't know what caused her to send this

2  email.  Correct?

3    A.  No.

4        I know the QI nurses would go like every

5  two, three months to go do walk-arounds, but I don't

6  remember.

7    Q.  Who were some of the QI nurses?

8    A.  Gabriel Fernandez.  And it was Laura Riegel.

9    Q.  Had Ms. Riegel paid a visit to surgery around

10  this time, to your recollection?

11    A.  No, I -- I -- I don't remember.

12    Q.  Okay.  Do you know what EthicsPoint is?

13    A.  Can you rephrase it.

14    Q.  Well --

15    A.  Or...

16    Q.  So I'll -- I will represent to you that

17  EthicsPoint is a system that Texas Tech-El Paso uses for

18  reports of employee misconduct, among other things.

19        Did you know that existed?

20    A.  No.

21    Q.  Have you reviewed the EthicsPoint report

22  regarding the discounted Botox and cosmetic injectables?

23    A.  I briefly scanned through it.

24    Q.  But you didn't review it in detail.

25    A.  No.

1       **Q. And you don't know what caused the audit that**

2 **resulted in that report.**

3       A. No.

4           I don't even think I saw an audit report.

5       **Q. Okay. What evidence do you have that**

6 **Andy Conkovich knew about your complaint of sexual**

7 **harassment?**

8       A. I don't have any evidence.

9       **Q. What evidence do you have that Dr. Lange knew**

10 **about your complaint of sexual harassment?**

11           MR. OSTERBERG: Objection, form.

12       A. I sent him an email the day I got terminated

13 talking about it. That's the only thing I discussed

14 with him about it. I'm not sure.

15       **Q. (BY MS. CRISCIONE) So -- so the only time that**

16 **you mentioned your harassment complaint was the day you**

17 **got -- you -- you were terminated.**

18       A. Correct. I told him it was retaliation.

19       **Q. Other than that email, do you have any other**

20 **evidence that Dr. Lange knew of the sexual harassment**

21 **complaint?**

22       A. On my end, no.

23       **Q. Other than Alejandra and Ulysses, did you have**

24 **any other family that worked at Texas Tech-El Paso?**

25       A. No.

1      Q.  Who is Dr. Davis?

2      A.  He was a general surgeon.

3            MR. OSTERBERG:  Sorry.  Can you say that

4  name again.  I missed it.

5            MS. CRISCIONE:  Dr. Davis.

6            MR. OSTERBERG:  Thanks.

7            MS. CRISCIONE:  Yeah, no worries.

8      Q.  (BY MS. CRISCIONE)  Did you reach out to

9  Mr. Davis -- or excuse me -- Dr. Davis for helping

10  getting another position at Texas Tech?

11      A.  No.

12      Q.  What was the position you were seeking at the

13  northeast clinic?

14      A.  The manager.

15      Q.  Ma- -- manager of the clinic.

16      A.  Correct.

17      Q.  Was it another surgery clinic?

18      A.  Correct.

19      Q.  Were you aware that a woman replaced you in

20  your role at Texas Tech?

21      A.  For?

22      Q.  So you -- you were terminated as a -- a

23  certified medical assistant at Texas Tech-El Paso.

24      A.  Okay.

25      Q.  Were you aware that another woman was hired for

 1  that role after your termination?

 2       A.  No.

 3            MS. CRISCIONE:  We've been going about

 4  another hour and, actually, I may be able to wrap this

 5  up, so wanna take a five- to 10-minute break?

 6       A.  Uh-huh.

 7            MR. OSTERBERG:  Sure thing.

 8            MS. CRISCIONE:  Okay.

 9            THE VIDEOGRAPHER:  The time is 12:55.

10  We're off the record.

11            (A recess was taken.)

12            THE VIDEOGRAPHER:  The time is 1:04.  We're

13  back on the record.

14       Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I just have

15  a few more questions.

16            You testified earlier that one of the

17  stresses of losing your job was losing your health

18  insurance.  Correct?

19       A.  Correct.

20       Q.  And part of that, was your -- your children

21  were on your health insurance.

22       A.  Correct.

23       Q.  You also testified that you and Mr. Castaneda,

24  Ulysses Castaneda, had separate health insurance plans.

25  Is that -- while employed at Texas Tech-El Paso.

104

1      A.  Correct.

2      Q.  Why didn't -- why wasn't the decision made to

3   have Mr. Castaneda's health plan cover the kids at least

4   temporarily because of what happened?

5      A.  That wasn't discussed.

6      Q.  Could that have been an option to put the kids

7   on his plan?

8              MR. OSTERBERG:  Objection, form.

9      A.  On the divorce decree, it says that I'm the one

10  who needs to provide health insurance for the kids.

11     Q.  (BY MS. CRISCIONE)  So that's mandated by the

12  divorce decree.

13     A.  Correct.

14     Q.  Were you aware we've asked for that in

15  discovery in this case?

16     A.  No.

17     Q.  What other family do you have in El Paso

18  other --

19     A.  My --

20     Q.  -- other than Alejandra and Ulysses?

21     A.  My father.

22     Q.  And your father's name is?

23     A.  Juan Martinez.

24     Q.  Do you have any other family in El Paso?

25     A.  I have two sisters, but I don't talk to them.

 1       Q.  What -- what are their names?

 2       A.  Gloria Martinez and Sara Martinez.

 3              MR. OSTERBERG:  Did you say "Sara"?

 4              THE WITNESS:  Uh-huh.

 5              MR. OSTERBERG:  Thanks.

 6       Q.  (BY MS. CRISCIONE)  S-A-R-A?

 7       A.  Yes.

 8              THE VIDEOGRAPHER:  Sir, put on your -- your

 9  mic.

10              MR. OSTERBERG:  Sorry.

11              I just asked if the witness said

12  Sara Martinez.

13       Q.  (BY MS. CRISCIONE)  Ms. Castaneda, I appreciate

14  you taking the time here today.  And we've talked a lot

15  about some documents that sounds like you have that

16  we -- I think need to be turned over to our office.

17              MS. CRISCIONE:  So I will pass the witness

18  subject to any potential new information that may be

19  indicated by the production of those -- those documents.

20              MR. OSTERBERG:  Let's take a five-minute

21  break.

22              MS. CRISCIONE:  Okay.

23              THE VIDEOGRAPHER:  Time is 1:07.  We're off

24  the record.

25              (A recess was taken.)

1            THE VIDEOGRAPHER:  The time is 1:10.  We're

2  back on the record.

3            MR. OSTERBERG:  Plaintiff will reserve

4  questions for trial.

5            THE VIDEOGRAPHER:  This concludes the

6  deposition.  The time is still 1:10 p.m.  We're off the

7  record.

8            (The deposition concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CHANGES AND SIGNATURE

2    WITNESS NAME: CECILIA CASTANEDA  DATE: FEBRUARY 21, 2025

3    PAGE LINE        CHANGE              REASON

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

```
 1        I, CECILIA CASTANEDA, have read the foregoing

 2   deposition and hereby affix my signature that same is

 3   true and correct, except as noted above.

 4

 5

 6                           _____

                            CECILIA CASTANEDA

 7

 8

 9        Before me, _____, on

10   this day personally appeared CECILIA CASTANEDA, known to

11   me or proved to me under oath or through

12   _____ (description of identity

13   card or other document) to be the person whose name is

14   subscribed to the foregoing instrument and acknowledged

15   to me that they executed the same for the purposes and

16   consideration therein expressed.

17        Given under my hand and seal of office this

18   _____ day of _____, _____.

19                                        SEAL:

20

21

22
     _____
23   NOTARY PUBLIC IN AND FOR
     THE STATE OF _____
24   COMMISSION EXPIRES: _____

25   _____No Change Made      _____Amendment Sheet(s) Attached
```

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                FOR THE WESTERN DISTRICT OF TEXAS

 3                        EL PASO DIVISION

 4
     CECILIA CASTANEDA,             )
 5                                  )
                    Plaintiff,      )
 6                                  )
     v.                             ) CIVIL ACTION NO.
 7                                  ) 3:24-cv-00190-LS
     STATE OF TEXAS-TEXAS TECH      )
 8   UNIVERSITY HEALTH SCIENCE      )
     CENTER-EL PASO,                )
 9                                  )
                    Defendant.      )
10

11                    REPORTER'S CERTIFICATION
                ORAL AND VIDEOTAPED DEPOSITION OF
12                       CECILIA CASTANEDA
                        FEBRUARY 21, 2025
13

14         I, Suzette Ramirez, Stenographic Reporter in

15   and for the State of Texas, hereby certify to the

16   following:

17         That the witness, CECILIA CASTANEDA, was duly

18   sworn by the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21         That the original deposition transcript was

22   delivered to Defendant;

23         That a copy of this certificate was served on

24   all parties and/or the witness shown herein on

25   _____.
```

1        That the amount of time used by each party at

2   the deposition is as follows:

3        Ms. Criscione:  2 hour(s), 21 minute(s)

4        That pursuant to information given to the

5   deposition officer at the time said testimony was taken,

6   the following includes counsel for all parties of

7   record:

8   For the Plaintiff(s):

9            Michael M. Osterberg
             Chavez Law Firm
10           2101 N. Stanton Street
             El Paso, Texas 79902
11           mikeosterberg@chavezlawpc.com

12  For the Defendant(s):

13           Stephanie A. Criscione
             Office of the Attorney General
14           209 West 14th Street, 6th Floor
             Austin, Texas 78701
15           stephanie.criscione@oag.texas.gov

16       I further certify that pursuant to FRCP Rule

17  30(f)(1) that the signature of the deponent was

18  requested by the deponent or a party before the

19  completion of the deposition and that the signature is

20  to be before any notary public and returned within 30

21  days from date of receipt of the transcript.  If

22  returned, the attached Changes and Signature page

23  contains any changes and the reasons therefore.

24       I further certify that I am neither counsel

25  for, related to, nor employed by any of the parties or

1  attorneys in the action in which this proceeding was

2  taken, and further that I am not financially or

3  otherwise interested in the outcome of the action.

4          Certified to by me this 13th of March 2025.

5

6

7  _____

8  Suzette Ramirez
   Stenographic Reporter & Notary

9  Notary Public 134818107
   Expires 3-21-28

10 INTEGRITY LEGAL SUPPORT SOLUTIONS
   9901 Brodie Ln, Ste. 160-400

11 Austin, Texas 78748
   www.integritylegal.support
   512-320-8690; FIRM # 528

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Cecilia Castaneda,
    Plaintiff,

v.                                    Cause No. 3:24-CV-00190-LS

State of Texas - Texas Tech University Health Science Center - El Paso,
    Defendant.

PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT

    Plaintiff, Cecilia Castaneda ("Employee Castaneda" or "Requesting Party") now files this

Reply supporting its Motion to Compel Defendant, State of Texas - Texas Tech University

Health Science Center - El Paso ("Employer Texas") or "Withholding Party") to respond

Adequately to Discovery and shows as follows:

**I. FOR PLAINTIFF'S RETALIATION CLAIM, RELEVANT COMPARATOR EMPLOYEES INCLUDE THOSE THAT HAVE COMPARABLE VIOLATION HISTORIES WHO WERE NOT TERMINATED, INDICATING THAT PLAINTIFF WAS TERMINATED BECAUSE DEFENDANT SELECTIVELY ENFORCED PLAINTIFF'S POLICY VIOLATION IN RETALIATION FOR ENGAGING IN PROTECTED CONDUCT.**

    Defendant has not satisfied its obligation to produce discovery under Rule 34 by providing

only Alejandra Castaneda's personnel file in response to Interrogatory 10.[1] Cecilia Castaneda

identified approximately 14 other Defendant employees that violated the same policy Cecilia is

alleged to have violated by receiving discounted medical procedures. *See* ECF No. 14-4,

Deposition of Cecilia Castaneda, at 48:12-25. Defendant appears to justify its limited response

based on far too narrow a view of what constitutes similarly situated comparator employees in

retaliation cases, especially at the discovery stage. *See, e.g., Jones v. Jefferson Par.*, No. CIV.A.

---

[1] "INTERROGATORY 10: Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory." (Referencing Interrogatory 9: "Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.") ECF No. 13-4 at page 9 of 16.

12-2191, 2013 WL 871539, at *7 (E.D. La. Mar. 8, 2013) (denying defendant's motion to dismiss where plaintiff alleged that defendant discriminated and retaliated against him by treating him differently than other employees in his position and selectively enforcing rules and procedures regarding time, work conditions, work assignments and disciplinary actions).

Plaintiff's discovery is not limited to admissible evidence. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Plaintiff seeks the records of approximately 14 named employees who Plaintiff alleges have received discounted medical procedures. ECF No. 14-4 at 48:12-25. Plaintiff seeks their billing and medical records to prove that they received the discounts, and their personnel file to prove that they did not receive discipline for the violation and did not engage in protected conduct.

Plaintiff testified that there was an unwritten, "word of mouth" policy that hospital employees could receive discounted procedures. ECF No. 14-4 at 34:22-35:5. If other employees took the discount for themselves or family members, and did not receive discipline from Defendant, "a reasonable factfinder could conclude that [Defendant's] articulated reason for the alleged retaliatory termination was pretextual." *Hammond v. Jacobs Field Services*, 499 Fed. Appx 377, 383 (5th Cir. 2020) (terminating an employee for violating previously unenforced policy constitutes evidence of pretext *and* illegal motivation). "Although it is true that [Plaintiff's] action violated [Defendant's] policy, there is evidence in the record indicating that this policy was seldom if ever enforced. Rather, the record shows that entering the plant by following another vehicle through the gate was routine and even encouraged… ." *See id.*

The anti-retaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made

unlawful by Title VII. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576 (5th Cir. 2020), *as revised* (Aug. 14, 2020). Here, Cecilia Castaneda opposed unlawful sexual harassment under Title VII. ECF No. 14-4 at 89:25-92:4. The comparators in a retaliation case are those employees who have comparable policy violations but did not engage in protected conduct, which shows a "causal link between the protected activity and the adverse action." *See Walsh v. Stratos Offshore Servs. Co.*, No. CIV.A. H-11-2603, 2012 WL 3929870, at *4 (S.D. Tex. Sept. 7, 2012).

In a retaliation case, "[e]mployees are similarly situated when they h[o]ld the same job responsibilities, share[ ] the same supervisor or ha[ve] their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (internal quotation marks and citation omitted). However, we have previously considered disparate treatment of less similarly situated comparators as some evidence of pretext, even though it is less probative than evidence of a more similarly situated comparator." *Id.* at 580 (emphasis added). *See also Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 90 (5th Cir. 2020) (Noting that whether the comparator employees were subject to the same standards is also relevant to the analysis); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 261 (5th Cir. 2009) ("We emphasize today that this Circuit's "nearly identical" standard is not equivalent to "identical." Furthermore, in this case, we focus on the totality of the circumstances of Lee's employment as compared with Bickham[.]").

Plaintiff alleges that she was terminated in retaliation for opposing a practice made unlawful by Title VII, i.e., sexual harassment. *See generally* ECF No. 1. Defendant claims it terminated Plaintiff for a policy violation. Whether the comparator employees are males outside of Plaintiff's protected class is irrelevant. The relevant inquiry is whether or not the comparator employees, man or woman, violated the same policy and engaged in protected conduct. *See Brown*, *supra*. Here, importantly, all 14 comparators are alleged to have engaged in the exact same

Page 3 of 6

policy violations. *See, e.g. McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 274, 96 S. Ct. 2574, 2576, 49 L. Ed. 2d 493 (1976) ("While respondent employer may decide that participation in a theft of cargo may warrant not retaining a person in its employment, this criterion must be 'applied alike to members of all races,' or Title VII is violated.").

Plaintiff seeks discovery on the 14 other employees who may be similarly situated in that they were hospital employees who violated the same policy and yet this alleged "criterion [for employment]" was not a criterion at all, since Defendant only applied the supposed criterion to Plaintiff because she engaged in protected conduct. *See McDonald, supra.*; ECF No. 14-4 at 48:12-25. Plaintiff knows that the 14 other employees are similarly situated in at least two respects: those other employees received the discount that Plaintiff also received, and those other employees were officially not supposed to take an employee discount. ECF No . 14-4 at 34:22-35:5 (testimony about unwritten, "word of mouth" policy permitting employee discounts).

Plaintiff is entitled, under Rule 26, to those employees' comparator files to prove the rest of the ways in which the comparators are similar by establishing that those employees also had their employment status determined by the same person, Dr. Lange, and that all employees were officially not supposed to be taking an employee discount.

If the Plaintiff, who engaged in protected conduct by opposing sexual harassment, is the only employee ever terminated by Defendant for this supposed policy violation, that is "some evidence of pretext." *See Brown, supra.* At 580. At the very least, it is enough to conduct discovery on the issue. Fed. R. Civ. P. 26(b)(1); *see, e.g., Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 918 (7th Cir. 2022) ("Evidence that a "similarly situated employee[ ]" whose close contact did not engage in protected conduct was "treated differently may furnish circumstantial evidence of retaliation or other unlawful motive." *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018). Whether

a comparator is similarly situated is often a question for the jury."); *Carrera v. Com. Coating Servs. Int'l, Ltd.*, 422 F. App'x 334, 341 (5th Cir. 2011) "[Defendant's] position that the break-in was grounds for termination is weakened, however, by its concession that Ernie was authorized to enter the office and needed only to ask for a key if he wished to gain access, not to mention the disputed fact whether forcible entry was <u>routinely allowed</u>.") (Emphasis added).

## II. CONCLUSION

Defendant has offered alleged policy violations by Plaintiff as a legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff understands their defense, and simply requests documentation that would support or undermine that defense. A request for documents showing whether other employees violated this policy, and the disciplinary ramifications for them, goes to the heart of the matter in this lawsuit.

Plaintiff filed this lawsuit because she believes she was terminated not for a policy violation, but in retaliation for engaging in protected conduct by reporting sexual harassment. ECF No. 14-4 at 92:1-5 ("[Plaintiff]: But after I made that complaint, I said to myself, 'I know I'm gonna get fired.' That's what withheld me from saying anything from December to February because I was scared. And look what happened. I got fired."). Surely, instances in which Defendant failed to similarly discipline, by terminating, other employees who violated policy by taking an employee discount will shed needed light on whether Defendant's legitimate, non-discriminatory reason for terminating Plaintiff is actually legitimate. Defendant's resort to claiming that the other employees are not similarly situated is not appropriate during the discovery stage in which Plaintiff is entitled to information, not limited by admissibility, to help prove their claim.

## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Honorable Court overrule Defendant's objections and compel it to respond adequately to discovery by producing the material Plaintiff seeks, that the court award Plaintiff attorney's fees, and such other and further relief to which she is justly entitled, in law and in equity because the requested comparator files could lead "a reasonable factfinder could conclude that [Defendant's] articulated reason for the alleged retaliatory termination was pretextual." *Hammond, supra.*

**SIGNED** on this 20th day of March, 2025.

Respectfully submitted,

Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772

By: _____

Enrique Chavez, Jr., State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
Michael Anderson, State Bar No. 24087103
manderson@chavezlawpc.com
Michael M. Osterberg, State Bar No. 24108991
mikeosterberg@chavezlawpc.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The foregoing instrument was e-filed and e-served on the following counsel of record through the Court's e-filing system on March 20, 2025:

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-25848
Telephone: 512-475-4104 Facsimile: 512-320-0667
Stephanie A. Criscione
stephanie.criscione@oag.texas.gov

Michael M. Osterberg



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

| | |
|---|---|
| **STEPHANIE A. CRISCIONE** | PHONE: 512-936-1675 |
| Assistant Attorney General | FAX: (512) 320-0667 |
| General Litigation Division | EMAIL: Stephanie.Criscione@oag.texas.gov |

March 31, 2025

Via CM/ECF System
Honorable Judge Leon Schydlower
United States District Court
Western District of Texas- El Paso Division
525 Magoffin Avenue
El Paso, Texas 79901

  Re: Cause No. 3:24-cv-00190-LS *Cecilia Castaneda v. Texas Tech University Health Sciences Center-El Paso* Stephanie A. Criscione Vacation Letter

Honorable Judge Schydlower:

  Please let this letter serve as notice that counsel for Defendant Texas Tech University Health Sciences Center-El Paso will be on vacation between April 21, 2025, and April 25, 2025, and respectfully requests no hearings be scheduled during this time.

  Thank you for your time and consideration. By copying all counsel of record on this correspondence, I am notifying them of the same.

    Sincerely,

    */s/ Stephanie A. Criscione*
    **STEPHANIE A. CRISCIONE**
    Assistant Attorney General

cc: Enrique Chavez Jr. enriquechavezjr@chavezlawpc.com  ***Via CM/ECF System and/or Email***
  Mike Osterberg MikeOsterberg@chavezlawpc.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S EXPERT WITNESS DESIGNATION

---

TO: Plaintiff, Cecilia Castaneda, by and through her attorneys of record, Enrique Chavez, Jr., Michael R. Anderson, and Michael M. Osterberg, Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902.

Defendant, Texas Tech University Health Science Center – El Paso ("TTUHSCEP"), hereby serves its Expert Witness Designation and, in support thereof, respectfully shows the Court the following:

### PRE-TRIAL DISCLOSURE OF IDENTITY OF EXPERTS

Pursuant to Federal Rules of Evidence 702, 703, and 705, the following individual may be called to testify at trial as an expert witness:

**Stephanie A. Criscione**
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1675

Ms. Criscione is expected to testify based on her education, experience, and training as an attorney. Her testimony may include opinions regarding the reasonableness, necessity, and

1

customary nature of attorney's fees in this matter. Additionally, Defendant cross-designates any and all fact or expert witnesses designated by Plaintiff.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 936-1675 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

## CERTIFICATE OF SERVICE

I certify that that on April 30, 2024, this document was served via electronic mail, delivery

receipt and read receipt requested, causing electronic service upon all counsel of record.


Enrique Chavez, Jr.
enriquechavezjr@chavezlawpc.com
Michael R. Anderson
manderson@chavezlawpc.com
Michael M. Osterberg
mikeosterberg@chavezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ Stephanie A. Criscione*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCE | § | |
| CENTER – EL PASO, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S MOTION TO AMEND CASE CAPTION

---

### INTRODUCTION

Defendant, Texas Tech University Health Sciences Center at El Paso ("TTUHSC-EP"), files this motion to remove "State of Texas" from its name in the caption. Plaintiff Cecilia Castaneda ("Castaneda") has misnamed the defendant intentionally, but she is not free to disregard TTUHSC-EP's legal name in favor of another that she believes may give her a more favorable audience in the unlikely event this matter goes to trial.

Namely, Castaneda may seek to remark on TTUHSC-EP's association with the State of Texas such that jurors assume TTUHSC-EP is co-extensive with the State—its budget, its policies, and its people. This point matters because jury forms would include the case caption, which Castaneda's counsel will likely rely on to support irrelevant and prejudicial evidentiary considerations.

TTUHSC-EP only discusses prejudice at trial to underscore the reasons for this motion, and not to suggest the case *should* go to trial. TTUHSC-EP fully intends to file for summary judgment on Plaintiff's claims. Regardless, the fact that this prejudice may never come to pass should not stop the Court from exercising its discretion to correct the case caption now. Accordingly, the Court should

---

grant this motion and amend the case caption to clarify the identity of the parties, and to prevent the creation of juror confusion or undue prejudice to the defendant.

## RELEVANT BACKGROUND

On June 3, 2024, Castaneda sued her former employer, TTUHSC-EP, under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* Dkt. 1. The Complaint shows that Castaneda acknowledges her suit is against TTUHSC-EP and not the entire State of Texas: "Defendant . . . is a Texas state higher education institution, and may be served with process by serving Defendant's [P]resident, Richard Lange . . . ." *Id.*, ¶ 2. Castaneda did not request a summons for Texas, i.e. a summons to serve the Texas Secretary of State. Dkt. 2. Her allegations pertain only to TTUHSC-EP. Dkt. 1.

TTUHSC-EP is a standalone entity created by law. *See* Tex. Educ. Code § 110.31 (explaining that "The Texas Tech University Health Sciences Center at El Paso" is a component of the Texas Tech University System, but is not a department, school, or branch of any other institution in that system). The Texas Tech University System Board of Regents ("Board of Regents") is responsible for the operation, control, and management of TTUHSC-EP. Tex. Educ. Code §§ 110.33 & 109.002.[1]

The nature of Castaneda's claims also forecloses her from misidentifying the defendant. Title VII requires employment plaintiffs to first exhaust their administrative remedies prior to filing suit by submitting a charge to the Equal Employment Opportunity Commission (EEOC),[2] afterwards, "a civil action may be brought *against the respondent named in the charge.*" 42 U.S.C. § 2000e–5(f)(1) (emphasis

---

[1] The Texas Legislature provides venue in Texas courts for suits filed against the Texas Tech University System or any component in the county in which the primary office of the chief executive officer of the system or component is located (and not where the Governor or Legislature are located). Tex. Educ. Code § 109.005.

[2] *See, e.g., Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021).

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*        Page 2
Defendant's Motion to Amend Case Caption

410

added). Castaneda, in order to properly sustain a claim, must sue the respondent named in her Charge,[3] and the caption to accurately reflect the respondent's proper legal name.

Castaneda previously gave the proper name for her former employer when filing her Charge with the EEOC, as she must have. *See* 42 U.S.C. § 2000e-2(a) (describing unlawful practices *for an employer*). The relevant portions of Castaneda's Charge reveal the obvious conclusion that she knows she has not sued the State of Texas:

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Texas Tech University Health Sciences Center** | **500 or More** | **(915) 215-5323** |
| Street Address | City, State and ZIP Code | |
| **4801 Alberta Ave., El Paso, TX 79905** | | |

I. On April 13, 2013, Texas Tech University Health Sciences Center ("Texas Tech") hires me to work in Texas Tech's surgery clinic as a medical assistant. On April 2020, Texas Tech Senior Administrator Terry Balderrama, a manager in my

Castaneda declared under penalty of perjury that "all of the above is true and correct" in her Charge, including, of course, the proper name for her former employer, the defendant here. *Id.* In addition, throughout the complaint, TTUHSC-EP is referred to as Castaneda's employer, not the State of Texas. Dkt. 1 ¶¶ 7-31. Even further, at her deposition, she acknowledged the difference between the university and the state itself:

---

[3] *See, e.g., Trumbo v. Performance Bicycle Shop*, No. 1:21-CV-1027-LY-DH, 2021 WL 11691308 at *2 (W.D. Tex. Nov. 22, 2021), *report and recommendation adopted,* No. 1:21-CV-1027-LY-DH, 2022 WL 20539456 (W.D. Tex. Jan. 20, 2022) (dismissing case against defendant not named in EEOC charge).

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*      Page 3
Defendant's Motion to Amend Case Caption

411

```
14              You are suing the university, Texas Tech-El
15    Paso.  Correct?
16              MR. OSTERBERG:  Objection --
17        A.  Yes.
18              MR. OSTERBERG:  -- form.
19        Q.  (BY MS. CRISCIONE)  You're suing a state
20    university.  Correct?
21              MR. OSTERBERG:  Objection, form.
22        A.  Yes.
23        Q.  (BY MS. CRISCIONE)  You're not suing the state
24    itself.
25              MR. OSTERBERG:  Objection, form.
```

                                                              6
```
1              You can answer.
2        A.  No.
```

## LEGAL STANDARD

The Federal Rules of Procedure offer no explicit guidance on the standard for amending a case caption. *Cirba Inc. v. VMware, Inc.*, No. CV 19-742-GBW, 2022 WL 16527230, at *2 (D. Del. Oct. 26, 2022) (citing *Hoemke v. Macy's W. Stores LLC*, No. CV-20-01317-PHX-DWL, 2020 WL 5229194, at *1 (D. Ariz. Sept. 2, 2020) (noting that "no federal . . . rule governs caption amendments.")).[4]

The few courts to have addressed the issue note that "the caption of an action is only the handle to identify it" and that "the caption is chiefly for the court's administrative convenience." *Hoemke*, 2020 WL 5229194, at *1; *see also Gramm v. Deere & Co.*, No. 3:14-CV-575-RLM-MGG, 2021

---

[4] Federal Rule of Civil Procedure 10(a) provides only that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. *The title of the complaint must name all parties* . . . ." Fed. R. Civ. P. 10(a) (emphasis added).

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*     Page 4
Defendant's Motion to Amend Case Caption

412

WL 8321873 at *2 (N.D. Ind. Nov. 15, 2021) (granting motion to amend caption to avoid unnecessary confusion and because non-moving party failed to show how it would be prejudiced).

Indeed, "it is well established that, in the context of federal court captions, the caption itself is normally not determinative of the identity of the parties." *France v. Touro Coll.*, No. 14-4613, 2016 WL 1105400, *5 (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted sub nom. Ueth France v. Touro Coll.*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016) (internal citations omitted); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1321 (4th ed. 2021).

Rather, the focus in determining the parties and the nature of the claims is the body of the operative complaint. *See, e.g., Riche v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("A party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant"); *see also Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 469 (6th Cir. 1964) (explaining that the caption is not regarded as containing the parties claims; rather, the court must look to the allegations in the complaint to determine the nature of a cause of action).

Thus, the courts to have confronted this issue explain that the decision "whether to amend a case caption is within the Court's discretion and should be based on factors such as promoting clarity and avoiding confusion." *Hoemke*, 2020 WL 5229194, at *1.

**ARGUMENT**

Castaneda is not free to misname her former employer—regardless of her stated reasons. Amending the case caption to remove "State of Texas" promotes clarity and will ensure that Castaneda cannot attempt to mislead or confuse a jury with irrelevant considerations. This amendment also will not cause her any prejudice.

## I. Castaneda Misidentifies the Defendant in the Caption.

As explained above, TTUHSC-EP is not co-extensive with the State of Texas. This reason alone justifies amending the case caption. After all, "[c]ourts generally allow amendments or updates

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*          Page 5
Defendant's Motion to Amend Case Caption

413

to captions when a party has been misnamed or its name is misspelled." *Cirba Inc.*, 2022 WL 16527230, at *3 (internal citations omitted); *see also Jefferson v. Zurich Am. Ins. Co.*, No. CIV.A.3:02-CV-1770-L, 2004 WL 144026 (N.D. Tex. Jan. 15, 2004) (noting the case caption incorrectly named the defendant and ordering clerk to change defendant's name in case caption)*; see also* 5A Wright & Miller, *Federal Practice and Procedure: Civil* 3d § 1321 (4th ed., June 2024 Update) (explaining that "[a] very common defect in the caption is a misnomer regarding a party[…] or the identification of something that is not a legal entity.").[5] Courts also have previously requested parties submit motions to amend case captions to clarify the identities of the parties. *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 72 n. 1 (E.D.N.Y. 2007) (requesting the parties ask to modify the case caption after named plaintiff in class action was no longer a part of the case).

## II.     Amending the Caption also Promotes Clarity and Eliminates Prejudice and Confusion.

The Fifth Circuit has granted Motions to Amend the Case Caption for governmental entities for clarity. *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.,* 112 F.4th 284, 291 (5th Cir. 2024). This is not exclusive to the Fifth Circuit. *See Ambrose v. St. Johns Cnty. Sch. Bd.,* 664 F. Supp. 3d 1322, 1325 n.1 (M.D. Fla. 2023).

In addition, courts also find captions should be amended where a party's identification is misleading: "Given the contentious nature of this litigation, the Court finds that the caption of the Complaint must be amended . . . [because] the Complaint's caption is misleading and therefore creates ambiguity." *In re Fuentes*, No. 2:13-BK-11518-ER, 2018 WL 722704 at *5 (Bankr. C.D. Cal. Feb. 2, 2018).[6] And yet, here, Castaneda misidentified the defendant by conflating two distinct governmental entities—the state itself and a public institution of higher education.

---

[5] *Accord Harris v. Cnty. of Clark*, No. 2:22-CV-00560-RFB-NJK, 2024 WL 4349195 at *1, n.1 (D. Nev. Sept. 29, 2024); *Staten v. E. St. Louis Police Dep't*, No. 08-CV-790-DRH, 2008 WL 5244844 at *1 (S.D. Ill. Dec. 16, 2008).

[6] Courts will also sometimes dismiss claims against a defendant where the complaint makes no specific allegations against that defendant while naming them in the caption. *See, e.g., Salcedo v. Lashbrook*, No.

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*     Page 6
Defendant's Motion to Amend Case Caption

414

The current caption has the practical effect of prejudicing TTUHSC-EP.[7] Namely, Castaneda will undoubtedly remark at trial on the defendant's association with the State of Texas to imply that the two are interchangeable. The current case caption may give a false impression so that jurors see TTUHSC-EP as an extension of what *she* may describe as a monolithic, impersonal state bureaucratic structure far away from El Paso, in Austin, Texas. TTHUSC-EP is a local employer with deep economic and social connections to El Paso, and a key provider of important health services to the local community.

She may also hope that jurors are less concerned with the quantity of money she requests, and that jurors are accordingly more willing to award a large sum. She has already requested an astonishing sum of money that has no basis in the law, expounding out her damages *until the day she retires in over thirty years*. Even in the highly unlikely event that a jury finds TTUHSC-EP liable, Castaneda will not be entitled to such a speculative calculation, but it is not difficult to see how a jury would be less resistant to her exaggerated requests if it believed the money was coming from the State of Texas's funds rather than from medical students' tuition among other sources of local funds. Tex. Educ. Code § 51.009(a).

Both of these possible ways that Castaneda could attempt to weaponize the case caption are immaterial to the genuine legal issues in this case. Castaneda's misidentification of TTUHSC-EP simply serves no positive function while also prejudicing the defendant and creating confusion. While

---

19-CV-00283-NJR, 2019 WL 2139950 at *2 (S.D. Ill. May 16, 2019) (explaining that merely listing a defendant in the caption is insufficient when the complaint makes no allegations against that specific defendant).

[7] TTUHSC-EP filed a Motion to Dismiss in a companion case, filed by Cecilia Castaneda's ex-sister-in-law based on the same operative facts. Lexis searches for the opinion indicate that the defendant was not TTUHSC-EP but the State of Texas itself, indicating the confusion the caption is already causing. *See Castaneda v. Texas,* No. 3:24-cv-00189-LS, 2024 U.S. Dist. LEXIS 209025 (W.D. Tex. 2024).

these points may also need to be the subject of *in limine* motions in the future, the Court does not need to wait until the eve of a future trial setting to correct the case caption.

## III.   Amending the Case Caption Will Not Prejudice Castaneda.

While the current case caption may benefit Castaneda, she cannot show any legal basis for the proposition that a plaintiff is free to misname the defendant in a lawsuit. Accordingly, if the Court amends the case caption to accurately reflect the defendant's proper legal name, then Castaneda will lose no legal rights or remedies. Nor would such amendment prevent her from making any *legitimate* arguments. She simply has no real basis for opposing the amendment. TTUHSC-EP itself has been more than cooperative in the litigation process.

### CONCLUSION AND PRAYER

TTUHSC-EP respectfully asks the Court to clarify that the State of Texas is not a party to this lawsuit, and to direct the Court Clerk to amend the case caption to the following:

Cecilia Castaneda,

    *Plaintiff*,

v.

Texas Tech University Health Sciences Center at El Paso,

    *Defendant*.

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*                    Page 9
Defendant's Motion to Amend Case Caption

417

### CERTIFICATE OF SERVICE

I certify that that on May 19, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*          Page 10
Defendant's Motion to Amend Case Caption

418

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

CECILIA CASTANEDA,
     Plaintiff,

v.                                Cause No. 3:24-cv-00190-LS

STATE OF TEXAS - TEXAS TECH UNIVERSITY HEALTH
SCIENCES CENTER AT EL PASO,
     Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION TO AMEND THE CASE CAPTION**

TO THE HONORABLE COURT:

Plaintiff Cecilia Castaneda now files this Response in Opposition to Defendant's "Motion to Amend the Case Caption" (ECF No. 18) filed by Defendant State of Texas - Texas Tech University Health Sciences Center at El Paso, showing as follows:

I.   THE STATE OF TEXAS, REPRESENTED BY THE OFFICE OF THE ATTORNEY GENERAL, IS THE PROPER PARTY.

Defendant cites no authority for the proposition that it is improperly named in the case caption, conceding that "no federal … rule governs caption amendments." *Hoemke v. Macy's W. Stores LLC*, No. CV-20-01317-PHX-DWL, 2020 WL 5229194, at *1 (D. Ariz. Sept. 2, 2020). Defendant in this matter is represented by the Office of the Attorney General of the State of Texas. Under the Texas State Constitution, "[t]he Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party … and perform such other duties as may be required by law." Tex. Const. art. IV, § 22 (emphasis added). This is the ultimate source of any authority the OAG has to represent the Defendant in this matter. Texas law requires that "[t]he attorney general shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals." Tex. Gov't Code Ann. § 402.021 (emphasis added).

By the OAG's representation of Defendant in this matter, Defendant concedes that the Defendant is indeed the State of Texas. *See, e.g., Butcher vs. U.T. Health Sci. Ctr. of Houston*, S.D. Tex., No. CIV. A. H-08-CV-0244 (Nov. 18, 2008) ("Texas defines public university systems as state agencies. Tex. Gov't Code § 572.002(10)(B). UTHSCH belongs to the University of Texas system. Tex. Educ. Code § 65.02(a)(9)."). Defendant is an agency of the state, but not just any state: The State of Texas, as properly named in the case caption.

## II. TTUHSC IS AN ARM OF THE STATE OF TEXAS, WHICH IS PROPERLY REFLECTED IN THE CASE CAPTION.

Plaintiff's Complaint names one defendant: State of Texas - Texas Tech University Health Sciences Center at El Paso. ECF No. 1 at 1, ¶2. In an unrelated case against the same defendant, the Attorney General on behalf of this Defendant admits TTUHSC is an "alter ego" or "arm" of the State of Texas:

> Such immunity protects states from suit by their own citizens, and "extend[s] to any state agency or other political entity that is deemed the 'alter ego 'or an 'arm ' of the State. " This includes, for example, TTUHSC-EP.

*Kristyn Ingram v. State of Texas - Texas Tech University Health Sciences Center at El Paso*, 3:24-CV-378-KC, ECF No. 6 at 13-14 (internal footnotes omitted). Defendant's status as an "alter ego" or "arm" of the State of Texas is distinct from a municipality's status as a political subdivision of the State. Tex. Loc. Gov't Code Ann. §140.008(a)(2) ("'Political subdivision' means a county, municipality, school district, junior college district, other special district, or other subdivision of state government."); *City of Galveston v. State*, 217 S.W.3d 466, 473-474 (Tex. 2007) (holding "cities are clearly subdivisions of the State".). It is for this reason that Plaintiff's complaint identifies Defendant Employer TTUHSC as "State of Texas - Texas Tech University Health Sciences Center at El Paso". ECF No. 1 at 1, ¶2.

From Defendant's motion, it appears that Defendant's status as an arm of the State of Texas, for whatever reason, causes Defendant some amount of concern, or even embarrassment. Nevertheless, under Federal Rule of Civil Procedure 10(a), "[t]he title of the complaint must name all parties." *Id.* Try as they might, Defendant cannot hide from their status as an arm of the state of Texas, regardless of its speculation about how a jury may consider that fact. TTUHSC is an alter ego of the state — the State of Texas — and the caption of the case merely reflects their proper standing and identity. TTUHSC is administered with state funds, and history suggests that any settlement or verdict will be paid by the State of Texas. *See, e.g., Butcher, supra.* (noting that "the University of Texas system is administered with state funds[.]").

Defendant's argument pursues form and eschews substance and reality. Texas Tech University Health Sciences Center at El Paso is an "alter ego" or "arm" of the State of Texas and Plaintiff's Complaint thus properly identifies Defendant as "State of Texas - Texas Tech University Health Sciences Center at El Paso." ECF No. 1 at 1, ¶2.

## III. DENYING DEFENDANT'S MOTION TO AMEND THE CASE CAPTION WILL PROMOTE CLARITY, AVOID CONFUSION, AND PROMOTE OPENNESS OF JUDICIAL PROCEEDINGS.

Defendant seeks to sow confusion by removing reference to its status as an arm of the State of Texas from the case caption, apparently concerned that jury may think less of the Defendant should it realize that the State of Texas is the defendant in this lawsuit. "Whether to amend a case caption is within the Court's discretion and should be based on factors such as promoting clarity and avoiding confusion." *Hoemke*, 2020 WL 5229194, at *1. Whatever uneasiness the caption causes Defendant is immaterial and offensive to the presumption of openness in court proceedings. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (noting that there is a presumption of openness of judicial proceedings). As demonstrated above, the Defendant is an "arm" of the State of Texas. The jurors and the public alike are entitled to open

and public court proceedings that accurately name all parties involved. "This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings. *Does 1-2 vs. Office of Pers. Mgt.*, D.D.C., No. CV 25-234 (JEB) (Feb. 4, 2025).

The Texas Attorney General's desire to obscure from the jury, and the public, TTUHSC's status as an arm of the State of Texas is simply not a valid basis to overcome the presumption in favor of "disclosing litigants' identities." *See id.* (cleaned up). *Contra.* 28 C.F.R. § 50.9(b) "Policy with regard to open judicial proceedings" ("A [United States] Government attorney has a compelling duty to protect the societal interest in open proceedings.").

Defendant's apparent desire to obscure from public knowledge the fact that the State of Texas is a party to and has a financial interest in this litigation offends fundamental notions of openness and transparency in court proceedings, of utmost concern when <u>any</u> governmental body is a party. *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 81–82 (D.D.C. 2020) ("The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation. Indeed, the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation.").

Simply put, the public, including the citizens of the State of Texas, have a right to know that the State of Texas is a party to this suit. *See, e.g., F.T.C. v. Standard Fin. Mgt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("…[T]he public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").

IV.  PRAYER

For the foregoing reasons, Plaintiff requests that this Honorable Court **DENY** Defendant's Motion to Amend the Case Caption because:

1. The Texas Attorney General, who represents the State of Texas, represents the Defendant;

2. The case caption in its current form correctly identifies the parties; and

3. Altering the case caption to remove reference to the State of Texas's status as a party offends the presumption of openness in court proceedings by obscuring the identity of the Defendant.

**SIGNED** on May 21, 2025.

Respectfully submitted,

**Chavez Law Firm**
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772

By: _____
Enrique Chavez, Jr., State Bar No. 24001873
enriquechavezjr@chavezlawpc.com
Michael R. Anderson, State Bar No. 24087103
manderson@chavezlawpc.com
Michael M. Osterberg, State Bar No. 24108991
mikeosterberg@chavezlawpc.com
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

The foregoing instrument was e-filed and e-served on all counsel through the Court's efiling system. Accordingly, the Federal Rules of Civil Procedure do not require a Certificate of Service. Fed. R. Civ. P. 5(d)(1)(B) ("No certificate of service is required when a paper is served by filing it with the court's electronic-filing system.").

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

CECILIA CASTANEDA,

     Plaintiff,

v.                                      Cause No. 3:24-cv-00190-LS

STATE OF TEXAS - TEXAS TECH UNIVERSITY HEALTH
SCIENCES CENTER AT EL PASO,

     Defendant.

## ORDER

On this day, the Court considered Defendant's Motion to Amend the Case Caption. It is

hereby **ORDERED, ADJUDGED,** and **DECREED** that Defendant's motion is **DENIED**.

Signed this _____ day of _____ , 2025.


_____
LEON SCHYDLOWER
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA,<br>*Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH<br>UNIVERSITY HEALTH SCIENCE<br>CENTER – EL PASO,<br>*Defendant.* | § § § § | |

---

### DEFENDANT'S REPLY IN SUPPORT OF
### MOTION TO AMEND THE CASE CAPTION

---

Plaintiff sidesteps the issue at hand throughout her response and admits that she seeks to prejudice and influence the jury by her case caption. Texas Tech University Health Science Center-El Paso's ("TTUHSCEP") status as a state university is inconsequential to the heart of her case—whether she was terminated in violation of Title VII. Nowhere in her response does she disagree that she hopes to raise immaterial considerations at trial for the explicit purpose of unduly prejudicing the defendant and confusing the jury.

While Plaintiff is correct that the Federal Rules of Civil Procedure do not give explicit guidance regarding captions, she still has the duty to properly name the defendant she seeks to sue. Texas law permits correction of misnomer so long as it is not misleading. *See Dalton v. State Farm Lloyd's, Inc.,* 4 F. Supp. 3d 859, 864 (S.D. Tex. Jun. 19, 2014). TTUHSCEP seeks to amend the case caption to correct this exact issue—the current caption is a misnomer of TTUHSCEP that will mislead jurors and possibly the public at large.

Plaintiff argues that because she has sued a state university, she has sued the state itself. To sue the state, a plaintiff must serve the state's chief executive officer, i.e. Governor Greg Abbott, or by any other manner prescribed by law. *Luke v. Texas*, 46 F.4th 301, 307 (5th Cir. 2022). Plaintiff has

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*                                                                Page 1
Defendant's Reply to Plaintiff's Response to Defendant's Motion to Amend the Case Caption

425

not served Governor Abbott—she never even requested a service of citation for him. She served Dr. Richard Lange, president of TTUHSCEP. TTUHSCEP is not a subsidiary of the State of Texas, but nor is it co-extensive with the State. If Plaintiff was suing the state itself, she would have named the State as a separate defendant.

Plaintiff argues that, because TTUHSCEP had previously asserted sovereign immunity in another matter, she is entitled to caption her case as against the State of Texas and not TTUHSCEP. Dkt. 19 at pg. 3. She further alludes that TTUHSCEP is embarrassed of its affiliation with the state. TTUHSCEP is not concealing anything, nor is it embarrassed of anything. It fully admits it is a Texas public university entitled to sovereign immunity. *It is just not the state itself.*

Plaintiff also tries to make a point of TTUHSCEP's funding, mistakenly saying that "any settlement or verdict will be paid by the State of Texas." Dkt. 19 at page 2. TTUHSCEP does not have access to Texas's general funds. Tex. Const. art. 7, § 17(j). In fact, TTUHSCEP only has access to the limited state funds provided by the Texas Legislature. Tex. Educ. Code § 110.39. Most of the funds in the Texas Tech University System's budget come from a separate source defined by statute as "local funds." Tex. Educ. Code § 51.009(a).

Plaintiff's counsel also knows the difference between a state agency and the state itself. They have filed suit against the state before and have named their plaintiff as the proper agency. *See HHS Comm'n v. Navarro*, 2024 Tex. App. LEXIS 8454; 2024 LX 14062; 2024 WL 4984183; *Tex. DMV v. Bustillos*, 630 S.W.3d 316 (Tex. App.—El Paso 2021, no pet.); *Tex. Dep't of Criminal Justice v. Flores*, 555 S.W.3d 656 (Tex. App.—El Paso 2018, no pet.). By suggesting that amendment to the caption would "sow confusion" or offend the openness of court proceedings, *id.*, p. 3., Plaintiff insinuates that every past lawsuit properly identifying a Texas state agency defendant—including *Navarro* and *Flores*, in which they properly named defendants in the case caption—has, in fact, obstructed the public's access to court proceedings and confused jurors.

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*                    Page 2
Defendant's Reply to Plaintiff's Response to Defendant's Motion to Amend the Case Caption

426

Ultimately, Plaintiff makes no claim that she will suffer any prejudice by amendment to the case caption—because she will not. *See generally* Dkt. 30. Nor does she argue she previously misidentified TTUHSCEP in her EEOC Charge—because she did not. Dkt. 6-1, p. 1. She totally ignores these points because she simply cannot show otherwise, but she is not free to disregard her prior sworn statements that her prior employer, the defendant in this lawsuit, is "Texas Tech University Health Sciences Center at El Paso." *Id.*

The Court should amend the caption and ensure that the docket accurately reflects the defendant as "Texas Tech University Health Sciences Center at El Paso."

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*                    Page 3
Defendant's Reply to Plaintiff's Response to Defendant's Motion to Amend the Case Caption

427

### CERTIFICATE OF SERVICE

I certify that that on May 28, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**

*Cecilia Castaneda v. Texas Tech University Health Sciences Center- El Paso*                    Page 4
Defendant's Reply to Plaintiff's Response to Defendant's Motion to Amend the Case Caption

428

IN IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CECILIA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:24-cv-00190-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY SCIENCE CENTER – EL | § | |
| PASO, | § | |
| *Defendant.* | § | |

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO
## PLAINTIFF'S MOTION TO COMPEL

TO THE HONORABLE JUDGE LEON SCHYDLOWER:

Defendant Texas Tech University Health Sciences Center- El Paso ("TTUHSCEP") files this Supplemental Response to Plaintiff's Motion to Compel. In her deposition, Alejandra Castaneda testified that the persons Cecilia Castaneda seeks personal medical and financial discovery about are, in fact, not comparators for either her prima facie case or for pretext. Not only are these individuals either not employees within the TTUHSCEP surgery department or not employed by TTUHSCEP *at all*, they did not receive discounted procedures *at all*. In addition, family members of employees of surgery who did receive discounts were no longer employed by TTUHSCEP by the time Plaintiff and her ex-sister-in-law were terminated, thereby TTUHSCEP could not have possibly been able to terminate them for the same behavior. This admission shows that Plaintiff's request is thus a wholly irrelevant fishing expedition, and the documents should not be ordered produced.

On June 3, 2024, Plaintiff filed her original complaint. Dkt. 1 On August 6, 2024, Plaintiff served her required 26a disclosures. *See* Exhibit A. In those disclosures, Plaintiff identified Alejandra

*Alejandra Castaneda v. Texas Tech University Health Science Center- El Paso*     Page 1 of 4
Supplemental Response to Motion to Compel

429

Castaneda, another ex-employee of TTUHSCEP and her ex-sister-in-law as a person likely to have discoverable information in connection with this case.

TTUHSCEP has produced over 2000 pages of discovery in this case. There has been a dispute over the production of non-party medical and billing records, which became the subject of Plaintiff's March 19, 2025, Motion to Compel.

In her Motion, Plaintiff requested this Court order TTUHSCEP produce documents showing discounts for such medical procedures, including medical and billing records. Dkt 13 at pg 2. Plaintiff argued that files like this are relevant because "[i]f other employees took the discount for themselves or family members, and did not receive discipline from [TTUHSCEP]," a reasonable factfinder could conclude that the articulated reason for the termination was pretextual. *Id* at pg. 3.

Attached to that Motion was email correspondence where Plaintiff's counsel represented that the following people received discounted medical procedures and thus demanded their medical and billing records: 1) Jesus Francisco Balderrama 2) Michelle Annette Portillo; 3) Dr. Carmen Prieto 4) Angelica Castro 5) Angelica Rodriguez; 6) Aaron Sanchez; 7) Alejandra Lopez; 8) Cecilia Lindsay; 9) Dennice Sepulveda; and 10) Sylvia Lopez. *See* Dkt. 13-5 at pg. 13. Plaintiff's counsel also represented in the Motion that these individuals had, in fact, received these discounts. Dkt. 13 at pg. 7.

However, at her deposition, Alejandra testified that several of these individuals, in fact, did *not* get discounts. *See* Exhibit B.

Q.  (BY MS. CRISCIONE) So on Interrogatory 6 you list Aaron Hernandez, from pediatrics.
A.  Correct.
Q.  You are contending he got a discount?
A.  He did not.
Q.  Alejandra Lopez, from pediatrics, are you contending she got a discount?
A.  No.
Q.  Cecilia Lindsey, from pediatrics, are you contending she got a discount?
A.  No.
Q.  Denisse Sepulveda, in internal medicine, are you contending she got a discount?
A.  No.

*Alejandra Castaneda v. Texas Tech University Health Science Center- El Paso*     Page 2 of 4
Supplemental Response to Motion to Compel

430

> Q.    Dr. Carmen Prieto, from pediatrics, are you contending she got a discount?
> A.    No.

There cannot be pretext if these individuals did not receive discounts as admitted by *Plaintiff's own witness.*

Furthermore, the former employees and family members of former employees who allegedly received discounts are irrelevant. Jesus Balderrama and Michelle Portillo are family members of Terry Balderrama, a former TTUHSCEP employee. Sylvia Lopez is also a former TTUHSCEP employee. Terry Balderrama and Sylvia Lopez were no longer with TTUHSCEP when Plaintiff and her ex-sister-in-law were terminated. Even if Terry Balderrama, Balderrama's family members, and Sylvia Lopez received discounts, Terry Balderrama and Sylvia Lopez could not have been dealt the same punishment as Plaintiff and her ex-sister-in-law because they were no longer employed. They cannot be comparators for pretext.[1]

It is clear from Plaintiff's own witness, who is pursuing her claims on the exact same set of facts in a companion case,[2] that these individuals are, in fact, *not* comparators and their medical and billing records are *not* relevant. TTUHSCEP's objection to Interrogatory 10 thereby should be sustained and the production of documents related to these individuals should not be ordered.

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

---

[1] They also cannot be comparators for the prima facie case of sex discrimination, as they are also part of the Plaintiff's protected class, female
[2] The parties had previously requested the cases be consolidated given the overlapping facts, law, and witnesses.

*Alejandra Castaneda v. Texas Tech University Health Science Center- El Paso*     Page 3 of 4
Supplemental Response to Motion to Compel

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I certify that that on June 5, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

**Enrique Chavez, Jr.**
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
manderson@chavezlawpc.com
**Michael M. Osterberg**
mikeosterberg@chanvezlawpc.com
Chavez Law Firm
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
**ATTORNEYS FOR PLAINTIFF**

*/s/ Stephanie A. Criscione /s/*
**STEPHANIE A. CRISCIONE**

*Alejandra Castaneda v. Texas Tech University Health Science Center- El Paso*    Page 4 of 4
Supplemental Response to Motion to Compel

432

# IN THE UNITED STATES DISTRICT COURTS FOR
## THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

Cecilia Castaneda

      Plaintiff,

v.                                                       Cause No. 3:24-cv-00190-LS

Texas Tech Health Sciences Center

      Defendant

### PLAINTIFF'S FIRST DISCLOSURES

    Plaintiff Cecilia Castaneda  makes the following disclosures pursuant to Federal Rule of Civil Procedure 26a.


**SIGNED** on August 6, 2024.

                Respectfully submitted,

                **CHAVEZ LAW FIRM**
                2101 Stanton Street
                El Paso, Texas 79902
                (915) 351-7772

By: _____
                Enrique Chavez, Jr., TX Bar No.: 24001873
                enriquechavezjr@chavezlawpc.com
                Michael R. Anderson, TX Bar No.: 24087103
                manderson@chavezlawpc.com
                Michael M. Osterberg, TX Bar No. 24108991
                mikeosterberg@chavezlawpc.com
                *Attorneys for Plaintiffs*

> **EXHIBIT A**

## <u>CERTIFICATE OF SERVICE</u>

<u>On August  6, 2024, I certify that the foregoing instrument was served on the following attorneys of record:</u>

Office of the Attorney General
P.O. Box 12548 Capitol Station,Austin, Texas   78711-25848
512-475-4104, fax 512-320-0667
Stephanie A. Criscione Stephanie.Criscione@oag.texas.gov

_____
Enrique Chavez, Jr.

A. The name, and, if known, the address and telephone number of each individual likely to
   have discoverable information relevant to disputed facts, and the subjects of the information
   are:

| Name | Connection to case | Subject of information | Address | Tel. |
|------|-------------------|------------------------|---------|------|
| Cecilia Castaneda | Plaintiff | Knowledge about her claims and damages | c/o Chavez Law Firm Enrique Chavez, Jr. Michael R. Anderson Michael M. Osterberg 2101 N. Stanton St. El Paso, TX 79902 | 915-251-7772 |
| Texas Tech Univ. Health Sciences Center | Defendant | Knowledge about its violations of law and Plaintiff's compensation and benefits, economic losses. | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Terry Balderama | Employee of Defendant, Senior Administrator | Has information about her own sexual harassment of Plaintiff and retaliation against Plaintiff | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Rene Vallejo | Employee of Defendant, Senior Administrator | Received Plaintiff's sexual harassment complaint and reported Plaintiff's complaint to Jennifer Erickson | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Jennifer Erickson | Employee of Defendant, Human Resources Vice President | Received Plaintiff's sexual harassment complaint from Rene Vallejo | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Leticia Cano | Employee of Defendant, Director of Nursing | Told Plaintiff she would be relocated to another clinic after Plaintiff complained about Terry Balderrama. | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| David Bergeon | Employee of Defendant, Human Resources Managing Director | Received Plaintiff's sexual harassment complaint against Terry Balderrama, never responded to Plaintiff's email about complaint. | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Andrew Conkovich | Employee of Defendant, Institutional Compliance Officer | Signed termination letter in retaliation against Plaintiff for sexual harassment complaint | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Alejandra Castaneda | Former Employee of Defendant | Also made complaints of sexual harassment and also terminated by Defendant in retaliation. | c/o Chavez Law Firm Enrique Chavez, Jr. Michael R. Anderson Michael M. Osterberg 2101 N. Stanton St. El Paso, TX 79902 | 915-251-7772 |
| Dr. Richard Lange | Employee of Defendant, President | Received complaint from Plaintiff and did nothing about it. | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |

| Name | Connection to case | Subject of information | Address | Tel. |
|---|---|---|---|---|
| Anna Yu | Employee of Defendant | Knowledge of cosmetic surgery rates and how much Plaintiff was charged for cosmetic surgery | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Victoria Mercado | Employee of Defendant | Has information relevant to Plaintiff's claims | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Sylvia Lopez | Employee of Defendant | Knowledge of cosmetic surgery rates | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Dr. Jose Castro Garcia | Employee of Defendant | Has information relevant to Plaintiff's claims | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Ulysses Castaneda | Employee of Defendant | Employee who was not terminated for engaging in the same or similar conduct alleged to be the reason for Plaintiff's termination. | | |
| Brenda Argueta | Employee of Defendant | Knowledge of cosmetic surgery rates | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |
| Vanessa Chacon | Employee of Defendant | Knowledge of cosmetic surgery rates | 4801 Alberta El Paso, TX 79905 | 915-215-5700 |

B. The description of documents relevant to disputed facts, include, but are not limited to:

   Discoverable electronically stored information (ESI) as well as discoverable information kept in paper form in the ordinary course of business, Plaintiff's complete personnel/personnel file as stored in its native electronic format and in any and all data sources (without wiping out or deleting source media and metadata) Plaintiff's employee file as well as those of comparators, if any, including evaluations, qualifications, and disciplinary records and Defendant's manuals policies and procedures and net worth information (e.g. Defendant's latest annual report to shareholders).

C.   A computation of any category damages claimed by the party, making available for inspection and copying, as under Rule 34, the documents or other evidentiary material, on which such computation is based, including materials bearing on the nature and extent of injuries suffered:

   On the date Employee Cecilia Castaneda was terminated, 05/18/2023, Employee Cecilia Castaneda was earning, on average, approximately $42,170.16 per year, averaging approximately $3,514.18 per month, including benefits (approximately $773.11/month). Benefits are customarily calculated at 22% of pay for an additional $9,277.43, for a total yearly loss of approximately $51,447.59/year.

   As of date of termination to July 31, 2024, Employee Cecilia Castaneda has lost approximately $61,879.18.

   Employee Cecilia Castaneda will lose approximately $51,447.59 per year until the age of retirement, at age 67 years.

   The informational basis for determining the lost value of Plaintiff's benefits is under Defendant's control. As to mental anguish damages, punitive damages and other non-economic damages, such is properly left to the jury's fair judgment.

D.   Pre-Trial Disclosure of Identity of Experts – The following persons may be used at trial to present evidence under Federal Rules of Evidence 702, 703, 705:

George Andritsos, 3116 Montana, El Paso, TX 79903, (915) 566-9995;
John Wenke, 501 E. California, El Paso, Texas 79902, (915) 351-8877;
Enrique Chavez, Jr., 2101 N. Stanton Street, El Paso, Texas 79902, (915) 351-7772:
Daniela Labinoti, 707 Myrtle Avenue, El Paso, TX 79901, (915) 581-4600.

   The above-named experts may testify as to their education, experience, and training as attorneys, and may testify as to the reasonableness and necessity of attorney's fees in this case.

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

ALEJANDRA CASTANEDA,                  )
                                      )
     Plaintiff,                       )
                                      )
vs.                                   )  NO. 3:24-CV-00189-LS
                                      )
STATE OF TEXAS - TEXAS TECH           )
UNIVERSITY HEALTH SCIENCES            )
CENTER - EL PASO,                     )
                                      )
     Defendant.                       )


*********************************************

ORAL DEPOSITION OF

ALEJANDRA CASTANEDA

MAY 13, 2025

*********************************************


        The ORAL DEPOSITION of ALEJANDRA CASTANEDA,
produced as a witness at the instance of the Defendant,
and duly sworn, was taken in the above-styled and
numbered cause on May 13, 2025, from 12:54 p.m. to 3:34
p.m., at the offices of ACR Ink, LLC, 221 North Kansas,
Suite 505, El Paso, Texas, pursuant to the Federal Rules
of Civil Procedure.

                                      Reported by:
                                      Mary Procell, CSR

EXHIBIT
B



```
                                                    Page 2
 1                  A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:
         Mr. Michael Anderson
 4       Chavez Law Firm
         2101 North Stanton Street
 5       El Paso, Texas 79902
         chavezlawfirm@chavezlawpc.com
 6       (915) 533-7772
 7   FOR THE DEFENDANT:
         Ms. Stephanie A. Criscione
 8       Assistant Attorney General
         P.O. Box 12548 Capital Station
 9       Austin, Texas 78711
         Stephanie.Criscione@oag.texas.gov
10       (512) 463-2100
11   Also Present:
         Billy Webster
12       Jenee Duran
13                    I N D E X
14   WITNESS:                                          Page
15       ALEJANDRA CASTANEDA
16       EXAMINATION BY MS. CRISCIONE                     4
17    CERTIFICATION                                      81
      CHANGES AND SIGNATURE PAGE                         82
18

19

20

21

22

23

24

25
```



Page 3

```
 1   EXHIBITS
 2   Exhibit 1   Plaintiff's First Disclosures              5
     Exhibit 2   Plaintiff's Objections and               20
 3               Answers to Defendant's Requests
                 for Production
 4   Exhibit 3   Plaintiff's Objections and               16
                 Answers to Defendant's
 5               Interrogatories
     Exhibit 4   Plaintiff's Responses to                 53
 6               Defendant's Requests for
                 Admission
 7   Exhibit 13  Email chain dated 3/13/23                60
     Exhibit 15  Email to Brenda Argueta, et al.          63
 8               from Alejandra Castaneda, dated
                 4/14/23
 9   Exhibit 16  Email to Brenda Argueta, et al.          41
                 from Alejandra Castaneda, dated
10               2/8/23
     Exhibit 19  Texas Tech University Health             13
11               Sciences Center El Paso
                 Operating Policy and Procedure
12               51.03
     Exhibit 21  Texas Tech University System             60
13               Regulation 07.06, Sexual
                 Harassment, Sexual Assault,
14               Sexual Misconduct, and Title IX
                 Policy and Complaint Procedure
15   Exhibit 22  Texas Tech University System             60
                 Regulation 07.06, Sexual
16               Misconduct
     Exhibit 43  Allergan Cosmetic Pricing                36
17   Exhibit 44  Email with attachment from               37
                 Sylvia Lopez, dated 8/13/22
18   Exhibit 45  Text thread between Laura Soto           68
                 and Alejandra Castaneda, in
19               Spanish
     Exhibit 46  Pages from myjobs.indeed.com,            73
20               Bates-numbered Castaneda 000401
                 through 000406
21   Exhibit 47  Handwritten list entitled "Job           69
                 Applications"
22
23
24
25
```



Page 66

1    got these -- you contend got these discounts.

2         A.   If it was not from surgery clinic, they would

3    not get a discount.

4         Q.   But they were -- so only people within

5    surgery?

6         A.   Correct.  That was what Sylvia had

7    implemented.

8         Q.   So I want to go back, then, to Tab 3, and

9    again Interrogatory 6, where --

10              MS. CRISCIONE:  And, Mr. Anderson,

11   there's no verification to these.  I didn't know if --

12   should we be expecting a verification?

13              MR. ANDERSON:  I'll look and see where

14   that is.  I thought it was sent.

15              MS. CRISCIONE:  Okay.  Perhaps it got

16   lost in the email.

17        Q.   (BY MS. CRISCIONE) So on Interrogatory 6 you

18   list Aaron Hernandez, from pediatrics.

19        A.   Correct.

20        Q.   You are contending he got a discount?

21        A.   He did not.

22        Q.   Alejandra Lopez, from pediatrics, are you

23   contending she got a discount?

24        A.   No.

25        Q.   Cecilia Lindsey, from pediatrics, are you



Page 67

1    contending she got a discount?

2        A.   No.

3        Q.   Denisse Sepulveda, in internal medicine, are

4    you contending she got a discount?

5        A.   No.

6        Q.   Dr. Carmen Prieto, from pediatrics, are you

7    contending she got a discount?

8        A.   No.

9        Q.   Jesus Balderrama, he got a discount?

10       A.   Yes.

11       Q.   Michelle Portillo got a discount?

12       A.   Yes.

13       Q.   Taylor Balderrama got a discount?

14       A.   Yes.

15       Q.   And to be clear, these are Terry Balderrama's

16   family members?

17       A.   Correct.

18       Q.   And she was no longer employed by Texas Tech

19   by the time you were terminated?

20       A.   Correct.

21       Q.   Leticia Cano was no longer employed by the

22   time you were terminated?

23       A.   Correct.

24             Sylvia Lopez also got procedures done,

25   and she obtained a discount.



Page 81

```
 1                C E R T I F I C A T E

 2

 3   STATE OF TEXAS        )

 4   COUNTY OF EL PASO     )

 5

 6          I, Mary Procell, Certified Shorthand Reporter

 7   of the State of Texas, hereby certify that this

 8   transcription is a true record of the testimony given in

 9   said proceedings, and that said transcription is done to

10   the best of my ability.

11          Given under my hand and seal of office on this

12   28th day of May, 2025.

13

14

15          _____Mary Procell_____

            MARY PROCELL, CSR 2812

16          Date of Expiration: 4/30/27

            MAGNA LEGAL SERVICES

17          Firm Registration Number 633

            16414 San Pedro Ave., Suite 900

18          San Antonio, Texas 78232

            (866) 624-6221

19

20

21

22

23

24

25
```



```
MIME-Version:1.0
From:TXW_USDC_Notice@txwd.uscourts.gov
To:cmecf_notices@txwd.uscourts.gov
Bcc:
--Case Participants: Michael Robert Anderson (chavezlawfirm+manderson@chavezlawpc.com),
Stephanie A. Criscione (stephanie.criscione@oag.texas.gov, stephanieacriscione@gmail.com,
venessa.rodriguez@oag.texas.gov), Enrique Chavez, Jr (enriquechavezjr@chavezlawpc.com,
legalassistant@chavezlawpc.com), District Judge Leon Schydlower
(erika_portillo@txwd.uscourts.gov, leon_schydlower@txwd.uscourts.gov,
veronica_medina@txwd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:32400273@txwd.uscourts.gov
Subject:Activity in Case 3:24-cv-00190-LS Castaneda v. State of Texas - Texas Tech
University Health Sciences Center El Paso Order on Motion to Compel
```
Content–Type: text/html

## U.S. District Court [LIVE]

### Western District of Texas

## Notice of Electronic Filing

The following transaction was entered on 6/6/2025 at 12:28 PM CDT and filed on 6/6/2025

**Case Name:**     Castaneda v. State of Texas – Texas Tech University Health Sciences Center El Paso

**Case Number:**     3:24–cv–00190–LS

**Filer:**

**Document Number:** No document attached

**Docket Text:**
 **Text Order DENYING [13] Motion to Compel, with leave to re–file if necessary, entered by District Judge Leon Schydlower. The Court will grant the parties' unopposed motion to consolidate this case with No. 24–cv–189–LS. Based on the pleadings filed to date, the subject motion may be moot. If Plaintiff wishes to pursue it, she may re–file it in No. 24–cv–189–LS after today's consolidation. (This is a text–only entry generated by the court. There is no document associated with this entry.) (LS)**

**3:24–cv–00190–LS Notice has been electronically mailed to:**

Enrique Chavez , Jr &nbsp &nbsp enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com

Michael Robert Anderson &nbsp &nbsp chavezlawfirm+manderson@chavezlawpc.com

Stephanie A. Criscione &nbsp &nbsp stephanie.criscione@oag.texas.gov, stephanieacriscione@gmail.com, venessa.rodriguez@oag.texas.gov

**3:24–cv–00190–LS Notice has been delivered by other means to:**

Michael Matthew Osterberg
The Chavez Law Firm
2101 North Stanton St

El Paso,

```
MIME-Version:1.0
From:TXW_USDC_Notice@txwd.uscourts.gov
To:cmecf_notices@txwd.uscourts.gov
Bcc:
--Case Participants: Michael Robert Anderson (chavezlawfirm+manderson@chavezlawpc.com),
Stephanie A. Criscione (stephanie.criscione@oag.texas.gov, stephanieacriscione@gmail.com,
venessa.rodriguez@oag.texas.gov), Enrique Chavez, Jr (enriquechavezjr@chavezlawpc.com,
legalassistant@chavezlawpc.com), District Judge Leon Schydlower
(erika_portillo@txwd.uscourts.gov, leon_schydlower@txwd.uscourts.gov,
veronica_medina@txwd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:32400297@txwd.uscourts.gov
Subject:Activity in Case 3:24-cv-00190-LS Castaneda v. State of Texas - Texas Tech
University Health Sciences Center El Paso Order on Motion to Amend/Correct
```
Content−Type: text/html

## U.S. District Court [LIVE]

## Western District of Texas

**Notice of Electronic Filing**

The following transaction was entered on 6/6/2025 at 12:30 PM CDT and filed on 6/6/2025

| | |
|---|---|
| **Case Name:** | Castaneda v. State of Texas – Texas Tech University Health Sciences Center El Paso |
| **Case Number:** | <u>3:24−cv−00190−LS</u> |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Text Order DENYING [18] Motion to Amend/Correct entered by District Judge Leon Schydlower. The Court will use the correct names of the parties when instructing the jury. (This is a text−only entry generated by the court. There is no document associated with this entry.) (LS)**

**3:24−cv−00190−LS Notice has been electronically mailed to:**

Enrique Chavez , Jr &nbsp &nbsp enriquechavezjr@chavezlawpc.com, legalassistant@chavezlawpc.com

Michael Robert Anderson &nbsp &nbsp chavezlawfirm+manderson@chavezlawpc.com

Stephanie A. Criscione &nbsp &nbsp stephanie.criscione@oag.texas.gov, stephanieacriscione@gmail.com, venessa.rodriguez@oag.texas.gov

**3:24−cv−00190−LS Notice has been delivered by other means to:**

Michael Matthew Osterberg
The Chavez Law Firm
2101 North Stanton St
El Paso,

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| ALEJANDRA CASTANEDA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:24-cv-00189-LS |
| STATE OF TEXAS – TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCES | § | |
| CENTER AT EL PASO, | § | |
| *Defendant*. | § | |

### ORDER GRANTING UNOPPOSED MOTION TO CONSOLIDATE

On this day came to be heard Defendant Texas Tech University Health Sciences Center-El Paso's Unopposed Motion to Consolidate. After reviewing the pleadings and the arguments of counsel, the Court finds that the Motion should be **GRANTED.**

The Court **FINDS** that cause numbers 3:24-cv-00189-LS and 3:24-cv-00190-LS are pending in the same court, have common parties, and share issues of law and fact.

The Court further **FINDS** that consolidation will promote judicial economy, and there is risk of inconsistent adjudications.

It is therefore **ORDERED** that cause number 3:24-cv-00189-LS and cause number 3:24-cv-00190-LS shall be consolidated under cause number 3:24-cv-00189-LS.

It is further **ORDERED** that any discovery done in cause number 3:24-cv-00190-LS may be used in this case, including any responses to interrogatories and documents produced in response to requests for production. Any pending discovery in cause number 3:24-00190-LS, including any noticed depositions, are to be conducted as currently scheduled unless the parties agree otherwise.

It is further **ORDERED** that both cases will be governed by the scheduling order entered in cause number 3:24-cv-00189-LS (Dkt. 21). Trial in both causes of action is set to commence at 9:00 AM on November 3, 2025.

Finally, it is **ORDERED** that the Clerk shall ensure (1) that this Order is filed on the docket of 3:24-cv-00190-LS; (2) that all pleadings filed on the docket of 3:24-cv-190-LS are filed on the docket of 3:24-cv-00189-LS; and (3) the Clerk shall **CLOSE** 3:24-cv-190-LS.

**SO ORDERED** this 6th day of June, 2025.

LEON SCHYDLOWER
UNITED STATES DISTRICT JUDGE